William M. Bankston, Esq.
Jon T. Givens, Esq.
Christopher J. Heaphey, Esq.
Bankston Gronning O'Hara, P.C.
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
(907) 276-1711 (telephone)
(907) 279-5358 (fax)
wbankston@bankston.to
Attorneys for Plaintiff

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| ALASKA RENT-A-CAR, INC.,<br>an Alaska Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENDANT CORPORATION, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:03-cv-29 [TMB]<br>) |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

# TABLE OF CONTENTS

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 3

        A.      Avis Beginnings ...................................................................................... 3

        B.      The Birth of the Car Rental Business in Alaska ..................................... 4

        C.      1965 Exclusive License Agreement ........................................................ 5

        D.      The Agency Settlement Agreement ......................................................... 8

        E.      Loyalty and Solidarity is an Important Implied Obligation
                Between Franchisors and Franchisees ..................................................... 9

        F.      The Avis System Includes All Aspects of Cendant Car
                Rental Group's Car Rental Business ...................................................... 10

        G.      The Avis System is the Best Rental Car System in the World ............. 15

        H.      The Avis System Was Used to Save Budget .......................................... 19

                1.      Budget Was Broken ................................................................... 19

                2.      Budget Was Fixed by Giving It Avis' Quality
                        Assurance and Customer Service Standards ............................. 21

                3.      Budget Was Fixed by Giving It the Avis Reservation System ... 23

                4.      Budget Was Fixed by Giving It Avis' Information Technology ... 27

                5.      Budget Was Fixed by Giving it Avis Management and Employees      32

                6.      Budget Was Fixed in Many Other Ways ................................... 35

        I.      Defendants Compete Against Alaska Rent A Car Through Budget ........ 36

III.    ARGUMENT ..................................................................................................... 40

        A.      Defendants' Conduct is a Breach of the ELA's Implied
                Covenant of Good Faith and Fair Dealing ............................................ 40

                1.      Developing Another Brand to Divide the Marketplace and Not
                        Giving It to the Licensee Violates the Implied Covenant ......... 41

                2.      Defendants have Breached the Implied Covenant Not to Hinder or
                        Prevent Performance ................................................................. 42

                3.      Defendants Competing Against Alaska Rent A Car in Its
                        Exclusive Territory Breaches the Covenant of Good Faith
                        and Fair Dealing ....................................................................... 45

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]                    Page i
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

B.    Defendants' Conduct is a Breach of the Agency Settlement
      Agreement's Implied Covenant of Good Faith and Fair Dealing ..................... 47

**BANKSTON GRONNING O'HARA, P.C.**

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page ii
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 3 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

I. **INTRODUCTION.**

This case is about more than a breach of contract, it is about disloyalty, dishonesty and greed. It is about a huge multi-national conglomerate purchasing a world-class franchise and forcing the franchise's employees to save a failing competitor. It is about a licensor directly competing against its own licensees within their exclusive territories. It is about an Alaskan licensee that for almost 50 years has "Tried Harder" to make Avis "number one" just to have a huge multinational conglomerate purchase the brand, steal its trade secrets, and use them along with Avis' financial strength to resurrect a bankrupt competitor, Budget.

Robert and Barbara Halcro pioneered Avis Rent A Car in the Territory of Alaska in 1956. They, along with the other franchisees and Avis have for the last five decades developed a system for operating the rental vehicle business that is second to none. Through various mergers and acquisitions Cendant Corporation ("Cendant"), a multinational conglomerate headquartered in New Jersey, has gained control over the Avis brand. It has seen fit to use Avis' financial strength and the system to purchase and operate Budget.

Alaska Rent-A-Car, Inc. ("Alaska Rent A Car"), which is owned by the Halcros and their employees all across Alaska, has the exclusive right to use the Avis System in the State of Alaska. Cendant and Avis are using this System to compete against Alaska Rent A Car by operating Budget within that exclusive territory. This breach is hindering Alaska Rent A Car's ability to perform its obligations under its Exclusive License Agreement ("ELA"). Alaska Rent A Car has certain promotional and operational obligations (such as not associating directly or indirectly with a competitor), which the purchase and promotion has made it impossible to perform. Avis' own in-house counsel has stated that,

> Included with the concept of an implied covenant not to hinder or prevent performance [is] <u>an implied covenant</u> in a contract granting an exclusive privilege to conduct a certain business in a certain area, <u>that the grantor of the privilege will not compete with the grantee within that area.</u>[1]

---

[1] Exhibit 1, Kramer Memo dated 5/7/69 at p. 3 (emphasis added) The Ninth Circuit agrees. *See, e.g., In Re Vylene Enterprises, Inc.*, 90 F.3d 1472 (9th Cir. 1996) (en banc) (holding

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 1
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 4 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Thus, Cendant's operation of a competitor constitutes a breach of implied as well as express covenants. Defendants have ignored their lawyer's advice and deliberately and willfully violated the implied noncompete covenants and the covenants not to hinder Alaska Rent A Car's performance contained in the franchise agreements.[2] This is as bad as bad faith gets.

Unbelievably, the Defendants have unsuccessfully tried to compete against Plaintiff twice before. First, in 1973 Avis tried to open a car rental location in Valdez, Alaska. The ensuing lawsuit resulted in Avis agreeing not to open in Valdez, not to encroach into Alaska Rent A Car's territory again, and that injunctive relief was appropriate if Avis should try.[3] Second, in 1995 Avis tried to purchase Agency Rental Car, Inc. ("Agency") to compete with their own franchisees nationally. This second time various lawsuits were filed across the country. Defendants settled, agreeing to close Agency and that Avis could not compete against its licensees in any segment of the car rental market.[4] The Defendants also agreed that Avis' parent could only purchase a competing company on the condition it kept the management and operations wholly independent from Avis. Virtually all of Avis' former management is now managing and operating both brands under the bad faith transparent guise of calling Avis and its employees Cendant Car Rental Group, Inc. ("CCRG"), an entity recently renamed Avis Budget Car Rental, LLC ("CCRG/Avis Budget Car Rental").

Defendants were not content with owning a profitable franchise that worked for both the franchisor and franchisees; they had to have more. They wanted to be number one on airport and rather than investing in Avis to make it number one,[5] or developing or

---

that it was a breach of the implied covenant for a franchisor to compete against its franchisee).
[2] Exhibit 1, Kramer Memo dated 05/07/69. *See also*, Exhibit 2, Affidavit of Paula W. Hinton.
[3] Exhibit 3, 1976 Settlement Agreement with Exhibits A and B.
[4] Exhibit 4, Agency Settlement Agreement ("ASA").
[5] Exhibit 19, 2005 CCRG Business Plan at p. 3 ("CCRG is the largest player in the on-airport, general use, car rental segment.").

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 2
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 5 of 53

purchasing a new brand which could be given to Alaska Rent A Car, they instead purchased a competing brand and made themselves number one and left Alaska Rent A Car out of the deal. Thus, they used the franchisor's financial strength to purchase a bankrupt competitor and gave it the franchise's car rental system which was second to none, thereby weakening the franchise. As long as Budget is strengthened more than Avis is weakened, Defendants come out ahead, but the Avis franchisees are worse off. This type of corporate behavior must not be allowed and Alaska Rent A Car respectfully requests that summary judgment be entered in its favor on breach of the implied covenant of good faith and fair dealing. It is bad faith as a matter of law for Defendants to compete against Alaska Rent A Car in its exclusive territory using the system that Alaska Rent A Car helped to build for the last 50 years.

## II.   STATEMENT OF FACTS.

### A.   Avis Beginnings.

Avis, Inc. a/k/a Avis Car Rental Group, Inc. and Avis Rent A Car System, Inc. (collectively, unless referred to separately, "Avis") developed a national and international car rental business, which rents vehicles to customers across the country and around the world.[6] This system for the rental of motor vehicles incorporated all aspects of a business, business plan, and method and manners of operation of a rental car company, which became known as the "Avis System" or "System." When the business was initially established, Warren Avis did not have the resources to open a corporately owned Avis location in all areas of the country. Therefore, Avis opened both corporate locations and franchised exclusive areas to Avis franchisees by way of exclusive license agreements.[7]

In the 1950s Avis began making these exclusive license agreements with franchisees across the country.[8] In order to encourage franchisees to invest substantial resources and capital, Avis granted to its franchisees exclusive territories. These contracts guaranteed that each Avis licensee would have the sole and exclusive right to utilize the

---

[6] Exhibit 5, Cendant Corporation Form 10K dated December 31, 2005.
[7] Exhibit 6, Excerpt of *The Avis Story* at p. 3. *See also*, Exhibit 7, 1965 Exclusive License Agreements.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]                    Page 3
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

System in a defined geographical area without any competition or interference by the licensor, Avis.[9] In addition, by granting exclusive geographical territories to licensees, the licensees were guaranteed that other System licensees would not come into their territory and create competition or undermine the licensee's exclusive territory, and the franchisor would not cause any competition to the franchisee in its exclusive territory. Additionally, each licensee enjoyed the benefit of having the System operated in the other exclusive territories in a uniform and consistent manner, consistent with the exclusive license agreements executed around the country. This business arrangement created a national and international System that benefited all licensees. This guaranteed both a secure market for each respective licensee as well as creating the Avis System and brands as a nationally recognized symbol of quality and excellence.

**B.    The Birth of the Car Rental Business in Alaska.**

On April 27, 1955, Avis entered into its first Alaskan exclusive license agreement.[10] Avis as licensor promised "[to] use every means at its disposal to encourage the use of Avis Rent-A-Car system on a national basis by concerns using motor vehicles in the transportation of their employees, merchandise, or goods."[11]

Since the original licensee did not operate the Avis System in the Territory of Alaska, Alaska Car Leasing System, Inc. a business owned by Robert and Barbara Halcro, pioneered the Avis brand in the Territory of Alaska by entering into an April 7, 1956 Exclusive License Agreement.[12] Avis (as stated in the 1956 Exclusive License Agreement preamble and again in the text of the contract) explicitly recognized that the Avis System would be exclusively used in the Territory of Alaska by Alaska Car Leasing System, Inc. and that Avis would be granting licenses to use the Avis System in the conduct of the Avis business in other parts of the country to other Avis Licensees.[13] Further in that contract,

---

[8] Exhibit 7, 1965 Exclusive License Agreements.
[9] Exhibit 8, 1955 Exclusive License Agreement.
[10] Exhibit 8, 1955 Exclusive License Agreement.
[11] Exhibit 8, 1955 Exclusive License Agreement at p. 5.
[12] Exhibit 9, 1956 Exclusive License Agreement.
[13] Exhibit 9, 1956 Exclusive License Agreement p. 2, ¶ 2.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 4
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Avis covenanted as licensor "to use every means at its disposal to encourage the use of the system on a national basis by concerns using motor vehicles in the transportation of their employees, merchandise, or goods."[14]

On November 1, 1959, Avis, Inc. and Federal Automotive Services Corporation (predecessor to Alaska Rent A Car) entered into an Exclusive License Agreement for the entire State of Alaska.[15] Again, this contract contained the same language as all other prior Alaskan franchise agreements and the same language which Avis was entering into with other licensees nationally. Specifically, the contract recognized that Avis would nationally grant exclusive licenses to other licensees to utilize the System in renting motor vehicles at other Avis locations and only in conjunction with Avis. Additionally, the contract specifically recognized the promise of the licensor "to use every means at its disposal to encourage the use of the system on a national basis by concerns using motor vehicles in the transportation of their employees, merchandise, or goods."[16]

### C. 1965 Exclusive License Agreement.

On February 1, 1965, Avis, Inc. entered into a series of license agreements with Alaska Rent A Car ("ELA"), under which the parties currently operate. Both the preamble of the agreement and the text of the agreement explicitly acknowledged that licensor, Avis, was granting Alaska Rent A Car an exclusive license to utilize the System in Alaska.[17] The ELA states:

"Licensor hereby grants to Licensee … an **exclusive license** to use the **System** in the conduct of a vehicle rental business for renting cars only.[18]

Further, the Agreement again explicitly recognized both in the preamble and in the text of the agreement that the licensor acknowledged the exclusive right of the licensee in the geographical territory and that the licensor would be licensing the System to other licensees and itself for the promotion of Avis nationally.

---

[14] Exhibit 9, 1956 Exclusive License Agreement at p. 5, ¶ 6.4.
[15] Exhibit 10, 1959 Exclusive License Agreement.
[16] Exhibit 10, 1959 Exclusive License Agreement at p. 5 ¶ 6.4.
[17] Exhibit 7, 1965 License Agreement.
[18] *Id*. at ¶ 1 [emphasis added].

