# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into between and among HFS Car Rental, Inc., a Delaware corporation, with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey 07054, Avis Rent A Car, Inc. and Avis Rent A Car System, Inc., both Delaware corporations with their principal places of business at 900 Old Country Road, Garden City, New York 11530, the Licensees (as hereinafter defined), and, for purposes stated in Sections IV. and V. only, HFS, Inc., a Delaware corporation, with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey 07054 (collectively, the "Parties").

## DEFINITIONS

For purposes of this Agreement, including all Recitals, the following definitions will apply:

1. "Acquire," with respect to an "Additional Company," means to own, manage, establish, operate, act in concert or participation with, franchise or license.

2. "Additional Company" means each and every company, partnership, proprietorship or any other business engaged (including as licensee or franchisee) in a car rental business other than the Car Rental Business, together with each of its past, present and future Affiliates, and all of their respective successors and assigns, excluding the Avis Parties.

3. "Affiliate" of any specified person, company, division, partnership, proprietorship or other entity (collectively "Person") means any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person. As used herein, "control" is defined as the possession, direct or indirect, or the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

4. "ARAC" means Avis Rent A Car, Inc., formerly known as Rental Car System Holdings, Inc.

5. "ARACS" means Avis Rent A Car System, Inc.

6. "Avis Parties" means Holdings, ARAC and ARACS, together with all of their past, present and future subsidiaries (both direct and indirect), and all of their respective successors and assigns.

7. "Avis System" means the system used in and for the creation, management, promotion and operation of the Car Rental Business.

8. "Car Rental Business" means the business of renting passenger motor vehicles without drivers under the service mark and trade name "Avis".

9. "ELAs" means the Exclusive License Agreements between the Licensees and ARACS.

10. "Exclusive Territories" means the places and/or geographical areas granted to Licensees in their ELAs.

11. "Holdings" means HFS Car Rental Inc., formerly known as Avis, Inc.

12. "Licensee Car Rental Business" means the Car Rental Business as conducted by the Licensees, as opposed to the Avis Parties.

13. "Licensees" means the undersigned Avis System licensees that execute this Agreement, together with all of their past, present and future Affiliates, and all of their respective successors and assigns.

14. "Location" means any place, site or facility from which passenger motor vehicles without drivers can be rented from an Additional Company.

15. "Parent" means HFS, Inc., together with each of its past, present and future Affiliates, and all of their respective successors and assigns, but does not include the Avis Parties.

16. "Yield Management Technology" refers to the Avis Parties' decision support system, designed to predict and control product demand and availability.

## RECITALS

WHEREAS, the Avis Parties (or any one or more of them) are and have at all times been the owners of the Avis System; and

WHEREAS, pursuant to the ELAs, ARACS granted each of the Licensees the right to conduct a Licensee Car Rental Business within one or more Exclusive Territories and to use and be part of the Avis System in connection therewith; and

WHEREAS, in 1995, the Avis Parties acquired the assets and business of Agency Rent A Car, Inc. ("Agency Business"), and thereafter began to operate the Agency Business; and

WHEREAS, the Avis Parties and Licensees disagreed as to the Avis Parties' rights to own and operate the Agency Business both generally and within the Exclusive Territories (the "Agency Dispute"), and lawsuits concerning the Agency Dispute were

SETTLEMENT AGREEMENT AND RELEASE    2

Exhibit _4_

A 0049

Case 3:03-cv-00029-TMB   Document 172-13   Filed 06/19/06   Page 2 of 16

commenced by the Avis Parties in the United States District Court for the Eastern District of New York ("New York Action") and in the United States District Court for the Northern District of Texas ("Avis Texas Action"), and by certain of the Licensees in Texas State Court, which action was removed to the United States District Court for the Northern District of Texas ("Licensee Texas Action") ; and

WHEREAS, by stipulations and orders dated May 27, 1997 and September 8, 1997, the parties to the Licensee Texas Action and Avis Texas Action, respectively, agreed to the transfer of the such actions to New York for consolidation with the New York Action; and

WHEREAS, the Avis Parties and Licensees desire to settle fully and finally, various claims, charges or complaints between and among them, including those alleged in the New York Action, the Avis Texas Action and the Licensee Texas Action.

