John F. Dienelt, Esq.
Barry M. Heller, Esq.
William P. Donovan, Jr., Esq.
Scott McIntosh, Esq.
Charley C. Sung, Esq.
DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW
Washington, D.C. 20036-2412
(202) 861-3880 (telephone)
(202) 223-2085 (fax)

Howard S. Trickey, Esq.
Diane F. Vallentine, Esq.
Matthew Singer, Esq.
Jermain, Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844 (telephone)
(907) 563-7322 (fax)

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
AT ANCHORAGE

| | | |
|---|---|---|
| ALASKA RENT-A-CAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. A03-029 CV [TMB] |
| | ) | |
| CENDANT CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, ALTERNATIVELY, FOR AN ORDER LIMITING THE ISSUES FOR TRIAL**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE CASE ........................................................................... 4

STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE ...................... 11

I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE LICENSE AGREEMENT (COUNT I) ............................. 13

    A. SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS, OTHER THAN AVIS, BECAUSE RAC AND AVIS ARE THE ONLY PARTIES TO THE LICENSE AGREEMENT ......................................................................................... 13

    B. AVIS IS ENTITLED TO SUMMARY JUDGMENT ........................................ 13

        1. The Actions that Allegedly Were Not Taken By Avis ................................ 13

        2. The Actions Alleged Do Not Constitute Breaches Of The License Agreement ................................................................................. 14

II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OR LIMITATION OF THE ISSUES FOR TRIAL ON THE CLAIM FOR BREACH OF THE AGENCY SETTLEMENT AGREEMENT (COUNT II) ........................... 16

    A. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE RAC IS NOT A PARTY TO THE AGENCY SETTLEMENT AGREEMENT ............................................ 16

    B. THE COURT, ALTERNATIVELY, SHOULD NARROW THE ISSUES FOR TRIAL .......... 18

        1. Cendant Has The Right To Acquire An Additional Rental Car Company 18

        2. RAC's Remedies Are Limited By The Terms Of The Agency Settlement Agreement ................................................................................. 21

III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III) ........................................................................................... 24

IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF IMPLIED COVENANT NOT TO HINDER OR PREVENT PERFORMANCE (COUNT IV) ...................................................................... 25

V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE OTHER CONTRACT CLAIMS BECAUSE RAC IS NOT A THIRD-PARTY BENEFICIARY OF THE AGREEMENTS ...................................................................... 26

    A. THE MASTER LICENSE AGREEMENT ................................................... 27

    B. THE MASTER MOTOR VEHICLE OPERATING LEASE AGREEMENT .......... 28

i

**VI.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ANTITRUST CLAIM (COUNT X)** ...................................................... **29**

    A.  DEFENDANTS CANNOT AGREE WITH ONE ANOTHER FOR ANTITRUST PURPOSES . 29

    B.  RAC HAS NOT SUFFERED ANTITRUST INJURY ....................................... 31

**VII.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS UNDER THE UNFAIR TRADE PRACTICE ACT, AND FOR FRAUD/MISREPRESENTATION AND TORTIOUS INTERFERENCE (COUNTS VI, XI, XII)** ................................................................................... **33**

    A.  THE UNIFORM TRADE SECRETS ACT CLAIM PREEMPTS THE UNFAIR TRADE PRACTICE ACT AND TORT CLAIMS ........................................ 34

    B.  A BREACH OF CONTRACT IS NOT AN UNFAIR TRADE PRACTICE ........................ 36

    C.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON RAC'S FRAUD/MISREPRESENTATION CLAIM ........................................... 38

        1.  *Statements Regarding Trying To Be "Number One" And "Trying Harder" Are Not Sufficiently Definite To Form The Basis Of A Fraud Claim.* ...... 39

        2.  *The Statements At Issue Were Not Statements Of Fact Nor Were They False* ........................................................................... 41

        3.  *RAC Cannot Show Justifiable Reliance On The Alleged Fraudulent Statements* ................................................. 43

    D.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON RAC'S CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ......... 44

**VIII.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TRADE SECRETS ACT CLAIM (COUNT VII)** ........................................................ **46**

    A.  AVIS CANNOT MISAPPROPRIATE ITS OWN SECRET ................................ 47

    B.  THE "AVIS SYSTEM" IS NOT A TRADE SECRET ..................................... 47

# INTRODUCTION

Defendants have moved for summary judgment on all substantive counts of the First Amended Complaint of Plaintiff Alaska Rent A Car, Inc. ("RAC"):

- Count I (Breach of License Agreement);

- Count II (Breach of Contract Settlement Agreement);

- Count III (Breach of Covenant of Good Faith and Fair Dealing);

- Count IV (Breach of Implied Covenant Not To Hinder or Prevent Performance);

- Count VI (Unfair Trade Practices Act);

- Count VII (Trade Secrets Act);

- Count IX (Third-Party Beneficiary);

- Count X (Antitrust);

- Count XI (Fraud/Misrepresentation); and

- Count XII (Intentional Interference with Prospective Economic Advantage).[1]

There is no genuine dispute as to the few facts material to Defendants' arguments and, based on those facts, Defendants are entitled to a judgment as a matter of law.[2]

---

[1]    Defendants are not seeking summary judgment on Count V (Piercing Corporate Veil) or Count VIII (Permanent Injunctive Relief) because neither states a separate cause of action. However, both counts should be dismissed on an award of summary judgment as to the other counts. To sustain its claims, RAC must prove them against each Defendant. While Defendants refer to themselves collectively in this memorandum for convenience, they reject any notion that RAC can impute the conduct of one Defendant to the others. In the event that any of RAC's claims survives this motion, Defendants may seek to file a motion to preclude claims against certain of them.

[2]    On the contract claims alleged in Counts I and II, there are threshold issues, as to which summary judgment for Defendants is proper. However, on RAC's underlying claims, there are numerous genuine issues of material fact that would preclude summary judgment. Even in that circumstance, however, the Court should limit the issues for trial and Defendants have moved, alternatively, for an order to that effect.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 1 of 54

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 4 of 54

This case is about the acquisition of the Budget rental car business by Cendant Corporation ("Cendant") in November 2002 and the subsequent operation of that business. Defendant Budget Rent A Car System, Inc. ("Budget") is a subsidiary of Cendant Car Rental Group, Inc. ("CCRG"), which is a subsidiary of Cendant. Avis Rent A Car System, Inc. ("Avis") also is a subsidiary of CCRG.[3] Avis and Budget both have company owned and operated, as well as franchised, rental car outlets. RAC is an Avis franchisee. There are also Budget franchisees in Alaska. There are no company-owned Avis or Budget outlets in Alaska.

RAC claims, in essence, that the acquisition and subsequent operation of Budget is a breach of contract. Specifically, RAC claims that the alleged conduct breaches its License Agreement with Avis and a settlement agreement reached in other litigation, the Agency Settlement Agreement, to which RAC was not a party, but which it purports to have joined after the settlement was reached.

Cendant has the unquestionable right to acquire an additional rental car brand (or brands). Indeed, that right was expressly confirmed in the Agency Settlement Agreement. Yet, the underlying premise of all the claims in RAC's complaint is that Cendant could not lawfully acquire Budget. RAC is simply wrong.

Cendant similarly has the right to seek to maximize the profitability of Avis and Budget. Thus, Cendant established CCRG to manage both brands, and CCRG combined certain "back office" functions of Avis and Budget within CCRG to achieve cost savings and other synergies. However, Defendants have maintained Avis and Budget in all respects as separate and distinct brands in their "customer-facing" activities. They have complied with the Agency Settlement

---

[3]     CCRG recently became Avis Budget Car Rental, LLC. Avis recently became Avis Rent A Car System, LLC.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 2 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 5 of 54

Agreement while pursuing a legitimate, sensible business strategy, contrary to RAC's claims that Defendants have breached that agreement by not maintaining a complete separation of Avis and Budget.

Since the acquisition of Budget, Defendants have maintained and strengthened Avis. Its revenues have increased and it continues to have one of the best recognized and strongest brands in the world, with a well-deserved reputation for world-class service. Defendants have not, as RAC alleges, breached its License Agreement by "giving" elements of the "Avis system" to Budget. RAC continues to have rights, as set forth in its License Agreement, to use the Avis system in Alaska. What is truly unique about the Avis system is the brand, including its trademarks and its separate identity. There has been no "giving" of the brand to Budget, which has retained and will retain its own valuable brand and identity. Avis alone, for example, may use the famous "We Try Harder" motto.

As established below, Defendants are entitled to summary judgment on each of RAC's claims.

- Count I (License Agreement) as to Defendants, other than Avis, because none of them is a party to the agreement, and as to Avis, because the acts alleged to be a violation of the agreement were not taken by Avis and would, in any event, not have been a violation of the agreement.

- Count II (Agency Settlement Agreement) because RAC's effort to join in that settlement was ineffective. Alternatively, if RAC is permitted to proceed to trial, the issues should be narrowed to preclude RAC from asserting that Cendant could not purchase Budget and to limit RAC's remedies to those allowed by the Agency Settlement Agreement.

- Counts III and IV (implied contract covenants) because they have asserted this claim against certain Defendants not party to the agreements and the implied covenant cannot override the express terms of the agreements or impose obligations beyond the reasonable expectations arising out of the express terms.

- Count VI (Unfair Trade Practices Act) because the claim is statutorily pre-empted by RAC's claim of violation of the Trade Secrets Act (Count VII) and, in any event, is no more than a restatement of RAC's contract claims.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 3 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 6 of 54

- Count VII (Trade Secrets Act) because Defendants cannot misappropriate their own trade secret and the Avis system, as alleged, is indisputably not a trade secret.

- Count IX (other contracts) because RAC is not a party to, or a third-party beneficiary of, the contracts.

- Count X (federal antitrust laws) because Defendants, as affiliates of one another, may not be held liable for the conduct alleged and RAC, in any event, has not established, and cannot establish, that is has suffered any "antitrust injury."

- Counts XI and XII (fraud/misrepresentation, intentional interference with prospective economic advantage) because these claims are pre-empted by the Trade Secrets Act claim, improperly seek to convert allegations of breach of contract into other causes of action, and RAC has not established, and cannot establish, the elements of the claims.

Although there are few undisputed material facts that bear on Defendants' motion, it is important to place the facts, and their arguments, in the context of the factual contentions regarding the underlying conduct at issue. Accordingly, Defendants include below a Statement of Case before they set forth their Statement of Material Facts Not In Dispute.

## STATEMENT OF THE CASE

### *The Agency Settlement Agreement*

In the mid-1990s, Avis acquired Agency Rent-A-Car. Certain franchisees (not including RAC) sued, contending the acquisition violated their license agreements. The case was settled. When the case was filed, Cendant had no relationship to Avis. Cendant acquired Avis before the settlement. Cendant owns multiple brands in the hotel and real estate fields. Cendant insisted that the settlement agreement confirm its right to acquire rental car companies in addition to Avis. Thus, Cendant's right in the future to own and manage additional rental car companies was a cornerstone of the agreement. (*See* Declaration of F. Robert Salerno, attached as Exhibit 1 ("Salerno Dec."), ¶ 3-4.)

A comprehensive structure was developed in the Agency Settlement Agreement to accommodate the interests of Cendant and the Avis franchisees. The Agreement provides that:

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 4 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 7 of 54

- Cendant may buy another rental car company.

- If Cendant buys another brand, it may keep the two companies separate without any obligation to Avis franchisees

  ➢ More precisely, it may keep the "management and operations" of the new company "wholly separate and independent" from the management and operations of Avis

  ➢ *But* may provide "similar or like services" to the two brands so long as the services are "equivalent and independent"

  ➢ *Except* that "sales, marketing and reservation activities operations and personnel" of Avis will "function and be maintained apart from," and Avis will not provide "car rental services" to, the acquired company.