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 5
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 8 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

In June of 1965, Avis, Inc. assigned the Alaska license agreements to Avis Rent A Car System, Inc.[19] Therefore, the franchisors for Alaska Rent A Car System are both Avis, Inc. and Avis Rent A Car System, Inc. Subsequently, Cendant Car Rental Group, Inc. (now Avis Budget Rental Car, LLC) also became the franchisor.[20]

All four 1965 License Agreements also contained the following agreement between Avis and Alaska Rent A Car:

> Licensee covenants and agrees 3.12 <u>Association with Other Systems</u>
>
> Not to be or become associated, directly or indirectly or through any corporation or other entity which it owns or controls or in any other manner, in any location with an international, national, or regional vehicle rental system other than the Avis System or with any other entity in competition with Avis in the vehicle rental business.[21]

Although Paragraph 3.12 is not contained in the Licensor Covenant section, it is nonetheless an agreement between the licensor and the licensee as the beginning of section 3 specifically states that the licensee is agreeing with the licensor to those terms. Thus, both the licensor and the licensee agreed that in order to protect the System there could be no competition in the State of Alaska with Avis or the System and that there would be no involvement from the System or a licensee of the System with any national, international, or regional vehicle rental business.[22] Implicit in this contractual understanding is a reciprocal agreement from the licensor that the licensor would not similarly be associated with any other car rental system.[23]

---

[19] Exhibit 11, Assignment dated May 12, 1965.

[20] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at p.160, ll. 14-15. *See also*, Plaintiff's Motion to Disregard Corporate Form and Pierce the Corporate Veil at pp. 15-17.

[21] Exhibit 7, 1965 License Agreement at ¶ 3.12.

[22] *Id.*

[23] It would provide little purpose or protection to prohibit the licensees from competing with the System, but to allow the licensor to compete with its own System by operating a competing vehicle rental business. In fact, such Licensor competition with the licensed system would create greater damage as it would be more universal. The very act of soliciting a promise from the licensee not to compete with the Avis System or be directly or indirectly involved in any manner with a competing vehicle rental business implies that

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 6
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 9 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Section 3.10 of the ELA also requires Licensees, "To cooperate with Licensor and other Licensees in promoting, advertising and developing the international recognition of the System."[24] Thus, the franchisor and franchisee agreed to cooperate to promote a single/solitary system, i.e., "the System." These sections preclude giving the System to anyone except Avis licensees.

Section 3.4 of the ELA also requires Licensees to follow the bulletins and instructions in the Operator's Manual (a/k/a Rent-A-Car Administration Manual (hereinafter "RACAM")). The Rent-A-Car Administration Manual contains policies and procedures for Avis corporate and licensee locations.[25] The RACAM contains a 1994 and 1999 version of the Avis code of business conduct which "is a guideline for the overall way we should conduct business every day. These guidelines apply to all levels of the company."[26] The RACAM has two sets of codes of business conduct which both provide:

> None of our employees are permitted to serve as directors, consultants or employees of enterprises which conduct or seek to conduct business with Avis or compete with or which seek to compete with Avis without first obtaining clearance from the Executive Vice President (Law and Administration). Directors who are not employees are expected to avoid any affiliation which would violate the foregoing and to disclose all affiliations to the Executive Vice President.
>
> * * *
>
> Confidential Information. Our employees are expected to not release to any other party any information whatsoever about Avis which is of a confidential nature or which could be deemed to constitute a "trade secret". Employees are further prohibited from using, in any manner whatsoever, Avis-related information which is confidential, proprietary or privileged, whether for their personal benefit or for that of any other reason. Any information that has not been disclosed publicly in writing should be treated as confidential.[27]

---

the licensor would not engage in the same conduct. After all, what is the purpose of having an exclusive license for a business system if the licensor is willing to hand all of the business systems, computer software, computer technology, its employees, and methods and manners of conducting business to a competing business.

[24] Exhibit 7, 1965 License Agreement at ¶ 3.10.

[25] Excerpt of Kathleen Klopfer 30(b) Deposition dated November 12, 2005 at pp. 269-270; Excerpt of Frank Gonzalez Deposition dated January 17, 2006 at pp. 46-50, 158-163.

[26] Exhibit 12, RACAM at AVIS 16109 and AVIS 15238.

[27] Exhibit 12, RACAM at AVIS 16109, 16110, and 15238 [emphasis added].

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]         Page 7
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 10 of 53

These procedures and policies are contractual pursuant to ELA Section 3.4. Avis' own policies prohibit Avis personnel from working for Budget or CCRG (which competes with Avis) or allowing Budget to use the system.

In Section 4.5 of the ELA, Avis promised to issue bulletins for improving the vehicle rental business. Avis' code of business conduct proscribing Avis personnel from working for Budget or any other brand are therefore contractual in nature.

Section 3.10 of the ELA requires Alaska Rent A Car to "cooperate with Licensor and other Licensees" in "promotional programs developed by Licensor."[28] Again, a promise by licensor and licensee to cooperate to promote only the System, is an express and implied noncompete promise.

**D.      The Agency Settlement Agreement.**

Avis attempted to purchase and operate a competing brand, Agency Rent-A-Car. Certain Avis licensee sued over the purchase. The case settled in 1997 and the Agency Settlement Agreement ("ASA") was executed. The ASA prohibits the Avis Parties from acquiring or participating in the operation of a competing rental car company.[29] "Acquire" is defined as "to own, manage, establish, operate, **act in concert or participation with**, franchise or license."[30] The Parent (HFS, Inc., which later became Cendant Corporation) had the right to acquire an additional rental car company only "**so long as** the management and operations…are **wholly separate and independent** from the management and operations of the Avis Parties", the Avis brand and the licensees' business.[31] In particular, the Agreement provides "the election or appointment of an individual to serve as a director of the Avis Parties and an Additional Company shall not be deemed to contravene the separateness and independence of the Additional Company so long as such individual is

---

[28] Exhibit 7, 1965 License Agreement at p. 4, ¶ 3.10.
[29] "The Avis Parties agree that they cannot Acquire an Additional Company or any Location thereof within any of the Exclusive Territories or otherwise compete with any of the Licensees within their Exclusive Territories." Exhibit 4, Agency Settlement Agreement at p. 3, ¶ I.B.
[30] Exhibit 4, Agency Settlement Agreement at p. 1 [emphasis added].
[31] Exhibit 4, Agency Settlement Agreement at p. 5 ¶ IV.B [emphasis added].

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 8
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 11 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

not an officer, consultant or employee of the Additional Company or any of the Avis Parties."[32]

Additionally, the Avis Parties and Parent explicitly agreed in the ASA that if an additional company were acquired, "the sales, marketing and reservation activities, operations and personnel of the Avis Parties will function and be maintained separate and apart from those of the Additional Company."[33] Further, they expressly agreed:

> the sales, marketing, and reservation activity, operations and personnel of and for the Avis System will not be utilized to market, provide and/or make available car rental services other than those provided within the Avis System and such sales, marketing and reservation activity, operations and personnel will exercise their best efforts to promote the Avis System.[34]

The ASA binds all Defendants.[35] Because class certification of the Agency litigation had been sought but not ruled on before settlement, the court ordered that the ASA be forwarded to all other Avis System Licensees so they could sign the Agreement if they elected to do so.[36] In 2001 Alaska Rent A Car signed a Statement of Joinder in Settlement.[37]

### E.  Loyalty and Solidarity is an Important Implied Obligation Between Franchisors and Franchisees.

---

[32] *Id*. at p. 5 ¶ IV.B.

[33] *Id*. at p. 5, ¶ C.1.

[34] *Id*. at p. 5, ¶ C.2.

[35] The ASA defines "Avis Parties" to include ACRG, Avis Group, ARACS "all of their past, present and future subsidiaries (direct and indirect), and all of their respective successors and assigns" and defines "Parent", now Cendant, to include "each of its past, present and future Affiliates, and all of their respective successors and assigns" but not the Avis Parties. Exhibit 4 at pp. 1-2, Nos. 6 and 15. An "Affiliate" includes any company or other entity that is controlled by or under common control with the specified entity. Exhibit 4 at p. 1, No. 3. *See also,* Plaintiff's Motion to Disregard Defendants' Corporate Form and Pierce the Corporate Veil, incorporated herein by reference. The ASA is binding on all Defendants as the "Parent", as "Avis Parties" and/or as "past, present and future affiliates" of Cendant.

[36] Exhibit 4, Order pursuant to Federal Civil Rule 23(e) at 2.

[37] Exhibit 13, July 24, 2001 Letter from Robert J. Halcro with enclosed Statement of Joinder in Settlement.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]                     Page 9
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 12 of 53

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite  900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Inherent in the nature of a franchisor/franchisee relationship is that the franchisor and franchisee will both work together to dutifully promote the image, quality, and reputation of the franchised product or service. In a franchise system it is desirable to have a uniform degree of quality and service.[38] By promoting uniformity and quality, franchises seek to establish customer loyalty to their brand.[39]

Michael Collins, former executive vice president of Avis' operations, now executive vice president for operations for all corporately owned locations of both Avis and Budget, testified as to some of the ways in which a franchisor and franchisee benefit one another through the referral of business opportunities and by providing uniform quality, service and product offerings which will build customer loyalty and benefit both franchisor and franchisee.[40]

Implicit in the franchise relationship for the system of renting motor vehicles contained in the Alaska Rent A Car License Agreements is the promise that the licensor will cooperate with the licensee in attempting to build customer loyalty to Avis and Avis alone. When defendants promote Budget to customers, if successful they will generate rentals for Budget in Alaska and other states and if very successful will generate customer loyalty to Budget. This conduct is all inconsistent with a franchise relationship and the implied promise to promote only Avis and the System. Promoting the Budget franchise nationwide is inconsistent with the implied obligations of being Alaska Rent A Car's franchisor for the System in Alaska, and the implied obligation to promote the System nationwide.

**F.    The Avis System Includes All Aspects of Cendant Car Rental Group's Car Rental Business.**

Defendants in their lust to grow market share for themselves, ignored their express and implied obligations to their licensees of some 50 years, and unilaterally elected to

---

[38] Excerpt of Michael Collins Deposition dated August 3, 2005 at p. 38.
[39] Excerpt of Michael Collins Deposition dated August 3, 2005 at p. 44-45.
[40] Excerpt of Michael Collins Deposition dated August 3, 2005 at p. 38-40, 44, 45.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 10
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 13 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

acquire Budget's assets (principally another brand) and operate the additional brand with the System.

The System encompasses the entire way Defendants operate their car rental business. The System is defined in the ELA as follows:

> [A] plan or system for conducting the business of renting motor vehicles, without drivers, hereinafter called "vehicle rental business," which plan or system consists, among other things, of uniform methods of operation, accounting, advertising service and publicity, courtesy and credit card service, kind and amount of insurance protection, method of procuring insurance protection and equipment, style and character of equipment, furnishings and appliances used in the conduct of said business, methods of procuring business and referral of business, and the right to use the name "Avis," "Avis System," "Avis Rent A Car System," "Avis Rent A Truck System" and "Avis Truck Rental Service" all of which constitute a part of said system, which system is generally know[n] as Avis Rent A Car System and is sometimes referred to hereinafter as the "System"[41]

Thus, under the License Agreement, the Avis name is merely a small part of the System, but the System also exists independent of the Avis name. It therefore is a violation of the ELA to use the System under another name such as "Budget."[42] It is also a violation to license the System in another in the "exclusive territory" of Alaska Rent A Car.

Alaska Rent A Car is a franchisee of the vehicle rental system. Defendants Avis Car Rental Group, Inc., Avis Rent a Car System, Inc., and CCRG/Avis Budget Car Rental are the franchisor of the vehicle rental system.[43] The business systems of the franchise were built over 50 years within a framework of dutiful loyalty of a network of franchisee and franchisor owned locations all dedicated solely to promoting the System and the Avis name to the exclusion of all other competitors, systems, and brand names. The ELA acknowledges the System will be licensed in conjunction with "the name 'Avis'" to

---

[41] Exhibit 7, 1965 Exclusive License Agreement, at p. 1 [emphasis added].

[42] It is also a violation of the ELA to operate Avis under the same plan or system as another car rental company in Alaska, regardless of the origin of that plan or system.