## AGREEMENT

NOW, THEREFORE, pursuant to the terms of this Agreement, and for good and valuable consideration, the Avis Parties and Licensees have determined to settle and dismiss all litigation respecting the Agency Dispute, and the Avis Parties, Licensees and the Parent have determined to resolve and/or address certain other matters, including the possible future acquisition of an Additional Company by the Parent, as follows:

## I. CONFIRMATION OF SCOPE OF ELAs AND NON-COMPETITION WITHIN THE EXCLUSIVE TERRITORIES

A. The Avis Parties acknowledge and confirm that the scope of the ELAs includes, within the terms of the ELAs and without limitation, any and all past, present and/or future segments, tiers, niches and/or any other term that may be used to describe subdivisions, parts or portions (collectively "Segments") of the market for the rental of passenger cars without drivers. Each of the Licensees have and shall continue to have, subject to the provisions of the ELAs, the unlimited right to engage in the Licensee Car Rental Business in any and all present and future Segments of the car rental market, within their respective Exclusive Territories.

B. The Avis Parties agree that they cannot Acquire an Additional Company or any Location thereof within any of the Exclusive Territories or otherwise compete with any of the Licensees within their Exclusive Territories. The preceding sentence does not prohibit the Avis Parties' sale or lease of Yield Management Technology to an Additional Company so long as the use of such technology remains independent, separate and apart from data and/or services utilized in the Car Rental Business.

## II. ATTORNEYS' FEES AND DISMISSAL

A. Within five (5) business days of the execution of this Agreement by all Parties hereto, the parties to the New York Action shall execute and cause to be filed a joint motion ("Motion") for an order dismissing the New York Action in its entirety with prejudice, on a non-class basis, substantially in the form of Exhibit 1 hereto ("Dismissal Order"). Any notice sent to absent class members in connection with the Motion and/or Dismissal Order will make reference to such absent class members' rights to join this Agreement, as provided for in Section V.A. below.

B. Within five (5) business days after the Dismissal Order becomes final, binding and non-appealable, the Avis Parties shall reimburse the Licensees in the amount of $375,000.00 for attorneys' fees incurred in connection with the Agency Dispute ("Fee Payment").

C. The Fee Payment shall be made by wire transfer to the following address and account:

> Regions Bank
> P.O. Box 10247
> Birmingham, AL 35202
> Name of Account: Avis Licensees Litigation Trust
>         (Legal Advisory Fund)
> ABA No.: 062005690
> Account No.: 0300904481

D. The parties to the New York Action shall fully cooperate and use their best efforts to obtain the Dismissal Order.

## III. RELEASES

A. Simultaneously with the receipt of the Fee Payment in the manner specified in Section II.C. above, the Licensees release, acquit and forever discharge the Avis Parties from any and all claims, demands, causes of action, liabilities and obligations of any kind, whether known or unknown, which are based solely on the Avis Parties' acquisition and operation of the Agency Business.

B. Simultaneously with the receipt of the Fee Payment in the manner specified in Section II.C. above, the Avis Parties release, acquit and forever discharge the Licensees from any and all claims, demands, causes of action, liabilities and obligations of any kind, whether known or unknown, which are based solely on the Avis Parties' acquisition and operation of the Agency Business.

SETTLEMENT AGREEMENT AND RELEASE   4                                              A 0051

Exhibit 4

Case 3:03-cv-00029-TMB   Document 172-15   Filed 06/19/06   Page 4 of 16

## IV. PROVISIONS RESPECTING THE PARENT

A. The Parent hereby acknowledges, ratifies and adopts the provisions of Section I.A. above.

B. The Licensees acknowledge that the Parent has the right to Acquire an Additional Company so long as the management and operations of the Additional Company are wholly separate and independent from the management and operations of the Avis Parties, the Car Rental Business and the Licensee Car Rental Business. The election or appointment of an individual to serve as a director of the Avis Parties and an Additional Company shall not be deemed to contravene the separateness and independence of the Additional Company so long as such individual is not an officer, consultant or employee of the Additional Company or any of the Avis Parties. The provision of similar or like services to the Avis Parties and an Additional Company shall not be deemed to contravene the separateness and independence of the Additional Company so long as such services are equivalent and independent of the Avis Parties' or the Additional Company's participation.