- If Cendant does not keep the companies "separate and independent," then it must offer the franchise of the newly acquired company in the exclusive territory of an Avis franchisee to the Avis franchisee if it can do so (when there is an existing company-owned or no rental car business of the newly acquired brand in that territory).

- If Cendant is not able to offer the franchise (because there is an existing franchisee in the territory) or the Avis franchisee declines the offer, then there must be a good faith effort to negotiate a "one-time, lump sum payment… in exchange for release of any claims that may exist as a result of the operation" of the franchisee of the acquired company in competition with the Avis franchisee.

(*See* Agency Settlement Agreement, attached as Exhibit 2; Salerno Dec., ¶ 5.)

### *Multiple-Brand Strategies*

Many companies have had more than one brand. Thus, for example, General Motors owns, among other brands, Buick, Cadillac, Chevrolet, Pontiac and Saab. Likewise, Coca-Cola has brands other than Coke and Diet Coke, including Canada Dry, Dasani, Powerade and Sprite. Today, several rental car companies have more than one brand, including the companies that own Alamo/National and Dollar/Thrifty.

Cendant has been a leader in multiple-brand strategy. Its lodging companies include Days Inns, Howard Johnson, Ramada, Super 8 and Travelodge. In the real estate field, Cendant

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 5 of 50

Case 3:03-cv-00029-TMB    Document 181    Filed 06/20/06    Page 8 of 54

companies include Century 21, Coldwell Banker, ERA and Sotheby's. It was thus no surprise that Cendant was interested in acquiring an additional rental car brand and that the Agency Settlement Agreement specifically confirmed Cendant's right to do so, irrespective of any claims by franchisees, pursuant to their license agreements or otherwise, that Cendant may only own the Avis brand.

*The Budget Acquisition*

Budget, like other companies in the travel industry, suffered from the general economic decline in 2001 and 2002, as well as the aftermath of the tragic events of September 11, 2001. (Excerpts from Deposition of Robert L. Aprati, attached as Exhibit 3 ("Aprati Dep."), at 8, 24-28; Excerpts from Deposition of Robert S. Kost, attached as Exhibit 4 ("Kost Dep."), at 10, 14-17.) Budget realized it was in financial difficulty and retained an investment banking company, Lazard Freres, to assist it in obtaining a buyer. (Aprati Dep. at 24-25.)

The effort to sell Budget took place in the context of a Chapter 11 bankruptcy proceeding. Four bids for Budget were initially submitted. (Kost Dep. at 197-203.) Cendant was one of four bidders.[4] Budget and Lazard continued to negotiate with the bidders in an attempt to increase the bids. Ultimately, Budget determined that Cendant's bid was the highest and best bid, and the company focused its attention on negotiating a definitive letter of intent with Cendant. (*Id.*) The sale of Budget to Cendant was ultimately approved by the bankruptcy court, as well as the federal government (with respect to antitrust issues) pursuant to the Hart-

---

[4] The bidders included MSD Capital, the investment vehicle for Michael Dell of Dell Computers, and Yucaipa, a venture capital firm with significant investments in various industries. (Kost Dep. at 198-99.)

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 6 of 50

Scott-Rodino Act, and took place in November 2002. (Declaration of Karen Sclafani, attached as Exhibit 5 ("Sclafani Dec."), ¶ 7.)[5]

<em>The Benefits of the Budget Acquisition</em>

To comply with the Agency Settlement Agreement, as well as to enhance efficient management of the Avis and Budget brands, Cendant formed CCRG. Certain aspects of management and operations of the two brands were consolidated within CCRG. A number of individuals now have responsibilities with respect to both brands. But, they are CCRG employees. Thus, the structural requirements of the Agency Settlement Agreement have been met because CCRG, not Avis, is providing services to Budget. (*See* Salerno Dec., ¶ 6.)

The two brands have been kept apart so far as the consumer is concerned, with separate and distinct employees at the field operation level. Although the Avis and Budget corporate sales forces have been combined within CCRG, that combination has been designed to ensure there is no incentive for a salesperson to attempt to shift existing accounts from one brand to another. To the extent that there have been any crossovers, they have on balance benefited Avis. More importantly, both brands have obtained new corporate business, at least in part because the CCRG sales representative can offer more "one-stop shopping" to corporate or similar accounts who choose, as most do now, to have more than one vendor on contract. In any event, there is no indication that the existence of a combined sales force has had any adverse effect on RAC. The combined strength of Avis and Budget also offers competitive opportunities to CCRG that were

---

[5]     The Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. 18a, requires certain mergers and acquisitions to be reported to the Department of Justice and the Federal Trade Commission. These enforcement agencies review the proposed transaction to determine whether it is likely to have anticompetitive effects. If either the agency determines that the transaction may be anticompetitive, it may seek a preliminary injunction. If the transaction is not likely to be anticompetitive, the parties are permitted to go forward.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 7 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 10 of 54

not previously available to either brand before, including opportunities to develop a successful insurance replacement business that Avis had not been able to develop by itself.  (*See* Salerno Dec., ¶ 8-9.)

Both brands have prospered.  Avis system revenue has increased from $2.6 billion in 2002 to $3.2 billion in 2005.  In the same period, total rental transactions increased from 15 to 17 million.  Revenue from corporate accounts, rose in that period from $821 million to $915 million.  Budget has likewise prospered.  Its revenue, from 2003 to 2005, increased from $1.8 billion to $2.1 billion, while its revenue from corporate accounts increased from $111 million to $117 million.  (Salerno Dec., ¶ 10.)

Nor has Avis' brand or reputation been diminished or diluted, in any way, as a result of the acquisition.  To the contrary, Avis has continued to be a market leader in its "premium" niche in the rental car industry.  It has been recognized for eight consecutive years, beginning in 1998 and continuing to the present, as the leader in customer loyalty among all rental car companies, by Brand Keys, a third-party consultant specializing in branding.  Avis also features many products and services unavailable from "value" brands and has continued to improve its reputation as a "premium" brand.  Avis has likewise continued to demonstrate its commitment to the broader community.  It has, for example been included in the annual listing of America's Top Corporations for Women's Business Enterprises by the Women's Business Enterprise National Council and has regularly been recognized as one of the foremost companies in America in advocating minority business ownership, recruiting and hiring seniors and assisting disabled persons.  (Salerno Dec., ¶ 16-18.)

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 8 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 11 of 54

RAC has not been injured by the other alleged conduct of Defendants.  To the extent RAC's revenue or profitability may have declined, it is the result of vigorous competition in the Alaska marketplace and RAC's own operational problems, rather than any conduct of Defendants.  In fact, RAC basically sought to eliminate competition from the Budget franchisee in its major Alaska markets by buying the Budget franchisee's business there.  Failing in those efforts, RAC apparently decided that its best business option was to sue Defendants, rather than attempt to compete more effectively in the rental car market in Alaska. [6]

In recent years, RAC's business has suffered from fundamentally poor decision-making. For example, as current or former employees of RAC testified:

- RAC has inexplicably pulled out of potentially lucrative markets in Alaska, such as Ketchikan and Seward (Excerpts from Deposition of Vonnie Vilandre, attached as Exhibit 8, at 94-95, 131-34.; excerpts from Deposition of Robert Rogers, attached as Exhibit 9, at 13-16);

- RAC has failed to implement even modest technological advances such as a computer network linking its offices, even though a modest capital investment would be required (Excerpts from Deposition of Elaine Scarborough, attached as Exhibit 10, at 37-41, 83-84);

- RAC has made virtually no effort to expand its business locally through high-growth areas such as insurance replacement rentals (Excerpts from Deposition of Rick Grimes, attached as Exhibit 11, ("Grimes Dep.") at 129-30; excerpts from Deposition of Pamela Carey, attached as Exhibit 12, at 24-26);

---

[6]     The principal of the Budget franchisee in Anchorage and several other cities, Tony Stanley, had been successful, before the Cendant acquisition, in winning the major State of Alaska account, which RAC previously had.  (Excerpts from Deposition of Robert Halcro, attached as Exhibit 6, at 5, 193-94; Excerpts from Deposition of Tony Stanley, attached as Exhibit 7, ("Stanley Dep.") at 17-18.)  Stanley had targeted RAC as his principal competitor.  (Stanley Dep. at 11-13, 15-17.)  When Robert Halcro, the principal owner of RAC, sought to buy Stanley's business, but was unwilling to pay Stanley the price he wanted, Halcro told Stanley that "it would be cheaper to sue Cendant than to buy me out."  *Id.* at 39, *see also id.* at 35-39.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 9 of 50

Case 3:03-cv-00029-TMB    Document 181    Filed 06/20/06    Page 12 of 54

- RAC has instituted misguided vehicle policies resulting in a shortage of critical parts needed to keep its vehicle fleet operative (Excerpts from Deposition of William Pendleton, attached as Exhibit 13, ("Pendleton Dep.") at 30-32 and 44-45);

- RAC's downtown location is located next to a "porn shop" and has experienced various infrastructure problems (everything from a leaking roof to repeated sewage spills due to unresolved plumbing leaks) which have had a negative impact on business (Excerpts from Deposition of Vanessa Jones, attached as Exhibit 14, at 63-70 and 72-73); and

- The owners of RAC have been abusive to long-time employees, resulting in internal criticism and employee departures (Pendleton Dep. at 14-26, Grimes Dep. at 31-42).

RAC apparently will argue, nonetheless, that the Budget acquisition has radically altered the competitive landscape in Alaska to its disadvantage. This is simply not true. The Avis and Budget operations in Alaska continue to be run by independent franchisees, just as they were before the acquisition. RAC appears to contend that, if Cendant had not acquired Budget, the brand would have ceased to exist; and that RAC would have obtained all or some portion of the Budget franchisees' market share. In reality, if Cendant had not acquired Budget, someone else -- recognizing the value of the brand -- would have done so. In any event, the independent Budget businesses in Alaska would not have closed.[7]  (Stanley Dep. at 175-76.)

---

[7] Cendant was entitled to buy any rental car company like Hertz, as to which there could be no suggestion that it would cease to exist. In those circumstances, a complaining franchisee would not be able to hypothesize damages based on an assumption that the newly acquired company, and its franchisees, would no longer exist. Instead, as should be true here, damages, if any, would have to be measured only as a result of any incremental adverse impact from the existing competitor that could be attributed to the acquisition, and not other factors, including competition and plaintiff's own management and operational deficiencies.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 10 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 13 of 54

## STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE

1.         RAC is a franchisee of Avis, pursuant to a License Agreement. (Exhibit 15)[8]

2.         Avis is the only defendant that is a party to the License Agreement. (*Id.*)

3.         Cendant acquired the assets of Budget through a subsidiary, in November 2002. The sale was approved by the U.S. Bankruptcy Court and was cleared for antitrust purposes by the federal government. (Sclafani Dec., ¶ 7.) Cendant's purpose in acquiring Budget was to capture greater market share and increase profitability, and was not motivated by spite or malice or an intent to devalue the Avis franchises. (Salerno Dep., ¶ 6.)

4.         CCRG is a subsidiary of Cendant. Avis and Budget are subsidiaries of CCRG. (Sclafani Dec., ¶ 2.)

5.         Avis does not manage or operate Budget. (Salerno, ¶ 7.) Avis does not own any car rental locations in Alaska. (*Id.*, ¶ 13.)

6.         From before November 2002 to present, all Avis locations in Alaska have been owned and operated by RAC and all Budget locations in Alaska have been owned and operated by Budget licensees who are not affiliated with Avis. (*Id.*, ¶ 14-15.)