[43] *See,* Footnote 20, *supra; see also*, Plaintiff's Motion to Disregard Defendants' Corporate Form and Pierce the Corporate Veil at pp. 15-17.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 11
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 14 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

licensees in their territories and used by licensor in other territories.[44] The ELA requires "Licensor and other Licensees" to cooperate in promoting and developing the System.[45] The ELA recognizes all "vehicle rental customers" and "all vehicle rental reservations" are to be kept within the network of licensee and licensor locations.[46] The licensees and licensors (all) agree in their various agreements to cooperate in promoting the System and not to associate with any other vehicle rental business.[47]

In prior litigation, styled *Agency Rent A Car System, Inc. et al. v. Grand Rent A Car Corp. et al.*, Case No. 94 Civ. 3850, U.S. District Court, Eastern District of New York ("Agency litigation"), Defendants described the Avis license and Avis System as follows:

> The license essentially consists of two elements -- the Avis trademark and trade name, including Avis' logos and Avis' advertising, and the "System," consisting of the car rental business aims and methods (together the "Avis System"). The Avis System supplies current model vehicles to corporate and leisure customers from nationwide locations, engages in extensive national advertising, emphasizes customer service and convenience, requires uniform business methods and is centered around and supported by a state-of-the-art centrally computerized reservation and rental system with direct access by airlines, hotels and travel agents.[48]

In the course of the Agency litigation, Defendants also admitted that the Avis System includes the Wizard reservation computer system (the "Wizard system"):

> The business encompassed by the License Agreement is the use of the Avis System for renting cars in a particular territory by the licensee. At the heart of the Avis System is the Avis name and its New York based computerized state-of-the-art central reservation and rental system. Computer system reservations are made by customers or travel industry personnel who call a nationwide toll free telephone number to reserve a vehicle at any Avis location throughout the world. The computer system is accessed directly and

---

[44] Exhibit 7, 1965 Exclusive License Agreement, at p. 1 ¶ 2.
[45] Exhibit 7, 1965 Exclusive License Agreement, at p. 3 ¶ 3.10.
[46] Exhibit 7, 1965 Exclusive License Agreement, at pp. 3 , 4 ¶ 3.10.
[47] Exhibit 7, 1965 Exclusive License Agreement, at p. 4 ¶¶ 3.10, 3.12.
[48] Exhibit 14, Plaintiffs' Memorandum In Support Of Motion for Declaratory and Summary Judgment filed October 18, 1995 in the Agency litigation, at p. 2; *See also*, Exhibit 15, Declaration In Support Of Plaintiff's Motion For Summary Judgment signed October 17, 1995 by F. Robert Salerno at pp. 9-10, ¶ 16. *See also*, Excerpt of F. Robert Salerno Deposition dated August 4, 2005 at pp. 215-217.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 12
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 15 of 53

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite  900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

automatically by travel agents, airlines and others. It is a key link in providing car rental services to the travel-oriented public. About 80% of the business of the licensees is generated from it.[49]

Defendants reiterated that the Wizard System is part of the Avis System in a September 23, 1997 letter to Avis Licensees, including Alaska Rent-A-Car.[50] The letter expressly identifies the Wizard System as part of the Avis System:

[the Avis franchisor], through its wholly owned subsidiary, WizCom International, Ltd. ("WizCom") will also own the data processing and information system used in connection with the vehicle rental business and which forms a part of the Avis System. (the "Wizard System").[51]

In a June 15, 2000, Cendant Car Rental, Inc.[52] Uniform Franchise Offering Circular ("UFOC"), Defendants further admitted that the Avis System includes all their methods for renting cars.[53] The UFOC must accurately disclose all material information and is required by the Federal Trade Commission to be given to prospective Avis franchisees.[54] Defendants have affirmatively represented that the UFOC does not "contain any untrue statement of material fact."[55]

The UFOC identifies Cendant Car Rental, Inc. as the franchisor and states that Cendant Car Rental, Inc. conducts business under that name as well as the names "Avis," "Avis Rent a Car," and "Avis Car Sales."[56] The UFOC further describes the Avis System

---

[49] Exhibit 69, Plaintiff's Memorandum in Support of Motion for Declaratory and Summary Judgment dated October 18, 1995 at pp. 6-7.

[50] Exhibit 16, Letter from Robert P. Vadnais and Karen Sclafani to Robert Halcro, dated September 23, 1997. *See also,* Excerpt of Joseph Kirrane 30(b) Deposition dated October 13, 2005 at pp. 22-25; 64-65; Excerpt of F. Robert Salerno dated March 11, 2004 at pp. 125-127; Excerpt of Michael Collins dated August 3, 2005 at p. 74.

[51] Exhibit 16 at p. 1.

[52] Cendant Car Rental, Inc. is now Defendant Avis Car Rental Group, Inc. Excerpt of Karen Sclafani Deposition dated January 29, 2004 at p. 40-41, and Exhibit 17, Certificate of Amendment filed with the State of Delaware.

[53] Exhibit 18, Excerpt from Cendant Car Rental, Inc., Uniform Franchise Offering (AVIS 39044) Circular dated June 15, 2000 at p. 4.

[54] Exhibit 18.

[55] Exhibit 18 at p. 5.

[56] Exhibit 18 at pp. 2, 4.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]                                   Page 13
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

as follows:

The Franchise Offered

> We have acquired and own the System. The distinguishing characteristics of the System include our standards and specifications for the goods and services offered under the System; advertising and promotional programs and services; specialized methods and techniques for accounting, record keeping, reporting, and data transfers through written and electronic means; customer charge card services; third party credit card and Avis charge card services; a reservation referral system; an on-line, real time rental and reservations computer system (the "Wizard System") and other computer processing systems (the "Avis Computer System") for use in the conduct and operation of an Avis Rent A Car vehicle rental business; distinctive exterior and interior design, décor, color schemes, and furnishings; training programs; standards, specifications, and procedures for operations; our confidential operating manual currently referred to as the "Operator's Manual" (the "Manual"); and other programs and procedures designed to promote to the public, and further the goal of fast, easy, and dependable vehicle rental services; all of which may be changed, improved, and further developed by us. A significant aspect of the System involves fast, easy, and dependable vehicle rental services, including providing such services at or from a rental location situated at an airport.[57]

The UFOC offers potential Avis Licensees the Wizard System and all "other programs and procedures designed to promote to the public, and further the goal of fast, easy, and dependable vehicle rental services."[58]

Notably, the System is not static. Within the License Agreement, the Licensor reserved the right to change or modify the System:

> Licensor expressly reserves the right to change when and as it chooses, the System or any part thereof, including any forms, bulletins procedures, or standard Rental Agreements; **and the System as so changed or amended, from time to time, shall for all purposes be deemed to be the System referred to in this Agreement.**[59]

Thus, every method used by Defendants in the rental car business, including any change or modification thereto, is or becomes part of the System, all of which is subject to Alaska

---

[57] Exhibit 18 at p. 4.
[58] Exhibit 18 at p. 4.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 14
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 17 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Rent-A-Car's exclusive License Agreement. In the 2004 Strategic Plan CCRG/Avis Budget Car Rental promised to "integrate Avis and Budget into *one system* to enable synergies and fleet sharing."[60] They gave away the System.

### G. The Avis System is the Best Rental Car System in the World.

This world-class Avis System was developed by purpose-driven cooperation between Avis Corporate and Avis Licensees. Avis Corporate did not have the financial and managerial resources to build the System. Rather, the Avis Licensees and the Avis exclusive license agreements were the means by which the Avis System was developed and expanded. Avis Licensees, while also participating in the development of the fledgling car rental industry under the Avis System, contributed substantial financial resources and entrepreneurial ingenuity, and assumed tremendous economic risk in exchange for the exclusive rights to the System which were granted by the Exclusive License Agreements. The car rental business requires the constant renewal of fleet and related infrastructure; thus significant demands for financial investment and inherit economic risk are ongoing.[61]

At a November 9, 1988 Avis System Advertising and Policy Committee Meeting, then-Chairman and CEO of Avis Joseph Vittoria made the following comments while exhorting the Avis Licensees to have greater participation in commercial accounts and to help grow Avis:

> We have here a system which is probably close to what it was when some of you first got involved, and that is, one of the greatest systems in this country, and with the things that Hertz has done, and gotten themselves involved in, probably, our prestige is higher than anybody's.
>
> So, what I want to say to you today is … you have to get off your backs, get on the people that are running your business for you, and get into what it requires to make, and keep, a system great, and it requires participation.
>
> And if we don't see some change coming out of this, and a more active Advertising and Policy Committee that meets and gets something done, then I

---

[59] Exhibit 7 at p. 5, ¶5 [emphasis added].
[60] Exhibit 19, 2005 CCRG Business Plan at p. 2 AVIS 36119 [emphasis added].
[61] *See*, Exhibit 67, Affidavit of Andrew Halcro (Alaska Rent A Car has a $16.5 million line of credit).

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 15
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

can tell you that as soon as my obligation to the bank ends, I may look for greener pastures, to deal with people who are business people, and understand **that they have something of value, and they are going to protect that something of value**, because more for you -- and I said this in a meeting in Houston to Bobby Hayes and several people five years ago -- **you're the ones who have children, and grandchildren, and whatnot that are going to go on with this thing**. … So, **this thing should mean more to all of you than it means to anybody on this side of the table**.

…

[G]et out and get back into the Avis system, the way these people over here have done, and made us the number two company in the market by only two market share points.[62]

With these statements, Mr. Vittoria echoed the comments of then-Chairman of the Advertising and Policy Committee Orval W. Story who addressed the 30th Annual Licensee Convention in April 1988 as reported in The Avis Licensee Times (July 1988): "Avis Licensees have for over 40 years been building equity. Equity in our System and in our industry."[63] According to the Times article, "Orval went on to say we must continue to build equity, especially that kind of equity that Avis service and Avis people build better than any other. 'When we build customer and community loyalty, we are building equity in our future… .'"[64]

Mr. Vittoria and Mr. Story well understood that the Avis System was developed by Avis and its licensees, including Alaska Rent-A-Car, and is one of the best car rental systems in the world. The Avis Licensees including Alaska Rent-A-Car committed time, money and energy to build the Avis System; with the reasonable expectation that this equity was to inure only to the benefit of Avis Corporate business, Avis Licensees, and

---

[62] Exhibit 20, Letter from Joseph Vittoria to Avis Licensees with Transcript of Joseph Vittoria Statements to Avis System Advertising and Policy Committee Meeting dated November 9, 1988, at pp. 22-24.

[63] Exhibit 21, The Avis Licensee Times, *Convention Consensus…Avis Service is Still the Major Difference*, July 1988, at p. 1.

[64] Exhibit 21 at p. 1. These comments help place the bad faith nature of Defendants' actions in handing over the car rental System developed by Avis and its licensees to its competitor Budget in its proper context. Defendants have given away what everyone admits was a superior system and with it a substantial amount of the value of the company, to the detriment of the licensees and their families.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 16
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 19 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Avis customers. A concept echoed in the ELA "Licensee further recognizes and acknowledges the exclusive right of Licensor to grant this license and to grant licenses to others to use the System in the conduct of the vehicle rental business."[65] Their efforts made the Avis System a world-class leader in the industry.

"The Avis Story" goes on to discuss some of the highlights of these efforts:

> In 1972, Avis introduced another major innovation to the rent a car industry when it unveiled its Wizard computer system in the U.S. This was the first and still is the largest on-line, real-time rental, reservation, and management information system in the industry.[66]

With regard to quality assurance and customer service "The Avis Story" states:

> Avis has a long history of aggressive, innovative industry leadership. New ideas, techniques, and services have been implemented by Avis people with energy and enthusiasm, the essentials of the "We try harder" spirit.

> The company has structured comprehensive training programs for its employees so that they comprise a team of specialists whose across-the-board efforts are focused on delivering first-class service to every customer. This means providing a clean, safe, reliable car at the appointed place and time; and checking-in the car promptly when the customer returns.

> Standards of performance based on customer expectations and honed by the employees themselves as they strive to improve their own levels of customer service, are monitored continuously to assure the same high degrees of service are maintained throughout the Avis System.[67]

There is no question that the Avis System was far superior to the system that Budget used prior to Defendants' acquisition and integration of Budget into the Avis System. In a J.D. Power and Associates Report titled, "2001 Syndicated Airport Rental Car Customer Satisfaction Study," Avis tied with National for number one in overall satisfaction among business renters.[68] Avis was a close number three in overall

---

[65] Exhibit 7, 1965 Exclusive License Agreement, at p. 1, ¶ 2.
[66] Exhibit 6, Excerpt from "The Avis Story" at p. 6.
[67] Exhibit 6, at p. 20.
[68] **Exhibit 22**, Excerpt of J.D. Power and Associates, 2001 Syndicated Airport Rental Car Customer Satisfaction Study, at p. 12.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 17
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

satisfaction among leisure renters.[69] Budget was dead last in both ratings.[70] The report states:

> Avis' and National's lead among Business renters is determined by at least one of them rating either first or second in three of the five areas measured, most importantly in the Pick-up Process, the highest predictor of overall satisfaction for the business rental experience.[71]

According to the report, Budget was also last with regard to quality of its pick-up process.[72]

Scott Deaver, former Avis head of marketing, who now heads Avis and Budget marketing, was author of Avis and Budget's 2004-2005 Strategic Plan.[73] As a 30(b) witness on the strategic plan Deaver testified Avis did actually have superior business methods:

> Q:    --whichever you said, are you saying that you believe Avis has the best in industry of "product/service, sales force skill and size, brand web site, operations, knowledge and best practices, management team, call center expertise, GDS connectivity, fleet/yield, planning systems and customer loyalty?"
>
> A:    Yes.[74]

Just as there is no question that the Avis System was far superior to the system that Budget utilized before Defendants acquired Budget, there is also no question that the Avis System gave Alaska Rent-A-Car a competitive advantage over its local Budget competitors in Alaska. The competitive advantage was a fruit of the exclusive right to the Avis System granted in Alaska Rent-A-Car's License Agreement. This competitive advantage was lost forever for the owners of Alaska Rent-A-Car, their children, and their grandchildren when Defendants handed the Avis System to Budget.

---

[69] *Id.* at p. 12.

[70] *Id.* at p. 12.

[71] *Id.* at p. 13.

[72] *Id.* at p. 13.

[73] Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at pp. 9-11.