C. Should the Parent Acquire an Additional Company, the Parent and the Avis Parties agree that:

1. the sales, marketing and reservation activities, operations and personnel of the Avis Parties will function and be maintained separate and apart from those of the Additional Company;

2. the sales, marketing and reservation activities, operations and personnel of and for the Avis System will not be utilized to market, provide and/or make available car rental services other than those provided within the Avis System and such sales, marketing and reservation activities, operations and personnel will exercise their best efforts to promote the Avis System;

3. neither the Avis Parties and the Licensees on the one hand, nor the Additional Company on the other hand, will be required or directed to undertake any act or omission by which they/it will be disadvantaged for the benefit of the others;

4. the Avis Parties will not refer customers to any Additional Company; and

5. the Avis Parties and the Parent will not share, disclose or otherwise use any business information and data whatsoever belonging, referring or relating to any of the Licensees for the benefit of any Additional Company without the prior express permission of the Licensee(s) in question.

D. Should the Parent Acquire an Additional Company that ceases at any time to be separate or independent from the Avis Parties, the Car Rental Business and/or the Licensee Car Rental Business, then in addition to the provisions and obligations set forth in Section IV.C. above, the Parent and the Avis Parties further agree that:

1. The Additional Company may not introduce any new competitive threats into the marketplace within an Exclusive Territory after the date of this Agreement. For the purposes of this Agreement, the term "competitive threat" means the opening of any new Location of the Additional Company in any of the Exclusive Territories where the Additional Company does not already have a Location and/or the addition of any new Locations in an Exclusive Territory in which the Additional Company already has existing Locations. This paragraph does not prohibit or otherwise limit the rights of an existing franchisee/licensee of the Additional Company from exercising any valid, pre-existing rights to expand and/or open new Locations; however, if the franchisee/license does not already possess such rights, the Additional Company may not grant new or additional rights to expand, open new Locations and/or otherwise create a competitive threat.

2. If the Additional Company already has one or more Locations within any of the Exclusive Territories (a "Conflicting Location"), the Parent agrees that with respect to every Conflicting Location which is not operated, owned or managed by a franchisee/licensee of the Additional Company or in respect of which a franchisee/licensee of the Additional Company does not have a contractual right to operate, own or manage such location, the Licensee in whose Exclusive Territory the Conflicting Location exists ("Affected Licensee") will be presented a right of first refusal with regard to a franchise, license or right to operate (collectively "Franchise") such Conflicting Location on terms at least as favorable as the terms upon which such Franchise would be made available to others. [ Upon the expiration of any term of a Franchise granted pursuant to this paragraph, the Affected Licensee will have the right to renew the Franchise in question on terms at least as favorable as the terms upon which such Franchise would be made available to others for so long as an Affected Licensee maintains a valid ELA.

3. With regard to each Conflicting Location as to which an Affected Licensee either cannot be offered a right of first refusal under Section IV.D.2. above with regard to a Franchise, or if the Affected Licensee chooses not to exercise such right, the Parent shall offer and the Affected Licensee can accept or decline:

a. an arrangement whereby the Affected Licensee will have the opportunity to participate in any cost savings with the Additional Company that may be achieved through a sharing or consolidation of resources, including vehicle fleet, on mutually agreeable terms and conditions to the extent such an arrangement is commercially feasible; or

        b.     a one-time, lump sum payment to the Affected Licensee, in a mutually acceptable amount to be negotiated and determined in good faith, in exchange for a release of any claims that may exist as a result of the operation of the Conflicting Location; or

        c.     any mutually acceptable combination of (a) and (b) above.

      4.     If a Conflicting Location operated, owned or managed by a franchisee/licensee of an Additional Company is subsequently acquired by the Parent, the provisions of Section IV.D.2. above shall apply, unless the presence of such Conflicting Location previously has been resolved by litigation or pursuant to Section IV.D.3.