7.         In 1997, Avis and certain franchisees, not including RAC, settled litigation involving Avis' acquisition of another rental car brand. The Court ordered that Avis licensees be permitted to join in the settlement. (*See* Exhibit 2)

---

[8]       RAC actually has four License Agreements, for different territories in Alaska and an amendment that applies to all of them. *See* First Amended Complaint, ¶ 78. These agreements are substantively the same. One of them, the first page of each of the others, and the amendment, are attached as Exhibit 15. Defendants generally refer herein to the agreements and amendment as RAC's License Agreement.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial         Page 11 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 14 of 54

8.      The Agency Settlement Agreement did not contain an express period of time within which licensees were required to accept the offer to join the Agency Settlement Agreement.  (*Id.*)

9.      RAC received a copy of the Agency Settlement Agreement and the Statement of Joinder in February 1998, under cover of a letter dated February 16, 1998.  (*See id.*)

10.     RAC signed the Statement of Joinder on July 24, 2001 and sent a cover letter dated July 24, 2001, which stated as follows (Exhibit 16 emphasis in original):

> It is our understanding that, except that its specific terms may clarify and provide for additional rights and obligations, the SETTLEMENT AGREEMENT AND RELEASE does not alter or amend our License Agreements with AVIS, INC. dated February 1, 1965 as amended by the January 15, 1976 agreements with AVIS, INC. and AVIS RENT A CAR SYSTEM, INC.

11.     RAC's License Agreement is a different form of agreement than the form of Avis license agreement referred to as the "Exclusive License Agreement."  (Sclafani Dec., ¶ 5, Exhibit C.)

12.     Cendant and Avis are parties to a Master License Agreement, dated July 30, 1997, RAC is not a party to this agreement.  (Sclafani Dec., ¶ 3 and Exhibit A.)

13.     Avis and certain related parties are parties to a Master Motor Vehicle Operating License Agreement, dated July 30, 1997.  RAC is not a party to this agreement.  (Sclafani Dec., ¶ 4 and Exhibit B.)

14.     All Defendants are affiliated as parents, subsidiaries or other affiliates of one another.  (Sclafani Dec., ¶ 2.)

15.     The "Avis System" is owned by Avis, not by RAC.   (Exhibit 15 (License Agreement), ¶ 2; Excerpt of Deposition of Mary Halcro, attached as Exhibit 17, at 4, 134.)

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 12 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 15 of 54

**ARGUMENT**

**I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE LICENSE AGREEMENT (COUNT I)**

Summary judgment should be granted to all Defendants, other than Avis, on Count I because none of those Defendants are parties to RAC's License Agreement. Avis is entitled to summary judgment on Count I because Avis has not breached the agreement.

**A.     Summary Judgment Should Be Granted To Defendants, Other Than Avis, Because RAC And Avis Are The Only Parties To The License Agreement**

It is black letter law that a claim for breach of an agreement does not lie against a non-party to the agreement.[9] Avis is the only Defendant that is a party to the License Agreement. Therefore, Count I must be dismissed as to all Defendants other than Avis.

**B.     Avis Is Entitled To Summary Judgment**

Avis is entitled to judgment as a matter of law on Count I on two separate bases: (1) the actions that allegedly breached the License Agreement were not taken by Avis; and (2) such actions, even if they had been taken by Avis, would not be a breach of the License Agreement.

**1.     <u>The Actions that Allegedly Were Not Taken By Avis</u>**

RAC enumerates three categories of activities that allegedly breached the License Agreement:

---

[9]      *See, e.g., Crabtree v. Tristar Automotive Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."). The License Agreement chooses New York law. (Exhibit 15, ¶15.) In diversity cases, federal courts apply the conflict-of-law principles of the forum state. *See. S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981). In Alaska, a court is generally bound to apply a contract's choice of law provision unless strong public policy requires the application of Alaska law. *See Long v. Holland America Line Westours, Inc.*, 26 P.3d 430 (2001). There being no so such policy invoked in this case, this Court is to enforce the parties choice of law and to apply New York law to disputes about the License Agreement.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 13 of 50

Case 3:03-cv-00029-TMB    Document 181    Filed 06/20/06    Page 16 of 54

(1)     The acquisition of Budget assets and the joint operations and management and reservation activities and other conduct of the Defendants constitute a breach of the contractual promises and obligations contained in the License Agreements and Amendment. (Amended Complaint, ¶ 79.)

(2)     In the alternative, the failure to provide the Budget brand to Alaska Rent A Car is a breach of the exclusive franchise.  (Amended Complaint, ¶ 79.)

(3)     The acquisition, operation, and support of a competing business in the exclusive territory of RAC constitutes a breach of contract. (Amended Complaint, ¶ 80.)

Cendant, not Avis, acquired the Budget assets.  Likewise, Avis does not manage, operate or conduct reservation activities on behalf of Budget.  Therefore, the activities alleged in the first category do not constitute a breach by Avis.  Avis does not own the Budget brand or any Budget facilities in Alaska.  Accordingly, Avis had no ability or obligation to provide RAC with a right to any Budget operations in Alaska.  Similarly, there can be no dispute that Avis has not acquired and is not operating or supporting a competing business in Alaska.   Thus, RAC has not enumerated a single provision of the License Agreement that has been breached by Avis.  *See Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119 (2d Cir. 2005) (dismissing breach of contract claim against Subaru of America (the party to the contract) because conduct at issue, sale of non-Subaru branded cars that were "rebadged" from Subaru cars, was done by Fuji, the parent of Subaru of America)

### 2.     The Actions Alleged Do Not Constitute Breaches Of The License Agreement

Even if the actions alleged by RAC had been taken by Avis, there would not be breaches of the License Agreement.  Section 3 of the License Agreements enumerates various obligations of RAC, including a prohibition on RAC from becoming "associated, directly or indirectly . . . with an international, national or regional vehicle rental system other than the Avis System or

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 14 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 17 of 54

with any other entity in competition with Avis in the vehicle rental business." License Agreement, Section 3.12. Similarly, Section 6.1 of the License Agreement provides that "Licensee further expressly agrees that it will not affiliate[,] attempt to affiliate or operate in any manner with or under <u>any other vehicle rental system name or identification</u>, until the termination date has been reached." License Agreement, Section 6.1 (emphasis added). Section 4 of the License Agreement sets forth Avis's obligations. Neither Section 4, nor any other provision of the License Agreement, prohibits Avis from owning or being associated with any other vehicle rental system. Where such a prohibition was included with respect to RAC, but not as to Avis, such difference in obligations should be presumed to be intentional. *See Subaru Distributors Corp. v. Subaru of America, Inc.*, 2004 WL 3220120 (S.D.N.Y. 2004), *affirmed*, 425 F.3d 119 (2d Cir. 2005) (no violation of territorial protection because distributorship agreement covered only "Subaru Vehicles" and Subaru vehicles "rebadged" as Saabs were not "Subaru Vehicles"). Therefore, even if Avis had acquired the Budget assets (which it did not), this would not have violated the License Agreement.

Similarly, even if Avis owned the Budget brand, no breach of the License Agreement arises from RAC's inability to operate under the Budget brand. RAC appears to contend that Section 1.2(b) of the Amendment would require Avis, if it also owned the Budget brand, to offer RAC the rights to operate under the Budget brand in Alaska. After Section 1.1(a) enumerates locations covered by the License Agreement and Section 1.1(b) enumerates locations added by the Amendment, Section 1.2(b) provides "Licensee the right and opportunity to first acquire such [Avis] license or operation" to be located "in any other city and area of Alaska." (*See* Exhibit 15.) Thus, Section 1.2(b) relates to the opening of new Avis locations in other cities or areas in Alaska (other than the cities and locations specifically enumerated in the License Agreement).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 15 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 18 of 54

This section does not require that RAC be offered the right to operate under any other brands that might be acquired by Avis. Indeed, as noted, Sections 3.12 and 6.1 of the License Agreement, prohibit RAC from also being a Budget licensee. [10]

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT OR LIMITATION OF THE ISSUES FOR TRIAL ON THE CLAIM FOR BREACH OF THE AGENCY SETTLEMENT AGREEMENT (COUNT II)

### A. Summary Judgment Should Be Granted Because RAC Is Not A Party To The Agency Settlement Agreement

In connection with the settlement of the Agency litigation, Avis licensees were given an opportunity to join the settlement agreement by executing a Statement of Joinder. RAC is not a party to the Agency Settlement Agreement because it did not unambiguously accept the offer but, instead, conditioned its purported acceptance on its understanding of the rights and obligations set forth in the agreement. RAC's purported acceptance, therefore, amounted to a rejection and counteroffer, which Defendants never accepted. Thus, RAC cannot establish a claim for breach of the Agency Settlement Agreement.

Because settlement agreements are contracts between the settling parties, they are construed according to ordinary contract law. [11] A valid acceptance thus must comply with the

---

[10]    To the extent RAC is considered to be a party to the Agency Settlement Agreement, discussed below, that agreement permits RAC, and other Avis franchisees, to operate Budget franchises, as well, and thus supersedes the License Agreement. In fact, 18 Avis franchisees now also operate Budget franchises (Salerno Dec., ¶ 12.) If applicable to RAC, moreover, the Agency Settlement Agreement also confirms beyond any doubt that Cendant had the right to buy Budget and that RAC's rights to the "Avis System" are tied to the use of the Avis service mark and trade name. *See* Exhibit 2, Definitions 7, 8.

[11]    *See Lyons v. Whitehead*, 291 A.D.2d 497, 499, 738 N.Y.S.2d 671, 673 (N.Y. App. Div. 2002).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                                    Page 16 of 50

Case 3:03-cv-00029-TMB    Document 181    Filed 06/20/06    Page 19 of 54

terms of the offer and must be "plain and free from ambiguity."[12]  If an acceptance is qualified

with a condition, it is equivalent to a rejection and counteroffer.[13]

RAC received the Agency Settlement Agreement, together with a Statement of Joinder in

Settlement, by cover of letter dated February 16, 1998.  RAC purported to join in the settlement

by executing the Statement of Joinder in Settlement and mailing it to Avis Rent A Car, Inc. with

a letter dated July 24, 2001, which states  (Exhibit 16, emphasis in original):

> It is our understanding that, except that its specific terms may clarify and
> provide for additional rights and obligations, the SETTLEMENT
> AGREEMENT AND RELEASE does not alter or amend our License
> Agreements with AVIS, INC. dated February 1, 1965 as amended by our
> January 15, 1976 agreements with AVIS, INC. and AVIS RENT A CAR
> SYSTEM, INC. [14]

Section V.J. of the Agency Settlement Agreement provides that "[i]n executing this Agreement,

each Party confirms that it has not relied upon any representation, discussion, negotiation,

promise or understanding, oral or written, expressed or implied, which is not specifically set

forth in this Agreement."  (Exhibit 2 at 9.)  Similarly, Paragraph V.N. of the Agreement provides

---

[12]      *Watts v. Thomas Carter & Sons, Inc.*, 207 A.D. 656, 659, 202 N.Y.S. 852, 854 (N.Y. App. Div. 1924).

[13]      *See Robison v. Sweeney*, 301 A.D.2d 815, 818, 753 N.Y.S.2d 583, 586 (N.Y. App. Div. 2003); *Lamanna v. Wing Yuen Realty, Inc.*, 283 A.D.2d 165, 165, 724 N.Y.S.2d 54, 55 (N.Y. App. Div. 2001).