[74] Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at p. 162 . *See also*, **Exhibit 64,** 2004-2006 CCRG Strategic Plan, dated September 15, 2003 at pp. 29-30.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]    Page 18
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

**BANKSTON GRONNING O'HARA, P.C.**

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

**H.** **The Avis System Was Used to Save Budget.**

**1.** **Budget Was Broken.**

Budget was bankrupt and close to liquidation.[75] Budget lost market share every single month in 2002.[76] Budget employees were leaving Budget.[77] Avis' 2003 Strategic Plan stated Budget had "lost market share due to a combination of eroded consumer confidence and the inability to purchase the level of fleet inventory necessary . . . market share . . . [of] Budget has shifted to Avis [and others] . . . ."[78] Steve Kelly, the Avis Pacific Northwest Regional Sales Manager described Budget prior to the acquisition as a "schlock product."[79] Budget was losing corporate business due to service issues during the last two years prior to the bankruptcy filing.[80] The situation became even worse after Budget filed bankruptcy as testified to by Heidi Mateja, former managing director of sales at Budget and now a CCRG employee:

> Q.     I'll tell you that Budget was –- to the extent this helps you, Budget was sold in –- the assets of Budget were sold November 22nd, 2002, and the bankruptcy filing was in July of 2002. With that as a time reference, when was it that you noticed that Budget was starting to have these service issues and lose corporate business?
>
> A.     Probably starting sometime in 2000. 2001 is when the service issues started getting bad. Quite honestly, once we filed bankruptcy I'm not sure how much new business we signed. There aren't too many customers that want to enter a new agreement with a company that's in bankruptcy.[81]

Mateja further testified that prior to acquisition Avis had features to offer customers that Budget did not, such as better and more inclusive reporting and a stronger presence in

---

[75] **Exhibit 23**, December 17, 2001 E-mail from Bill Hunscher "… and admitted that the company could last only until the end of January before its belly-up time." and **Exhibit 24**, January 20, 2002 E-mail from Robert Krugel "…the company hits a wall in mid March…"
[76] **Exhibit 65**, 2003 Budget Business Plan at AVIS 50815.
[77] Excerpt of Phillip Dulk Deposition at pp. 17-19.
[78] **Exhibit 68**, 2003 Avis Strategic Plan at Avis 35604.
[79] Excerpt of Steve Kelly Deposition dated March 13, 2006 at p. 81.
[80] Excerpt of Heidi Mateja Deposition dated April 5, 2006, at p. 87.
[81] Excerpt of Heidi Mateja Deposition dated April 5, 2006, at pp. 87-88.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 19
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 22 of 53

Europe, that gave Avis a competitive advantage.[82]

James Krapf, former Vice President of Association and Government Sales at Avis testified that Avis had to "fix or repair" Budget's sales strategy.[83] Defendants also acknowledged the Budget.com website was "broken."[84] In a January 2003 Cendant presentation on Budget's handheld "Rover" system, Defendants describe problems with Budget's "current situation" as follows:

- Technology Failing
- 17 Airports down or having sporadic outages
- Customer Delays / Dissatisfaction[85]

---

[82] Excerpt of Heidi Mateja Deposition dated April 5, 2006, at p. 94-99.

[83]   Q. And once you became a Cendant Car Rental Group employee, I believe you indicated earlier there was a transition period where you were doing more and more things for Budget; is that correct?

  A. Well, when, when Budget entered the, the picture, we slowly transitioned into selling Budget to the appropriate audience.

  Q. Okay. Explain that transition process to me.

  A. Well, we -- we had to learn more about Budget. We had to train our people. **Budget had, you know, some, some things that needed to be cleared up with, with current accounts, and Budget was in, you know, in somewhat of a disarray. So in order to put the proper sales efforts in place, we took our time and went back into the existing Budget accounts and set the proper strategy in place.**

  Q. How did you determine what the proper strategy for Budget would be? (Objection as to form)

  A. Well, each, each account differed.

  I mean, **there were some things that hadn't been done or been neglected by Budget that we, we needed to fix or repair, put in place.** Mostly by going in and looking at the condition of the account and seeing, you know, where it had been and where it was going.

  Q. What types of things had Budget done that you needed to repair or replace?

  A. I don't recall specifically, but **they were not investing all the, you know, the time and effort towards, towards their, their business in the, in the 15 years before I became involved,** so - -

  Q. Okay. That was your observation from, from what you observed of Budget?

  A. Right.

Excerpt of James Krapf Deposition dated November 11, 2004, at pp. 76-77 [emphasis added].

[84] Excerpt of Kevin Sheehan Deposition dated July 19, 2005, at p. 108-109.

[85] **Exhibit 25,** Cendant-Budget Rover Update dated January 17, 2003, at p. 2.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]    Page 20
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 23 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

According to Defendants, Budget's "Immediate Needs" included a need to "Simplify airport conversion from Best to Wizard."[86] Budget's "Milestones Completed / In Progress" at that time included a "Switch to Avis Hardware."[87] Defendants' goal at that time was to "Match Avis functionality."[88] Defendants' actions to improve and upgrade Budget operations and systems following the acquisition are indicative of the scope of Budget's problems.

> 2.   **Budget Was Fixed by Giving It Avis' Quality Assurance and Customer Service Standards.**

Defendants gave the Avis System's customer service and quality assurance procedures and methods to Budget. A "Cendant Car Rental Group Quality of Service Standards/Proposal 2003" under the "Budget" heading notes stated, "Move to the Avis vehicle quality standards and measurement techniques."[89] An attachment to a January 2003 e-mail to Michael Collins, Executive Vice President of Operations for CCRG, regarding "QA Program Revision" from Diane Karl, Vice President of Quality Assurance and Customer Care, recommended that Defendants "Revise [Budget's] weighting of vehicle quality from 20% to 30%", which was the same as Avis, and "Modify Budget's vehicles quality assessment and standards to that of Avis and use the current Avis form."[90] Karl said the Avis format was superior and using it "[a]llows Budget to concentrate on clean car basics."[91] Regarding bussing at terminals, Karl states an intent to help Budget obtain "additional measurement information by sharing Avis QA (Quality Assurance) timings."[92]

In the 2004-2006 CCRG Strategic Plan, one of Budget's strengths was listed as

---

[86] *Id.* at p. 2
[87] *Id.* at p. 4.
[88] *Id.* at p. 6.
[89] **Exhibit 26**, Cendant Car Rental Group Quality of Service Standards / Proposal 2003.
[90] **Exhibit 27,** E-Mail from Diane Karl to Michael Collins dated January 13, 2003 at p. 2.
[91] Exhibit 27, E-Mail from Diane Karl to Michael Collins dated January 13, 2003 at p. 2.
[92] Exhibit 27, E-Mail from Diane Karl to Michael Collins dated January 13, 2003 at p. 5.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 21
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 24 of 53

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

"access to Avis best practices."[93] Providing the Avis System's quality assurance program to Budget improved Budget. In the June 27, 2003 "Quarterly Budget Integration Update" Blaskey noted that Budget's overall customer complaints had decreased by 33%.[94] According to the Update, "key" improvements included: (1) reservation failures down 56%; (2) vehicle mechanical complaints down 33%; (3) vehicle cleanliness complaints down 36%; and (4) complaints about employee behavior down 56%.[95] Kevin Sheehan also confirmed this success in improving Budget.[96] In the 2005 CCRG Business Plan (Avis no longer has its own business plan),[97] CCRG bragged to have accomplished the 2004 "promise" to "restructure Budget operations to improve quality", and the results of the 2004 Strategic Plan were "quality improved at Budget, complaint volume down by 49.6% for first 6 months 2004."[98] The 2004-2006 CCRG Strategic Plan identified numerous operational and management changes made at Budget to make it profitable and improve customer satisfaction.[99] The same system that made Avis number one in customer satisfaction is now being used to improve its competitor, Budget.

In complete bad faith, Defendants even use Avis' reputation for quality customer service to sell Budget. In a marketing presentation to Travelers Insurance on March 30, 2004, Defendants bragged that Budget "adopted Avis' award winning Customer Service standards, procedures and performance execution."[100] Budget marketing literature states:

> Avis Rent-A-Car, **sibling** company to Budget. . . has regularly won
> J.D. Power Associates awards for services and again in 2003 was named

[93] **Exhibit 64**, 2004-2006 CCRG Strategic Plan at AVIS 08650, Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at p. 166.
[94] **Exhibit 28**, Interoffice Memorandum from David D. Blaskey regarding Quarterly Budget Integration Update dated June 27, 2003 at p. 2.
[95] Exhibit 28, Interoffice Memorandum from David D. Blaskey at p. 3.
[96] Excerpt of Kevin Sheehan Deposition dated July 19, 2005 at p. 108.
[97] Excerpt of F. Robert Salerno 30(b) Deposition dated August 4, 2005 at p. 102.
[98] **Exhibit 29**, 2005 CCRG Business Plan at p. 2; *see* F. Robert Salerno 30(b) testimony at 102.
[99] **Exhibit 64**, at pp. 3-4, 7; *see also* Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at pp. 153-158.
[100] **Exhibit 30**, Budget Insurance Replacement Program materials, at p. 4. *See also*, Excerpt of Donald Booth Deposition dated February 1, 2006 at p. 149, ll. 1-14.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]    Page 22
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 25 of 53

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

the #1 brand in the industry with a 107 rating. This compares against ratings of 105 and 100 for two major competitors, one highly leveraged in the IR business.

Upon acquiring Budget in late 2002, CCRG welcomed Budget personnel <u>at all levels into its customer focused environment with accelerated training and re-education in quality attainment and management. This introduction was followed by immediate imposition of Avis' high standards for quality service and customer care.</u>[101]

Avis is <u>not</u> Budget's sibling company in Alaska and should not be marketed as such to a national company doing business in Alaska. Doing so destroys the competitive advantage that Alaska Rent A Car previously had over its local Budget competitors as to a national reputation for superior customer service. Fundamentally, the purpose of being part of a franchise is to have national or international recognition of your product by customers who will have expectations of what they will receive based on experiences at other locations. By improving the quality, reputation, and customer loyalty of Budget anywhere in the country, it hurts Avis nationally and in Alaska.

### 3. Budget Was Fixed by Giving It the Avis Reservation System.

Prior to CCRG's acquisition of Budget, the quality of the Avis national reservation system gave Alaska Rent-A-Car a competitive advantage over its local Budget competitors. According to Avis' now part-time president, F. Robert Salerno, eighty percent of the Avis Licensees' business comes from the national reservation system and it is "state-of-the-art".[102] Budget previously had significant problems with its reservation system. In a 2001 J.D. Power and Associates Rental Car Study, Budget was ranked lowest among rental car companies with regard to customer satisfaction with their

---

[101] Exhibit 30, Budget Insurance Replacement Program at p. 9. (emphasis added); Excerpt of Donald Booth Deposition dated February 1, 2006 at pp. 158-160.

[102] Exhibit 15, F. Robert Salerno Declaration in Agency litigation at p. 7. *See, also,* **Exhibit 31**, Deposition of Joseph Vittoria in the Agency litigation dated January 22, 1997 at p. 174 (stating that "for the most part (Avis licensees) get (reservations) from the Avis reservation system, and from the fruits of the Avis sales force, and advertising.").

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 23
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 26 of 53

reservation process.[103] Avis, on the other hand, was ranked number one by business travelers and was ranked as one of the top three companies by leisure travelers.[104] Avis received the "highest rating" from business travelers with regard to the reservation process and was found to be above average on "speed of reservation process" and "helpfulness of telephone staff."[105]

Since the acquisition, CCRG has implemented the same methods and systems utilized for the Avis reservation system for Budget. All the reservation personnel are now trained by the same employees.[106] The same objective performance criteria that are used to judge Avis reservationists are now used for Budget reservationists.[107] The standards which were adopted for quality assurance for Avis reservations have now been adopted and applied to Budget reservations.[108] The Budget reservation activities have been consolidated to locations where the Avis reservations are being taken.[109] CCRG personnel now take all reservations for both Avis and Budget at call centers.[110] Thus, personnel who formerly promoted solely the Avis reservation system are now assisting Budget with their reservations.

The Wizard system is now the backbone of the Avis and Budget reservation systems.[111] In early 2003, at a meeting of CCRG "senior business representatives", the "key decision" was made that the "Wizard reservation/rental system [would be] copied for Budget."[112] Prior to CCRG's acquisition of Budget, the "Reservations Management

---

[103] **Exhibit 32**, Executive Summary from 2001 J.D. Power & Associates Rental Car CSI Study at p. 15.

[104] *Id.* at pp. 15-16.

[105] *Id.* at p. 3.

[106] Excerpt of Beth Moorhouse Deposition dated October 9, 2003, at pp. 61-64.

[107] *Id.* at pp. 63-65.

[108] *Id.* at pp. 25-30 and 134-138.

[109] *Id.* at pp. 115-116.

[110] Excerpt of F. Robert Salerno Deposition dated August 4, 2005, at pp. 88-91.

[111] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005, at p. 237. Even "'non-Wizard' based parts of the Avis reservation system were provided to Budget. *Id.* at pp. 184-186.

[112] **Exhibit 33**, CCRG Project Highway IT Management Bi-Weekly Status Report, Period 01/27/03 thru 02/07/03.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 24
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

System (Maestro) … in use at Budget [was] a ten-year-old copy of Avis' Reservation Management System."[113] The IT department was tasked with the following objectives:

> Provide an integrated Reservation System with Avis functionality to support Budget Rent A Car.
> This will include the following new features:
>> Corporate Discount Exception
>> Point of Sales
>> Yield Interface
>> Operational Data Store
>> One Way Fee
>
> ****
>
> Provide real-time business data for all rental counter locations.
>
> ****
>
> Copy an instance of the Avis Reservation System for Budget and update the Budget Maestro database.
>
> ****
>
>> Copy an instance of the Avis Rental Counter System.
>> Copy an instance of the Avis Point of Sale System.
> Copy an instance of Avis Rates, Insurance, Supply and Demand Systems.
> Convert existing BRAC (Budget) car group to Avis car group.[114]

CCRG set aside $404,000 in 2003 alone to "Develop additional Wizard System functionality for Budget, beyond current capabilities of Maestro" for the Reservations Department.[115]

The Wizard system is now being used to store or transmit reservations to the Budget licensees in Alaska through the Avis franchisor.[116] The Budget Licensees'

---

[113] **Exhibit 34,** Avis Budget Integration Preliminary Project Review Report, dated 11/10/2001.