      5.     The Avis Parties hereby waive any rights, claims or assertions that the Acquisition of one or more Locations of any Additional Company by any of the Licensees, either from the Parent, the Additional Company or from the franchisee/licensee of the Additional Company, violates or conflicts with any provisions of or obligations under the ELAs and/or operates as a breach of the ELAs by the Licensee, and the Avis Parties are hereby deemed to consent to any such Acquisition.

      6.     Although this Section IV.D. contemplates possible situations in which an Additional Company has ceased to be separate or independent from the Avis Parties, the Car Rental Business and/or the Licensee Car Rental Business, it is not intended to and shall not be deemed to qualify or contradict any other provisions of this Agreement.

    E.     All Parties agree to seek an amicable resolution in the event of any dispute caused by the Parent Acquiring an Additional Company (a "Future Dispute"). To achieve this goal, the Parties agree that, should such circumstances arise, they will discuss the Future Dispute in a good faith attempt to resolve it prior to the commencement of any legal action.

    F.     Should the steps and limitations provided for in Section IV.D. of this Agreement fail to resolve a Future Dispute, the Parties hereto reserve all rights to pursue their claims, defenses and assertions through litigation at any time, subject always to Sections I. and IV. (inclusive of all applicable definitions and provisions used and/or incorporated therein), which shall remain binding and conclusive in the event of any Future Dispute. The Avis Parties and the Parent understand and confirm that in connection with any such Future Dispute that they shall not be permitted to claim (and the judge, fact finder, mediator, arbitrator, or tribunal may not find) that the ELAs do not cover, apply to or encompass any and all alleged Segment(s) of the market for the rental of passenger cars without drivers.

V.  ADDITIONAL AGREEMENTS

A.      Although neither the Avis Parties nor the Licensees will seek class certification in connection with the New York Action, its dismissal, or this Agreement, all Avis System licensees/franchisees will be offered the opportunity to execute this Agreement as a Licensee. It is contemplated that such licensees/franchisees will be notified of such opportunity in connection with the Motion and Order. Such licensees will be deemed to have executed this Agreement upon the receipt by the Avis Parties and the Licensees of an executed Statement of Joinder substantially in the form of Exhibit 2 hereto. No licensee who fails to execute this Agreement as provided for herein can have any benefit of the provisions hereof, including without limitation Section IV, but the outcome of any dispute with a licensee who fails to execute this Agreement shall not alter the rights of the Parties as set forth in this Agreement.

B.      The Licensees have been advised that in connection with the initial public offering of stock in ARAC, the Parent and the Avis Parties plan to enter into various arrangements and transactions. The Parties hereto agree that the consummation of or failure to consummate any or all such contemplated arrangements or transactions shall not affect this Agreement in any way.

C.      All Parties agree that no inference may be drawn from this Agreement as to the existence or scope of the Parties' alleged rights beyond the express terms set forth herein, and that, with the exception of Sections I. and IV. above, nothing herein shall be deemed a waiver or admission as to any of the matters at issue in the Agency Dispute. Further, the provisions of Section IV.D. hereof do not and shall not be deemed to constitute or imply an agreement by the Licensees that Parent can acquire, own, manage, create and grant any licensees/franchisees a license to operate an Additional Company under any conditions, circumstances or arrangement other than as set forth in Section IV.B., and all claims and assertions as to the Parties' rights with respect to such other conditions, circumstances or arrangement are expressly preserved. Nothing set forth in the Agreement shall be construed as an admission or waiver by Parent of its alleged right to acquire an Additional Company under any circumstances, conditions or arrangements whatsoever.

D.      Sections IV.C.1. and IV.C.2. shall not prejudice the ability of the Parent to utilize consolidated or collocated reservation facilities to make reservations for both the Avis System and any Additional Company, so long as any reservation activities and operations employ separate personnel and telephone numbers for the respective activities and operations and no cross-selling occurs.