[14]      RAC's purported acceptance, coming approximately three-and-one-half years after the offer, was untimely, and ineffective for that reason, as well.  Neither the Agency Settlement Agreement nor the Statement of Joinder in Settlement indicated the period of time within which the other licensees would be required to accept the offer and join the Settlement.  When an offer does not contain an express expiration date, the offer is deemed to expire in a reasonable period of time.  *See Etablissement Asamar Ltd. v. Lone Eagle Shipping Ltd.*, 882 F. Supp. 1409, 1411 (S.D.N.Y. 1995) ("Inasmuch as the June 20 offer did not specify a time for acceptance, it was open for a reasonable time unless sooner revoked."); *Modern Pool Products, Inc. v. Rudel Machinery Co., Inc.*, 58 Misc.2d 83, 85, 294 N.Y.S.2d 426, 428 (Civ. Ct. 1968) ("Where no time is fixed in the offer within which acceptance must be made, it is a rule of law that acceptance must be made within a reasonable time.").  *See also* Restatement, Law of Contracts (Second), Section 41(1).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 17 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 20 of 54

that "[t]his Agreement may be amended only by a written document duly executed by all Parties affected by such amendment or modification." (*Id.*) By conditioning its joinder to the Agency Settlement Agreement on its unilateral understanding that its terms do not alter or amend the License Agreement, RAC rejected the Agreement and made a counteroffer which none of the Defendants ever accepted. Rather than clearly, unconditionally and unambiguously accepting the Settlement Agreement, RAC conditioned its acceptance upon its unilateral understanding, contrary to the express terms of the Settlement Agreement. Hence, RAC is not a party to the Agency Settlement Agreement and may not assert a claim for its breach.[15]

**B.      The Court, Alternatively, Should Narrow The Issues For Trial**

If the Court deems RAC to have joined the Agency Settlement Agreement, and thus permits this case to proceed to trial, the Court should narrow the issues that RAC may pursue. Specifically, the Court should rule that the Agency Settlement Agreement expressly reserves Cendant's right to acquire other car rental companies. In addition, the Court should rule that RAC's remedies pursuant to the that agreement are limited by the terms of that agreement and, in particular, that RAC's requests for injunctive relief and other relief inconsistent with those express remedies are barred as a matter of law.

**1.      Cendant Has The Right To Acquire An Additional Rental Car Company**

RAC apparently seeks to argue that its License Agreement precludes Cendant's acquisition of Budget. The provisions on which RAC relies (which, in any event, would apply

---

[15]      RAC's ineffective conditional acceptance of the Agency Settlement Agreement may have been linked to the fact that it had a different form of license agreement than the licensees who were parties to the Agency Dispute. The provisions of the Agency Settlement Agreement relate to the "ELAs" or "Exclusive License Agreements," which are the form of license agreement between Avis and most of its licensees. For this reason also, the Agency Settlement Agreement does not apply to RAC.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 18 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 21 of 54

only to Avis) have, however, been supplanted by the subsequent Agency Settlement Agreement. That Agreement expressly confirms Cendant's right to acquire an additional car rental company.[16]  Indeed, close to half the language of the Agreement is dedicated to addressing the Parent's acquisition of another company.  (*See* Settlement Agreement, Sections IV. & V, Pages 5-8.)

Robert Salerno, then President of Avis, negotiated the essential business terms of the settlement agreement with the named licensees in the Agency dispute.  In his deposition, Mr. Salerno explained the basic business deal that was formalized by the Settlement Agreement.  He explained (Excerpt from Deposition of F. Robert Salerno, ("Salerno Dep.), attached as Exhibit 18**,** at 209)

> We structured a deal that basically said that – that Avis couldn't operate another car rental company, but that Cendant Car – Cendant could, and that so – and in doing that we had to keep the management at the Cendant level.  And that's the basic crux of the deal.  And then if we didn't do that, certain things happened.

Mr. Salerno's testimony provides an accurate summary of the deal embodied in the Agency Settlement Agreement.  To begin, the contract contains a key distinction between the obligations and rights of the "Avis Parties" and the separate obligations and rights of the "Parent" (HFS, Inc., predecessor in interest to Cendant), which was expressly not included among the "Avis Parties."

---

[16]     If RAC is permitted to make a claim pursuant to the Agency Settlement Agreement, it may not also seek to enforce the supplanted terms of the earlier License Agreement.  New York courts recognize that the parties' original agreement may be modified by a subsequent agreement.  The modification is a new contract between the parties which supplants the affected provisions of the original agreement while leaving the balance of it intact.  *See Cappelli v. State Farm Mut. Auto Ins. Co.*, 259 A.D.2d 581, 686 N.Y.S.2d 494 (2d Dep't 1999); *Benipal v. Herath*, 251 A.D.2d 350, 429 N.Y.S.2d 815, 3d Dep't 1998).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 19 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 22 of 54

Section I.B. contains a promise by the *Avis Parties* not to acquire additional car rental companies, while Section IV.B contains an express acknowledgment that the *Parent* has the right to acquire an Additional Company. While RAC accuses *all of the Defendants* of some sort of illicit shell game to acquire Budget, in fact the very essence of the contractual Settlement Agreement was that Avis would not acquire or operate another car rental company, but Cendant could. As Mr. Salerno testified in his deposition: "*Avis* couldn't operate another car rental company, but that Cendant Car – Cendant could, and that so – and in doing that we had to keep the management at the Cendant level." (Salerno Dep. at 209.)

Section IV contains "Provisions Respecting the Parent." This section contains (1) an acknowledgment of the Parent's express right to acquire another car rental company; (2) an agreement that the Parent will maintain certain functions of Avis separate and independent from any additional car rental company; and (3) an agreement about remedies in the event the Parent acquires another company that ceases to be separate and independent from the Avis Parties.

First, Section IV.B. provides that the Parent, now Cendant, "has the right to acquire an Additional Company…" Next, Section IV.C provides, just as Salerno explained, that the Parent is required to keep certain management and operational functions of the Avis Parties separate and independent of the Additional Company. In other words, the management had to be kept "at the Cendant level." (Salerno Dep. at 209.) Finally, as more thoroughly discussed below, Section IV.D provides remedies should "the Parent Acquire an Additional Company that ceases at any time to be separate or independent from the Avis Parties…" That section would be superfluous if Cendant did not have the right to acquire another company. Thus, the Court should rule that the Agency Settlement Agreement expressly acknowledges Cendant's right to acquire an additional company and should preclude litigation of that issue at trial.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 20 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 23 of 54

### 2.    RAC's Remedies Are Limited By The Terms Of The Agency Settlement Agreement

If the Court permits RAC to pursue claims under the Agency Settlement Agreement, there are genuine disputes of material fact on this issue that preclude summary judgment on whether the agreement has been breached.  However, assuming for purposes of this motion that Cendant has not complied with the requirement of maintaining separation between Avis and Budget, RAC's remedies are expressly limited by Section IV.D.  That section precludes much of the relief sought by RAC.  Section IV.D. provides remedies "Should the Parent Acquire an Additional Company that ceases at any time to be separate or independent from the Avis Parties."  As pertinent here, Section IV.D.3. provides:

> 1.    With regard to each Conflicting Location [of the Additional Company in an Avis licensee's territory] as to which an Affected Licensee either cannot be offered a right of first refusal under Section IV.D.2. above with regard to a Franchise, or if the Affected Licensee chooses not to exercise such right, the Parent shall offer and the Affected Licensee can accept or decline:
>
> > a.    An arrangement whereby the Affected Licensee will have the opportunity to participate in any cost savings with the Additional Company that may be achieved through a sharing or consolidation of resources, including vehicle fleet, on mutually agreeable terms and conditions to the extent such an arrangement is commercially feasible; or
> >
> > b.    A one-time, lump sum payment to the Affected Licensee, in a mutually acceptable amount to be negotiated and determined in good faith, in exchange for a release of any claims that may exist as a result of the operation of the Conflicting Location; or
> >
> > c.    Or any mutually acceptable combination of (a) and (b) above.

Under Section IV.F, the Agreement provides that, "if the steps and limitations provided for in Section IV.D. … fail to resolve a Future Dispute," the parties reserve their rights to pursue their claims through litigation, "subject always to Sections I. and IV, … which shall remain

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                Page 21 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 24 of 54

<u>binding and conclusive in the event of any future dispute</u>." (emphasis added). In simple terms, this provision means that:

(1)     if Cendant acquires another company that ceases to be separate and independent from Avis; and

(2)     the parties fail to negotiate a cost savings arrangement and/or one-time, lump sum payment to address the existence of a franchisee of the other company in the territory of the Avis licensee, then

(3)     a franchisee may sue, but

(4)     the franchisee remains bound by the terms of the Settlement Agreement, <u>including the remedy terms in Section IV.D.</u>

The "subject always to Sections I. and IV" term necessarily means that the franchisee may recover no more on a claim of breach of the Agency Settlement Agreement than it could recover through good faith negotiation consistent with the remedies in IV.D. Consequently, the contract bars RAC's claims for injunctive relief, punitive damages, or, for that matter, for any relief other than an amount in compensation for the impact of operation of the "Conflicting Location."[17]

In *Loman v. Metropolitan Mortg. & Sec. Co.*, the court said that if the contract clearly provided that the seller's only remedy was to enforce a forfeiture provision, then the seller would be limited to that remedy.[18] "The prevailing rule … seems to be that parties may contract for an exclusive remedy which shall be binding on them in the event of breach of contract."[19] Where

---

[17]     Since there were already Budget franchisees in Alaska at the time of the acquisition, this compensation could not be the equivalent of awarding the Avis licensee pre-existing income of the Budget licensees.

[18]     432 P.2d 603, 605 (Alaska 1967).

[19]     *Independent Consol. School Dist., No. 24 v. Blue Earth County*, 151 N.W.2d 784, 786 (Minn. 1967).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 22 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 25 of 54

parties stipulate what the consequences of a breach of agreement shall be, such stipulation, if reasonable, is controlling and excludes other consequences. The remedy provided is exclusive if the contract so declares or clearly shows an intention of the parties to make it so. The general rule is that if "the intent of the parties was to make the stipulated remedy exclusive," then RAC is barred from seeking other remedies.[20]

The Agency Settlement Agreement's remedy provisions should be read as exclusive, as any other interpretation would render the remedy provisions meaningless. If the Court were to allow RAC to ignore the dispute resolution and remedies contained in Section IV.D, and file a lawsuit seeking other or greater relief, then the bargained-for promises in Section IV.D. become illusory. By stating that a party may sue, but that any lawsuit would be "subject always to Sections I. and IV," the parties agreed in advance to limit their remedies to those included in Section IV.D. In order to give effect and meaning to Section IV.D.'s remedy provisions, this Court must hold that the "subject always to Sections I. and IV" language in Section IV.F.'s lawsuit provision means that any lawsuit is limited to the contractual remedies. Accordingly, the Court should preclude RAC from seeking injunctive relief, punitive damages, or any remedy other than that which is expressly stated in Section IV.D.

---

[20]     *Board of Regents v. Wilson*, 326 N.E.2d 1005, 1011 (Ill.App.Ct.1975). Although it is not necessary to use the word "exclusive," it must be clear from the language of the contract that the only intended remedy is the one specifically enumerated. A remedy will be considered the sole remedy if interpreting the contract any other way would render the remedy provisions of the contract "meaningless." *Veath v. Specialty Grains, Inc.*, 546 N.E.2d 243 (Ill.App.Ct.1989). The question of whether or not the remedy is exclusive turns upon the intention of the parties; the specific provisions relating to the remedy; and all the facts of a particular case. *See Blue Earth County*, 151 N.W.2d at 787.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 23 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 26 of 54

**III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III)**

RAC asserts its claim for breach of the covenant of good faith and fair dealing against Defendants who were not parties to the License Agreement or the Agency Settlement Agreement. The implied covenant of good faith and fair dealing is not a separate tort. Rather, it is an aspect of a claim for breach of contract and cannot exist in the absence of a contractual relationship between the parties. *See O.K. Lumber Co., Inc. v. Providence Washington Ins. Co.*, 759 P.2d 523, 526 (Alaska 1988) (declining to recognize a tort duty of good faith and fair dealing independent of the contractual relationship); *Levine v. Yokell*, 258 A.D.2d 296, 296-97 (N.Y. App. Div. 1999) (finding that there was no implied covenant of good faith between plaintiff and defendant because there was no contract between the parties). Therefore, the Court must grant summary judgment on Count III as to those Defendants who were not parties to these agreements.