[114] **Exhibit 35,** Project Charter Wizard Reservations/Rentals, Planning 2.0 at p. 1.

[115] **Exhibit 36**, Cendant Car Rental Group 2003 Capital – INTEGRATION.

[116] Excerpt of Joseph Kirrane Deposition dated October 13, 2005 at p. 236:

> Q. And all of the reservations that are taken for Budget licensees in Alaska are stored by corporate in the data bases associated with Wizard. Correct?
> A. Unless it goes to them locally. But anything that would come through the normal res channels, we would store, yeah.
> Q. And that would be in some fashion -- you told me earlier you weren't certain about Alaska -- but in some fashion those reservations and that information would be transmitted to the Budget licensees in Alaska so that they can service that rental for Budget in Alaska.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]        Page 25
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 28 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

connection to the Wizard system at corporate was also noted in Rellinger's recent letter to the Budget licensees: "As you review new computer system options, it is likely that you will choose a system that is connected via the internet, regardless of the system you choose."[117]

On January 29, 2004, Matthew McGinley, Director of Franchise Development for Budget Rent a Car, sent an e-mail to Budget licensees notifying them of the reservation system conversion. He wrote:

> As many of you heard on our update conference call with Bob Salerno and company on Tuesday, we are actively involved in multiple system conversions and other various upgrades that will make ours a stronger, more seamless rental experience for our customers. This weekend the Maestro reservation system will be enhanced to provide additional functionality and improved connectivity within CCRG. As you will see in the memo and new update forms attached below, the reservations and IT staff have completed many preparatory changes in the back ground to ease this transition.[118]

The memo attached to this e-mail entitled, "Maestro Reservation System Conversion," states:

> As you may be aware, a continuing effort is underway to update the systems that support Budget's reservation processing. These updates will improve synergies within the Cendant Car Rental brands as well as give access to processing features in the future that were previously unavailable with Maestro.[119]

The delays and problems with the Budget reservation system have been largely eliminated through the use of the Avis System. As stated in CCRG's marketing literature for the Budget Insurance Replacement Program, the purchase "was followed by immediate imposition of Avis' high standards of quality service and customer care."[120] According to

---

A.    Budget and -- yes, it's the same.

[117] **Exhibit 37**, Letter from Jeff Rellinger, Manager of Licensee Operations, to Budget System Licensees, at p. 2.

[118] **Exhibit 38**, E-mail dated January 29, 2004 from Matthew McGinley regarding reservation conversion.

[119] Exhibit 38 at p. 2.

[120] **Exhibit 39**, Budget Insurance Replacement Program dated March 30, 2004, at p. 8.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 26
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Beth Moorhouse, a former Avis executive who is now Vice President of Reservation Operations for CCRG, the integration of Budget has improved Budget's reservations systems. [121] Moorhouse admitted that part of the base of knowledge used to improve Budget came from Avis' experience in reservations.[122] Moorhouse also admitted that CCRG has reduced Budget's reservation "handle time" by approximately five seconds for cars and twenty seconds for trucks since the acquisition, but Avis has seen no reduction in its "handle time".[123] Thus, Alaska Rent-A-Car has lost the competitive advantage it had over its local Budget competitors because CCRG has improved the quality of Budget's national reservation process, across the board, to the level previously established by the Avis System for the exclusive benefit of Avis.

In 2003 CCRG sent 25,496 reservations to Budget in Alaska.[124] In 2004 CCRG sent 28,782 reservations to Budget in Alaska.[125] In 2005 CCRG sent 34,744 reservations to Budget in Alaska.[126] By contrast from 2003 to 2005 the number of reservations CCRG sent Alaska Rent A Car decreased from 43,626 to 42,824.[127]

### 4. Budget Was Fixed by Giving It Avis' Information Technology.

Defendants' 30(b)(6) witness on information technology, Joseph Kirrane, testified that Avis is known as a rental car company at the forefront of information technology.[128] While he was an Avis employee, Kirrane assisted Defendants' IT due diligence for the

---

[121]  Q. Have you been successful at making the contact centers, reservation centers for Budget more cost-effective and more efficient?
     A. Yes.

                               * * *

     Q. As compared to what they were prior to the acquisition, Budget's contact centers, reservations centers are now more efficient, more cost-effective?
     A. Yes.
Excerpt of Beth Moorhouse Deposition dated October 9, 2003 at p. 31.
[122] Excerpt of Beth Moorhouse Deposition dated October 9, 2003 at p. 40.
[123] Excerpt of Beth Moorhouse Deposition dated October 9, 2003at p. 39.
[124] Exhibit 40, Wizard Reservations for Budget Checkout Locations in Alaska at p. 1.
[125] Exhibit 40, Wizard Reservations for Budget Checkout Locations in Alaska at p. 1.
[126] Exhibit 40, Wizard Reservations for Budget Checkout Locations in Alaska at p. 1.
[127] **Exhibit 70**, Wizard Reservations for Avis Checkout Locations in Alaska at p. 1.
[128] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at p. 65.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]       Page 27
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

acquisition and integration of Budget.[129] Kirrane concluded Budget had outdated

hardware, software and systems.[130]

At the time of acquisition, the only part of the Wizard system used by Budget was

a ten-year old outdated reservation system called Maestro.[131] Later, Avis' proprietary

computer technology and computer systems, including the updated Wizard System, were

given to Budget.[132] Cendant's Vice President of Development Integration testified:

> A:    The big picture was that we had made the decision that the Budget
>       system. . . was not as robust as the Wizard [Avis] system and we
>       made a decision to clone the existing Wizard system and convert
>       the Budget BEST computer system to our Wizard, to actually, a
>       cloned Budget/Wizard system.
>
>                            * * *
>
> Q:    When you say cloned Wizard system, what do you mean by that?
>
> A:    Make a copy of it.[133]

An operative assumption was that "Budget business will be absorbed into the Avis

model in all instances." [134] Avis' business methods were incorporated into Avis computer

technology used for Budget.[135] Not all the Avis Systems were copied. In some respects,

Budget was just integrated into the Avis System. As noted in an "Executive Summary" by

the IT department on October 18, 2002:

> Through our analysis to date, it still appears that the Avis system will
> largely support the functionality performed by the [Budget] system today.
> To achieve the integration between [Budget] and Avis, *we anticipate fully
> integrating some of the [Budget] system functions with existing Avis
> systems* (Fleet, revenue management, yield, data warehouse, etc.). Other
> [Budget] functions will require a copy of an existing Avis system to be

[129] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 37-38, 65.
[130] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 37-38.
[131] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 185-186.
[132] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp.125-128.
[133] Excerpt of David Blaskey Deposition dated October 8, 2003 at pp. 180-181.
[134] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp.  203.
[135] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 201-202.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 28
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 31 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite  900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

created, and then loaded with [Budget] data. (Rental, back office, etc.)[136]

The IT department assumed that "[t]he majority of the franchisee locations [would] *either move to the Avis counter system* or be purchased by corporate" and that "the best solution would be copying specific Avis systems for Bronco [Bronco was the code name for Budget], as opposed to fully integrating Bronco and Avis on one code base."[137] This included copying the Avis System for licensee reservation billing for Budget licensees.[138] Prior to the acquisition CCRG had no computers or systems.[139] Now Avis no longer has an information technology ("IT") department as it is just CCRG IT.[140] Now the Avis IT department and computer systems are CCRG's.[141]

CCRG encouraged Budget licensees to implement the Wizard System by touting the many benefits of Wizard.[142] In "Wizard integration" documents, the Defendants have discussed the "unique Wizard benefits," which are not available through other rental car systems.[143] Kathleen Klopfer, CCRG's Vice President of Franchise Operations, confirmed the goal of having Budget licensees use Wizard.[144]

In October 2002 the "Avis Budget Integration leadership team" met the "Technology Advisory Team (TAT)" to "discuss the preliminary plan and approach for integrating Budget Rent A Car's core business applications into Avis to achieve the expected synergy of the recently announced Cendant acquisition of Budget."[145] Later that

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

---

[136] **Exhibit 41,** Project Highway Core Applications Assessment IT Final Report dated October 18, 2002 at p. 3. Project Highway was the code name for the integration of Budget into Avis.

[137] Exhibit 41, Project Highway Core Applications Assessment IT Final Report at p. 3. (emphasis added).

[138] **Exhibit 42,** Cendant Project Highway Integration (Avis System/Action List) at p. 14.

[139] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 193-194.

[140] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 192-193.

[141] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 193.

[142] **Exhibit 43,** Budget Licensee Wizard Integration.

[143] Exhibit 37**,** April 26, 2005 Email and Letter from Jeffrey Rellinger, Manager of Franchise Operations, to Budget Licensees.

[144] Excerpt of Kathleen Klopfer Deposition dated November 17, 2005 at pp. 198-199.

[145] **Exhibit 44,** Avis Budget Integration Preliminary Project Review Report Executive Summary dated November 10, 2001 at p. 3.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 29
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 32 of 53

month, the TAT authorized a report to "at least make everyone aware of what the team is committing to and the likely downstream impacts of the decision to essentially 'clone' the current Wizard system."[146] The TAT's orders from senior management: "Make the Budget systems work like the current Avis systems."[147] The TAT worried the copy/clone approach would "negatively impact all future Avis system projects."[148] Despite those misgivings and the obvious negative impact on Avis, the "cloning" approach was followed.[149]

Using the Avis systems for Budget improved Budget, for example, by helping Budget's position on the internet. Regarding Budget.com, the TAT stated: "a cost savings opportunity may exist through leveraging the existing Avis.com infrastructure and Cendant/IBM hosting facilities."[150] The TAT suggested the "integration team should perform analysis with the Avis.com team to assess the possibilities of integrating Budget.com as a private label of the current Avis.com website."[151]

The decision was eventually made to move Budget.com to the IBM facilities. The IT department was tasked as follows in a March 24, 2003 "Project Charter:"

> This project will move the architecture for the customer facing e-commerce site, www.budget.com to the data center managed by IBM Global Services, saving money and centralizing maintenance and manageability. Second, through a software development effort, this project will establish a common practice and methodology for both sites to interact with the Wizard backend mainframe system. By converting the www.budget.com website to run against Wizard, rather than Maestro, this project removes one of the significant obstacles to decommissioning the Maestro reservation processing system.[152]

---

[146] Exhibit 44, Avis Budget Integration Preliminary Project Review Report Executive Summary at p. 3.

[147] Exhibit 44, Avis Budget Integration Preliminary Project Review Report Executive Summary at p. 6.

[148] Exhibit 44, Avis Budget Integration Preliminary Project Review Report Executive Summary at p. 6.

[149] Excerpt of David Blaskey Deposition dated October 8, 2003 at pp. 180-181.

[150] Exhibit 44, Avis Budget Integration Preliminary Project Review Report Executive Summary at p. 7.

[151] Exhibit 44, Avis Budget Integration Preliminary Project Review Report Executive Summary at p. 7.

[152] **Exhibit 45**, Project Charter, Internet Track of Project Highway dated March 24, 2003.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 30
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 33 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358
www.bankston.to

The "Internet Track" Project Charter included the following objectives:

1.  Eliminate the need for dual hosting facilities by hosting the www.budget.com site at the IBM data center in Denver, CO.

2.  Provide a more robust environment for the www.budget.com site by building redundancy and scalability and load balancing into the hosting environment.

3.  Eliminate the dependency of www.budget.com on Maestro, the current Budget reservation processing system by redesigning the IAS application to take advantage of Wizard Services.[153]

The project succeeded: David Blaskey reported to Henry Silverman that "Budget.com has undergone some site stabilization (technology) and site improvement, with the result that April and May each set new records for volume of reservations on Budget.com."[154] In 2005 CCRG relaunched Budget.com and improved both its content and functionality.[155] Millions were spent to upgrade the Budget.com site and provide faster more efficient use.[156]

The 2004-2006 strategic plan listed a "strength" of Budget as "access to Avis technology investments."[157] The strategic plan called for a major deliverable of "integrate Budget and Avis into one system to enable synergies and fleet sharing."[158]

The whole Budget "back office system" was moved to the Avis System.[159] Having a single back office system was meant to "save money through the elimination the current

---

[153] Exhibit 45, Project Charter, Internet Track of Project Highway.
[154] **Exhibit 46**, CCRG Quarterly Budget Integration Update September 26, 2003 at p. 5.
[155] Excerpt of Joseph Kirrane Deposition dated October 13, 2005 at pp. 178-181.
[156] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 180-181; *See also* Excerpt of William Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at pp. 147-148 (migration to a cloned Wizard platform improved Budget.com's site stability).
[157] **Exhibit 64**, at AVIS 8650, *see* Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at pp. 164.
[158] Exhibit 64 at AVIS 8618, *see* Excerpt of Scott Deaver 30(b)(6) Deposition dated April 14, 2006 at pp. 87-88.
[159] **Exhibit 47,** Project Charter: Back Office Track April 19, 2003 (emphasis added).