E.      The Parties shall not seek to challenge, avoid or set aside this Agreement or any one or more provisions hereof. However, if any provision of this Agreement is prohibited by law or otherwise determined to be illegal, invalid, or unenforceable by a court of competent jurisdiction, such provision shall not affect the validity of the

remaining provisions of this Agreement; instead, the Agreement shall be construed as if it did not contain the illegal, invalid or unenforceable provision(s), and the rights and obligations of the Parties shall be construed and enforced accordingly.

F. Waiver by any of the Parties of any term, provision or condition of this Agreement shall not be construed to be a waiver of any other term, provision or condition hereof, nor shall any such waiver be deemed a waiver of a subsequent breach of the same term, provision or condition.

G. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, trustees, receivers, heirs, executors, administrators and personal representatives.

H. All Parties hereto shall cooperate with each other to do any act or execute and deliver any further documentation deemed necessary to effectuate the terms and conditions of this Agreement.

I. This Agreement and all exhibits hereto constitute the entire understanding with respect to the settlement of the Agency Dispute by, between and among the Parties, superseding all negotiations, prior discussions, representations, promises and understandings, oral or written, expressed or implied, made prior to or contemporaneous with its execution.

J. In executing this Agreement, each Party confirms that it has not relied upon any representation, discussion, negotiation, promise or understanding, oral or written, expressed or implied, which is not specifically set forth in this Agreement.

K. Each Party hereto represents and warrants that all corporate action necessary for the execution, delivery and performance of this Agreement has been duly taken, and that this Agreement is a valid and legally binding obligation of it and is enforceable against it in accordance with the terms contained herein.

L. This Agreement may be executed and delivered in multiple counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and agreement.

M. The language contained in this Agreement, in all cases, shall be construed as a whole according to its fair meaning and not strictly for or against any of the Parties, in that this Agreement has been drafted by the mutual efforts of all Parties and their counsel.

N. This Agreement may be amended only by a written document duly executed by all Parties affected by such amendment or modification.

SETTLEMENT AGREEMENT AND RELEASE    9

A 0056

Exhibit 4

Page 9 of 16

Case 3:03-cv-00029-TMB   Document 172-15   Filed 06/19/06   Page 9 of 16

O. This Agreement shall be deemed to have been made and entered into on the 23rd day of September, 1997.

**HFS Car Rental, Inc.**

By:_____

Title:_____

**Avis Rent A Car System, Inc.**

By:_____

Title:_____

**Motorent, Inc.**

By:_____

Title:_____

**Kal-Co Rental & Leasing, Inc.**

By:_____

Title:_____

**Avis Rent A Car, Inc.**

By:_____

Title:_____

AS TO SECTIONS IV AND V ONLY

**HFS, Inc.**

By:_____

Title:_____

**General Car & Truck Leasing**

By:_____

Title:_____

**Shore Rentals, Inc.**

By:_____

Title:_____

SETTLEMENT AGREEMENT AND RELEASE   10

Exhibit 4  A 0057

Page 10 of 16

Case 3:03-cv-00029-TMB   Document 172-15   Filed 06/19/06   Page 10 of 16

Hayes Leasing Company, Inc.          Car & Truck Rentals, Inc.

By:_____           By: _*(signature)*_____

Title:_____          Title: _President_____


Coastal Bend Rent A Car, Inc.        Ness Rent A Car, Inc.

By:_____           By:_____

Title:_____          Title:_____


Checker Leasing, Inc.                Auto Rent, Inc.

By:_____           By:_____

Title:_____          Title:_____


Rent A Car Company, Inc.             Baker Car & Truck Rentals, Inc.

By:_____           By:_____

Title:_____          Title:_____

# Exhibit 1

Exhibit 4    A 0059
Page 12 of 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
AGENCY RENT A CAR SYSTEM, INC.,
AVIS, INC. and AVIS RENT A CAR SYSTEM, INC.,

                              Plaintiffs,

              -against-                            95 Civ. 3850 (DRH)