Summary judgment should be granted on Count III as to Defendants who were parties to those agreements for a different reason. The purpose of the implied covenant of good faith and fair dealing is to effectuate the reasonable expectations of the parties based on the terms of the agreement, not to expand them.[21] Furthermore, the implied covenant of good faith and fair dealing may not override the express terms of the underlying contract.[22] By alleging a breach of the implied covenant of good faith and fair dealing, RAC seeks to impose an obligation on

---

[21]     *See, e.g., Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 216-217 (N.D.N.Y. 1999) (interpreting New York law).

[22]     *See id.*

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial            Page 24 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 27 of 54

Defendants that goes beyond the reasonable expectations of the parties arising out of the express terms of the License Agreement and the Agency Settlement Agreement. The language of the License Agreement does not give rise to a reasonable expectation that Avis (let alone, Avis' parent) would be precluded from acquiring other vehicle rental companies. In fact, as noted above, the express prohibition in the License Agreements on the *licensee* being affiliated with another car rental brand (Sections 3.12 and 6.1), and the absence of any similar prohibition on the *licensor*, precludes there being any reasonable expectation that the licensor (or, for that matter, the licensor's parent) could not acquire another car rental brand.

Moreover, the Agency Settlement Agreement expressly allows Avis' parent to acquire other vehicle rental companies. Thus, because the implied covenant cannot override the express provisions of a contract, Cendant's acquisition of Budget did not, as a matter of law, breach the implied covenant of good faith and fair dealing. Furthermore, to the extent that RAC may claim that the integration of Budget into CCRG breached the implied covenant, that argument must be rejected because in the Agency Settlement Agreement, the parties considered and expressly addressed that precise situation. When the parties specifically address the issue in the agreement, it is inappropriate to "imply" any obligation with respect to that issue.[23]

## IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF IMPLIED COVENANT NOT TO HINDER OR PREVENT PERFORMANCE (COUNT IV)

There is no authority – either under Alaska or New York law – to support its claim that there exists an implied covenant not to hinder or prevent performance distinct from the implied

---

[23]     *See National Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*, 792 N.Y.S.2d 772, 781 (N.Y. Sup. Ct. 2004); *Silvester v. Time Warner, Inc.*, 763 N.Y.S.2d 912, 918 (N.Y. Sup. Ct. 2003).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 25 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 28 of 54

covenant of good faith and fair dealing. To the extent it exists at all, a duty not to hinder performance is subsumed within the implied covenant of good faith and fair dealing.[24] Thus, summary judgment should be entered for Defendants on Count IV.

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE OTHER CONTRACT CLAIMS BECAUSE RAC IS NOT A THIRD-PARTY BENEFICIARY OF THE AGREEMENTS

In Count IX, RAC contends that it is a third-party beneficiary of the Master License Agreement and the Master Motor Vehicle Operating Lease Agreement, and alleges that Defendants breached those agreements. RAC is neither a party to, nor a third-party beneficiary of, either of these agreements and, therefore, lacks standing to bring claims for their alleged breach.[25] It is well established that a third party may sue as a beneficiary on a contract made for his/her benefit.[26] To do so, however, an intent to benefit the third party must be clear in the contract; absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contract.[27]

---

[24]     *See, e.g., Casey v. Semco Energy, Inc.*, 92 P.3d 379, 385 (Alaska 2004).

[25]     *See Miner v. DSN Dealer Service Network*, 151 A.D.2d 928, 929, 543 N.Y.S.2d 201, 202 (N.Y. App. Div. 1989)(holding that plaintiffs, who were not third party beneficiaries of a service agreement, lacked standing to bring an action for breach of the agreement).

[26]     *See Port Chester Elec. Constr. Corp. v. Edythe Atlas*, 357 N.E.2d 983, 40 N.Y.2d 652, 655 (N.Y. 1976).

[27]     *See id.; Associated Flour Haulers & Warehousemen v. Hoffman*, 26 N.E.2d 7, 282 N.Y. 173, 174 (N.Y. 1940). *See also Yakubinis v. Yamaha Motor Corporation, U.S.A.*, 2006 WL 665445 (Ill. App. 1 Dist., 2006), *quoting People ex rel. Hartigan v. Community Hospital of Evanston*, 189 Ill. App. 3d 206, 217 (1989), quoting other cases ("A third party may only sue for breach of contract, however, if the contract was entered into for the party's direct benefit; if the third-party's benefit is merely incidental, he has no right of recovery on the contract").

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 26 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 29 of 54

## A.    The Master License Agreement

The Master License Agreement is an agreement entered into among HFS Car Rental, Inc. ("HFS"), Wizard Co., Inc. ("Wizard Co."), and Avis, pursuant to which HFS and Wizard Co. granted Avis a license to operate vehicle rental businesses under the trade name "Avis" primarily in territories where there were no previously existing exclusive license agreements with other licensees.  Master License Agreement at §§2.1-2.2.  The Master License Agreement sets forth the rights and obligations of HFS and Wizard Co., as licensors, and Avis, as licensee, specifically with regard to those territories covered by the Agreement, which do not include Alaska. Accordingly, there is no provision in the Master License Agreement that purports to confer any sort of benefit on RAC.  Any obligations or covenants imposed on the parties pursuant to the Master License Agreement are specifically for the protection and benefit only of those parties.

In fact, rather than displaying a clear intent to benefit RAC (which would be required to support a third-party beneficiary claim), the Agreement specifically states the contrary:

> Notwithstanding anything to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Licensor, Licensee, their officers, directors, partners, and such of their respective successors and assigns as may be contemplated by Section 15 hereof, any rights or remedies under or by reason of this Agreement.  *Id.* at §30.2.

This provision is dispositive of RAC's third-party beneficiary claim under the Master License Agreement. [28]

---

[28]    Summary judgment should be granted to Defendants on this claim for a procedural reason as well.  The Master License Agreement contains a dispute resolution clause that states that all disputes relating to the Agreement shall be submitted to binding arbitration.  *See* Master License Agreement at §31.5.3.  Accordingly, in the event the Court does not grant summary judgment, the claim must be dismissed and referred to arbitration.  *See Ogoe v. New York Hosp.*, 99 A.D.2d 968, 969, 473 N.Y.S.2d 5, 7 (N.Y. App. Div. 1984)(the fact that former employee's late wife was third-party beneficiary under *continued on next page*

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 27 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 30 of 54

## B.     The Master Motor Vehicle Operating Lease Agreement

There is similarly no evidence in the Master Motor Vehicle Operating Lease Agreement of an intent to benefit RAC.  That Agreement governs the terms under which Avis and certain other eligible vehicle rental companies (not including RAC) lease their fleet vehicles from AESOP Leasing L.P. ("AESOP").  There is no provision in that Agreement that affects RAC's rights or obligations.  Indeed, that Agreement does not refer to RAC at all, nor does it purport to confer any benefit on RAC or on any other third parties.

RAC suggests that the Master Motor Vehicle Operating Lease Agreement was intended to confer a benefit on it based on Section 7 of the Agreement which states, "[n]o Lessee shall sublease any vehicles, nor shall any Lessee assign any right or interest herein or in any Vehicles."  (First Amended Complaint, ¶46.)  RAC appears to suggest that this language was intended to protect RAC and other licensees from any harm arising from the subleasing of Avis' fleet vehicles to third parties.  There is no language in the Agreement that supports such a far-fetched reading of the provision.  Indeed, a simple and logical reading of Section 7 makes it clear that the provision was designed to protect the interests of AESOP, as the lessor. [29]

---

*continued from previous page*

employment contract did not deprive former employer of its affirmative defense of contractual arbitration).

[29]     The Master Motor Vehicle Operating Lease Agreement contains a jury trial waiver clause that "expressly waives any right to a trial by jury in any action or proceeding to enforce or defend any rights under this agreement…"  Master Motor Vehicle Operating Lease Agreement at §37.  Hence, in the event the Court does not grant summary judgment on RAC's Master Motor Vehicle Operating Lease Agreement third-party beneficiary claim, the claim must be resolved separately in a bench trial.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 28 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 31 of 54

## VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ANTITRUST CLAIM (COUNT X)

RAC vaguely alleges that Defendants violated the antitrust laws by allegedly engaging in price fixing and market segmentation in connection with their operation of Budget and Avis. There is no merit to RAC's antitrust claim and Defendants are entitled to summary judgment because: (1) as affiliates, they cannot agree with one another for antitrust purposes as a matter of law; and (2) RAC has not suffered antitrust injury.[30]

### A.    Defendants Cannot Agree With One Another For Antitrust Purposes

It is well settled that wholly owned subsidiaries and their parent are not legally capable of entering into an agreement in violation of the antitrust laws.    In *Copperweld Corp. v. Independence Tube Corp.*, the Supreme Court concluded that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of section 1 of the Sherman Act."[31]    The Court went on to hold that, as a matter of law, a corporation and its wholly owned subsidiaries "are incapable of conspiring with each other for purposes of section 1 of the Sherman Act."[32]    The Court explained that such entities have a unity of interest and must be viewed as a single enterprise for antitrust purposes.

*Copperweld* has been broadly extended to numerous other situations that do not involve a parent and a wholly owned subsidiary, including where there are two wholly owned subsidiaries

---

[30]    The acquisition of Budget was, in fact, approved by the governmental agencies that have responsibility for enforcing the Federal antitrust laws pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. Sec. 18a, before the acquisition was permitted to be completed.

[31]    467 U.S. 752, 771 (1984).

[32]    *Id.* at 777.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 29 of 50

Case 3:03-cv-00029-TMB    Document 181    Filed 06/20/06    Page 32 of 54

of a parent corporation.[33]  *Copperweld* has also been held to apply to a parent corporation and its partially owned subsidiary[34], to a parent corporation's wholly-owned subsidiary and partially-owned subsidiary[35] and to a parent corporation and two other members of its corporate family.[36]

The United States Supreme Court recently confirmed that an economically integrated legal entity such as Cendant is permitted, under section 1 of the Sherman Act, to establish the prices at which its separately branded products are sold.  In *Texaco, Inc. v. Dagher*,[37] Texaco and Shell Oil service station franchisees brought suit against their franchisors, Texaco, Inc. and Shell Oil Co., alleging that their agreement to set a single price for both brands, after entering into a joint venture, constituted a *per se* violation of the antitrust rule against price fixing.  The Supreme Court held that it was not unlawful for an economically integrated joint venture to set the prices of the two brands it controls, even when the brands previously were separate entities that competed with each other.[38]  In so holding, the Court explained, "[a]s a single entity, a joint

---

[33]    *See, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003), cert denied, 124 S.Ct. 355 (2003)("The single entity rule … applies to subsidiaries controlled by a common parent"); *Eichorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001), cert denied, 122 S.Ct. 506 (2001); *Advanced Health-Care Servs. v. Radford Cmty. Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990); *Directory Sales Management Corp. v. Ohio Bell Tel. Co.*, 833 F.2d 606, 611 (6th Cir. 1987).

[34]    *Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849  F. Supp. 702,705-07 (N.D. Cal. 1994); *Aspen Title & Escrow, Inc. v. Jeld-Wen, Inc.*, 677 F. Supp. 1477, 1486 (D. Or. 1987)

[35]    *Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 706-07 (N.D. Cal. 1994); *Novatel Communications v. Cellular Telephone Supply*, 1986-2 Trade Cas. (CCH) para. 67,412 at 62,173 (N.D. Ga. 1986).

[36]    *Orion Tire Corp. v. General Tire, Inc.*, 1992-2 Trade Cas. (CCH) para. 69,957 at 68,616 (C.D. Cal 1992).

[37]    126 S. Ct. 1276 (2006).