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 31
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 34 of 53

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Budget system with the implementation of the more efficient Avis back office system."[160] Defendants recommended copying sixty-five aspects of the Avis System for Budget.[161] Most of these systems were copied for Budget.[162] The "copy" recommendation meant duplicate or clone the Avis programs for Budget.[163] By contrast, the 30(b)(6) witness on information technology could not identify a single Budget computer system adopted by Avis.[164] While harming the Avis licensees, Defendants expect to realize annual savings of $12.9 million by integrating the IT systems of Avis and Budget.[165]

### 5. Budget Was Fixed by Giving It Avis Management and Employees.

To conclude there is only one Plan or System for both Avis and Budget "for conducting the business of renting motor vehicles,"[166] one need look no further than Bob Salerno, president of Avis and CCRG. There is only one president, or look to Phil Hagel, the account manager for most of Washington State and the entire State of Alaska. There is only one Phil Hagel and he sells both Avis and Budget.[167] Avis and Budget have the same sales force, the same marketing department, the same executives and management. There is only one System.

According to Chuck Fallon, executive vice president of revenue generation (sales), there is not a single employee today who devotes their full-time best efforts to selling only Avis.[168] In fact, prior to the acquisition Fallon had 175 people in the sales department who devoted their full-time best efforts to selling only Avis.[169] Now all 175 people sell both

---

[160] Exhibit 47, Project Charter: Back Office Track.
[161] **Exhibit 48**, Cendant Project Highway Strategy Report – Draft, Corporate Applications prepared by Ruth Hanley dated November 22, 2002 at pp. 11-15.
[162] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 49-51.
[163] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 50-51.
[164] Excerpt of Joseph Kirrane 30(b)(6) Deposition dated October 13, 2005 at pp. 201.
[165] **Exhibit 71**, Cendant Corporation Approval for Expenditure (AFE) Request dated March 27, 2003.
[166] Exhibit 7, 1965 Exclusive License Agreement, at p. 1.
[167] Excerpt of Philip Hagel Deposition dated February 15, 2006 at pp. 14-15.
[168] Excerpt of Chuck Fallon Deposition dated March 25, 2004 at p. 102.
[169] Excerpt of Chuck Fallon Deposition dated March 25, 2004 at p. 102.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 32
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Avis and Budget.[170] Again, sales is now a unitary system.[171]

At a November 21, 2002 Salomon Smith Barney presentation to the Board of Directors of Avis Group Holdings regarding financing for the Budget acquisition, the "Acquisition Strategic Rationale", or integration plan, was described as follows:

> Cendant expects to significantly improve Budget's profitability by eliminating most non-customer facing operations at Budget **and transferring these functions to its existing Avis staff** ... ."[172]

This transfer of Budget's operations to Avis' staff is precisely what has happened.

Since acquiring Budget, the Defendants have been actively participating in a plan to integrate Budget into Avis' successor and alter ego – Cendant Car Rental Group, Inc. now Avis Budget Car Rental, LLC.[173] CCRG now manages and operates both Avis and Budget which its new name, Avis Budget Car Rental, LLC makes obvious. At Defendants' direction, Alaska Rent-A-Car now pays its license fee directly to CCRG.[174] When David Blaskey, the Vice President of Development Integration at Cendant Corporation was asked the reason for forming CCRG, he stated:

> Well, you couldn't call something Avis Car Rental Company when you acquired something called Budget Car Rental Company.[175]

Thus, CCRG exists to operate and manage Avis under a new name so it can also jointly operate and manage Budget, all under one "system", the Avis System.[176] At his deposition,

---

[170] Excerpt of Chuck Fallon Deposition dated March 25, 2004 at p. 103.

[171] Excerpt of Chuck Fallon Deposition dated March 25, 2004 at p. 98-103.

[172] **Exhibit 49**, Salomon Smith Barney Project Highway – Finance Lease Transaction Opinion Discussion Materials dated November 21, 2002, at p. 6 [emphasis added].

[173] *See e.g.*, **Exhibit 50**, CCRG Quarterly Budget Integration Update, dated March 25, 2003.

[174] **Exhibit 51**, Cendant Car Rental Group Memo from Margie McGee to Avis Licensee System Members dated February 26, 2003; Excerpt of Michael Collins Deposition dated August 3, 2005 at p. 49 (Avis and Budget licensees pay their licensee fees to CCRG).

[175] Excerpt of David D. Blaskey Deposition dated October 8, 2003, at p. 33., ll. 19-21.

[176] Although not necessary to a determination of a breach of the covenant of good faith and fair dealing, the corporate distinction, if any, between the Defendants should be pierced for the purposes of this lawsuit. They are all the same company with the same management with regard to the car rental business. Avis and Budget are the mere instrumentalities of

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 33
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 36 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

F. Robert Salerno, former President and Chief Operating Officer of Avis and now President and Chief Executive Officer of CCRG, testified that he is willing to give the whole Avis System to Budget:

> Q.   Okay. Separate from customer facing, talking just purely back office, is there any part of the business systems or the way that Avis did business that you would not give to Budget?
>
> A.   That we would not utilize in the Budget brand?
>
> Q.   Correct.
>
> A.   No. There's nothing that I could think of.[177]

In other words, virtually every aspect of Avis' manners and methods of doing business, which were developed by Avis and its licensees over the past 50 years, have been handed to Budget through the Avis employees.

The integration of Budget under Avis management began as soon as the acquisition was complete.[178] According to the March 2004 deposition testimony of F. Robert Salerno, numerous departments and operations have been or will be consolidated, including but not necessarily limited to yield management, sales and marketing, training, fleet management, vehicle acquisition, revenue, business systems, data storage, insurance, human resources,

---

CCRG (or CCRG is Avis' alter ego), all of which are part of the Avis System as defined in the License Agreement and Agency Settlement Agreement. *See*, Alaska Rent A Car's Memorandum in Support of Motion to Disregard Defendants' Corporate Form and Pierce the Corporate Veil for additional facts supporting piercing. *See also*, Excerpt of F. Robert Salerno Deposition dated March 11, 2004, at pp. 140-142 regarding wholesale transition of Avis personnel and equipment to CCRG.

[177] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at p. 146.

[178] Although the Defendants contend that they are attempting to maintain Avis and Budget as separate brands which merely use the same methods of operation, the overall plan and practice has been to integrate all "behind the scenes" management and operations. *See e.g.*, Exhibit 52, Cendant Car Rental Group Brand Position and Integration presentation dated November 7, 2002, at p. 14. *See also*, Exhibit 53, Cendant Vehicle Services Presentation by Kevin M. Sheehan, at pp. 16-17. *See e.g.*, Exhibit 54, Budget Means Business BTN Article, BTNonline.com, *Cendant Boosts Budget For Biz*, Fall 2003. *See also*, Plaintiff's Alaska Motions for Partial Summary Judgment on Breach of Contract and Antitrust for additional facts describing the integration of management and operations.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]      Page 34
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 37 of 53

finance, audit, accounting, vehicle repair and maintenance and information technology.[179]

By and large, the integration process has consisted of handing over the operation and management of Budget to the former Avis personnel. As F. Robert Salerno confirmed, Avis' corporate officers were transferred to CCRG to perform for Budget and Avis the tasks Avis trained them to perform for Avis:

> Q. Okay. And so the -- with the exception of Mary LeBlanc, the entire Avis Rent-A-Car System, Inc. senior management team is now the entire senior management team for Cendant Car Rental Group?
> A. That's true.[180]
>
> Q. Okay. So one day everybody was Avis, and they all reported to a particular office in a particular building, sat at a particular desk, and then at some point in time those people became Cendant Car Rental Group executives, but they reported to the same office, sat at the same desk, did the same job functions except for two brands instead of one?
> A. That's correct.[181]

All of the Avis personnel from the level of city manager and above became CCRG personnel, doing their job functions for both Avis and Budget.[182] There were hundreds of Avis personnel who began to do their job duties for both Avis and Budget combined.[183] Again, this is one System. From October 14, 2005 to present, the Avis.com and Budget.com websites listed the exact same executives, serving in the exact same positions, for both companies.[184]

### 6. Budget Was Fixed in Many Other Ways.

CCRG (i.e., Avis) enacted numerous initiatives to "fix customer service" at Budget.[185] Budget was fixed by giving it a new pricing strategy.[186] Budget was fixed by

---

[179] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 128-145.
[180] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at p. 57.
[181] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 141-142.
[182] Excerpt of Michael Collins Deposition dated August 3, 2005 at pp. 52-53.
[183] **Exhibit 72**, Comparison of Entity Directories: June 2002 and January 2004.
[184] **Exhibit 55,** Avis Executive Bios (www.avis.com) and Budget Leader Profiles (www.budget.com) as of October 2005, and as of June 19, 2006.
[185] **Exhibit 65**, 2003 Budget Business Plan at pp. 2-6.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 35
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 38 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

opening new locations.[187] Budget was fixed by launching a new small business program for Budget to attract unaffiliated business travelers.[188] Budget's cost structure has been improved "to enable Budget to profitably compete with low-priced competitors."[189] Budget was fixed by repositioning Budget in the marketplace and by repositioning the Budget brand.[190] Avis' franchisor has created an entirely new product and competitor in the marketplace.

> I.  **Defendants Compete Against Alaska Rent A Car Through Budget.**

Budget is a competitor of Avis in Alaska.[191] In June 2001 and October 2002, Lieberman Research, Inc. performed market studies commissioned by the Avis Parties. These reports tracked Avis and its "major competitors."[192] The October 2002 report concluded that Avis and Budget customers are demographically "largely similar."[193] "Demographically, Avis and Budget customers are largely similar, with only a few notable differences—Avis customers are wealthier than Budget customers and somewhat more likely to be Hispanic/Latino, while Budget customers are somewhat more likely to be Black/African American."[194]

In 2002 loyalty among Avis customers had declined. While customers of Avis had rented from Budget only seven percent (7%) of the time in 2001, in 2002 that number had increased to eleven percent (11%).[195] The study also found Budget customers rented from

---

[186] Exhibit 19, 2005 CCRG Business Plan at pp. 7-8.
[187] *Id.* at p. 19.
[188] *Id.* at p. 15.
[189] *Id.* at pp. 5, 11.
[190] *Id.* at pp. 6, 9-18.
[191] Excerpt of Tony Stanley at pp. 8, 16-17.
[192] **Exhibit 56**, Lieberman Report – HVR Tracking Study 2001 at 3.
[193] **Exhibit 57**, Lieberman Report – HVR Tracking Study 2002 at 73, 74 ("Avis and Budget customers have similar renter profiles. Both tend to be heavier renters, renting at or near the airport in a city other than where they live.") Excerpt of Becky Alseth Deposition dated November 10, 2004 at p. 154.
[194] Exhibit 57, Lieberman Report – HVR Tracking Study 2002 at 73.
[195] Exhibit 56, Lieberman Report – HVR Tracking Study 2001 at p. 12. 11% of the time Budget took Avis customers versus 15% of the time Hertz took Avis customers. Excerpt of Becky Alseth Deposition dated November 10, 2004 at p. 151.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]      Page 36
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

**BANKSTON GRONNING O'HARA, P.C.**
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Avis twenty-nine percent (29%) of the time. In fact Budget customers were more likely to rent from Avis than from Budget.[196] According to two Lieberman Studies in 2001 Avis was Budget's largest competitor.[197] 28% of the time Budget customers rent from Budget and 29% of the time Budget customers use Avis.[198] Avis and Budget compete for the same customers.[199]

In Avis' 2002 Strategic Plan, Avis admitted it competes with Budget for both large and small commercial accounts.[200] In Avis' 2003 Strategic Plan, Avis noted Budget's improving fleet "may erode or halt leisure share gains" of Avis.[201]

Defendants, including Alaska Rent A Car's franchisor, now send thousands of reservations to Alaska Rent A Car's competitor in its exclusive territory. During 2003 through 2005 Defendants sent over 89,000 reservations to Budget franchisees in Alaska.[202] Alaska Rent A Car's primary competitor in Alaska, the Budget licensee Corporate Sales & Leasing, Inc., receives approximately 70% of its total car rental revenue from the franchisor through the reservation system.[203] Approximately 65% of Corporate Sales & Leasing, Inc. business comes from national accounts sold by the same system sales force which is supposed to sell Avis.[204] These corporate accounts are negotiated by CCRG's sales force on behalf of Corporate Sales & Leasing, Inc. as well as Alaska Rent A Car.[205]

Combining the sales force has resulted in Alaska Rent A Car's national sales force

---

[196] Exhibit 57, Lieberman Report – HVR Tracking Study 2002 at 68. Additional evidence that Avis and Budget competed prior to the acquisition is contained in the Excerpt of Nicholas Sofianopoulos Deposition dated January 18, 2006 at pp. 27-34; Excerpt of Phillip Dulk Deposition at p. 13, and Excerpt of Heidi Mateja Deposition at pp. 93-100.

[197] Exhibit 56, Lieberman Report – HVR Tracking Study 2001 at 62.; Excerpt of Becky Alseth Deposition dated November 10, 2004 at 157-158.