GRAND RENT A CAR CORP., HAYES LEASING
COMPANY, INC., SHORE RENTALS, INC.,
RENT-A-CAR CO., INC., CAR & TRUCK
RENTALS, INC., MOTORENT, INC., GENERAL
CAR AND TRUCK LEASING SYSTEM, INC.,        ORDER PURSUANT
KAL-CO RENTAL & LEASING, INC., NESS              TO FED. R. CIV.
RENTAL, INC., BAKER CAR AND TRUCK               PROC. 23(e)
RENTAL, INC., AUTO RENT, INC., CHECKER          PERMITTING
LEASING, INC. and COASTAL BEND RENT A          DISMISSAL OF
CAR, INC., individually and on behalf of all others     PUTATIVE CLASS
similarly situated,                                   ACTION

                              Defendants.
------------------------------------------------------------x

     WHEREAS, Plaintiffs Avis, Inc., Avis Rent A Car System, Inc. and Agency Rent A Car System, Inc. (collectively "Plaintiffs") commenced this suit (the "Action") as a putative class action against the 13 above-captioned Avis system licensees ("Defendants"), individually and on behalf of all other Avis system licensees;

     WHEREAS, Plaintiffs moved for class certification and Defendants opposed class certification;

     WHEREAS, due to the dismissal of Action in February 1996, Plaintiffs' motion for class certification was not decided, and said motion was not resubmitted following the subsequent reinstatement of the Action;

     WHEREAS, all claims by and against Defendant Grand Rent A Car Corp. have been separately resolved and dismissed;

     WHEREAS, Plaintiffs and the remaining Defendants, acting in their individual capacity only, have entered a settlement agreement made effective September 23, 1997 ("Settlement") and have agreed to dismiss all claims and counterclaims in this Action;

012599.0000 New York 30448 v02

Exhibit 4

Page 13 of 16

A 0060

WHEREAS, Plaintiffs and Defendants have submitted a copy of the Settlement to the Court and jointly moved for an order permitting the dismissal of the Action;

NOW, THEREFORE, upon the Affidavit of _____, sworn to September __, 1997, the Settlement and all prior proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Action is dismissed, with prejudice and without costs to any party.

2. Pursuant to Rule 23(e), Plaintiffs shall send a notice to all Avis system licensees other than Defendants by regular mail at their present business address, in a form to be approved by this Court, advising them that this Action has been dismissed with prejudice and without costs to any party, and enclosing a copy of this order.

3. In addition, pursuant to the terms of the Settlement, Plaintiffs shall send with the notice a copy of the Settlement and a pre-printed form allowing all such other Licensees to join the Settlement by executing and delivering the form.

Dated: _____, 1997.
Hauppauge, New York

_____
U.S.D.J.

# Exhibit 2

A 0062

Exhibit 4

Page 15 of 66

# STATEMENT OF JOINDER IN SETTLEMENT

_____, an Avis System Licensee with its
[name of licensee]

mailing address at _____ hereafter "Joining Licensee"), hereby agrees to be bound by the terms and provisions of that certain Settlement Agreement and Release, between and among HFS Car Rental, Inc., Avis Rent A Car, Inc., Avis Rent A Car System, Inc., HFS, Inc. and certain other Avis System Licensees ("Agreement"), a copy of which has been provided to Joining Licensee under cover of letter dated 2-11-98 Joining Licensee understands and agrees that (a) it will be entitled to all rights, benefits and other favorable provisions contained in the Agreement and (b) it will be bound by all duties, obligations, releases and provisions contained in the Agreement. Joining Licensee expressly affirms all Licensee representations in the Agreement, and further represents that it has reviewed the Agreement and has had the opportunity to consult with counsel of its choosing before executing this statement.

By: _____

Title: _____

Date: _____

To be effective, an original, signed statement must be received by the following:

(on behalf of the Avis Parties)

Robert Salerno
President
Avis Rent A Car, Inc.
900 Old Country Road
Garden City, New York 11530

with a copy to
Thomas Finn,
~~Jack Carley,~~ Esq.
Avis Rent A Car, Inc.
900 Old Country Road
Garden City, New York 11530

(on behalf of the Licensees)

Robert W. Klyce
President
Car & Truck Rentals, Inc.
5500 Airline Drive
Birmingham, Alabama 35212

with a copy to

David R. McAtee, Esq.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618

Exhibit 4

Page 16 of 16

A 0063