[38]    *Id.* at 1281.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 30 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 33 of 54

venture, like any other firm, must have the discretion to determine the prices of the products that it sells, including the discretion to sell a product under two different brands at a single, unified price."[39] The Court reasoned that, under such circumstances, the entity is "regarded as a single firm competing with other sellers in the market."[40]

In light of *Copperweld* and its progeny, Defendants are entitled to summary judgment on RAC's antitrust claim. It is beyond dispute that the Avis entities, Budget Rent A Car System, Inc., and their parent corporation are affiliates, and they must therefore be treated as a single enterprise for the purpose of antitrust analysis. As *Texaco* made clear, a single enterprise is permitted to pursue a multiple brand strategy without running afoul of the antitrust laws. Hence, any claim of price fixing or market segmentation between them must fail as a matter of law.

### B.    RAC Has Not Suffered Antitrust Injury

A plaintiff's right to sue for money damages is subject to a number of limitations unique to the antitrust laws that are based on policies found by courts to be implicit in the structure and purpose of those laws. Chief among these limitations is the necessity to allege and prove antitrust injury. In other words, in addition to alleging an injury to its business causally linked to an antitrust violation, RAC must allege an "injury of the type the antitrust laws were intended to prevent."[41] It is not enough to claim that one's injury was caused by an antitrust violation.[42]

---

[39]    *Id.* at 1280.

[40]    *Id., citing Arizona v. Maricopa County Medical Soc., 457 U.S. 332, 356 (1982).*

[41]    *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

[42]    *Cargill, Inc. v. Montfort of Colorado, Inc.*, 479 U.S. 104, 107 (1986).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 31 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 34 of 54

RAC has not alleged any theory of antitrust injury, let alone a plausible one. Although vague, the essence of RAC's claim appears to be that it has been, or will be, injured as a result of competition from the Budget franchisee in Alaska. This theory does not, however, involve any cognizable antitrust injury.

The antitrust laws are intended to protect competition, not competitors.[43] If a plaintiff's injury flows from acts that do not harm competition generally, or from conduct that is "beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se."[44] Thus, the fact that a plaintiff may have been harmed by allegedly illegal conduct is not sufficient to satisfy this requirement.[45] As the Ninth Circuit explained in *Pool Water Products*:

> It is well established that the antitrust laws are only intended to preserve competition for the benefit of consumers. Consumer welfare is maximized when economic resources are allocated to their best use and when consumers are assured competitive price and quality. Accordingly, the antitrust laws are only concerned with acts that harm "allocative efficiency and raise the price of goods above their competitive level or diminish their quality." Antitrust injury "means injury from higher prices or lower output, the principal vices proscribed by the antitrust laws."[46]

Franchisors typically impose vertical restraints on their franchisees, to enhance overall competition, and such restraints are routinely applied.[47] An individual competitor's loss of

---

[43]     *Id.*. at 338; *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962).

[44]     *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001); accord, *Legal Economic Evaluations, Inc. v. Metropolitan Life Ins. Co.*, 39 F.3d 951, 953 (9th Cir. 1994), *cert. denied*, 514 U.S. 1044 (1995).

[45]     *Id.*

[46]     258 F.3d at 1034 (emphasis added)(citations omitted).

[47]     *See, e.g., Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977); *O.S.C. Corp. v. Apple Computer, Inc.*, 601 F. Supp. 1274, 1291 (C.D. Cal. 1985), *aff'd*, 792 F.2d 1464 (9th Cir. 1986).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial     Page 32 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 35 of 54

profits, or even a decrease in its market share, repeatedly has been held not to constitute the requisite antitrust injury.[48] There is, in short, no antitrust injury here.

## VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS UNDER THE UNFAIR TRADE PRACTICE ACT, AND FOR FRAUD/MISREPRESENTATION AND TORTIOUS INTERFERENCE (COUNTS VI, XI, XII)

RAC has alleged essentially the same set of operative facts to support its unfair trade practice and other tort claims. All of the facts relate to one overarching allegation – that Defendants' acquisition, and operation, of Budget constitutes a breach of the License Agreement and the Agency Settlement Agreement. Thus, RAC alleges that Defendants committed an unfair trade practice "through their purchase, operation and management of Budget." (First Amended Complaint, at ¶ 102.) Similarly, in its fraud/misrepresentation claim, RAC complains about statements which it claims are false because Defendants acquired Budget and allegedly the "Avis System has either been corrupted with Budget or alternatively the System has been modified to add a new brand, Budget as part of the system." *Id.*, at ¶ 136. And, in RAC's intentional interference claim (Count XII), it alleges that Defendants "intentionally provided assistance, technology, management and other efforts to Budget" resulting in lost customers. *Id.*, at ¶ 142. RAC's repeated allegations make clear that the exclusive common factual predicate act for its Unfair Trade Practice Act and tort claims is the operation and management of Budget through the alleged improper use of the Avis System – the allegedly "misappropriated" trade secret in violation of RAC's contractual rights.

---

[48]    *Pool Water Products, at* 1035-36; *see Cargill, Inc.*, 479 U.S. at 116; *Adaptive Power Situations, L.L.C. v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998), *cert. denied*, 525 U.S. 875 (1998).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                Page 33 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 36 of 54

These claims are statutorily preempted even though, as explained below, the Trade Secrets Act claim is ultimately without legal merit. In addition, summary judgment should be granted to Defendants on these tort-based claims for other reasons.

### A. The Uniform Trade Secrets Act Claim Preempts The Unfair Trade Practice Act And Tort Claims

Alaska's Trade Secrets Act contains a preemption clause in AS 45.50.935. Under that clause, a party who alleges a trade secret misappropriation is expressly barred from alleging most other causes of action for the same conduct. Because RAC's Unfair Trade Practices Act claim and tort claims are based on precisely the same factual predicate as its claim for violation of Alaska's Trade Secrets Act, these claims are preempted.

Alaska's Uniform Trade Secrets Act ("Trade Secrets Act") is substantially modeled after the Uniform Trade Secrets Act ("Uniform Act").[49] As originally approved in 1979, the Uniform Act contains a provision that "displaces" or preempts conflicting tort, restitutionary and other laws pertaining to civil liability for misappropriation of a trade secret.[50] In other words, the Uniform Act preempts tort and quasi-contractual liability, if that liability was factually centered

---

[49] *Compare* AS 45.50.910–945 *with Uniform Trade Secrets Act*, 14 U.L.A. §§ 1-12 (West 1990). The Uniform Act developed in order to address the unformulated interaction between common law trade secret protection and patent law. *See* Prefatory Note to Uniform Trade Secrets Act, 14 ULA 433, 434-35 (West 1990). The Uniform Act also "arose to create a uniform business environment that created more certain standards for protection of commercially valuable information." *Auto Channel, Inc. v. Speedvision Network, LLC.*, 144 F. Supp.2d 784, 789 (W.D. Ky. 2001) (citing *Reingold v. Swiftships, Inc.*, 210 F.3d 320, 322 (5th Cir. 2000).

[50] *See id*. at § 7 and comment thereto.

---

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 34 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 37 of 54

upon misappropriation of a trade secret.[51]  Alaska adopted a form of the original provision that states:

> (a)       AS 45.50.910 - 45.50.945 displace conflicting tort, restitutionary, and other state laws pertaining to civil liability for misappropriation of a trade secret.

> (b)       AS 45.50.910 - 45.50.945 do not affect

> (1)       contractual or other civil liability or relief that is not based upon misappropriation of a trade secret.[52]

No decision in Alaska has considered the preemptive effect of the Trade Secrets Act.  Because the Trade Secrets Act is a uniform law, decisions of other jurisdictions are therefore persuasive.[53]

For purposes of determining Trade Secrets Act preemption, courts look past the labels a plaintiff places upon the claims to the facts asserted in support of the claims.[54]  Accordingly, courts find preemption where claims rely on misappropriation of trade secrets as a factual predicate.[55]  Stated differently, "a plaintiff 'may not rely on acts that constitute trade secret misappropriation to support other causes of action.'"[56]  This result obtains "*regardless of*

---

[51]      In 1985, the Uniform Act was amended in part to clarify the preemptive effect of the law.  The germane amendments clearly removed all contractual liability from preemptive effect.  *See id.* ("This Act does not affect . . . contractual remedies whether or not based upon misappropriation of a trade secret.")

[52]      AS 45.50.935.

[53]      *See* AS 45.50.935; *Auto Channel Inc. v Speedvision Network LLC*, 144 F. Supp.2d 784, 788 (W.D. Ky 2001).

[54]      *See Leucadia, Inc. v. Applied Extrusion Technologies*, 755 F. Supp. 635, 636 (D. Del. 1991).

[55]      *See Auto Channel, Inc.*, at 789; *Weins v. Sporleder*, 605 N.W.2d 488, 491-92 (S.D. 2000); *On-Line Tech v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1145 (Fed Cir. 2004).

[56]      *Weins*, 605 N.W.2d at 492 (quoting *Ed Nowogroski Ins., Inc. v. Rucker*, 944 P.2d 1093, 1097 (Wash. Ct. App. 1997)).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial        Page 35 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 38 of 54

*whether a plaintiff can demonstrate that the information at issue qualifies as a trade secret.*"[57]

Several courts have held that the Trade Secrets Act pre-empts other claims, including unfair trade practices and tort claims, where the factual underpinning for those claims is the misappropriation of trade secrets.[58]  Because RAC's tort and unfair trade practice claims are based on the same factual allegation as the Trade Secrets Act claim (*i.e.*, alleged misappropriation of the "Avis System"),  these other claims are preempted by law.

### B.    A Breach Of Contract Is Not An Unfair Trade Practice

Even if RAC's unfair trade practices claim were not preempted, the claim fails because a breach of contract is not an unfair trade practice.  Alaska's Unfair Trade Practices Act enumerates 52 specific acts of conduct that constitute an unfair or deceptive trade practice.[59] RAC has not alleged that Defendants committed any of the enumerated acts of conduct.  Instead, RAC alleges (incorrectly) that Defendants violated the Act by their bad-faith breach of the License and Agency Settlement Agreements.

---

[57]      *See Auto Channel Inc.*, 144 F.Supp.2d at 789 (citing *Composite Marine Propellers v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 19920 (emphasis added); *see e.g.*, *Thomas and Betts Corp v. Panduit Corp*, 108 F. Supp.2d 968, 972-73 (N.D. Ill. 2000) (court need not determine whether information was trade secret prior to preemption).

[58]      *See Leucadia*. at 636-637 (Trade Secret Act preempts unfair competition/unfair trade practice claims); *On-Line Technologies*, 386 F.3d at 1144-46 (affirming preemption of fraud and trade practice claims); *Nowogroski*, 944 P.2d at 1097 (affirming preemption of wrongful use of confidential information and breach of fiduciary duty claims); *Thomas & Betts Corp.*, 108 F.Supp.2d at 972-976 (preempting breach of fiduciary duty, conversion, unfair competition, tortious interference with business relations, fraud and tortious interference with a confidentiality agreement claims); *Auto-Channel, Inc.*, 144 F.Supp.2d at 790 (preempting unfair competition and quasi-contract claims); *Weins*, 605 N.W.2d at 492 (reversing reinstatement of tort claims of fraud and deceit based on Trade Secret Act preemption).

[59]      *See* AS 45.50.471(b). Subsection b enumerates several types of conduct that constitute an unfair or deceptive trade practice, although unfair or deceptive trade practices are not limited to the enumerated acts.  AS 45.50.471(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 36 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 39 of 54

In analyzing whether an act or practice is "unfair," Alaska has adopted the so-called "cigarette rule" developed by the Federal Trade Commission.[60] According to the rule, courts must consider:

> (1)     whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;
>
> (2)     whether it is immoral, unethical, oppressive, or unscrupulous;
>
> (3)     whether it causes substantial injury to consumers (or competitors or other businessmen).[61]

While Alaska courts have never addressed whether a breach of contract is sufficient to establish a violation of Alaska's Act under the "cigarette rule" analysis, courts in other jurisdictions that have addressed this question appear to have uniformly held that it is not an unfair or deceptive trade practice.[62] Likewise, even jurisdictions that do not explicitly employ

---

[60]     *State v. O'Neill*, 609 P.2d 520, 535 (Alaska 1980) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1975) (quoting Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed Reg. 8355 (1964)); *see* also, *Western Star Trucks v. Big Iron Equipment*, 101 P.3d 1047, 1053 (Alaska 2004) (stating that the AUTPA requires that "due consideration and great weight should be given interpretations of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.").