[198] Exhibit 56, Lieberman Report – HVR Tracking Study 2001 at 62.

[199] **Exhibit 58**, June 2004 Chadwick Martin Bailey Study at pp. 73-75. *See also,* Excerpt of Becky Alseth Deposition at pp. 238-243, 246-249, 251, 266-269.

[200] **Exhibit 66**, 2002 Avis Strategic Plan at p. 2.

[201] Exhibit 68, 2003 Avis Strategic Plan at AVIS 35617.

[202] **Exhibit 59**, Alaska Budget Reservations.

[203] **Exhibit 60**, Affidavit of Emelia Stanley.

[204] *Id.* at 3.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 37
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 40 of 53

unfairly competing against it through Budget. For example, as testified to by Steve Kelly the Pacific Northwest Regional Sales Manager for CCRG, he was given a directive at world headquarters to increase Budget's corporate business which he did by offering Budget as a low cost alternative to Avis.

Q    Let me restate the question, hopefully clearer this time. You had a directive from world headquarters to get more corporate business for Budget; is that correct?

A    Yes.

Q    How did you go about implementing that directive, if you did?

A    Be sure to make Budget presentations wherever possible in conjunction with an Avis presentation, but at the end of the day, it was all based upon what the account requested or wanted really.

Q    So if it was all about what the account wanted, how would you go about pushing the Budget brand?

MR. DONOVAN: Objection; argumentative and asked and answered.

A    THE WITNESS: We would suggest Budget as a low-cost alternative to either Avis or their current supplier.[206]

Thus, in order to get more corporate business for Budget, Kelly and his sales staff competed directly against Alaska Rent A Car by suggesting Budget as an alternative car rental company to Avis. This is the height of bad faith. Kelly also testified:

Q    After the purchase of Budget by Cendant Car Rental Group, were you ever given any direction on how to sell Avis versus Budget when you went to corporate accounts?

MR. DONOVAN: Objection; vague.

A    THE WITNESS: At the end of the day, like I said in the first deposition, it was all based upon what the account wanted. If the

---

[205]  Excerpt of Tony Stanley Deposition at pp. 153-154; Excerpt of Charles Fallon Deposition dated July 7, 2005 at pp. 321-322.
[206]  Excerpt of Steve Kelly Deposition dated March 13, 2006 at pp. 66-67.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]    Page 38
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

account wanted price, we sold price; if the account wanted service, we would sell service. Those were the two biggest differentiating factors between the two brands. At the end of the day, ultimately it was the account's decision, and based upon their needs, that determined what and how I sold. As a salesperson, I didn't care. It didn't matter. Whatever was going to get me the account—I had a significant number of accounts. It just didn't matter.

Q        Were there cases where an account would want a good price and good service?

A        They all wanted good price and good service.

Q        So that's my question for you. How do you differentiate--

A        At the end of the day if price is even involved, they want price. If somebody even says the "P" word, they wanted price.

Q        What would you do in those circumstances?

A        Probably give them Budget.[207]

Thus, the Regional Sales Manager for the Pacific Northwest marketed Budget instead of Avis to price conscious corporate accounts, or customers who simply said the "P" word.

CCRG also unfairly competes against Avis and Alaska Rent A Car by not bidding Avis when Budget is the incumbent at the account. When testifying about the proposal for Providence Health System's business, Kelly stated:

Q        Let me ask you: Was it your policy, as regional sales manager, to bid-- if a Budget account came up for renewal, to bid Avis for that account?

A        Depending upon the account. In a situation such as this, if you can get a dollar increase and they're happy to remain with Budget and you can increase the profitability of the account and it stays with Budget, then there's no need to offer anybody else.

Q        What would be the situation where you would submit an Avis bid at a renewal of a Budget account while you were regional sales manager?

---

[207] Excerpt of Steve Kelly Deposition dated March 13, 2006, pp. 139-140.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 39
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

A    If there was dissatisfaction on the part of the account, if Budget was in jeopardy of losing the business due to competition.

Q    And based on your memory of the Providence Health System account, there were no problems with the Budget brand, so no reason to submit an Avis proposal?

A    That's my recollection.[208]

Not only are Defendants competing against Alaska Rent A Car in its exclusive territory, which by itself constitutes bad faith, they are doing so unfairly by not even trying to get Avis accounts for price conscious corporate customers or corporate customers that are already Budget accounts.

## III.    ARGUMENT.

### A.    Defendants' Conduct is a Breach of the ELA's Implied Covenant of Good Faith and Fair Dealing.

The covenant of good faith and fair dealing implied in every contract precludes each contracting party from injuring the right of the other party to receive the benefits of the agreement.[209] Both New York and Alaska recognize a breach of good faith and fair dealing under a claim of breach of contract.[210]

By interfering with Alaska Rent A Car's ability to perform obligations under its

---

[208] Excerpt of Steve Kelly Deposition dated March 13, 2005 at p. 69. CCRG also did not bid Avis at other accounts that do business in Alaska to protect Budget's position such as Crowley Maritime, Trident Seafoods, Wells Fargo, and Food Services of America. Excerpt of Nicholas Sofianopoulos dated January 18, 2006 at pp. 148-149, 236-237, 251-254.

[209] *Guin v. Ha*, 951 P.2d 1281, 1291 (Alaska 1979) (recognizing duty of good faith and fair dealing in every contract).

[210] *Silvester v. Time Warner, Inc.*, 763 N.Y.S.2d 912 (N.Y. 2003); *Fairbanks Builders, Inc. v. Morton DeLima, Inc.*, 483 P.2d 194 (1971) (holding that implicit in parties' subcontract was an obligation of one party not to prevent or hinder performance by the other); *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228 (2nd Cir. 1991) (holding that under New York law every contract contains an implied covenant of good faith and fair dealing including an "implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.") (quoting *Good v. Roberts*, 198 N.E.2d 26, 28 (N.Y. 1964)).

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]                    Page 40
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB    Document 172    Filed 06/19/06    Page 43 of 53

ELA, by operating and managing a competing brand within Alaska Rent A Car's exclusive territory, and by giving Budget the Avis System, the Defendants have violated the implied covenant of good faith and fair dealing.

       1.       **Developing Another Brand to Divide the Marketplace and Not Giving It to the Licensee Violates the Implied Covenant.**

Avis viewed the tragic terrorist attack of September 11 as a business opportunity.

> In light of the events surrounding September 11th, 2001 Avis will continue to opportunistically seek a second rental car brand that complements the current Avis business.[211]

Rather than trying to develop another brand under the ELA for the mutual benefit of the franchisor and franchisee, and rather than investing in Avis to amend its perception and broaden its market reach, Defendants decided to purchase a leisure brand and segment the market between it and Avis.

> Avis will continue to battle smaller car rental companies in various distribution channels and attempt to amend its perception as a higher cost rental car company, however, it may be much more efficient for Avis to purchase a second (leisure) brand. This will allow each segment of a new multi-brand company to focus on its core customer market, while allowing for a deduction of combined infrastructure costs.[212]

Defendants decided it would be "more efficient"; i.e., cheaper, for Avis to purchase Budget than to market Avis to leisure travelers and develop more Avis business.[213] It is neither good faith nor fair dealing, 50 years into a franchise relation, to acquire a competitor and segment markets with a "new multi-brand company focus." Alaska Rent A Car does not want to be multi-brand focused out of the important leisure market in Alaska. Segmenting the market is a breach. Licensing a brand to another in Alaska Rent A Car's <u>exclusive</u> territory is a breach.

---

[211] **Exhibit 66**, 2002 Avis Strategic Plan at p. 3.

[212] *Id.*

[213] *Id.* at AVIS 35446 and AVIS 35553; *see* Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 14-15.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]       Page 41
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

2.     **Defendants' have Breached the Implied Covenant Not to Hinder or Prevent Performance.**

Subsumed in the implied covenant of good faith and fair dealing is the "prevention of performance doctrine" under which "bad faith" includes "interference with or failure to cooperate in the other party's performance."[214] The implied covenant not to hinder or prevent performance has also been described as follows: "Each party to a contract impliedly agrees not to prevent the other party from performing or to render performance impossible by any act of his own."[215]

In 1969 and again in 1980, Avis' attorneys acknowledged the existence of this covenant in the Avis ELA. In 1969 Avis sought to establish an off-airport car rental company that would have competed with its licensees in certain cities and Avis in-house counsel W. Kramer prepared an opinion that doing so would breach the license agreements.[216]

> Aside from the express provisions of the license agreement discussed above, <u>there would, under general contract principles, be implied in the agreement, a covenant that Avis will not perform any act which would prevent or hinder performance by the licensee</u>. In this regard, it is to be noted that the licensee is required to remit 5% of his time and mileage charges, less discounts as administrative and advertising fees; (License Agreement Sec. 3.11), he is required to comply with all bulletins, directives, etc. issued from time to time by Avis and generally to conduct his business in a businesslike manner: (License Agreement Sec. 3.7), he is required to spend certain amounts each year on advertising and sales promotion of his own business (License Agreement Sec. 3.7), and to take certain other steps requiring the expenditure of monies designed to publicize the Avis name in his locality; (License Agreement Sec. 3.15), and if he fails to meet reasonable standards promulgated by Avis for the operation of a rent a car business, including reasonable standards as to minimum number of cars to be operated, said standards to be based on

---

[214] Restatement (Second) of Contracts § 205 (1981), Comment d, cited in *Mitford v. de Lasala*, 666 P.2d 1000, 1006 (Alaska 1983)

[215] *Hardin v. Eska Company*, 127 N.W. 2d 595, 598 (Iowa 1964) quoting 17 C.J.S. Contracts §468 at 967.

[216] Exhibit 1, Kramer Memo dated May 7, 1969. Defendants' previously produced this legal opinion in connection with the Agency litigation. Exhibit 2, Affidavit of Paula W. Hinton dated November 13, 1995.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 42
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 45 of 53

population "and such other criteria" as Avis "shall reasonably determine to be relevant to the car rental potential" of his city, his agreement can be terminated "with cause." (License Agreement Sec. 14). <u>A new off-airport operation would diminish the potential and possibly the existing revenues of a licensee, thereby impairing his ability to take the steps described above with respect to promotion of the Avis name, maintenance and expansion of fleet size which could be required of him under the agreement -- a breach of the implied covenant not to hinder performance.</u>[217]

Notably Avis' attorney's concluded it would be a breach of the implied covenant for Avis to acquire a rental car company which operated only at off-airport locations.[218] Of course, in this case, Budget was not merely a competitor with Avis in off-airport business but at nationwide airport locations as well, which strengthens the conclusions of Avis' attorneys the implied covenant would be breached. Avis' breach of the implied covenants was done in direct disregard of its own legal counsel's written opinions. This is bad faith conduct and deliberate breach.

More significantly, Avis' lawyer advised that Avis' parent could not through a newly formed subsidiary engage in mere off-airport car rentals with Avis providing management and technical assistance.[219] The circumstance described is like a blueprint for the Defendants' conduct in this case. Though a newly-formed subsidiary of the Parent, CCRG, Avis provides management and technical assistance to run Budget. A breach according to Avis' legal counsel, which in bad faith was disregarded by Avis.

In 1980, Avis' legal counsel revisited the issue of Avis' ability to operate another car rental brand.[220] Avis' counsel concluded the ELA contained an implied covenant precluding the company from establishing a competing operation in its licensees' territories: "[T]he provisions of the Avis license referred to in the [1969] Kramer memo, general principles of equity and the <u>Parev</u> case all support the conclusion that an implied

---

[217] Exhibit 1, Kramer Memo at p. 3.
[218] *Id.* pp. at 1-3, 7-8.
[219] *Id.* at pp. 1, 7.
[220] Exhibit 2, Memorandum from Kenneth Goodkind to Barry R. Shapiro attached as Exhibit A to Affidavit of Paula W. Hinton dated November 13, 1995.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 43
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 46 of 53

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

covenant by Avis not to hinder the licensee's performance would be read into the license."[221]

Performance of Alaska Rent A Car's obligations under the ELA is impaired and/or rendered impossible by Defendants' management and operation of Budget as an Avis competitor. First, Defendants' management and operation of Budget using the Avis System hinders Alaska Rent A Car's obligation to cooperate with the "Licensor" in "promoting, advertising and developing the international recognition of the System" (Section 3.10). Second, integration of the management of Avis and Budget also interferes with performance of Alaska Rent A Car's obligation "not to be or become associated" (Section 3.12) with an Avis competitor.[222] For example, due to Defendants' integration of sales for Avis and Budget, when both Alaska Rent A Car and Corporate Sales (Budget Alaska) participate in national corporate account programs they are allowing the same person to sell their car rental services to corporate customers, including setting the price for each brand.[223] Finally, as noted by Avis' own legal counsel, promoting a competitor of Alaska Rent A Car "diminish(es) the potential and possibly the existing revenues of [Alaska Rent A Car], thereby impairing [its] ability to take the steps described [in the ELA] with respect to promotion of the Avis name, maintenance and expansion of fleet size which could be required of [it] under the [ELA]. . .."[224]

---

[221] Exhibit 2, Memorandum from Kenneth Goodkind to Barry R. Shapiro attached as Exhibit A to Affidavit of Paula W. Hinton dated November 13, 1995.