[61]     *Id.*

[62]     *See Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (applying Massachusetts law) (breach of contract insufficient unless accompanied by "commercial extortion" or similar conduct); *Arthur D. Little, Inc. v. Dooyang Int'l., Inc.*, 147 F.3d 47, 55 (1st Cir. 1998) (applying Massachusetts law) (distinguishing between simple breach of contract and a wrongful purpose as basis for UTPA liability); *Pepsi-Cola Metro Bottling Co., Inc. v. Checkers, Inc.*, 754 F.2d 10, 18 (1st Cir. 1985) (applying Massachusetts law) (mere breaches of contract, without more, do not violate UTPA); *Boulevard Associates v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1038-39 (2nd Cir. 1995) (applying Connecticut law) (simple breach of contract is not sufficient to establish a violation of Connecticut UTPA); *South Atlantic Limited Partnership of Tennessee v. Riese*, 284 F.3d 518, 535-36 (4th Cir. 2002) *continued on next page*

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 37 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 40 of 54

the "cigarette rule" analysis have held that a breach of contract is insufficient to state a claim for an unfair or deceptive trade practice.[63]  RAC is thus wrong as a matter of law when it insists that the Defendants committed an unfair or deceptive trade practice if they breached the contracts.

### C.  Defendants Are Entitled To Summary Judgment On RAC's Fraud/Misrepresentation Claim

In Count XI of its First Amended Complaint, RAC asserts a claim of "fraud/misrepresentation."  (First Amended Complaint, ¶¶ 129-140.)  RAC's theory is that Defendants falsely stated (1) that they intended to become "Number One" in the car rental market and would "Try Harder", while secretly planning to acquire additional car rental companies and (2) that they promised to never acquire another car rental company, while intending to do so.  (First Amended Complaint, ¶ 129.)  Even if it were not preempted by the Trade Secrets Act claim, RAC's fraud/misrepresentation claim fails because (i) the statements regarding trying to become "Number One" and "We Try Harder" are too indefinite to be actionable and are, at most, puffery which cannot form the basis of a fraud or misrepresentation claim, (ii) these statements are not statements of fact nor were they false and (iii) in any event, RAC cannot demonstrate "justifiable reliance" on any such statements.

---

*continued from previous page*
(applying North Carolina law) (intentional breach of contract is normally insufficient to establish violation of UTPA; breach must be particularly egregious to support violation).

[63]      *See American Airlines, Inc, v. Wolens*, 513 U.S. 219, 233 (1995) (citation omitted) (reciting Illinois law that breach of contract, without more; does not amount to a Consumer Fraud Act claim and the Act should not apply to such claims); *Dura-Wood Treating v. Century Forest Indus. Inc.*, 675 F.2d 745, 756 (5th Cir. 1982) (applying Texas law) (holding that breach of contract alone insufficient to establish deceptive trade practice); *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1287 (4th Cir. 1987) (construing South Carolina law) (nothing in record beyond breach of contract to support UTPA claim); *Lake County Grading Co. v. Advance Mechanical Contractors, Inc.*, 654 N.E.2d 1109, 1117 (Ill. App. Ct. 1995) (positing continued viability of the rule stating where plaintiff attempts to allege a UTPA violation which appears on its to concern breach of contract must implicate consumer protection).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 38 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 41 of 54

Alaska cases follow the Restatement (Second) of Torts on what constitutes a fraudulent misrepresentation.[64] The Restatement identifies several elements of intentional misrepresentation: (1) a misrepresentation of fact or intention, (2) made fraudulently (*i.e.*, with scienter), (3) for the purpose of inducing another to act in reliance, (4) with justifiable reliance by the recipient, (5) causing loss.[65]

### 1. Statements Regarding Trying To Be "Number One" And "Trying Harder" Are Not Sufficiently Definite To Form The Basis Of A Fraud Claim.

Defendants' statements regarding trying to be "Number One" and "Trying Harder" are not sufficiently definite for a fraud claim. It is widely held that to constitute actionable fraud, the statement of "fact or intention" must be sufficiently clear and definite, and not merely "sales puffery."[66] In *Century 21 Real Estate Corp. v. Re/Max South County*,[67] the court held that the statement "… our whole RE/MAX organization nationwide has beaten the odds and *become #1*" (emphasis added) was "too ambiguous" to be the actionable on a false advertising claim.[68] As the court there recognized, the word "#1" "convey[s] no specific meaning and thus cannot be

---

[64] *Carter v. Hoblit*, 755 P.2d 1084, 1086-87 (Alaska 1988) (relying on Restatement).

[65] *See Anchorage Chrysler Center v. DaimlerChrysler*, 129 P.3d 905, 914 & n.21 (*citing* Restatement (Second) of Torts § 525 (1977)).

[66] *See Carter v. Hoblit*, 755 P.2d 1084, 1089 (Alaska 1988) (a fraud or contract claim must be based on a "reasonably certain" promise, and "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy"); *Carte Blanche PTE., Ltd. v. Diners Club International, Inc.*, 758 F. Supp. 908, 915 (S.D.N.Y. 1991) (misrepresentations must be definite and certain in order to give rise to an action for fraud); *Kerusa co. LLC v. W10Z/515 Real Estate, L.P.*, 810 N.Y.S.2d 861, 867 (N.Y. Sup. Ct. 2005) (alleged false statements in brochures and advertisements were vague sales puffery and did not constitute fraud).

[67] 882 F. Supp. 915 (C.D. Cal. 1994)

[68] *Id*. at 923.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                          Page 39 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 42 of 54

considered literally false."[69]  Other courts have also recognized that indefinite and ambiguous statements cannot form the basis for a claim that a statement was false.[70]

Defendants' statements regarding trying to be "Number One" and "Trying Harder" are not definite statements of fact or of intent, which a court could, applying objective criteria, decide is or is not true or has or has not been fulfilled.  The concept of "Number One" is itself ambiguous – does it mean the top company in sales? in profits? in market share (and, if so, in which markets?) in employee satisfaction? and for which year or years?  Moreover, the "trying" aspect of each of the statements also renders them indefinite.  For example, are the statements we are *trying* to be Number One and "we *try* harder" satisfied if the company runs three advertisements or do they need to run 30 advertisements or 300 advertisements?  Do they need to match any, let alone every, lower price of a competitor in order to be "trying" to become Number One?  What does it mean to "try harder"?  Harder at what – at making more rentals? at pleasing customers?  at providing better service? at having more vehicles available?  Or does it mean merely harder than they had been trying before?   Accordingly, these statements are so ambiguous and indefinite that no court could assess whether they have been fulfilled.  Thus, they cannot form the basis of a fraud/misrepresentation claim, and Defendants are entitled to summary judgment on that claim.

---

[69]    *Id.*

[70]    *Sutton Associates v. Lexis-Nexis*, 761 N.Y.S.2d 800, 803 (N.Y. Sup. Ct. 2003) (statements made by provider of computer assisted research services that rates offered to consumer were the "best rates [it] could offer" and "lowest" then available were insufficient to support a claim for fraud); *Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 725 (N.Y. App. Div. 1998) (automobile dealer's statements that a certain vehicle would "perform excellently" and was "of high quality" were vague statements that could not form the basis of a claim for fraud).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 40 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 43 of 54

### 2. The Statements At Issue Were Not Statements Of Fact Nor Were They False

RAC's fraud claim focuses entirely on representations allegedly made by Avis or other Defendants about Avis' intention to do or not to do something in the future – trying to become "Number One", trying "harder" or not acquiring other rental companies in the future. The law sharply limits fraud claims based on statements of future intent. The general rule is that such statements cannot be the basis for a fraud claim. "[A] statement of future performance is a 'mere estimate' of something to take place in the future" and such a statement or promise by its nature cannot be true or false when made.[71] The Restatement (Second) of Torts § 530(1) explains the exception to this general rule to be when a person makes a promise, knowing at the time of the promise that he does not intend to perform: "a representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."[72]

Thus, to sustain its claim that the alleged statements of intent at issue are false, RAC must produce evidence to show fraudulent intent on the part of Defendants *at the time the statements*

---

[71]   *See Shook v. Scott*, 353 P.2d 431, 434 (Wash. 1960) (citing 23 Am.Jur. 799, 801 § 38).

[72]   The commentary to this rule explains the type of evidence required for a plaintiff to sustain a fraud claim based on a statement of future intent:

> The intention that is necessary to make the rule [Restatement § 530] applicable is the intention of the promisor when the agreement was entered into. The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does its failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention must be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise.

(Restatement (Second) of Torts § 530, cmt. d.).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 41 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 44 of 54

*or promises were made.*  It is not sufficient to allege mere nonperformance of a statement of intent or promise.  Assuming *arguendo* that the statements regarding trying to be "Number One" and "We Try Harder" are sufficiently definite to predicate a fraud claim on them, the fact is that these statements of intent were and are true.  There is no evidence that Avis has not tried to be "Number One" and to move past Hertz, which was viewed as the top competitor to overcome. Nothing that has happened has changed Avis' desire, intent or efforts to become Number One. The fact that Avis' parent has acquired another car rental company does not make the statements that Avis will try to become "Number One" or that "We Try Harder" untrue.  The same company can own two competitors but still try to make one of them – or, for that  matter, try to make each of them – "Number One".  While it may be the case that only one company can literally and ultimately be "Number One" (whatever that ambiguous phrase may mean), this does not preclude a company from trying to make two or more of its brands the "Number One" brand. Thus, the nature of the statements at issue is not inconsistent with the acquisition or the operation of a second brand.

The other alleged statement on which RAC relies – that Defendants promised never to acquire another car rental company – cannot form the basis of a fraud claim because this "promise" was never made.  The License Agreement does not contain any promise by Avis (let alone, Avis' parent) not to acquire another brand.[73]  More importantly, RAC has testified that at the time the License Agreements were entered into, the idea of Avis or its parent owning another

---

[73]     *See Carter v. Hoblit*, 755 P.2d 1084, 1089 (Alaska 1988) (a fraud or contract claim must be based on a "reasonably certain" promise); *Carte Blanche PTE., Ltd. v. Diners Club International, Inc.*, 758 F. Supp. 908, 915 (S.D.N.Y. 1991) (misrepresentations must be definite and certain in order to give rise to an action for fraud).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 42 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 45 of 54

brand was never considered or even contemplated.  Barbara Halcro, appearing as a 30(b)(6) witness for RAC, testified that in entering into the License Agreements (Exhibit 19):

> "The thought of having another brand never entered any of our minds."  (Excerpts of Deposition of Barbara Halcro, attached as Exhibit 19, at p. 44.)

> "That [Avis owning another brand] never entered – again, that never – no, that never entered our mind."  *Id.* at p. 44-45.

> "There was no thought of it [Avis owning another brand] *from either side*."  *Id.* (emphasis added).

Given RAC's testimony that no one from either side thought of it at the time, RAC cannot now argue that at the time of entering into the License Agreement, a promise was made not to acquire another brand that the promisor intended to break.