[222] Historically, Avis has refused to allow licensees to operate a competing brand. **Exhibit 61**, Letter to Avis Rent A Car Licensee Kenneth Wright dated July 8, 1977. Avis has also historically refused to allow licensees to use the "Avis" name in any advertising unrelated to Avis. **Exhibit 62**, Avis Licensee Procedures, Licensee Regulations at p. 2. In complete bad faith, Defendants now use the Avis name to advertise and support Budget, even going so far as to call the new company "Avis Budget Car Rental Group, Inc." It certainly does not benefit Alaska Rent A Car to be associated in this way with its largest competitor. F. Robert Salerno testified he would not allow a licensee to operate a brand other than Avis or Budget. Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 17-18.

[223] Additional facts supporting the combination of the national sales force and price fixing are contained in Plaintiff's Motion for Partial Summary Judgment re: Antitrust.

[224] See Exhibit 1, Kramer Memo dated May 7, 1969 at p. 3 (paraphrased).

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 44
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

3. **Defendants Competing Against Alaska Rent A Car in Its Exclusive Territory Breaches the Covenant of Good Faith and Fair Dealing.**

Defendants' operation and management of a competing brand within Alaska Rent A Car's exclusive territory violates the implied covenant of good faith and fair dealing. As counsel for Avis noted in 1969:

> Included within the concept of an implied covenant not to hinder or prevent performance would be <u>an implied covenant</u> in a contract granting an exclusive privilege to conduct a certain business in a certain area, <u>that the grantor of the privilege will not compete with the grantee within that area.</u>[225]

There is no point in having an exclusive territory for the System, if the licensor can use the System to promote, support, and license <u>another</u> company in that "exclusive territory."

"There has not been much litigation on the question of a covenant not to compete being implied in an exclusive license agreement. However, as demonstrated by the following cases, there is no question that such an implied covenant exists."[226] The law has not changed since 1969. In *Vylene Enterprises, Inc. v. Naugles, Inc.*,[227] the Ninth Circuit ruled that a franchisor breached the covenant of good faith and fair dealing by building a restaurant within two miles of a franchisee, even though the franchise agreement expressly denied the franchisee an exclusive territory. The Ninth Circuit ruled in *Vylene* that although the franchisee's contract did not provide an exclusive territory, the franchisee was "still entitled to expect that the franchisor would 'not act to destroy the right of the franchisee to enjoy the fruits of the contract.'"[228] *Vylene* observed that the bad faith character of the franchisor's decision to locate a restaurant so close to the franchisee's restaurant "becomes clear when one considers that building the competing restaurant had the potential to not only hurt [the franchisee], but also to reduce [the franchisor's] royalties

---

[225] Exhibit 1, Kramer Memo at p. 3 [emphasis added]; *Buckley & Scott Utils v. Petroleum Heat & Power Co.*, 48 N.E. 2d 154 (Mass. 1943) (holding it was a breach of the implied covenant for the franchisor to compete in exclusive territory of franchisee).
[226] Exhibit 1, Kramer Memorandum at 3.
[227] *In Re Vylene Industries, Inc.*, 90 F.3d 1472 (9th Cir. 1996) (en banc).

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 45
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

from [the franchisee's] operations."[229]

The Seventh Circuit similarly ruled in *Photovest Corp. v. Fotomat Corp.*[230] that a franchisor's saturation of the market with company stores was a breach of the covenant of good faith and fair dealing. The Seventh Circuit stated that the covenant, "imposes a duty on each party to do nothing to destroy the right of the other party to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish its purpose."[231]

Defendants have breached the covenant of good faith and fair dealing by operating and managing a competing car rental brand within Alaska Rent A Car's exclusive territory. It constitutes bad faith for Defendants to send reservations and to give Avis' "world-class" car rental systems to a major competitor. Doing so injures Alaska Rent A Car and reduces franchise royalties from Alaska Rent A Car's operation.[232] In fact, last

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

---

[228] *Id*. at 1477.

[229] In the lower court, the franchisor defended the nearby store on the grounds that it drew business from a different segment of the market or clientele and thus did not compete. *In Re Vylene Enterprises, Inc.*, 105 B.R. 42, 49 (C.D. Cal. 1989). The bankruptcy court rejected this argument. *Id.*

[230] 606 F.2d 704, 728 (7th Cir. 1979).

[231] *Id*. at 728. *See also Carvel Corporation v. Diversified Management Group, Inc.*, 930 F.2d 228 (2nd Cir. 1991) (holding that under New York law every contract contains an implied covenant of good faith and fair dealing and that covenant includes an "implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.") (quoting *Grad v. Roberts*, 198 N.E. 2d 26, 28 (N.Y. 1964). In *Carvel*, the plaintiff was a distributor to Carvel ice cream franchises. The distributor claimed that under New York law Carvel had acted in bad faith by, among other things, failing to pay compensation, refusing qualified licenses, and withdrawing support for the local advertising program 930 F.2d at 231-232. The Second Circuit noted that the distributorship contract between plaintiff and Carvel gave Carvel "near absolute control over these matters." 930 F.2d at 232. Nevertheless, even if Carvel "acted within the bounds of its discretion, Carvel would still be in breach if it acted unreasonably." 930 F.2d at 232.

[232] Alaska Rent A Car relies on CCRG for its reservations. As testified to by Joseph Vittoria, the former President of Avis, in the Agency Rent A Car litigation: Q: How did the licensee locations get their car rental customers? A: For the most part they get it from Avis reservation system, and from the fruits of the Avis sales force, and the advertising. Exhibit 31, Deposition of Joseph Vittoria in the Agency litigation dated January 22, 1997.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 46
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 49 of 53

**BANKSTON GRONNING O'HARA, P.C.**

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

year Alaska Rent A Car's revenues declined one million dollars (and thus its royalties declined) and Budget's revenues in Alaska increased one million dollars.[233] As in *Vylene*, the bad faith nature of Defendants' actions become clear when one considers that purchasing Budget and running it under the Avis System not only had the potential to hurt Alaska Rent A Car, but also to reduce CCRG's royalties from Alaska Rent A Car's operations.[234] Alaska Rent A Car is entitled to expect that the franchisor will not act to destroy the right of the franchisee to enjoy the fruits of the contract.[235]

"Avis requires the licensee to agree to cooperate with it and other licensees in promoting and developing the national recognition of the Avis System.[236] By requiring the licensee to so cooperate, Avis implies that it will itself promote and develop such national recognition. Avis could not, however, promote and develop national recognition of the Avis System in the manner looked to in the license agreement, if it was at the same time promoting and developing a new off-airport system."[237] The same conclusion would apply to Budget which operates both off-airport and on-airport. The same conclusion is supported by the obligation to cooperate with the licensor and other licensees in promotional programs[238] and in referral of business and reservations.[239]

**B. Defendants' Conduct is a Breach of the Agency Settlement Agreement's Implied Covenant of Good Faith and Fair Dealing.**

Even if the ASA did not explicitly bar Defendants' actions, which it does, the integration and operation of Budget under the same System used by Avis by the former Avis employees is certainly a breach of the implied covenant of good faith and fair dealing contained within that contract. Defendants' transparent attempts to circumvent the intent of

---

[233] **Exhibit 75**, Summary – Alaska Royalties & Revenue, Avis and Budget. *See also* Excerpt of Kenneth Hill Deposition pp. 94-96, 122-125 (explaining revenue charts for Avis and Budget locations in Alaska).
[234] *In Re Vylene Industries, Inc.*, 90 F.3d 1472 (9th Cir. 1996) (en banc).
[235] *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704 (7th Cir. 1979).
[236] Exhibit 7, 1965 Exclusive License Agreement ¶ 3.10;
[237] Exhibit 1, Kramer Memorandum at 2-3 (*see* cases cited therein).
[238] Exhibit 7, 1965 Exclusive License Agreement ¶ 3.10.
[239] Exhibit 7, 1965 Exclusive License Agreement ¶ 3.10.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV [JKS]          Page 47
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 50 of 53

the ASA by forming CCRG should not be allowed. The ASA requires that Budget and Avis be kept wholly separate and independent and that Avis not be used to help or resurrect Budget. Defendants' combining of the brands under CCRG and the same System is in bad faith given the clear intent of the ASA.

Salerno was involved in the negotiation of the ASA.[240] Salerno testified that the Avis personnel are prohibited by contract from running another brand.[241] Salerno explained that if he was still an Avis employee his conduct would clearly be a breach of the ASA,[242] and if the former Avis employees were still Avis employees this would be a breach of contract, too.[243] However, in the ultimate elevation of form over substance, Salerno contends that because his employees and he have become CCRG employees, they are not in breach.[244] In other words, because Avis' employees are now called CCRG employees, there is no breach by engaging in conduct which the contracts prohibit.[245] Defendants' position is silly and in bad faith.

The Defendants admit in their corporate data sheet reports, "Upon purchase of Budget Rent A Car System, the settlement agreement does not permit an overlap in officers between Avis and Budget."[246] Cherokee Acquisition Corporation (a/k/a Budget Rent A Car System, Inc.), however, was formed by Salerno, Avis' president, and staffed with Avis officers.[247] Even before the sham of calling Avis' officers, CCRG officers, Avis and Budget had joint corporate officers in violation of the ASA.

---

[240] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 14-15.
[241] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 226-231, 233.
[242] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 228-231.
[243] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 236-237; F. Robert Salerno, unbeknownst to him, is the president of Avis, so even under his view of the agreement he is in breach. See Exhibit 55, www.avis.com Avis Executive Bios page showing Salerno is again Avis' president.
[244] Excerpt of F. Robert Salerno Deposition dated March 11, 2004 at pp. 228-237; Exhibit 63, Defendants' Position Statement dated May 10, 2005.
[245] *Id.*
[246] Exhibit 73, Corporate Data Sheet Report, as of May 31, 2005, for Avis Rent A Car System, Inc. at p. 1.
[247] *See* Exhibit 74, Action by Written Consent of the Board of Directors of Cherokee Acquisition Corporation dated July 26, 2002.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 48
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 51 of 53

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

BANKSTON GRONNING O'HARA, P.C.

Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

The ASA specifically provides if Cendant purchased an additional car rental company such as Budget:

1. That the management and operations of Budget would be kept wholly separate and independent from the management and operations of Avis.[248]

2. That the sales, marketing, reservation activities, operations and personnel of Avis would be maintained separate and apart from those of Budget.[249]

3. That whomever did the sales, marketing and reservations for Avis would not do that for Budget.[250]

4. That whomever did the sales and marketing would use their best efforts to promote Avis and not a competing brand.[251]

5. That Avis and the Avis Licensees would not be required or directed to undertake any disadvantageous act for the benefit of Budget.[252]

6. That Avis would not refer any customers to Budget; and[253]

7. That Avis would not share any business information or data relating to the licensee's business to benefit Budget.

Thus, the intent of the ASA was that Avis would be maintained as a wholly separate and independent car rental company and not have the very same people operating, managing and selling Avis as Budget. Defendants' actions are contrary to this intent and are breach of the implied covenant of good faith and fair dealing as a matter of law.

---

[248] Exhibit 4, Agency Settlement Agreement, at p. 5, ¶ IV.B.
[249] Exhibit 4, Agency Settlement Agreement, at p. 5, ¶ IV.C.1.
[250] Exhibit 4, Agency Settlement Agreement, at p. 5,¶ IV.C.2.
[251] Exhibit 4, Agency Settlement Agreement, at p. 5,¶ IV.C.2.
[252] Exhibit 4, Agency Settlement Agreement, at p. 5,¶ IV.C.3.
[253] Exhibit 4, Agency Settlement Agreement, at p. 5,¶ IV.C.4.

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]          Page 49
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 52 of 53

DATED this 19th day of June, 2006.

BANKSTON GRONNING O'HARA, PC
Attorneys for Plaintiff Alaska Rent-A-Car, Inc.
By:      s/Jon T. Givens
             601 W. 5th Avenue, Suite 900
             Anchorage, Alaska 99501
             Phone: (907) 276-1711
             Fax: (907) 279-5358
             E-mail: cheaphey@bankston.to
             Alaska Bar No. 9011073

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2006 a copy of foregoing Plaintiff's Memorandum
In Support of Motion for Partial Summary Judgment on Breach of The Implied Covenant of
Good Faith and Fair Dealing was served electronically on Diane F. Vallentine and on

Diane F. Vallentine
Jermain Dunnagan and Owens P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

John F. Dienelt
DLA Piper Rudnick Gary Cary US LLP
1200 Nineteenth Street NW
Washington, DC 20036-2430

Barry M. Heller
DLA Piper Rudnick Gary Cary US LLP
1775 Wiehle Avenue, Suite 400
Reston, VA 20190-5159

by regular U.S. Mail

s/Jon T. Givens

BANKSTON GRONNING O'HARA, P.C.
Attorneys at Law
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
www.bankston.to

Plaintiff's Motion and Memorandum in Support of Motion For Partial Summary Judgment
on Breach of the Implied Covenant of Good Faith And Fair Dealing
*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.,* Case No. A03-029 CV [JKS]                    Page 50
A3388/05/SummaryJudgment/MEMimpliedCovFINAL1

Case 3:03-cv-00029-TMB   Document 172   Filed 06/19/06   Page 53 of 53