### 3.  RAC Cannot Show Justifiable Reliance On The Alleged Fraudulent Statements

RAC also cannot meet its burden of demonstrating that it justifiably relied on the alleged fraudulent statements and changed its position as a direct result of those statements.[74]  First, none of the alleged statements is an unequivocal, definite promise on which one can "justifiably" rely. Statements such as "we will try to be Number One" and "we will try harder" are certainly not specific or concrete enough for anyone to rely on them in making serious business decisions, as RAC claims.  The notion that a businessperson would make a substantial  investment in a

---

[74]    *See Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 914 (Alaska 2006) (actual reliance and justifiable reliance are both prerequisites to claims of intentional misrepresentation); *Oko v. Walsh*, 28 A.D.3d 529, 529 (N.Y. App. Div. 2006) (to make out a prima facie case of fraud, the plaintiff must show not only that he actually relied on the defendant's representation, but also that such reliance was reasonable); *Water Street Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185 (N.Y. App. Div. 2005) (an essential element of any fraud claim is that there must be reasonable reliance, to a party's detriment, upon the representations made).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 43 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 46 of 54

business because someone said that they would "try harder" and "would try to become Number One" is simply not credible.[75]

Moreover, because RAC has admitted that at the time of the License Agreements, it never even "thought" of the possibility of Avis acquiring another brand, there cannot be reliance by RAC in entering into the License Agreements on any such alleged "promise". *Simply put, one cannot rely on a promise that one was not aware of.* In any event, the fact is that the Agency Settlement Agreement supplanted the License Agreements with respect to this subject. That Agreement, as noted above, did not contain any promise (let alone, an unequivocal one) never to acquire another car rental company. In fact, to the extent that there was any "promise" made by Defendants in the Agency Settlement Agreement, it was that *if* Avis' parent acquired another car rental company and integrated certain functions, Defendants would abide by the remedy provisions of that Agreement. As to this "promise", there can be no allegation of fraud – because Defendants intended to, and are prepared to, abide by the remedy provisions in the Agreement in the event of a breach. What RAC wants, however, is to avoid those remedy provisions by converting this breach of contract case into a fraud case. The Court should not allow RAC to do so, and should grant summary judgment to Defendants on RAC's fraud/misrepresentation claim.

### D.   Defendants Are Entitled To Summary Judgment On RAC's Claim For Intentional Interference With Prospective Economic Advantage

RAC claims "intentional interference with prospective economic advantage" because Defendants have allegedly interfered with RAC's "continuing relationships with customers"

---

[75]    *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing that summary judgment can be granted in the face of a factual claim that is implausible).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 44 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 47 of 54

which has resulted in "RAC losing customers." First Amended Complaint, ¶¶ 142-145. Defendants are entitled to summary judgment on this claim because (1) it is nothing but another improper attempt by RAC to convert its breach of contract claim into a tort; and (2) Defendants' acquisition of Budget is privileged.

Simply put, a breach of contract, even a bad faith breach, is not a tort.[76] RAC is a licensee, suing over alleged breaches of contract. For this reason alone, the intentional interference claim fails.

Even if a tort claim were permitted in the context of a contractual relationship, RAC's claim fails here because Defendants' conduct in acquiring Budget was privileged. One of the elements of an intentional interference with prospective economic advantage claim that a plaintiff must establish is that the defendant's conduct was not privileged or justified.[77] In *Bendix Corp. v. Adams*, the Alaska Supreme Court adopted a test of privilege holding that where an actor has a direct financial interest, he is privileged to interfere with a contract for economic reasons, but not where he is motivated by spite, malice, or some other improper objective.[78]

It is beyond dispute that when it acquired Budget, Cendant acted to advance its direct financial interests. Cendant's purpose was to capture greater market share and create value for its shareholders. (Salerno Dec., ¶ 6.) RAC (whose burden it is) can produce no evidence that Defendants were motivated by spite, malice or any other improper objective. Instead, RAC

---

[76] *See ARCO, Inc. v. Akers*, 753 P.2d 1150, 1154 (Alaska 1998); *see also K & K Recycling v. Alaska Gold Co.*, 80 P.3d 702, 716 (Alaska 2003) ("A party to a contract cannot be liable for tortiously interfering with that contract.").

[77] *Odom v. Fairbanks Mem'l Hosp.*, 999 P.3d 123, 132 (Alaska 2000); *Oaksmith v. Brusich*, 774 P.2d 191, 198 (Alaska 1989).

[78] 610 P.2d 24, 30 (Alaska 1980).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 45 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 48 of 54

merely contends in the First Amended Complaint that Defendants' conduct is not privileged because they "owe obligations to their licensees, including RAC to promote the Avis system and assist – not hinder – the licensee." (First Amended Complaint, at ¶144.) In other words, RAC argues that Defendants' conduct was not privileged because that conduct was allegedly a breach of contract. Defendants dispute that there was any breach; however, that issue is irrelevant here because even a breach of contract, if motivated by direct financial interest, is privileged.[79] RAC's remedy for any breach of contract lies in contract law, not in tort.[80]

## VIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TRADE SECRETS ACT CLAIM (COUNT VII)

Defendants should be granted summary judgment on the Trade Secrets Act claim for two reasons. First, and most fundamentally, Avis owns the alleged trade secret, not RAC. A party may not misappropriate its own trade secret. RAC may allege, as it has, that Avis' allegedly permitting Budget to use the secret Avis System is a violation of RAC's exclusive license to use that alleged secret in Alaska and, thus, a breach of contract. Defendants contend that they have not violated any agreement with RAC. But, even if they had, that breach of contract would not also constitute a violation of the Trade Secrets Act. Second, the "Avis System," in all its aspects -- which is what RAC alleges is the trade secret that has been misappropriated -- simply is not a trade secret within the meaning of the Act.

---

[79]     *See RAN Corp. v. Hudesman*, 823 P.2d 646, 648-49 (Alaska 1991); *Bendix*, 610 P.2d at 30.

[80]     RAC's claim is misplaced for another reason as well. The "customers" it claims it is losing are basically corporate customers of Defendants and not even customers generated by RAC. In essence, RAC's intentional interference claim amounts to a claim that Defendants are intentionally interfering with customers *referred to Plaintiff by Defendants*.

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 46 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 49 of 54

## A. Avis Cannot Misappropriate Its Own Secret

Contrary to RAC's claim, the Trade Secrets Act does not apply where the allegation is that Avis shared its own system with Budget. Indeed, the Act applies to a much narrower set of circumstances – only to cases in which there has been a misappropriation of *another's* trade secret.

Alaska's Trade Secrets Act allows a court to enjoin an "actual or threatened misappropriation" of a trade secret. Under the statute's definition, a "misappropriation" means:

> (A)  acquisition of a trade secret of *another* by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B)  disclosure or use of a trade secret of *another* without express or implied consent . . . .[81]

Accordingly, trade secrets are protected only when they belong to "another" person or entity.[82] Under the statutory definition of misappropriation, RAC cannot establish a violation of the Trade Secrets Act because Avis, not RAC, owns the Avis system. Thus, if the system is a trade secret, Avis cannot possibly have misappropriated that secret from itself.

## B. The "Avis System" Is Not A Trade Secret

RAC describes the Avis System as "*all aspects of a business*, business plan and method and manners of operation of a rental car company." First Amended Complaint, at ¶ 13. The Avis System trade secret "encompasses the entire way Avis operates their [sic] car rental business." First Amended Complaint, at ¶ 13. By this definition, the trade secret would include Avis' trademarks and marketing tools, such as its website, which are obviously known to the

---

[81]  AS 45.50.940(2) (emphasis supplied.)

[82]  *See Chicago Lock Co. v. Fanberg*, 676 F.2d 400, 404 (9th Cir. 1982).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 47 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 50 of 54

public. RAC appears even to claim that the Avis System trade secret includes former personnel. In short, according to RAC, there is absolutely nothing about the Avis business that is not the Avis System, and consequently nothing about the business that is not a trade secret.

RAC is wrong as a matter of law in claiming that everything about the way and manner that Avis does business is part of a trade secret, known as the "Avis System." The Avis System, as RAC defines it, simply does not fit the statutory definition of a "trade secret."

Alaska's Trade Secret Act defines "trade secret" as follows:

'Trade Secret' means information that

(A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[83]

In order to prevail in a misappropriation action, RAC must show that a trade secret actually existed.[84] "Without a proven trade secret there can be no misappropriation, even if the defendants' action was wrongful."[85] In order to find that information is a trade secret, the information must, *inter alia*, be the subject of reasonable efforts to maintain its secrecy.[86] In

---

[83] AS 45.50.940(3).

[84] *See Uncle B's Bakery v. O'Rourke*, 920 F. Supp. 1405, 1426 (N.D. Iowa 1996).

[85] *Electro-Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 897 (Minn. 1983).

[86] *Optic Graphics, Inc. v. Agee***,** 591 A.2d 578, 587 (Md. Ct. App. 1991); *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 455 (8th Cir. 1987); *Sigma Chem Co. v. Harris*, 794 F.2d 371, 373-74 (8th Cir. 1986) (employer took extensive measures to protect vendor files and safeguard product).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                          Page 48 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 51 of 54

other words, fundamental to the existence of a trade secret is that the matter be, in fact, secret.[87]

It is axiomatic that trade secret law does not protect information that is readily ascertainable.[88]

Finally, something more than an "intention" to keep data and information secret is required – the

party alleging a trade secret violation is required to show that such intention is manifested by

making an effort to keep the information secret.[89]

In this case, RAC has not alleged any facts that demonstrate that Avis went to any

significant measures to maintain the security of its *entire* business operation.  Nor can RAC cite

to any authority to establish that Avis's *entire* manner of doing business can be properly termed a

"trade secret."  RAC does not allege that and could not prove that Defendants tried to, or could,

keep secret *all* information about Avis' operations from discovery by outsiders.  Too much of the

"Avis System" is necessarily in the public domain.

In addition, RAC does not allege, and could not prove, that as a franchisee, it tried to, or

could, keep secret all information regarding all aspects of Avis' business operations.  As Avis's

entire manner of doing business is not a "trade secret" within the meaning of the Trade Secrets

Act, RAC's claim fails as a matter of law.  Defendants are therefore entitled to summary

judgment as to the Trade Secrets Act claim.

---

[87]        *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974).

[88]        *See Kewanee*, 416 U.S. at 481; *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990).  In fact, from 1997 until 2001, Avis was a public company and, as such, was required to make, and did make, SEC disclosures of information that RAC's all-inclusive approach would appear to claim is a trade secret.

[89]        *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 901 (Minn. 1983).

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial                    Page 49 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 52 of 54

<u>**CONCLUSION**</u>

For the reasons set forth herein, the Court should grant Defendants' motion for summary judgment or, alternatively, limit the issues for trial.

DATED this 20th day of June, 2006.          Respectfully submitted,


JERMAIN, DUNNAGAN & OWENS PC
Attorneys for Defendants


By:   <u>s/Diane F. Vallentine</u>
       Diane F. Vallentine
       3000 A Street, Suite 300
       Anchorage, Alaska 99503
       (907) 563-8844 (telephone)
       (907) 563-7322 (fax)
       Alaska Bar No. 7710177

*Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.*, Case No. A03-029 CV (TMB)
Memorandum of Points and Authorities in Support of Defendants' Motion for Summary
Judgment or, Alternatively, for an Order Limiting the Issues for Trial          Page 50 of 50

Case 3:03-cv-00029-TMB   Document 181   Filed 06/20/06   Page 53 of 54

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing **Memorandum Of Points And Authorities In Support Of Defendants' Motion For Summary Judgment Or, Alternatively, For An Order Limiting The Issues For Trial** was served on this 20th day of June, 2006 by PDF and U.S. First Class mail, postage prepaid, to the following counsel:

> JON T. GIVENS, ESQ.
> BANKSTON, GRONNING, O'HARA
> 601 W. 5TH AVENUE, SUITE 900
> ANCHORAGE, AK 99501

JERMAIN, DUNNAGAN & OWENS PC
Attorneys for Defendants

By:   s/Diane F. Vallentine
      Diane F. Vallentine
      3000 A Street, Suite 300
      Anchorage, Alaska 99503
      (907) 563-8844 (telephone)
      (907) 563-7322 (fax)
      Alaska Bar No. 7710177