Jon T. Givens, Esq.
Bankston Gronning O'Hara, P.C.
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
(907) 276-1711 (telephone)
(907) 279-5358 (fax)
wbankston@bankston.to

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

ALASKA RENT-A-CAR, INC.,           )
an Alaska Corporation,             )
                                   )
                    Plaintiff,     )
                                   )
v.                                 )
                                   )
CENDANT CORPORATION, et al.,       )
                                   )
                    Defendants.    ) Case No. 3:03-cv-29 [TMB]
_____)

### OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY FOR AN ORDER LIMITING THE ISSUES FOR TRIAL ON COUNT II

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION. ...................................................................................................... 1

I.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE
      CLAIM FOR BREACH OF THE ELA (COUNT I) .................................................. 1

      A.    Alaska Law Governs Contract Interpretation of the ELA. ...................1

      B.    All Defendants are Bound by the Obligations Contained in the ELA. . 2

      C.    ARACS is not Entitled to Summary Judgment on Breach of the ELA. ........ 3

            1.    As a matter of law ARACS breached the ELA. ................................ 3

            2.    Defendants contention Avis Budget Car Rental is the 'actor' and not
                  ARACS is a fraud and a sham. ......................................................... 5

            3.    Cendant and Avis jointly acquired Budget assets in breach of the
                  ELA and ASA. ................................................................................ 6

            4.    As a matter of law ARACS, is in breach for refusing to allow Alaska
                  Rent-A-Car to operate Budget. ......................................................... 7

II.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR A
      LIMITATION OF THE ISSUES FOR TRIAL ON COUNT II. ............................. 9

      A.    Alaska Rent-A-Car is a Party to the ASA. ..................................... 9

            1.    Defendants are judicially and collaterally estopped to deny Alaska
                  Rent-A-Car is a party to the ASA. .................................................. 9

            2.    Alaska Rent-A-Car's July 24, 2001, cover letter to its Statement of
                  Joinder was not a rejection of the Statement of Joinder. ................. 10

            3.    Alaska Rent-A-Car timely accepted. .............................................. 12

      B.    Summary Judgment Should be Entered Against the Defendants on Their
            Attempt to "Narrow the Issues for Trial." .................................... 13

Bankston Gronning O'Hara, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page i
A3388\05\SUMMARY JUDGMENT\DEFENDANTS\OPPOSITION\OPPsummary judgment

Case 3:03-cv-00029-TMB    Document 199    Filed 07/31/06    Page 2 of 56

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

1.  Cendant does not have the right to acquire an additional car rental company. .......................................................................... 13

2.  Salerno's Declaration violates the parol evidence rule. .................. 15

    a.  Salerno's Declaration is not admissible. .............................. 15

    b.  There is neither ambiguity, nor essential terms missing. .... 16

    c.  The parol evidence rule bars varying the ASA. .................. 16

3.  Defendants misconstrue the ASA. .................................................. 18

4.  The remedies in the ASA are nonexclusive. .................................. 19

5.  In the alternative, the Court should grant summary judgment ordering defendants to pay $25,000,000 to Alaska Rent-A-Car and the parties to consummate a stock sale. ........................................... 20

6.  In the alternative the Court should rule as a matter of law that Alaska Rent-A-Car is entitled to the value of Budget in Alaska. ... 21

III.  ALASKA RENT-A-CAR IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS FOR BREACH OF THE IMPLIED COVENANT, COUNT III. .......... 22

IV.  PLAINTIFF AND NOT THE DEFENDANTS IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE IMPLIED COVENANT NOT TO HINDER PERFORMANCE (COUNT IV). ............................................. 24

V.  DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON COUNT IX. ........ 24

    A.  Genuine Issues of Material Fact Exist to Preclude Summary Judgment on Plaintiff's Status as Third Party Beneficiary to the MLA. ......................... 24

    1.  Alaska Rent-A-Car is a third party beneficiary. .............................. 24

    2.  Injunctive relief based on the MLA is appropriate. ........................ 25

    3.  In the alternative the MLA is nonextrinsic evidence indicating the obligations of the ELA. ................................................................. 26

    B.  Alaska Rent-A-Car Withdraws its Claim to be a Third Party Beneficiary of the Master Motor Vehicle Operating Lease Agreement. ............................. 27

VI.    DEFENDANTS MOTION FOR SUMMARY JUDGMENT ON ANTITRUST
SHOULD BE DENIED. ........................................................................ 27

    A.    There is a Conspiracy in Restraint of Trade. ................................ 27

        1.    Alaska Rent-A-Car is an unwilling co-conspirator in defendants'
price fixing and market segmentation schemes. ............................ 27

        2.    There is not complete economic unity between Alaska Rent-A-Car
and Corporate Sales, so they can conspire. .................................... 32

    B.    Alaska Rent-A-Car has Suffered Antitrust Injury. ....................... 33

VII.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
COUNTS VI, XI, AND XII. .................................................................. 35

    A.    Alaska Rent-A-Car's Claim for Misappropriation of Trade Secrets does not
Displace Other Claims. ................................................................. 35

        1.    The Unfair Trade Practices and Tort Claims are predicated on
theories that are independent of the trade secrets claim. ................ 36

        2.    The Unfair Trade Practices and Tort Claims include more extensive
factual basis than the Trade Secret Claim. ...................................... 37

    B.    A Breach of Contract may also Constitute an Unfair Trade Practice. ........ 38

    C.    Summary Judgment Should be Granted to Plaintiff and not Defendants on
the UTPA Claim (Count VI). ....................................................... 39

    D.    Genuine Issues of Material Fact Preclude Summary Judgment on the Fraud
and Misrepresentation Claims. ..................................................... 40

        1.    The statements are sufficiently definite. ......................................... 40

        2.    The statements at issue were false and statements of fact. .............. 41

        3.    Alaska Rent-A-Car justifiably relied on the statements. ................. 43

    E.    Genuine Issues of Fact Preclude Summary Judgment on the Intentional
Interference With Prospective Economic Advantage Claim. ...................... 43

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]     Page iii
A3388\05\SUMMARY JUDGMENT\DEFENDANTS\OPPOSITION\OPPsummary judgment

VIII.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADE SECRETS CLAIM (COUNT VII). ................................. 45

    A.    Defendants' Conduct Violates the Alaska Uniform Trade Secrets Act. ..... 45

         1.    Many components of the Avis System are trade secrets. ............... 46

         2.    Through the ELAs, Alaska Rent-A-Car acquired an interest in keeping the Avis System proprietary. ............................................. 48

         3.    Defendants have misappropriated, and have allowed Budget to misappropriate, the Avis System. ................................................... 49

         4.    Defendants disclosed Avis' and Alaska Rent-A-Car's confidential pricing information to Budget. ........................................................ 49

Bankston Gronning O'Hara, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

# INTRODUCTION

Defendants' arguments and facts consist of: abbreviated or unsubstantiated arguments inadequate to form the basis for summary judgment, wishful misreading of contract provisions, or disingenuous contentions. Defendants state as an undisputed fact that "Avis does not manage or operate Budget," based on Salerno's declaration, but Salerno, Avis' president, testified he functions as Budget's President.[1]

Defendants' version of undisputed facts are disputed within the context of each subsection of this opposition or for the sake of brevity in Dockets 163, 164, 172, and 178. Defendants allege numerous facts on which they do not rely in their motion.[2]

## I. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT[3] ON THE CLAIM FOR BREACH OF THE ELA (COUNT I).[4]

### A. Alaska Law Governs Contract Interpretation of the ELA.[5]

Where a contract contains a choice of law provision the court should look to Section 187 of the Restatement (Second) of Conflict of Laws.[6] Thus, the public policy analysis relied

---

[1] Exhibit 1, Deposition of F. Robert Salerno at pp 46-49 and 263; Avis' executive VP in charge of sales, now manages Budget's sales; Exhibit 2, Deposition of Chuck Fallon at pp. 22; Avis' executive VP of marketing now manages Budget's marketing. Exhibit 3, Deposition of Scott Deaver at pp. 52-55. Hundreds of "former" Avis employees now manage both Avis and Budget. Saying Avis does not manage Budget shows dishonesty and a lack of candor.

[2] Many alleged facts such as statements by disgruntled former employees and regarding a neighborhood porn shop are gratuitous to the motion.

[3] Alaska Rent-A-Car hereby incorporates in opposition Dockets 164 and 165, Breach of Contract Counts I and II.

[4] Exhibit 4, 1965 License Agreements, Alaska Rent-A-Car executed four separate Exclusive License Agreements (hereinafter "ELA") in 1965 each covering different geographic areas or territories in the State of Alaska. The License Agreements also consist of the 1976 amendments to the License Agreements Exhibit 5, 1976 Amendatory Agreement.

[5] Defendants' raise a false conflict in that they fail to demonstrate any significant difference between New York and Alaska law. Docket 181, Motion at p. 13 n. 9. The proper law to apply is Alaska law. Docket 163, Pierce the Corporate Veil at p. 2 n. 2. The tort claims should be governed by Alaska law. There are Alaska statutory claims governed by Alaska law. Additionally, the ASA contains no choice of law provision and as such Alaska law should apply. Since all other claims in this matter should be decided by Alaska law, it makes no sense to apply New York law only to the ELA.

[6] *Long v. Holland America Line Westours, Inc*., 26 P.3d 430 (Alaska 2001), Section 187 provides: "(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, <u>unless either</u>

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]           Page 1

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

on by Defendants is not the only means by which a contractual choice of law provision may be rejected.

In this case, the court need not apply the public policy analysis because the chosen state, New York, has no substantial relationship with the parties or the transactions at issue.[7] The ELAs which contain the choice of law provision were executed in 1965 and amended in 1976.[8] At that time, Avis was headquartered in New York. The New York choice of law provision is simply a relic of the days when Avis had its principal offices in that state, but years ago it moved to New Jersey.

Only Cendant Corporation (which is splitting up and soon will not exist) maintains its principal offices in New York, but this connection to New York is purely coincidental. Cendant Corporation did not own Avis and did not exist at the time Alaska Rent A Car executed the ELAs and cannot legitimately argue that its offices provide a reasonable basis for a contractual choice of law provision that was drafted decades before the company was formed. Thus, the parties do not have a substantial connection to New York, and there is no reasonable basis for enforcing a New York choice of law provision in the ELAs.[9]

### B. All Defendants are Bound by the Obligations Contained in the ELA.

Defendants contend that Avis Rent A Car System, Inc. (hereinafter "ARACS") is the only party which is a signatory to the ELA and as such a breach of contract action cannot lie against the other defendants. Since piercing the corporate veil and finding the corporations to be alter egos is appropriate in this case, all defendants (not, just signatory or assignees) are

---

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." (emphasis added).

[7] All of the Defendant entities are incorporated in Delaware and all but Cendant have principal offices in Parsippany, New Jersey. Exhibit 3, Docket 67, Defendants' Statement of Ownership. Alaska Rent-A-Car is an Alaska corporation doing business in Alaska with no connection to New York. *Id.*

[8] Exhibit 4, 1965 License Agreements at p. 10; Exhibit 6, 1976 Agreement at p. 5.

[9] *Peterson v. Ek*, 93 P.3d 458, 464 n. 11 (Alaska 2004).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]                    Page 2

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

responsible for the breaches of the ELA.[10] As to all non-signatory defendants, this argument fails for purposes of summary judgment as they have failed to establish their entitlement to summary judgment against the piercing the corporate veil and alter ego theories. Therefore either the argument fails as a matter of law (based on Docket 163) or genuine issues of material fact preclude summary judgment on the claim that all defendants are not parties or otherwise bound by the ELA.

Notwithstanding the piercing issue, the three corporate entities which are franchisors for Alaska Rent-A-Car are each responsible for any breaches of the ELA. The signatory to the 1965 License Agreement is Avis, Inc., and the signatory to the 1976 Agreement is ARACS and the signatory to the Amendatory Agreement in 1976 was Avis, Inc.[11] Defendants cite authority that a nonsignatory is bound by contract where they "assumed or [have] been assigned the contract."[12] In 1965, Avis, Inc. assigned to ARACS the obligations of acting as franchisor.[13] Thus, both Avis, Inc. and ARACS are the franchisor. Cendant Car Rental Group, Inc. was also assigned the role of franchisor.[14] CCRG functions as the franchisor, and is bound by the ELAs.[15]

**C.    ARACS is not Entitled to Summary Judgment on Breach of the ELA.**

**1.    As a matter of law ARACS breached the ELA.[16]**

---

[10] Alaska Rent-A-Car moved for summary judgment on the alter ego and veil piercing theories which is incorporated herein by reference. Docket 163.

[11] Exhibit 6, 1976 Agreement at page 6; Amendatory Agreement at p. 9.

[12] Docket 181, at p. 13 n. 9, *quoting Crabtree v. Tristar Automotive Group*, 776 F. Supp. 155, 166 (S.D. N.Y. 1991).

[13] Exhibit 8 Avis Letter from Shoultz to System Member dated June 4, 1965 and Assignment dated May 12, 1965.

[14] Exhibit 9, Avis Cost Sharing Services Agreement at p. 17.

[15] Avis' management was wholesale transferred to CCRG, Inc. Exhibit 1, Salerno deposition at pp. 140-142. Avis' franchisor is now CCRG according to the president of Avis and CCRG, *Id.* at p. 160. The franchisees pay franchise fees to CCRG. Exhibit 10, Deposition of Michael Collins at pp. 48-49; Exhibit 11, Deposition of Kathleen Klopfer at pp. 59-62; Exhibit 12, Deposition of Frank Gonzalez at pp. 143-145; Exhibit 13, Deposition of 30(b)(6) witness Gerald Mattessich at pp. 82-87; Exhibit 14, Deposition of Bill Von Esmarch at p. 127. Alaska Rent-A-Car pays its franchise fees directly to CCRG, Inc. Exhibit 15, Affidavit of Mary Halcro dated July 28, 2006 at p. 1.

[16] *See generally* Docket 172, Breach of the Implied Covenants and Docket 164.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 3

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

ARACS' own conduct violates the ELA. ARACS has breached the exclusivity provisions of the License Agreement by providing reservations to Budget in Alaska and operating Budget pursuant to the System which was to be licensed in Alaska exclusively to Alaska Rent-A-Car and licensed elsewhere in the nation exclusively to Avis licensees.[17]

As the franchisor, ARACS is prohibited expressly and implicitly by the ELA from competing against its own franchisee in their exclusive territory. Defendants fail to cite a single case in which the franchisor is entitled to compete against its franchisee who holds a license to an exclusive territory. While some courts have wrestled with the question of whether or not to allow a franchisor to compete against a franchisee if the territory was <u>not</u> <u>designated as an exclusive territory</u>, the law is well settled that a franchisor cannot compete against a franchisee in any fashion in their exclusive territory.[18]

Next, defendants contend that ARACS is not in breach of the ELA as the License Agreements do not prevent it from owning or being associated with other vehicle rental systems.[19] However, the ELA states that Alaska Rent-A-Car as licensee agreed "not to be or become associated, directly or indirectly…in any other manner, in any location with an international, national or regional vehicle rental system other than the Avis System or with any other entity in competition with Avis in the vehicle rental business."[20] Thus, if the licensor were to engage in competition with Avis or promote another vehicle rental business, it would thereby be forcing Alaska Rent-A-Car to be in violation of the ELA through association with its own licensor[21]

In ¶ 3.10 of the ELA, Avis Rent A System, Inc. and Alaska Rent-A-Car agreed "to cooperate with licensor and other licensees in promoting, advertising, and developing the

_____

[17] Exhibit 4, 1965 License Agreement at 1-4; Docket 164 at pp. 34-37.
[18] *In Re Vylene Enters., Inc.*, 90 F.3d 1472 (9th Cir. 1996) (*en banc*)(holding that although the franchisee's contract did not provide an exclusive territory the franchisor was nonetheless prohibited from competing in the franchisee's territory); *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 728 (7th Cir. 1979); *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230 (2nd Cir. 1991); Docket 164 at pp. 37-39.
[19] It is disingenuous for Avis to argue it is allowed to promote or manage another car rental business in competition with Avis when its own in-house attorneys have twice written legal opinions stating these very provisions of the ELA would be thereby breached. Exhibit 16, 1969 Kramer Memorandum at pp. 1, 2, 3, 7; Exhibit 17, 1980 Memorandum at pp. 1-2.
[20] Exhibit 4, ELA at 4 ¶ 3.12.

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

international recognition of the System." By promoting another brand for car rental and not providing that brand to Alaska Rent-A-Car, ARACS is in breach. [22] ARACS is in breach of ELA ¶¶ 3.4, 3.10, 3.12 and Avis' Code of Business Conduct incorporated at ELA at ¶ 4.15.[23]

**2.      Defendants contention Avis Budget Car Rental is the 'actor' and not ARACS is a fraud and a sham.**

Defendants contend that ARACS did not breach the ELA because CCRG/Avis Budget Car Rental and not ARACS engaged in the conduct of acquiring, managing, operating, conducting reservation activities, licensing, selling, marketing or otherwise promoting Budget. First, Avis is in breach by allowing literally hundreds of Avis employees to stop performing their job duties solely and dutifully for Avis and to become CCRG/Avis Budget Car Rental employees performing those exact same job functions for both Avis and Budget.[24]

Avis Budget Car Rental is simply the alter ego of ARACS.[25] All Avis management personnel and business methods were converted to Avis Budget Car Rental.[26]

Bob Salerno, president of Avis and Avis Budget Car Rental testified that they could not engage in the foregoing conduct under the moniker Avis, but by calling all of the employees Cendant Car Rental Group employees (now Avis Budget Car Rental employees) they would not be in violation of the agreements.[27] The entire shell game of converting Avis

[21] *Id.*

[22] In Docket 181, at p. 16 n. 10 defendants suggest that the ELA and ASA are inconsistent in that the ELA would allow Avis to acquire and associate with another car rental system but the ASA proscribes such conduct. However, the ASA should be read in harmony with the ELA such that both agreements prohibit the franchisor from competing with the franchisee by promoting another car rental brand or system.

[23] Docket 172 at pp. 5-8.

[24] Exhibit 18, Comparison of Entity Directories.

[25] Docket 163 at pp. 38-47.

[26] The entire Avis fixtures down to the employee desks and pencils were converted from use by ARACS to use by Avis Budget Car Rental to support both Avis and Budget. Exhibit 1, Salerno deposition, at p. 144. The entire Avis computer system hardware was handed over to Avis Budget Car Rental. The entire Avis System computer programs were copied, cloned, or simply used by Avis Budget Car Rental to support both Avis and Budget. Docket 172 at pp. 27-32. Budget was given the Avis Reservation Systems. Docket 172 at pp. 23-27. Budget was put on the Avis Quality Assurance and Customer Service Standards. Docket 172 at pp. 21-22. Budget was provided Avis' business methods and systems. Docket 172 at pp. 34-36.

[27] Exhibit 1, Salerno deposition at pp. 226-234; Salerno deposition at pp. 235-240.

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

into Avis Budget Car Rental was an effort to circumvent the defendants' contractual obligations and is the ultimate elevation of form over substance.[28]

The defendants seek to pretend that since Avis was prohibited by the ELA and Agency Settlement Agreement (hereinafter "ASA") from engaging in the foregoing conduct, they would simply convert Avis into another corporation called "CCRG, Inc."[29] and perform the very same conduct through a different corporation which they were prohibited from performing through any of the Avis companies. By asserting this corporate ruse as a defense, they are now attempting to perpetuate a fraud on this Court.

### 3.    Cendant and Avis jointly acquired Budget assets in breach of the ELA and ASA.

Defendants' contention that Cendant and not Avis acquired the Budget assets is also misleading. In reality both Cendant and the Avis entities acquired the Budget assets. Cendant provided certain financing for the acquisition, but ARACS served as administrator for the financing thereby making the financing possible and its assets backed the financing.[30]

The acquisition cost of the Budget assets consisted of a $110,000,000 cash purchase price and the pay off of roughly $2.3 billion of Budget fleet financing.[31] The assets purchased consisted primarily of Budget's fleet, trademarks, and miscellaneous other assets. The fleet debt of $2.3 billion was the vast majority of the purchase price. The plan at the time of purchase was to liquidate Budget's outdated fleet and have Avis through its subsidiary AESOP entities, acquire a new fleet for Budget.[32] The acquired Budget fleet was sold in less

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

[28] *Id.* at pp. 230 and 236. In defendants' Position Statement they contended "defendants submit that the agreement literally and technically permits" ["elevating form over substance"]. Exhibit 19, Defendants' Position Statement to the Master at p. 6. Of course, this Court should not allow form to be elevated over substance.

[29] And now called "Avis Budget Car Rental LLC" (hereinafter "CCRG" or "CCRG/Avis Budget Car Rental" or "Avis Budget Car Rental").

[30] Exhibit 20, Deposition of Rochelle Tarlowe at pp. 15 and 83. The short term financing used to acquire the assets was secured by $299,000,000 demand note from CCRG/Avis Budget Car Rental, which owned Avis and therefore Avis' assets backed this portion of the financing. *Id.* at pp. 88-89. Additionally, the funds borrowed from the Cendant line of credit were ultimately backed by Avis' assets since Avis accounted for several billion dollars of the equity of Cendant. *See generally*, Docket 163 at pp. 9-11.

[31] Exhibit 21, Funds Flow Memo at 1.

[32] Docket 164 at p. 30.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 6

than 11 months and completely replaced by a new fleet purchased and owned by Avis.[33] Thus the long term cost of the transaction of financing the Budget fleet is borne by Avis.[34]

To suggest that Budget is somehow independent of Avis is false. Avis' assets backed the financing used to initially acquire Budget.[35] Avis is the long term financier of the Budget fleet which was the principle acquisition cost. Avis' entire management structure is utilized to manage Budget. Bob Salerno, Avis' president formed a new company, Cherokee Acquisition Corporation, and appointed Avis officers as officers of Cherokee (which became Budget Rent a Car System, Inc.), and Cherokee, as purchaser, signed the Asset Purchase Agreement.[36] Avis' operating business methods and systems are used to operate and manage Budget.[37] The Avis System is utilized to operate Budget. The Avis Computer Systems are utilized to operate Budget. The Avis reservation business methods and employee training are utilized to operate Budget. The entire Budget fleet is owned by Avis. Avis not only assisted with the acquisition of the trademarks, but Avis has actually developed the Budget brand into a completely new product through the complete retooling of Budget.[38] ARACS allowed all of the foregoing conduct to occur in breach of the ELAs.

Cendant is being split into four separate companies and the residual company will be renamed Avis Budget Group LLC.[39] The very thing that Avis was never allowed to do under the ELA or ASA, *i.e.,* acquire another brand and operate it via the System and not provide it to its licensees, has occurred. The suggestion that the Parent manages and operates Avis and Budget separately is deliberately misleading as the Parent will no longer exist and will consist only of the car rental business run by Avis.

**4.     As a matter of law ARACS, is in breach for refusing to allow Alaska Rent-A-Car to operate Budget.**

---

[33] Docket 164 at p. 30, nn. 204-205.

[34] *Id.*

[35] Docket 163 at pp. 9-11.

[36] Docket 172 at pp. 21-40; Docket 164 at pp. 12-33.

[37] *Id.*

[38] *Id.*

[39] Exhibit 22, SEC Filing Definitive Proxy Statement dated July 26, 2006 p. 5; Exhibit 8, Mattessich deposition at pp. 96-97. Curiously, although Cendant Corporation is spinning out into four separate entities, it has not disclosed the existence of this lawsuit in its filings to the SEC or the investing public. As a pre-existing liability, all four of the separate entities, will remain liable for Cendant's pre-existing liability of this lawsuit.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 7

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Defendants' contend ELA ¶¶ 3.12 and 6.1 and the 1976 Amendatory Agreement ¶ 1.2(b) prohibit Alaska Rent-A-Car from operating another brand. Alaska Rent-A-Car is only prohibited from operating another brand which is <u>not part</u> of the licensed System. The Avis sales force, management, marketing department and operations personnel as well as the Avis business systems, Avis computer systems, and Avis fleet are all utilized to operate Budget. The defendants' breach in acquiring and operating a competing brand is so extreme that Budget is now being operated as part of the System and in connection with the System. [40] Because Budget is now part of the System as a matter of law, Alaska Rent-A-Car is entitled to the System as so modified in its exclusive territory, *i.e.,* entitled to operate Budget in the State of Alaska or entitled to damages equal to the value of operating Budget in Alaska.[41]

The 1976 Amendatory Agreement to the ELA, ¶ 1.2(b) prohibits Avis from "issuing" or "allowing" any "other license or operation in any other city and area of Alaska", unless a right and opportunity to operate such license or operation is first provided to Alaska Rent-A-Car. It would be nonsensical contract interpretation to suggest that in cities where Alaska Rent-A-Car held a license that Budget locations could be licensed to third parties or operated, but in territories in Alaska which were not already licensed to Alaska Rent-A-Car it would have a right of first refusal to acquire those Budget operations or licenses. This is nonsensical because the areas which would be of the greatest concern to Alaska Rent-A-Car from competition would be areas in which it had existing operations, not in territories where Alaska Rent-A-Car did not currently have operations or a license. The logical reading of ¶ 1.2(b) is that Avis is prohibited from competing against Alaska Rent-A-Car in any fashion and will not license to another or operate any competing car rental operation, (Avis, Budget or otherwise) in its exclusive territories.[42]

Paragraph 1.2(b) of the Amendatory Agreement provides that the right of first refusal for Alaska Rent-A-Car "shall apply as well to a license or operation earlier held by Avis or a

---

[40] Docket 179, Damages at pp. 7-13; ELA at 1, ¶ 2, at 5 ¶ 5 ("And the System as so changed or amended, from time to time, shall for all purposes be deemed to be the System referred to in this Agreement.").
[41] Docket 179 at pp. 7-13.
[42] *See generally* Docket 179 at pp. 7-13.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 8

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

third person …"[43] Thus, regardless of whether the license or operation was earlier held by Avis or a "third person" like Budget, the right of first refusal still applies. [44] As a matter of law, Alaska Rent-A-Car is entitled to Budget in the State of Alaska.[45]

## II.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR A LIMITATION OF THE ISSUES FOR TRIAL ON COUNT II.[46]

### A.  Alaska Rent-A-Car is a Party to the ASA.

Bob Salerno, president of Avis and Avis Budget Car Rental, testified he believes Alaska Rent-A-Car is a party to the ASA.[47] All defense counsel in this case signed a pleading stating "Avis Alaska [Alaska Rent-A-Car] became a party to the Agreement [ASA] after the settlement had been reached."[48]  Defendants conceal these facts from the court.

#### 1.  Defendants are judicially and collaterally estopped to deny Alaska Rent-A-Car is a party to the ASA.[49]

Defendants are judicially estopped to contend that Alaska Rent-A-Car is not a party to the ASA. On March 17, 2003, prior to recently inventing their argument that Alaska Rent-A-Car is not a party to the ASA, defendants filed a motion to dismiss "for Failure to Comply

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

[43] Exhibit 6, 1976 Amendatory Agreement at ¶ 1.2(b) at 8.

[44] There is a reciprocal right of first refusal for Avis to purchase Alaska Rent-A-Car's business. The 1976 Agreement ¶ 8 specifically provides Alaska Rent-A-Car is allowed to own any "vehicle rental or leasing business" which has a license or franchise to either use the Avis name or alternatively utilize the System for vehicle rental business. Thus, the Avis name and the System are separate parts of the license and if an additional brand "in connection with a vehicle rental or leasing business" is developed, licensed, acquired or otherwise connected with Avis or the System then it is to be licensed to Alaska Rent-A-Car. Exhibit 6, 1976 Agreement at ¶ 8 at 5.

[45] Docket 179 at pp. 7-13.

[46] In opposition to the defendants' motion, Alaska Rent-A-Car hereby incorporates by reference its motion for summary judgment on Count II at Docket 164.

[47] Exhibit 1, Salerno deposition at pp. 213-214.

[48] Exhibit 19, at 5 n. 5.

[49] In footnote 15 of defendants' motion, they assert without any authority or adequate briefing that the ASA does not apply to Alaska Rent-A-Car because its form of License Agreement is different than certain other licensees' License Agreements. First, defendants' cite no basis for this argument. Second, the U.S. District Court for the Eastern District of New York issued an order pursuant to Rule of Civil Procedure 23(e) requiring "all Avis System Licensees" be given the opportunity to join the ASA. Exhibit 25, Order dated November 14, 1997. Since Alaska Rent-A-Car was an Avis System Licensee, defendants are collaterally estopped to assert it could not join the ASA.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 9

with Mediation Clause in Agreement Pursuant to Contract."[50] In Docket 15 the defendants took the position that as a party to the ASA, Alaska Rent-A-Car was contractually required by the ASA to mediate the present dispute.[51]

Defendants also filed a Motion to Transfer because Alaska Rent-A-Car was a party to the ASA. Specifically, Karen Sclafani,[52] defendants' General Counsel, testified "the plaintiff was not a party to the New York Action, and only later joined in the Settlement Agreement."[53] In the pleading, Docket 14, defendants' stated: (1) " all the parties to this suit [Alaska Rent-A-Car and defendants] are parties to the settlement agreement."; (2) "The plaintiff subsequently joined in the settlement agreement."; (3) "In addition to the 13 licensees named as parties in the New York Action, approximately 33 licensees from across the country, including the plaintiff, joined in the settlement agreement."; and (4) plaintiff has "contractual obligation" under the ASA.[54] Alaska Rent-A-Car is a party to the ASA and summary judgment should be entered accordingly.

> **2.** **Alaska Rent-A-Car's July 24, 2001, cover letter to its Statement of Joinder was not a rejection of the Statement of Joinder.**

Defendants contend that although Alaska Rent-A-Car signed a statement of joinder in the ASA, the cover letter sent with the statement of joinder nonetheless constituted a rejection of the ASA. The defendants' argument fails for a variety of reasons.[55] First, the reason Alaska Rent-A-Car sent a cover letter with the statement of joinder was to confirm the conversation Alaska Rent-A-Car had with Bob Vadnais, Avis' employee at the time in charge of franchise

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

---

[50] Docket 15, Memorandum in Support of Defendants' Motion to Dismiss for Failure to Comply with Mediation Clause in Agreement Pursuant to Contract and 9 U.S.C. § 3.

[51] Docket 15, at p. 4 ("The plaintiff has failed to fulfill a contractual condition precedent to the filing of litigation.") The motion lacked merit because Alaska Rent-A-Car had engaged in dispute resolution both prior to and after initiating litigation. *See generally* Docket 21, Alaska Rent-A-Car's Opposition to the Motion to Dismiss.

[52] Karen Sclafani also is Senior Vice President and Assistant Secretary for Cendant Car Rental Group, Inc., ARACS, Avis Group Holdings, Inc., and Avis Car Rental Group, Inc.

[53] Exhibit 23, Karen Sclafani Affidavit, at p. 7, ¶ 16.

[54] Docket 14, Motion to Transfer at pp. 2, 4 and 12; *see also* Docket 17 at pp. 2-3.

[55] *Kodiak Island Borough v. Large*, 622 P.2d 440, 447-48 (Alaska 1981); *Panhandle Eastern Pipe Line Co. v. Smith*, 637 P.2d 1020, 1023 (Wyo. 1981); *First Nat. Bank of Chicago v. Atlantic Tele-Network Co.*, 946 F.2d 516, 519 (7th Cir. 1991) *Brigdon v. Lamb*, 929 P.2d 1274, 1278 (Alaska 1997) (silence and other conduct was evidence of an affirmation of the addendum to contract).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]        Page 10

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

relations. Bob Vadnais represented to Alaska Rent-A-Car that signing the ASA would only confer additional rights on Alaska Rent-A-Car and that Alaska Rent-A-Car "had nothing to lose" from signing the statement of joinder.[56] The July 24, 2001 cover letter merely confirmed what Avis had represented to Alaska Rent-A-Car in inducing Alaska Rent-A-Car in July of 2001 to sign a statement of joinder.[57]

The cover letter of July 24, 2001[58] also confirmed that the ASA is consistent with the ELA and that "its [ASA] specific terms may clarify and provide for additional rights and obligations."[59] Thus, the defendants' argument that the cover letter rejects the ASA terms assumes the ASA is fundamentally inconsistent with the ELA. Again, the defendants are wrong as the ELA can and should be read in harmony with the ASA. The ASA was executed by a series of very large Avis franchisees all with differing franchise agreements. For the defendants to suggest that the ASA would significantly modify or amend ELAs is without merit considering the lack of provisions in the ASA specifying that given terms of the ELAs were being modified or amended.[60]

At no time did anyone with either the Avis Licensee Association or the Avis defendants ever indicate that Alaska Rent-A-Car had failed to become a party to the ASA due to the July 24, 2001 letter.[61] After receiving the July 24, 2001 letter by certified mail, return

_____

[56] Exhibit 26, Deposition excerpt of Mary Halcro as 30(b) witness dated October 27, 2005 at pp. 29-30; Exhibit 27, Affidavit of Barbara Halcro at p 2.

[57] If Avis believed that the ASA altered and amended licensee's rights under the ELAs at the time they were making representations to the contrary to Alaska Rent-A-Car, then such misrepresentations would be fraudulent inducement as Alaska Rent-A-Car acted in reliance on the representations to enter into the ASA. Alternatively, the statements would simply be negligent misrepresentation.

[58] Exhibit 28, Cover Letter dated July 24, 2001.

[59] *Id.*

[60] Exhibit 29, Settlement Agreement and Release (ASA). Only ASA ¶ IV.D.5. at 7, indicates a specific modification is being made on a specific term of the ELA. Thus, otherwise the ELA and ASA should be read in harmony as the parties would have identified any other areas of conflict between the ELA and ASA if conflict was intended.

[61] Due to the defendants' obligation to speak and raise this issue, their failure to raise this issue previously constitutes a misrepresentation through nondisclosure. Notifying Alaska Rent-A-Car timely that it had not properly accepted the ASA (if that were the case) would have afforded Alaska Rent-A-Car the opportunity to alter and send a different form of acceptance. Therefore, if the defendants' argument is meritorious that Alaska Rent-A-Car did

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 11

receipt requested, defendants never objected and contended that the acceptance was not effective until filing of Docket No. 181 on June 20, 2006.

### 3. Alaska Rent-A-Car timely accepted.

Defendants contend that Alaska Rent-A-Car's Statement of Joinder was untimely and ineffective. However, Bob Vadnais urged Alaska Rent-A-Car to execute the Statement of Joinder shortly before July 24, 2001.[62] The order requiring the ASA to be sent to all Avis licensees and allowing them to join, contained no time limitation.[63] An offer which does not contain an expiration will remain open for acceptance.[64] In this case "Several Avis System licensees returned their Statements of Joinder several years after receiving the notice."[65]

Finally, defendants' unethical lack of candor to this tribunal is duplicitous. On January 20, 2006, defendants and their counsel in this case filed a 60(b) pleading in the Agency Litigation, which had been closed since February 1998, seeking to end the time within which notices of joinder could be accepted as of March 1, 2006.[66] In the pleading, Avis and its counsel (Piper Rudnick) took the position that

> "the order itself, however, contained no express deadline for Avis System licensees to join in the Settlement. More than eight years have passed since the entry of the Order. All Avis System licensees covered by the Order were

---

not accept the ASA, then defendants' nondisclosure and silence in the face of receiving the July 24, 2001 cover letter and signed joinder would constitute a misrepresentation.

[62] Exhibit 27, Affidavit of Barbara Halcro.

[63] Exhibit 25, Order dated November 14, 1997.

[64] *R. E. Crummer and Co. v. Nuveen*, 147 F.2d 3 (7th Cir. 1945)(holding that an offer does not lapse even after a reasonable time if the parties treat the offer as continuing); *Eisenberg*, *Expression Rules in Contract Law and Problems of Offer and Acceptance* 82 Cal. L. Rev. 1127, 1151-52,(Oct. 1994); *Vaskie v. West American Ins. Co.*, 556 A.2d 436 (Pa. Super. 1989)

[65] Exhibit 31, Declaration of Robert Muhs, VP Government Affairs and Counsel of CCRG, dated January 17, 2006 at p. 3 ¶ 11. Bobby Klyce, President of the Avis Licensee Association, testified that there are only ten Avis Licensees who failed to exercise their right to execute a Statement of Joinder to join in the ASA, and Alaska Rent-A-Car is not one of them. **Exhibit 32**, Declaration of Robert W. Klyce dated January 19, 2006 at p. 2 ¶ 7. Additionally, Cary Samowitz, a member of the law firm DLA Piper Rudnick Cray Gary, also testified Alaska Rent-A-Car did join the ASA. Exhibit 24, Declaration of Cary B. Samowitz dated January 20, 2006 at p. 2 ¶ 2.

[66] Exhibit 33, Avis Rent-A-Car System, Inc.'s Memorandum of Law in Support of Motion to Amend Order dated January 20, 2006.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]        Page 12

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

provided notice of their option to join in the settlement and have had ample opportunity to do so."[67]

Defendants contended in the U.S. District Court for the Eastern District of New York in January 2006 that Alaska Rent-A-Car and all but ten other Avis System licensees had executed statements of joinder and joined in the ASA.[68] They then obtained an order from the Court stating "The period of time for licensees to join the settlement has expired. Any joinder notices submitted after March 1, 2006, shall be void and of no effect."[69] That defendants would conceal these filings from this Court while arguing Alaska Rent-A-Car did not timely join the ASA is outrageous.[70]

**B.      Summary Judgment Should be Entered Against the Defendants on Their Attempt to "Narrow the Issues for Trial."**

**1.      Cendant does not have the right to acquire an additional car rental company.**

Defendants are requesting the Court to rule the Parent Corporation, Cendant, had the unrestricted right to acquire Budget. First, defendants are judicially estopped from this argument since at Docket 15 defendants explained to the Court that the right to acquire another car rental business was a conditional right.[71] Second, Avis' own attorneys recognized it would be a breach of the ELA if Avis were to provide management to another car rental company which was purchased by its Parent Corporation.[72] The ELA and ASA should be read in harmony to the maximum extent possible.[73]

---

[67] *Id.* at p. 3.
[68] "All but ten of the Avis system licensees who were sent joinder notices have submitted them." Exhibit 33 at p. 10.
[69] Exhibit 34**,** Order dated March 2, 2006.
[70] Professional Rule of Conduct 3.3. Defendants concealed these facts from plaintiff as well.
[71] Docket 15, Memorandum in Support of Defendants' Rule 12(b)(6) Motion at 3 ("The Settlement Agreement anticipates that the Parent of Avis, then known as HFS Inc., now called Cendant Corporation--may acquire other car rental business and expressly acknowledges its right to do so, <u>subject to certain stated conditions</u>. [IV.B]"). (emphasis added).
[72] Exhibit 16 1969 Kramer Memorandum at p. 1 n. 2.
[73] Defendants are essentially requesting the Court to enter declaratory relief defining the circumstances within which the Parent Corporation could theoretically acquire an additional car rental company. This is a nonjudiciable issue and the Court should decline to issue a ruling where the controversy is not properly before this Court. In reality the Parent Corporation, Cendant and the Avis entities jointly acted to purchase, manage, operate, market,

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 13

Bankston Gronning O'Hara, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

The ASA provides "that the Parent has the right to acquire an additional company so long as the management and operations of the additional company are wholly separate and independent from the management and operations of the Avis Parties, the Car Rental Business and the Licensee Car Rental Business."[74] Thus, ASA ¶ IV.B. contains a condition precedent to the ability of the Parent to acquire, namely the management and operations of the additional company and Avis be kept wholly separate and independent. As demonstrated in Dockets 164, 163, and 172, none of the defendants ever intended to or in fact did keep Avis and Budget wholly separate and independent or keep the management and operations of Avis and Budget wholly separate and independent. The declaration of Salerno submitted by the defendants in support of their opposition even admits that the "purpose of the acquisition was to acquire an additional brand" and "achieving cost savings as a result of combination of certain functions" (of Avis and Budget).[75] Cendant and Avis would never have acquired the additional Budget brand unless they could violate the ASA and combine Avis and Budget management and operations such that they were not wholly separate and independent in order to achieve the cost savings of firing numerous Budget personnel and closing facilities. The Parent failed to satisfy the condition precedent of keeping management and operations wholly separate and independent and was precluded from acquiring Budget under ASA ¶ IV.B. The Avis Parties were similarly forbidden from being involved in the acquisition under ASA ¶ I.B. and ¶ IV.C. Additionally, the Parent breached its obligations under the ASA by allowing Avis to be involved in the acquisition, management, and operations of Budget.[76]

The prohibition on the Parent acquiring another car rental company unless the condition precedent is satisfied remains paramount regardless of the provision of nonexclusive remedies in section IV.D.[77] Further, after having repeatedly reconfirmed that the

---

and sell an additional car rental brand, (not a company because a company was not acquired, only assets were acquired) and such conduct is expressly prohibited by both the ELA and the ASA ¶¶ I.B., IV.B., IV.C, IV.D.6, and V.C. *See generally*, Docket 164 and 172.

[74] Exhibit 29, ASA at 5, ¶ IV.B.

[75] Docket 181, Salerno Declaration at Exhibit 1 at 3, ¶ 6.

[76] Exhibit 29, ASA ¶ IV.A, C.

[77] The ASA provided "although this Section IV.D. contemplates possible situations in which an Additional Company has ceased to be separate or independent from the Avis Parties, the Car Rental Business and/or the Licensee Car Rental Business, it is not intended to and shall not be deemed to qualify or contradict any other provisions of this Agreement." *Id.* at ¶

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 14

Parent cannot acquire another car rental company except as a completely passive investor, the ASA again states "the provisions of Section IV.D. hereof do not and shall not be deemed to constitute or imply an agreement by the Licensees that Parent can acquire, own, manage, create, and grant any licensees/franchisees a license to operate an additional company under any conditions, circumstances or arrangement other than as set forth in Section IV.B."[78] For the foregoing reasons, summary judgment should be entered that the Parent and Avis were both precluded by the ASA from acquiring Budget.

Finally, the Parent which existed at the time of the ASA, will spinout all its assets except the car rental business and no longer exist. Only Avis will survive as Avis Budget Group, Inc., so the 'Parent' will no longer be allowed to acquire under the ASA.[79]

### 2. Salerno's Declaration violates the parol evidence rule.

#### a. Salerno's Declaration is not admissible.

Defendants submit Salerno's declaration on the ASA without explaining whether they contend the agreement is ambiguous and needs parol evidence for its interpretation. Instead, defendants simply assert that Salerno was involved in negotiation of the "business deal". Defendants then fail to cite any legal authority to explain what a "business deal" is and why with a fully integrated contract, the ASA, the "business deal" is relevant for consideration by the Court. Indeed, Salerno at his deposition admitted he was not involved in all of the discussions and negotiations which culminated in the ASA.[80] Salerno did not sign the ASA.[81]

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

IV.D.6. at 7. Further, the ASA explicitly provides that in the event of any dispute which cannot be resolved by way of the nonexclusive remedies in Section IV.D. that the parties may resort to litigation but are still bound by the obligations contained in Sections I and IV, *i.e.,* that the Parent cannot acquire another car rental company unless it satisfies the condition precedent and that the Parent and the Avis Parties all agree to keep sales, marketing, reservations, operations, management, and personnel of Avis completely separate from that of any other car rental company Exhibit 29, ASA at ¶ IV.C.1; *Id.* ¶ IV.C.1-5.

[78] *Id.* ¶ V.C. at 8. (emphasis added).

[79] *Id.* ¶ I.B. at 3.

[80] Exhibit 1, Salerno deposition at pp. 211-225. Salerno attempted to explain his concept of a "business deal" as follows: "Jon [Givens], we'll get into the business deal and then what lawyers do to you in life. The business deal was Avis couldn't acquire another brand. That's what we agreed to. That's the deal. Cendant could acquire another brand. All this mumbo jumbo here [the ASA] how it works, how it fits on org charts, which way it goes, how it happens, beats the hell out of me. The business deal was Avis couldn't acquire another brand. Cendant could acquire another brand."

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 15

Salerno testified that there were aspects of the "business deal" which were different than what was in the ASA.[82] Salerno testified the ASA is a binding contract and nothing in the "business deal" alters the ASA.[83] The Salerno Declaration is a self-serving declaration submitted during litigation and should be ignored.

### b. There is neither ambiguity, nor essential terms missing.

While the court may supply an essential term that was omitted from a contract, there first has to be an inquiry as to whether in fact, "there is an essential term or circumstance for which the parties failed to plan."[84] Simple "[t]estimony of a party as to … subjective intentions concerning the meaning of a particular clause in a contract is not probative unless the party in some way expressed or manifested his understanding at the time of contract formation."[85] In other words, extrinsic evidence of a parties' subjective intent, expressed during the course of litigation, does not establish an issue of fact.[86]

Within the declaration, Salerno goes on to paraphrase his interpretation of the "key business terms of the agreement…," by referencing language that is not found in the contract. Accordingly the declaration in itself "does not establish an issue of fact …."[87]

### c. The parol evidence rule bars varying the ASA.[88]

The parol evidence rule generally precludes parties from using evidence of prior agreements to contradict the written terms of an agreement.[89] A three step process is used to

---

[81] Exhibit 29, ASA at p. 10.

[82] *Id.* at pp. 211-213.

[83] *Id.* at pp. 212-213; *also* pp. 214-219.

[84] *See e.g. Casey v. Semco Energy Inc*., 92 P.3d 379 (Alaska 2004), *citing Restatement (Second) of Contracts,* sec. 204 cmt. d (1981). (Court declines to supplement contract because among other things, the settlement agreements included integration clauses, and the parties made no promises other than what was included in the agreement.)

[85] *Norville v. Carr-Gottstein Foods Co.* 84 P.3d 996, 1003 (Alaska 2004), *citing Peterson v. Wirum* 625 P.2d 866, 870 (Alaska 1981).

[86] *See e.g. Western Pioneer v. Harbor Enters., Inc.* 818 P.2d 654, 657 (Alaska 1991); *Still v. Cunningham*, 94 P.3d 1104,1110 (Alaska 2004).

[87] *Id.; Western Pioneer*, 818 P.2d at 657.

[88] It appears that this case is one of mere contract interpretation rather than one even implicating the parol evidence rule. *See e.g. Western Pioneer v. Harbor Enters.,* 818 P.2d 654, 657 (Alaska 1991).

[89] *See e.g. Froines v. Valdez Fisheries Dev. Assn., Inc.*, 75 P.3d 83, 87 (Alaska 2003); AS 45.02.202.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 16

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

resolve parol evidence issues: "(1) whether the contract is integrated, (2) what the contract means, and (3) whether the prior agreement conflicts with the integrated agreement."[90]

The ASA is integrated.[91] The parties purposely incorporated extensive integration clauses into the ASA.[92] Integration was especially important in this case because the Agreement contemplates pursuant to Federal Rule 23(c) that other Avis licensees who were neither parties to the prior litigation, nor parties to the negotiation of the ASA, would be parties.[93]

In determining the second step of the analysis, the interpretation of the contract, the court as a matter of law first decides if there is conflicting extrinsic evidence.[94] Even though defendants place an interpretative spin on contract language, they do not explicitly say that specific terms of the contract are wrong, or ambiguous.[95] The contract succinctly states certain prohibitions surrounding acquiring another car rental company.[96] As a matter of law the court can determine the meaning of the contract.

Salerno's declaration describes the contract as an expression of the <u>defendants</u>' business purpose,[97] and it does not demonstrate agreement of other parties or Alaska Rent-A-Car. Because defendants neither show conflicting pre-contractual agreements, nor address key terms of the contract which explicitly prohibit joint operation and management of a newly

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

[90] *Froines v. Valdez Fisheries Development.*, 75 P.3d at 87.

[91] *See e.g. Casey v. Semco*, 92 P.3d 379 (Alaska 2004); *Northern Timber Corp. v. State*, 927 P.2d 1281, 1287 (Alaska 1996).

[92] Exhibit 29, ASA and Release dated September 23, 1997 at pp. 8-9,¶ ¶ V. I. J., K., M., N.

[93] Exhibit 25, Order dated November 14, 1997

[94] *Northern Timber Corp. v. State,* at 1287.

[95] Docket 181 Defendants' Motion for Summary Judgment pp. 5, 18-20. Although defendants do not contest the plain language of the ASA, in using language such as "it may keep" the two companies separate; and "it may keep" the management and operations of the new company wholly separate and independent from the management and operations of Avis, defendants mischaracterize and misquote the Agreement as *permissive. Id.* The Agreement's language specifically prohibits consolidation of management and operations. Exhibits 29, ASA at p. 5, ¶ IV.C.1. and 2.

[96] Exhibit 29, ASA at p. 5, ¶¶ IV. B. and C.1. and 2.

[97] Docket 181, Salerno Declaration at Exhibit 1 at p.2 ¶ 5.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]     Page 17

acquired car rental company, the court should ultimately disregard defendants' self-serving contract interpretation (extrinsic evidence).[98]

### 3. Defendants misconstrue the ASA.

Defendants attempt to use Salerno's declaration and deposition testimony to suggest that Avis and Budget could be jointly operated and managed at the Cendant level.[99] The ASA allowed no mixing of the Avis management with management of an additional company, *i.e.,* Budget.[100] The management of Budget was required to be "wholly separate and independent from the management and operations of the Avis Parties, the Car Rental Business and the Licensee Car Rental Business."[101] The defendants are attempting to assert parol evidence, a self-serving Salerno declaration, to suggest that Avis and Budget could be jointly managed if it was done by the Parent Corporation, Cendant. First, the contract states this nowhere. Second the contract states exactly the opposite.[102] By transferring hundreds of Avis management personnel from the Avis entities into a new shell corporation, which is now called Avis Budget Car Rental, and directing them to engage in the very conduct which those employees could not have engaged in while they were Avis personnel, is a shell game and a sham.

Fundamentally, the ASA prohibits joint: management, operations, reservation activities, sales personnel, marketing personnel, sales and marketing activities of Avis and Budget.[103] The limited ability of the Parent to provide like services (not related to car rental services) to Avis and Budget independent of either party's participation did not occur because

---

[98] "The words of an integrated agreement remains the most important evidence of intention." *Western Pioneer,* 818 P.2d at 657 n. 4 (citations omitted).

[99] Docket 181 at pp. 19-20.

[100] Exhibit 29, ASA at IV.B., C. 1 and 2. ASA IV.B. provides that the only common management between Avis and Budget could be a single director but only "so long as such individual is not an officer, consultant or employee of the additional company or of any of the Avis Parties." ASA IV.B. at 5.

[101] *Id.* at IV.B. The ASA also specifically provided that the "personnel of the Avis Parties will function and be maintained separate and apart from those of the additional company." ASA at IV.C.1. The ASA also provided that "the sales, marketing, and reservation activities, operations and personnel will exercise their best efforts to promote the Avis System." and would not be utilized "to make available car rental services other than those provided within the Avis System" ASA at IV.C.2 at 5.

[102] *Id.*

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 18

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Avis and its alter ego, CCRG, and not Cendant provides all such services.[104] Second, this narrow exception must be read so as not to conflict with the blanket prohibitions in the contract mandating Avis and Budget be kept wholly separate and independent.

### 4. The remedies in the ASA are nonexclusive.

The law is well settled that exclusive remedies are disfavored and in order for a contractually provided remedy to be exclusive the agreement must clearly and unambiguously so state.[105] The ASA does not contain language stating that the remedy provisions set forth in ¶ IV.D. are exclusive remedies. Therefore, as a matter of law they are nonexclusive.[106]

The remedy provision of the ASA first provides at IV.D.2 that if the acquired Additional Company has no location or a corporately owned location in the territory of a franchisee, then the Parent and the Avis Parties are required to offer "a right of first refusal

---

[103] *See generally Id* ¶ IV.B., C. 1-5.

[104] Exhibit 29*,* ASA ¶ IV.B. at 5. The ASA does contain a provision stating "the provision of similar or like services to the Avis Parties and an Additional Company shall not be deemed to contravene the separateness and independence of the additional company so long as such services are equivalent and independent of the Avis Parties' or the Additional Company's participation." Exhibit 29, ASA at IV.B. This sentence simply means that the Parent Corporation could provide certain limited services to both Avis and Budget provided that the services were independent of either party's participation, in other words, neither Avis nor Budget could participate in providing the services. *Id.* The ASA's paragraphs need to be read in harmony with one another not in conflict. The defendants are attempting to interpret the limited ability of the Parent to provide like services in ¶ IV.B. to be an exception which swallows the rules at ¶ IV.B. and C of the ASA. To the contrary, the Court should harmonize the provisions and read them consistently. Whatever limited services the Parent Corporation could provide in which neither Avis nor Budget would participate is a hypothetical question and not the reality which has occurred. ASA ¶ IV.C.2. makes clear that services related to car rental business cannot be combined.

[105] *See e.g. U.S. Steel v. M. DeMatteo Const. Co.,* 314 F.3d 43 (1st Cir. 2002); *Nitrin Inc. v. Bethlehem Steel Corp.,* 342 N.E. 2d 79, 86 (Ill. App. 1976); *U.S. v. Illinois,* 144 F.Supp. 2d 990 (D.C. Ill. 2001); 17 Am. Jur.2d *Contracts* sec.710(2002).

[106] Alaska Rent-A-Car believes the ASA is clear and unambiguous and there is no need for extrinsic evidence on its interpretation. However, if the Court finds an ambiguity and a need to consider extrinsic evidence, each witness who has testified on the issue in this case has testified that the remedies in the ASA are nonexclusive. Both Bobby Klyce, signatory to the ASA, and Andrew Halcro testified the ASA provides nonexclusive remedies in ¶ IV.B. Exhibit 35, Deposition of Robert Klyce at pp. 231-232; Exhibit 36, Deposition of Andrew Halcro at pp. 291-292 and 305-311. Additionally, Salerno testified that Avis isn't even required to offer the remedy provisions set forth in IV.D. *See* Exhibit 1, Salerno deposition at p. 219 ("but I'm not required to do it. I don't' have to do it.") *Id.* at 219-222.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]    Page 19

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Case 3:03-cv-00029-TMB    Document 199    Filed 07/31/06    Page 24 of 56

under Section IV.D.2."[107] The ASA then provides the licensee has the right to "accept or decline" to exercise the right of first refusal.[108] The ASA further provides that "the Parent shall offer and the Affected Licensee can accept or decline "three possible remedies."[109] The three possible remedies are: (a) an opportunity to participate in cost savings or (b) "a one-time lump sum payment" or (c) "any mutually acceptable combination of (a) and (b) above."[110] Clearly each of the remedies provided for in IV.D.2. and 3. can be accepted or declined by the licensee. Finally, the ASA explicitly reserves the right to pursue litigation.[111] If the remedies were exclusive, there would be nothing to litigate.

Defendants seize on the language "which shall remain binding and conclusive in the event of any Future Dispute", as the basis for arguing the remedy provisions are exclusive. To find the remedy provisions were exclusive would be internally inconsistent with the language reserving all parties' rights to pursue litigation in ¶ IV.F. and with the language contained in ¶ IV.D.3. whereby the licensee can "accept or decline" the remedies. The Court should read the contract harmoniously so that its provisions are not internally conflicting. All that is stated in ¶ IV.F. is that if the nonexclusive remedies fail to resolve a future dispute (before or even during litigation) the parties can pursue litigation through a reservation of all rights[112]

### 5. In the alternative, the Court should grant summary judgment ordering defendants to pay $25,000,000 to Alaska Rent-A-Car and the parties to consummate a stock sale.

If defendants are correct and the ASA provides the parties exclusive remedy, then the parties have engaged in mediation and reached a negotiated and determined in good faith

---

[107] Exhibit 29, ASA IV.D.2., 3 at 6.

[108] *Id.* IV.D.3.

[109] *Id.* IV.D.3.

[110] *Id.* IV.D.3a-c at pp. 6-7.

[111] *Id.* ¶ IV.F. ("should the steps and limitations provided for in Section IV.D. of this Agreement fail to resolve a Future Dispute the Parties hereto reserve all rights to pursue their claims, defenses and assertions through litigation at any time, subject always to Sections. I. and IV…, which shall remain binding and conclusive in the event of any Future Disputes").

[112] Defendants are judicially estopped to contend the remedies in the ASA are exclusive. Defendants explained their interpretation of the ASA in Docket 15 that Avis licensees were afforded certain rights of first refusal and where such rights were "not offered or accepted", then the Parent Corporation was "obligated to offer either an opportunity to participate in cost savings or a one-time lump sum payment or a combination of the two. The licensee could then 'accept or decline' the offer."; Docket 15, Motion to Dismiss at pp. 3-4.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 20

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 · Fax (907) 279-5358

settlement which would be the exclusive remedy. Alaska Rent-A-Car and the defendants engaged in a two day mediation in Seattle before retired Alaska Superior Court Judge Douglas Serdahely on April 28 and 29, 2004. At the conclusion of the mediation, Judge Serdahely made a mediator's recommendation to both parties that the defendants pay Alaska Rent-A-Car $25,000,000 and that the parties engage in a stock sale whereby Alaska Rent-A-Car sells its stock to defendants.[113] Subsequent to the mediation both parties agreed to the settlement and John Dienelt confirmed in an email that the defendants would pay $25,000,000.[114] Defendants filed a notice with the Court apprising the Court that the parties had reached tentative settlement.[115] Subsequently the defendants attempted to alter the agreed upon and mediator recommended $25,000,000 cash lump sum to $24,500,000 representing a reduction of $500,000 for certain attorney's fees. The defendants' conduct thus caused the settlement agreement to fall apart. If the ASA provides for an exclusive remedy, then the parties have mediated, negotiated and the mediator Judge Serdahely recommended a $25,000,000 cash lump sum payment. Therefore, as a matter of law, the Court should order defendants to pay Alaska Rent-A-Car $25,000,000, and for the parties to consummate a stock sale.[116]

### 6. In the alternative the Court should rule as a matter of law that Alaska Rent-A-Car is entitled to the value of Budget in Alaska.

In the alternative, to the foregoing, if the ASA provides for exclusive remedies and Alaska Rent-A-Car is not entitled to the $25,000,000 lump sum negotiated, then Alaska Rent-A-Car would be entitled to the value of the Budget franchises in Alaska. ASA ¶ IV.D.2. requires Alaska Rent-A-Car to be offered the rights of first refusal for Budget in the State of Alaska. In those areas where there is already an existing Budget licensee, defendants cannot offer Budget licenses without having two Budget licensees competing or without first purchasing the existing Budget licenses. ASA IV.D.3.b. provides that when the Budget licenses cannot be provided in an area to Alaska Rent-A-Car that cash in lieu of the licenses should be paid. Since the cash lump sum payment is in lieu of providing the licenses to

---

[113] Exhibit 15, Affidavit of Mary Halcro at p. 2.
[114] Exhibit 37, Email from John Dienelt; Exhibit 15, Affidavit of Mary Halcro at p. 2.
[115] Docket 47, Notice of Settlement filed by defendants June 1, 2004.
[116] And order a further award to Alaska Rent-A-Car of its attorney's fees and interest.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 21

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Alaska Rent-A-Car then the value of the cash lump sum payment should be equal to the value of the Budget licenses. Therefore, the Court should rule as a matter of law that Alaska Rent-A-Car is entitled to damages equal to the value of the Budget licenses in those areas of Alaska where Budget licensees presently have licenses.[117]

### III.  ALASKA RENT-A-CAR IS ENTITLED TO SUMMARY JUDGMENT ON CLAIMS FOR BREACH OF THE IMPLIED COVENANT, COUNT III.[118]

Defendants contend the implied covenant of good faith and fair dealing cannot apply to defendants which are not parties to either the ELA or ASA. As addressed in Section I above in this Opposition, as franchisor, CCRG/Avis Budget Car Rental, ARACS, and Avis Car Rental Group, Inc., are parties to or assignees of the obligations of franchisors.[119]

All defendants are parties to the ASA. Avis Group Holdings, Inc., ARACS, Avis Car Rental Group, Inc., and Cendant are all signatories to the Agreement.[120] CCRG/Avis Budget Car Rental is an assign and successor of the Avis Parties as well as the alter ego of Avis, and thus an "Avis Party".[121] Additionally, Budget Rent a Car System, Inc. is an affiliate of the Parent and therefore is a "Parent" and bound by the terms of the ASA.[122] Every defendant is a party to the ASA.

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 276-5358

---

[117] Plaintiff would also be entitled to past lost revenue from not receiving the Budget licenses in November 2002 (at acquisition). There are several areas in Alaska where Alaska Rent-A-Car holds licenses for which there is no Budget licensee holding a license for that same area. The Court should enter summary judgment ordering licenses for Budget in those territories to be provided to Alaska Rent-A-Car. The fact that the defendants have never offered Alaska Rent-A-Car licenses for Budget in the areas of the State where there is no existing Budget licensee, is a clear breach of the ASA and is also strong evidence that the remedies are nonexclusive.

[118] Alaska Rent-A-Car hereby incorporates by reference in full. Docket 172.

[119] Further all defendants are liable for the conduct of one another. Docket 163.

[120] *See generally,* Exhibit 29, ASA.

[121] *See generally,* Docket 163 at pp. 39-48; Exhibit 29, ASA definition of "Avis Parties" at 1 definition no. 6.

[122] CCRG/Avis Budget Car Rental could also be considered a "Parent" as it is an affiliate of the Parent Corporation; however, the definition of Parent contained in the ASA "does not include the Avis Parties." Thus, since CCRG/Avis Budget Car Rental is an "Avis Party" it would not be a "Parent". Exhibit 29, ASA at definition no. 15 at p. 2.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]                Page 22

Alaska Rent-A-Car is not using the implied covenant to seek to override any express provisions of the contract[123] but simply to carry out the reasonable expectations of a franchisee in a franchise system, *i.e.,* the franchisor will promote only the franchised system to the exclusion of all others and the franchisor will act dutifully and loyally.[124] Avis' own lawyers opined in 1969 and 1980 that if the Parent acquired another car rental company and Avis provided <u>only</u> certain management services, or if Avis acquired a competitor, it would violate the implied covenant good faith and fair dealing.[125]

---

[123] Defendants restate their arguments from their contention that they have not breached the express terms of the ELA and ASA by acquiring and operating another car rental brand. Having already addressed these contentions in Sections I and II above in this Opposition, Alaska Rent-A-Car will not reiterate those arguments but simply incorporate them by reference. Alaska Rent-A-Car incorporates by reference its motion for summary judgment on the express breach of contract of the ELA and ASA. Docket 164.

[124] On January 7, 2002 Cendant explained the franchise relationship as follows: "The relationship between a franchisor and franchisee has been compared with a marriage: You sign with someone for the long term.…

The goal is to provide franchisees with the support they need to be in business for themselves, not *by* themselves. Cendant Corporation, for example, has succeeded because of a single-minded focus on helping franchisees maximize their profits by providing a wide range of operational and marketing support.… Our goal is to deliver the resources of each of our brands and Cendant directly to each and every franchisee in such a manner that even the most time-strapped customer can benefit from what the franchisor has to offer.…

The franchisor-franchisee relationship must be built on four key areas: trust, execution, communication and appreciation. Trust means keeping promises. Execution means taking action promptly to resolve problems effectively. Communication means consistent contact through franchisee visits, telephone calls, brand conferences and special events. Appreciation means franchisees know they are valued.

Good franchisors know the elements they must bring to the table: advantaged vendor relations, management contract leads and operational and marketing support.

The bottom line is that franchisees want franchisors to help them make more money. They expect their franchisor to continuously develop new markets and add new properties, thereby creating more interest in the brand name and driving more business to each franchisee. Franchisees expect franchisors to build brand awareness and equity, deliver new consumers, maintain consistency across the system and encourage customer loyalty. [emphasis in original] Exhibit 38, Trends and Information Marketing Services Expert Perspective: Good Franchisee Support Equals Great Franchisee Relations at pp. 1-3. Alas, these statements were misrepresentations.

[125] Exhibit 16, 1969 Kramer Memorandum, Exhibit 17, 1980 Memorandum. It is disingenuous for the defendants to now take the exact opposite position.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 23

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

## IV. PLAINTIFF AND NOT THE DEFENDANTS IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM FOR BREACH OF THE IMPLIED COVENANT NOT TO HINDER PERFORMANCE (COUNT IV).

Defendants admit that both Alaska and New York law recognize a claim under the implied covenant not to hinder or prevent performance of the other contracting party. However, they assert that summary judgment should be entered against Alaska Rent-A-Car on its claim for breach of the implied covenant not to hinder or prevent performance not because of the merits of the claim, but because it was plead as a separate Count IV rather than plead as a part of Count III, the plaintiff's other implied covenant claims. Naturally, defendants cite no legal authority for entering summary judgment against a Count under the implied covenant because of the manner in which it is pled.

Counts I, II, III, and IV of plaintiff's First Amended Complaint are fundamentally all contract claims, but it would be inappropriate to enter summary judgment against Counts II-IV on their merits, because defendants would prefer that plaintiff had pled all of the conduct and claims as a single Count rather than as four separate counts. Plaintiff is entitled to summary judgment on the merits of its claims.[126]

## V. DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON COUNT IX.

### A. Genuine Issues of Material Fact Exist to Preclude Summary Judgment on Plaintiff's Status as Third Party Beneficiary to the MLA.

#### 1. Alaska Rent-A-Car is a third party beneficiary.

In 1997 as part of the IPO, ARACS entered into a Master License Agreement ("MLA") with HFS Car Rental, Inc.[127] Since HFS Car Rental Inc. (Avis Inc.), as licensor, had contractual commitments with Licensees nationwide which have exclusive licensed territories pursuant to the ELAs, the territory granted to ARACS was any territory where there were not existing ELAs.[128] Thus, the goal was to protect the Avis Licensees' (including Alaska's)[129] Exclusive Territories from competition by Avis corporate locations. The Avis licensor promised to prevent new competition in the Exclusive Territories, including Alaska.[130]

---

[126] Docket 172 at pp. 42-44.
[127] Exhibit 2.
[128] *Id.* at ¶ 2.2 at 9.
[129] Exhibit 39, Master License Agreement, Alaska licenses are specifically mentioned at p. 58.
[130] *Id.* at p. 9 ¶ 2.2.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 24

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

According to Karen Sclafani, general counsel for defendants, the MLA was created for the protection of both the franchisor, Avis, Inc./HFS Car Rental, Inc. and the other licensees of the Avis System at the time and subsequent thereto.[131] Further, the MLA contains an exhibit specifically identifying the licensees which would be protected by preserving the Avis System.[132] The Master License Agreement also acknowledges that ARACS is responsible for performing services for licensees which would otherwise be the responsibility of the Licensor, HFS Car Rental Inc.[133] Alaska Rent-A-Car and its license agreements are specifically identified in the Agreement.[134] According to the terms of the Agreement, it was designed to protect all licensees including Alaska Rent-A-Car, Inc.[135]

**2.      Injunctive relief based on the MLA is Appropriate.**

ARACS and HFS Car Rental, Inc. (Avis, Inc.) agreed to an unbonded injunction if ARACS as much as "helps" another car rental company. Thus, ARACS and HFS Rental Car, Inc. recognizing the contractual obligations to the other System Licensees (including the Alaska Licensee), [136] expressly agreed that ARACS would not take any action to divert

---

[131] Exhibit 40, Deposition of Karen Sclafani at pages pp. 56-58.

[132] Exhibit 39, Master License Agreement at Schedule 4.

[133] *Id.* at p.18 ¶ 10 and Schedule 2 pp. 41-43; Schedule 4 at pp. 46-58.

[134] Exhibit 39, Master License Agreement at Schedule 4.

[135] Specifically, the MLA states that the agreement is to protect and preserve the Avis System and indicates that if the Agreement is not followed that harm could come to both the franchisor as well as the franchisees of the Avis System other than ARACS, *i.e.,* Alaska Rent-A-Car. Exhibit 39, Master License Agreement at Schedule 4.

[136] *Id.* at ¶ 14.2 at p. 20. "licensee [ARACS] covenants that during the term of this Agreement, except as otherwise approved in writing by licensor, <u>licensee shall not</u>, either directly or indirectly, for itself, or through, on behalf of, <u>or in conjunction with any person, persons, partnership, corporation,</u> or limited liability company: (14.2.1) divert or attempt to <u>divert any business or customer of the Licensed Business or Licensor or **other System Licensee** under the System to any competitor,</u> by direct or indirect inducement or otherwise, or do or perform directly or indirectly, any other act injurious or prejudicial to the good will associated with the Proprietary Marks and the System; and (14.2.2) <u>own, maintain, advise, help, manage, invest in, make loans to, be employed by, engage in, or have any interest in or relationship or association with any business engaged in the rental of motor vehicles in the United States</u> other than (I) the Licensed Business (ii) as expressly contemplated to Section 10 hereof, with respect to other System Licensees or (iii) which is acquired by Licensee and is immediately converted to operate as part of the Licensed Business, without the express written consent of Licensor." *Id.* at p. 20 ¶ 14.2.2 (emphasis added). *Id.* at p. 58.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 25

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

customers from either System Licensees or from the Avis System.[137] Additionally, ARACS agreed that it would not make any financial investment in, loans to, invest, manage, or even "help" another car rental business. For the protection of the Avis System and the third-party Avis System Licensees (non-corporate locations of Avis), the parties agreed that ARACS was prohibited from engaging in the foregoing conduct.[138]

Further, they agreed that if ARACS violated the provisions of the Agreement:

> Licensee [ARACS] acknowledges that Licensee's violation of the terms of Section 14 would result in irreparable injury to Licensor for which no adequate remedy at law may be available, and Licensee accordingly consents to the issuance of, and agrees to pay all court costs and reasonable attorneys' fees incurred by Licensor in obtaining, temporary restraining order and/or an injunction prohibiting any conduct by Licensee in violation of the terms of this Section 14. Licensor will not be required to post any bond to secure such injunction.[139]

The foregoing provisions were so important that violations of Section 14 were deemed to be non-curable defaults.[140] Even if Alaska Rent-A-Car is found not to be a third party beneficiary, the agreement between Avis as franchisor and Avis as the world's largest operating Avis franchisee, provided for injunctive relief in the event Avis promoted any car rental operations other than the Avis System. This is an admission by the defendants as to the propriety of injunctive relief and existence of irreparable harm. Thus, this Court should find irreparable harm and grant injunctive relief.

### 3. In the alternative the MLA is nonextrinsic evidence indicating the obligations of the ELA.

Defendants assert the MLA ¶ 30.2 precludes a finding of third party beneficiaries.[141] Defendants also assert since there is an arbitration provision, summary judgment is

---

[137] *Id.*

[138] *Id.* at p. 21.

[139] *Id*. at 14.8.

[140] *Id*. at 17.2.3 at p. 25.

[141] In the alternative, if the Court concludes that Alaska Rent-A-Car is not a third party beneficiary, the Court should still consider the MLA in interpreting the other contracts in this case. The MLA is not parol evidence with respect to the ELAs, but is a subsequent contract entered into by one of the parties to the ELA, the franchisor. The prohibitions in the MLA

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

appropriate under MLA ¶ 31.5.3.[142] However, MLA ¶ 31.4 specifically provides for judicial relief including temporary restraining orders and injunctive relief notwithstanding any alternative dispute resolution provisions including arbitration.

### B. Alaska Rent-A-Car Withdraws its Claim to be a Third Party Beneficiary of the Master Motor Vehicle Operating Lease Agreement.

Alaska Rent-A-Car requests permission of the Court to amend Count IX of its First Amended Complaint to withdraw the request for relief based on the defendants' breach of the Master Motor Vehicle Operating Lease Agreement. The provision in the Master Motor Vehicle Operating Lease Agreement preventing the sublease of Avis' Fleet to any other car rental company should be considered as evidence of Avis' obligations.[143]

## VI. DEFENDANTS MOTION ON ANTITRUST SHOULD BE DENIED.

Defendants only raise two arguments in support of their motion for summary judgment on federal and state antitrust claims – no concerted activity and no antitrust injury. Both arguments fail.[144]

### A. There Is A Conspiracy In Restraint of Trade.

#### 1. Alaska Rent-A-Car is an unwilling co-conspirator in Defendants' price fixing and market segmentation schemes.

Citing *Copperweld Corp. v. Independence Tube Corp.*[145] and *Texaco Inc. v. Dagher*,[146] defendants argue that they are immune from antitrust scrutiny because Cendant

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

against ARACS and the franchisor having any involvement whatsoever with any car rental company echo and reinforce the proper interpretation of the ELA.

[142] Alaska Rent-A-Car did not agree to any limitation of its rights to trial by jury and any such restrictions contained in the MLA would not be binding.

[143] Exhibit 41, The Master Motor Vehicle Operating Lease Agreement was part of a package of contracts executed on or about July 30, 1997, as part of HFS' Initial Public Offering of Avis (hereinafter "IPO") which included the MLA. Ultimately the date of the IPO was also the effective date in September 1997 of the ASA. These Agreements are evidence of the contract obligations of the Avis Parties to keep Avis completely separate.

[144] Docket 170 at pp. 11-22 and Docket 178 at pp. 25-36 incorporated herein. Defendants note that the Federal Trade Commission ("FTC") did not stop the acquisition. Exhibit 42, Affidavit of Warren Grimes. "No evidentiary weight should be accorded to the FTC's negative clearance of the merger between the Avis and Budget franchisors" because the FTC's decision has no preclusive effect on litigants ¶¶ 5-10.

[145] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

[146] *Texaco, Inc. v. Dagher*,126 S.Ct. 1276 (2006).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 27

Corporation, CCRG, Avis Rent a Car System, Inc., and Budget Rent a Car System, Inc. have a unity of interest, and are thus one entity for antitrust purposes. While *Copperweld* and *Dagher* support the argument that defendants are legally incapable of conspiring *amongst themselves*, defendants' motion nonetheless fails. For its Sherman Act § 1 claims, Alaska Rent-A-Car is not alleging a conspiracy <u>amongst</u> the defendants, but rather a conspiracy <u>between</u> defendants, Alaska Rent-A-Car, Alaska's Budget licensees, and other Avis and Budget licensees across the nation.[147] *Copperweld* and *Dagher* have absolutely no bearing on whether defendants, Alaska Rent-A-Car, Corporate Sales & Leasing, Inc. ("Corporate Sales") and others are legally capable of conspiring.

The facts demonstrate that defendants (referred to for antitrust purposes collectively as "CCRG") and Avis and Budget licensees are indeed conspiring to horizontally and vertically fix prices.[148] For large, institutional customers, such as governmental agencies and corporations, high-volume contracts are negotiated between CCRG and institutional customers pursuant to a national accounts program.[149] On a periodic basis, Avis and Budget licensees can opt into the national accounts program by executing a participation agreement.[150] By doing so, the licensees are bound to rent cars at the prices negotiated between CCRG and institutional customers.[151]

CCRG operates the national sales and marketing operations of the Avis and Budget franchises such that the licensees are constrained from competing against one another for

---

[147] Defendants' conspiracy arguments do not apply to Alaska Rent-A-Car's § 2 claims. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 n. 13 (holding that purely unilateral activity is illegal under §2).

[148] Alaska Rent-A-Car hereby incorporates the facts set forth in its *Motion For Summary Judgment Re: Antitrust*, Docket No. 170, which specifically address CCRG's operation of Avis' and Budget's national accounts programs. Alaska Rent-A-Car further notes that Defendants do not plead any facts to support their motion for summary judgment on antitrust claims, but rather rely solely on legal authority inapplicable to the conspiracy alleged by Alaska Rent-A-Car. Although Alaska Rent-A-Car deems that it is entitled to summary judgment on its antitrust claims, at a minimum the facts alleged in its *Motion For Summary Judgment Re: Antitrust* create material issues of fact.

[149] Exhibit 43, Affidavit of Andrew Halcro dated June 19, 2006 at p. 2 ¶ 3.

[150] Exhibit 44, Avis Participation Agreement; Exhibit 45, Budget Participation Agreement.

[151] Exhibit 46, Deposition of Nicholas Sofianopoulos at p. 80 ("if a licensee is fully participating, then the rate [CCRG] approve[s] on a corporate account would be honored at a licensee location.")

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]        Page 28

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

national accounts, and their ability to compete for leisure travelers has also been severely impeded. CCRG – their mutual negotiator for national accounts –sets the prices at which both Avis and Budget licensees must offer car rentals to national accounts customers. CCRG exercises this power such that Budget and Avis do not compete against one another. The testimony of CCRG's executives demonstrates that CCRG has implemented the following bidding guidelines to divide the market between Avis and Budget: (1) price Avis $2-3 higher than Budget for the daily rate for intermediate automobiles;[152] (2) price Avis $25-50 higher than Budget for mini leases;[153] (3) if Budget is an incumbent for an account, do not bid Avis competitively (or at all) lest Budget should be displaced;[154] (4) if Avis is the incumbent for an account, do not bid Budget competitively (or at all) lest Avis should be displaced;[155] (5) if Avis or Budget is the incumbent for a primary/secondary account, bid the other brand for the other position;[156] (6) if the primary/secondary account positions are filled by both Avis and Budget, then attempt to raise the rates without causing the account to go to bid.[157]

CCRG's control of the marketing for both the Budget and Avis franchises also effectuates a horizontal allocation of the market. CCRG markets Budget to economy-minded renters and African Americans.[158] CCRG markets Avis to service-oriented people, Hispanics, gays and lesbians, and disabled renters.[159] CCRG's marketing is funded in part through payments made by the licensees pursuant to their contracts.[160]

The licensees' execution of the participation agreements, as well as the licensees' contribution of funds used by CCRG to fund marketing, and the license agreements provisions for CCRG to market Avis and Budget establish the "contract, combination or

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

[152] *Id.* at pp. 300-301.
[153] *Id.* at pp. 107-108.
[154] *Id.* at pp. 32-33 and 40-41.
[155] *Id.*
[156] *See*, *e.g.*, Exhibit 47, Deposition of Paula Beck at pp. 93-95; Exhibit 48, Deposition of Peter Depaschalis at pp. 123-125.
[157] Exhibit 46, Sofianopoulos deposition at p. 94.
[158] Exhibit 49, Deposition of Becky Alseth at pp. 209 and 325-326.
[159] *Id.* at pp. 209, 328; Exhibit 3, Deaver deposition at pp. 113-114.
[160] Exhibit 49, Alseth deposition at p. 132; Exhibit 58, Stanley deposition at pp. 122-125.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]       Page 29

conspiracy" element, of §1 of the Sherman Act.[161] That Avis and Budget licensees are unwilling co-conspirators does not save CCRG's scheme as "a conspiracy to monopolize may exist even where one of the conspirators participates involuntarily or under coercion."[162]

The contractual arrangements between CCRG, Alaska Rent-A-Car and Corporate Sales effectuate horizontal restraints of trade, which are deemed *per se* violations of the Sherman Act.[163] Horizontal price-fixing is "perhaps the paradigm of an unreasonable restraint of trade."[164] Moreover, "the law is settled that where an upstream supplier participates in a conspiracy involving horizontal competitors, it is proper to analyze the entire restraint as one of horizontal price-fixing."[165] "The common principle… is that a conspiracy is horizontal in nature when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers to eliminate their price-cutting competition.…"[166] In *Bostick Oil Co., Inc. v. Michelin Tire Co.*, the Fourth Circuit ruled that a national accounts program satisfied the concerted action element of § 1 of the Sherman Act.[167]

As operator of company-owned outlets, CCRG is operating at the same level of the market as Alaska Rent-A-Car.[168] When a franchisor or manufacturer competes at the same

---

[161] *See*, *e.g.*, *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 142 (1968)("In any event each [franchisee] can clearly charge a combination between Midas [the franchisor] and himself, as of the day he unwillingly complied with the restrictive franchise agreement.")

[162] *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 973 (7th Cir. 1995) ("the 'combination or conspiracy' element of a § 1 violation is not negated by the fact that one or more of the co-conspirators acted unwillingly, reluctantly, or only in response to coercion"); *City of Vernon v. Southern Cal. Edison Co*., 955 F.2d 1361, 1371 (9th Cir. 1992); *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 682 (9th Cir. 1976) (antitrust conspirator can be held liable for damages even though he participates only under coercion).

[163] *U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218, (1940); *U.S. v. Topco Associates, Inc.*, 405 U.S. 596, 92 S.Ct. 1126 (1972); *U.S. v. Sealy, Inc*., 388 U.S. 350 (1967); *Hammes v. AAMCO Transmissions, Inc*., 33 F.3d 774, 782 (7th Cir. 1994).

[164] *Atlantic Richfield Co .v. USA Petroleum Co.*, 395 U.S. 328, 344, 110 S.Ct. 1884 (1990).

[165] *In Re Mercedes-Benz Antitrust Litig.*, 157 F.Supp.2d 355, 362 (D.N.J 2001); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 462 (3rd Cir. 1998).

[166] *Rossi*, 156 F.2d at 462; *Bostick Oil Co. v. Michelin Tire Co.*, 702 F.2d 1207, 1216 (4th Cir. 1983).

[167] "Analysis of the National Accounts program presents no problem in finding the concerted action element of a §1 violation, as the program itself was a contractual agreement between Michelin and various of its dealers…" 702 F.2d 1207, 1216 (4th Cir.1983).

[168] Exhibit 62, Cendant Corporation's 2005 10-K, at pp. 24-25.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]    Page 30

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

resale level as its licensees or distributors, a conspiracy can exist between the two.[169] This is particularly true if the contract potentially limits interbrand (between brands) as opposed to intrabrand (within a brand) competition.[170]

Likewise, the conspiracy between CCRG, Alaska Rent-A-Car, and Corporate Sales has effectuated anticompetitive market segmentation, which is also a *per se* violation of the Sherman Act. In *U.S. v. Gasoline Retailers Association, Inc*., the 7th Circuit held that an agreement between filling station operators to refrain from advertising amounted to a Sherman Act Violation.[171] Likewise, in *Hammes v. AAMCO Transmissions, Inc.,* Judge Posner ruled that franchisees' practice of allocating customers through a call forwarding system, if proven, constitutes an illegal horizontal restraint of trade.[172] Moreover, customer allocation by competitors through racial or socioeconomic-oriented marketing is not much different (albeit morally reprehensible) from territorial allocation which has been condemned since the Sherman Act has been enacted.[173]

Finally, CCRG's and Alaska Rent-A-Car's agreement that Alaska Rent-A-Car will charge national accounts customers the rates negotiated by CCRG constitutes vertical price

---

[169] *See*, e.g., *Hobart Bros. Co. v. Malcolm T. Gilliland, Inc.*, 471 F.2d 894 (5th Cir. 1973) (holding that distribution agreement which allocated territory between manufacturer and its own distributors was a contract in restraint of trade in violation of Sherman Act.)

[170] *See*, e.g., *American Motors Inns, Inc. v. Holiday Inns, Inc*., 521 F.2d 1230 (3rd Cir. 1975) (holding that since Holiday Inn was dealing on the same market level as its franchisees by operating as well as franchising hotels, its contract with the franchisees that, in effect, foreclosed such franchisees from operating other hotel brands in cities where Holiday Inn operated a company-owned hotel, constituted an unlawful restraint of trade); 1995 Vertical Restraint Guidelines of the National Association of Attorney Generals ("NAAG Guidelines") § 2.3 (providing that restraints imposed by a franchisor will be more likely to be considered horizontal concerted activity, as opposed to vertical, if the restraints diminish interbrand competition or when "the competing independent dealers are also interbrand competitors of the firm at the supplier level."). CCRG may argue that there are no "company-owned" stores in Alaska, thus its activities do not impact Alaska Rent-A-Car. This is not the case. Alaska Rent-A-Car competes with the Budget franchise (whether corporate or franchisee) at a national level for national accounts and leisure business serviced in part in Alaska. Obviously, whether Avis or Budget obtains a national account impacts Alaska Rent-A-Car because corporate customers allocated to Budget by CCRG will not be renting cars from Alaska Rent-A-Car.

[171] *U.S. v. Gasoline Retailers Assn., Inc.,* 285 F.2d 688 (7th Cir. 1961).

[172] *Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 779 (7th Cir. 1994).

[173] *See*, e.g., *U.S. v. Sealy, Inc*., 388 U.S. 350 (1967).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 31

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

fixing. Concerted vertical price restraints have also been held *per se* illegal since the decision in *Dr. Miles Medical Co. v. John D. Park & Sons Co.*[174] CCRG's national accounts program is similar to the national accounts program struck down as an antitrust conspiracy in *Greene v. General Foods Corp.*[175]

CCRG's ability to segment the market between Avis and Budget is not the result of unilateral action.[176] CCRG does not announce prices for its national accounts program and then refuse to deal with those who do not comply. Rather, CCRG periodically invites licensees to execute a contract with CCRG in which the licensees agree to adhere to the prices fixed by CCRG and the national accounts customer.

<div align="center">

**2. There is not complete economic unity between CCRG, Alaska Rent-A-Car and Corporate Sales, so they can conspire.**

</div>

As noted in the case law cited by defendants, firms are only considered to be a single entity and therefore incapable of conspiring when they have "complete unity of interest."[177] Even though "the single-entity inquiry is fact specific," the general "guideline" is that if firms do not have economic unity and are actual or potential competitors, "they are usually not a single entity for antitrust purposes."[178]

Alaska Rent-A-Car does not have unity of interest with the other members of the conspiracy – CCRG and Corporate Sales. Alaska Rent-A-Car and Corporate Sales interests are diametrically opposed, each considers the other their main competitor in Alaska.[179]

---

[174] *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373 (1911).

[175] *Greene v. General Foods Corp.,* 517 F.2d 635 (5th Cir. 1975).

[176] *U.S. v. Colgate & Co.,* 250 U.S. 300, 307 (1919); *Monsanto Corp. v. Spray-Rite Service Co.,* 465 U.S. 752, 761 (1984).

[177] *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990). The Ninth Circuit recently explained the single entity rule as follows: "The theme of these cases is economic unity. Where there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity." *Freeman v. San Diego Assn. of Realtors*, 322 F.3d 1113, 1148 (9th Cir. 2003).

[178] *Freeman*, 322 F.3d at 1148-1149.

[179] Tony Stanley, owner of Corporate Sales, testified that "Alaska Rent A Car, Inc., the local Avis shop is one of Corporate Sales & Leasing, Inc., main competitors in the state of Alaska market. In fact, I view them as our main competitor, and we benchmark how we are doing based on how we compete against Avis." Exhibit 50, Affidavit of Tony Stanley, at ¶1. Alaska

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 32

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Defendants have admitted that Alaska Rent-A-Car and Corporate Sales are not a single economic entity and that they do not share common financial interests.[180]

Likewise, Alaska Rent-A-Car and CCRG are not a single economic entity, nor do they share completely aligned financial interests. As a licensee of only the Avis brand, Alaska Rent-A-Car is interested only with the economic success of Avis, and wants Avis alone to capture as much market share as possible. Each time CCRG wins a national accounts contract for Avis with an entity that does business in Alaska, it creates business for Alaska Rent-A-Car. Conversely, Alaska Rent-A-Car loses a business opportunity each time CCRG wins a national contract for Budget, or loses a bid for Avis for a national account.

Since CCRG performs the national accounts operations of two competing franchises, its loyalty is divided between the two franchises. CCRG strategically bids Avis and Budget so that CCRG can maximize CCRG's market share with both brands, at the expense of the Budget and Avis licensees.[181] CCRG will not competitively bid Avis (or bid Avis at all) if Budget is the incumbent on a national account, and vice versa.[182] CCRG's executives do not care which licensee suffers, so long as CCRG's market share increases.[183] CCRG's divided loyalty is a detriment to Alaska Rent-A-Car, which loses business each time CCRG decides that it is in CCRG's best interests to bid Budget for a given account.[184]

## B. Alaska Rent-A-Car has Suffered Antitrust Injury.

Defendants argue that Alaska Rent-A-Car has not suffered antitrust injury because Alaska Rent-A-Car's "claim appears to be that it has been, or will be, injured as a result of

---

Rent-A-Car considers Budget to be one of its main competitors in the State of Alaska as well. Exhibit 43, Affidavit of Andrew Halcro dated June 19, 2006 at p. 2 ¶2.

[180] Exhibit 51, Avis Rent A Car's Responses to Interrogatories, at Nos. 31 and 32.

[181] *See e.g.* Exhibit 52, Deposition of Philip Dulk 30(b)(6) at p. 32.

[182] Exhibit 46, Sofianopoulos deposition at pp.32-33; Exhibit 53, Deposition of Robert Lambert at p.153; Exhibit 54, Deposition of Steve Kelly at p.159.

[183] *See, e.g., Id.* at p.150 ("Q: And in general, your primary concern is getting as much business for both Avis and Budget combined, not focusing on just one brand or the other, correct? – A: That is my focus"); Exhibit 48, Depaschalis deposition at pp. 124-125; Exhibit 2, Fallon deposition at pp.131-132.

[184] When CCRG chose to bid only Budget to Crowley Maritime, Food Services of America, Providence Health Systems, Trident Seafoods and Wells Fargo, and constrained Avis from bidding for its share of $89 million worth of corporate accounts, it may have been in CCRG's

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

competition from the Budget franchisee in Alaska." Defendants are misconstruing Alaska Rent-A-Car's antitrust claims. Alaska Rent-A-Car is not claiming antitrust injury because defendants are facilitating competition in Alaska. To the contrary, CCRG is constraining Alaska Rent-A-Car and Budget from competing against one another due to CCRG's bidding practices and market segmentation. In other words, Alaska Rent-A-Car is not alleging injury *from competition*, but rather injury *to competition*.[185]

> To have antitrust injury and thus standing to sue, a plaintiff must show that its loss <u>or threatened loss</u> flows from an anticompetitive aspect or effect of the defendant's behavior.[186] Retailers and wholesalers generally have standing to challenge schemes under which their resale prices are fixed by suppliers.[187] In *Blankenship v. Hearst Co.*,[188] the Ninth Circuit explained that wholesalers whose prices were fixed by a manufacturer suffered an antitrust injury because "(a) breakdown of the competitive process. . . would endanger the (plaintiffs') price making autonomy."[189] Moreover, antitrust injury is not limited to situations in which a conspiracy constrains a plaintiff from charging lower prices. In *Knevelbaard Dairies v. Kraft Foods, Inc.*,[190] the Ninth Circuit ruled that milk producers who allegedly had their prices depressed due to a conspiracy sufficiently alleged antitrust injury.[191]

---

economic interest but it was most certainly not in Alaska Rent-A-Car's economic interest. Docket 170 at Exhibit 51.

[185] Exhibit 42**,** Affidavit of Warren S. Grimes, at ¶¶ 11-17.

[186] *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998) (holding that when a plaintiff seeks injunctive relief under the antitrust laws, it "need only show a threatened injury, not an actual one" and stating that "the evident import of Congress' reference to 'threatened loss or damage' is not to constrict the availability of injunctive remedies against violations that have already begun or occurred, but rather to expand their availability against harms that are yet unrealized"); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, (1977); *Cargill, Inc. v. Monfort of Colorado*, 479 U.S. 104, (1986) (holding that Section 16 of the Clayton Act only requires a showing of threatened rather than actual loss).

[187] *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), overruled on other grounds by *State Oil Co. v. Kahn*, 522 U.S.3 (1997)

[188] *Blankenship v. Hearst Corp.,* 519 F.2d 418 (9th Cir. 1975).

[189] *Id.* at 426-27.

[190] *Knevelboard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979 (9th Cir. 2000).

[191] "[T]he central purpose of the antitrust laws, state and federal, is to preserve competition. It is competition – not the collusive fixing of prices at levels either low or high – that these statutes recognize as vital to the public interest. The Supreme Court's

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 • Fax (907) 279-5358

Alaska Rent-A-Car has suffered antitrust injury since the harm it suffers flows directly from CCRG's price fixing, selective bidding, and market segmentation. Alaska Rent-A-Car is constrained from bidding for certain national accounts due to CCRG's bidding guidelines, including: (1) pricing Avis $2-$3 higher than Budget for the daily rate for intermediate automobiles; (2) pricing Avis $25-$50 higher than Budget for mini leases; (3) if Budget is an incumbent for an account, refraining from bidding Avis competitively (or at all) for that account lest Budget should be displaced.

As a result of these guidelines, Alaska Rent-A-Car was constrained from competitively bidding for potentially over $250,000 of business in Alaska from Crowley Maritime, Food Services of America, Providence Health Systems, Lowes, Trident Seafoods, Kroger (Fred Meyer) and Wells Fargo alone.[192] Nationally, Alaska Rent-A-Car was constrained from bidding for its share of $89 million worth of corporate accounts.[193]

CCRG's market segmentation also constrains Alaska Rent-A-Car from advertising to a significant portion of leisure travelers, as well as renters of certain racial and socioeconomic status. This currently harms Alaska Rent-A-Car and is likely to harm it in the future by decreasing its potential customer base. Alaska Rent-A-Car wants to compete for all rental car customers, not just those that CCRG decides to target so that Avis is not competing with Budget.[194]

**VII. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS VI, XI, AND XII.**

    **A.    Alaska Rent-A-Car's Claim for Misappropriation of Trade Secrets does not Displace Other Claims.**

---

references to the goals of achieving "the lower prices, the highest quality and the greatest material progress," *Northern Pac. Ry. Co., v. U.S.*, 356 U.S. 1, 4, and of "assur[ing] customers the benefits of price competition," *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 538 (1983), do not mean that conspiracies among buyers to depress acquisition prices are tolerated. Every precedent in the field makes clear that the interaction of competitive forces, not price-rigging, is what will benefit customers." *Id.* at 988.

[192] Docket 170 at pp. 24-25; Docket 178 at pp. 12-17.

[193] Docket 170 at Exhibit 51, Appendix of Corporate Pricing Approval Forms For Accounts Avis Was Not Bid Competitively Or At All.

[194] Docket 178 at 11-22, 29-34

There are no cases in Alaska interpreting the Alaska Uniform Trade Secrets Act (hereinafter "AUTSA"). The statute provides "AS 45.50.910-45.50.945 <u>displace conflicting</u> tort, restitutionary, or state laws pertaining to civil liability for misappropriation of a trade secret."[195] Defendants' motion fails to demonstrate as a matter of law, Alaska Rent-A-Car's tort or other claims "<u>conflict</u>" with the AUTSA, and thus the motion lacks merit. If defendants' misappropriation of a trade secret is also an UTPA violation or tort, there is no conflict where defendants conduct is prohibited by multiple legal theories.

Defendants fail to acknowledge that the unfair trade and tort claims are separate and distinct, and include a much broader factual basis than the trade secret claim.[196] The vast majority of courts do not require preemption when the other claims either state theories independent of the necessary legal grounds for a trade secret claim, or when the other claims include an additional factual basis.[197] A trade secrets claim is simply that the defendants took Avis proprietary secrets and gave them to Budget. However, defendants also engaged in unfair business practices and torts by stealing Avis customers, price fixing, market segmenting, taking Avis employees, taking Avis management, taking Avis business opportunities, and giving Budget nonconfidential aspects of the Avis System, and fundamentally altering a 50 year business arrangement.

      1.      **The Unfair Trade Practice and Tort Claims are predicated on theories that are independent of the trade secrets claim.**

---

[195] AS 45.50.930(a). (emphasis added).

[196] The law should be "flexible in redressing wrongs" and it is "neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets." *Powell Products, Inc. v. Marks,* 948 F. Supp. 1469, 1474 (D. Col. 1996) (internal quotes omitted) Defendants primarily cite only authorities where the tort or unfair trade practice claims were *entirely* based upon the same operative facts as the trade secret misappropriation claim. Docket 181 at pp. 35-36 n. 53-58

[197] For example, courts have found that there is no preemption when "distinct theories of relief" are "supported by facts unrelated to the misappropriation of the trade secret," *Smithfield Ham & Prods. Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348-349 (E.D. Va. 1995); when the tort claims rest on "different factual and legal grounds than" the trade secrets claim, *Cardiac Pacemakers, Inc. v. Aspen Holding Co., Inc.*, 413 F. Supp. 2d 1016, 1024 (D. Minn. 2006); when the tort claims overlap with, yet are independent of the trade secrets claim, *Pacific Aerospace & Electronics Inc. v. Taylor*, 295 F. Supp. 2d 1205, 1212 (E.D. Wash. 2003); and when other claims are "materially distinct from the misappropriation of trade secrets claim." *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]      Page 36

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

The Alaska Uniform Trade Secrets Act bars the misappropriation of trade secrets. While the misappropriation of trade secrets claim could fall within the purview of the Alaska Unfair Trade Practices and Consumer Protection Act, the UTPA as it is applied in this case encompasses a much broader scope of protection for businesses and consumers.[198] In particular, the Act provides that:

> "(a)    Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.…"[199]

In addition to a broad spectrum of activities that are actionable under the Act, there are 50 enumerated specific acts of conduct that constitute "unfair methods of competition" and "unfair or deceptive acts or practices."

Similarly, the elements of Misrepresentation and Fraud claims are materially distinct from the elements of the trade secrets claim. The elements for "knowing representation or deceit" include: a false representation of fact, scienter, intention to induce reliance, justifiable reliance, and damages."[200] The elements of "negligent misrepresentation" include among other things, "a duty to provide accurate information when there is a duty to speak carefully".[201] The elements for misrepresentation and intentional interference claims are vastly different[202] from a misappropriation claim.

## 2.    The Unfair Trade Practices and Tort Claims include more extensive factual basis than the Trade Secret Claim.

The facts supporting the trade secret misappropriation claim relate to defendants' providing Budget with Avis' operational system, and disclosure of Alaska Rent-A-Car's pricing to the competing, entity bidding for Budget i.e. CCRG. The allegations pertaining to the Unfair Trade Practices Act claim are specifically stated in Alaska Rent-A-Car's motion for partial summary judgment[203] in six different factual areas including: 1) defendants' policy of non-competition between Avis and Budget including selective bidding, and the fixing of

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

[198] AS 45.50.47; *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980).
[199] AS 45.50.471(a). Very few, if any of these specific acts of conduct would encompass misappropriation of trade secrets. AS 45.50.471(b)
[200] *Barber v. National Bank of Alaska*, 815 P.2d 857, 862 (Alaska 1991).
[201] *Barber* 815 P.2d at 862 (citations omitted).
[202] *Odom v. Fairbanks Memorial Hospital*, 999 P.2d 123, 132 (Alaska 2000).
[203] Docket 182, Partial Summary Judgment on Count VI at pp. 37-50.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.*, Case No. 3:03-cv-29 [TMB]        Page 37

prices in both Avis and Budget franchises; 2) defendants' practice of segregating the Avis and Budget markets; 3) defendants' hindering Alaska Rent-A-Car's ability to fulfill its contractual obligations; 4)defendants' operation and management of a competitor within Alaska Rent-A-Car's exclusive territory; 5) defendants' intent to never honor the ASA; and 6) defendants' operation of Budget under the Avis System.[204] Unlike the misappropriation of a trade secret, many of the unfair trade practice claims focus on Defendants unilaterally changing Alaska Rent A Car's business model and relationship. For over 50 years Alaska Rent A Car has made substantial investment in reliance on a business model based on its franchise agreements and relationship with Avis. Defendants fundamentally altered this model and relationship when they acquired and consolidated Avis with Budget. Not only did this alteration result in defendants' realignment with Alaska Rent A Car's competitor, it also unfairly restricted Alaska Rent A Car's full range of business opportunities.[205] The defendants practices of controlling the marketing and pricing and bidding of Budget and Avis, demonstrates serious deceptive and unfair trade practices that go beyond merely misappropriating trade secrets.[206]

Similarly, the factual basis of the Misrepresentation and Fraud claims focus on representations and statements made by defendants, concealment of disloyalty to licensees, and use of shell corporations to circumvent contractual restrictions.[207] These actions have nothing to do with use of a trade secret. The basis for the "interference" claim is much broader than just misuse of trade secrets as it includes bidding, marketing, and sales.[208]

### B. A Breach of Contract may also Constitute an Unfair Trade Practice.

Defendants assert without authority that conduct which breaches a contract cannot also violate a statute, *i.e.,* UTPA. There is no evidence the Alaska legislature intended to exempt violations of the UTPA where the actor also breaches a contract.

The breach of contract and unfair trade practice claims are not mutually exclusive.[209] In fact, the UTPA contemplates protection of consumers and businesses which will of course

---

[204] *Id.* at pp. 38-43, 43-45, 45-46, 46-47, 47-48 and 48-50.
[205] Exhibit 42 Grimes Affidavit pp. 5-8 ¶¶11-16; Docket 178 at pp. 11-22, 29-34
[206] Docket 182 at pp. 39, 40, 43-50; Docket 181 at p.56.
[207] Docket 41, Complaint at pp. 64-68; Exhibit 55, Plaintiff's Position Paper: Topic 32.
[208] Docket 41, Complaint at pp. 68-69; Exhibit 56, Plaintiff's Position Paper: Topic 33
[209] Federal Rule of Civil Procedure 8(e)(2); Even some of the cases cited by defendants indicate that both claims are actionable in the same action. Defendants' Memorandum in

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 38

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

frequently have contracts. Neither Alaska case law nor the statute provide that the existence of a contract bars a claim. The relevant inquiry is not whether there is, or is not a contract, it is whether the defendants' conduct rises to the level of an unfair or deceptive practice.[210]

### C.    Summary Judgment Should be Granted to Plaintiff and not Defendants on the UTPA Claim (Count VI). [211]

Alaska Rent-A-Car has alleged some unfair trade practices that also constitute breach of express and implied covenants. For example, the defendants' breach of contracts allowing encroachment into Alaska Rent-A-Car's exclusive territories, and repositioning defendants into a competitor.[212] These same self-serving actions, however, also demonstrate unfair trade practices.[213] Defendants' admitted practices of selective bidding, price fixing, and marketing exclude Alaska Rent-A-Car from market share and constitute patently "unfair methods of competition" and "deceptive" activities under the Unfair Trade Practices Act.[214] As more extensively discussed in Alaska Rent-A-Car's motion for summary judgment, the above examples indicate manifest "unfairness", and they occur while defendants are engaged in "trade or commerce".[215]

### D.    Genuine Issues Of Material Fact Preclude Summary Judgment On The Fraud And Misrepresentation Claims. [216]

---

Support of Summary Judgment Docket 181, dated June 20, 2006, p. 37 n.62 *citing Arthur D. Little, Inc. v. Dooyang Co.,* 147 F.3d 47 (1st Cir. 1998)( the court affirmed findings of both breach of contract and unfair trade practices); *South Atlantic Limited Partnership of Tennessee L.P.  v. Riese,* 284 F.3d 518 (4th Cir. 2002).

[210] *American Airlines, Inc, v. Wolens*, 513 U.S. 219, 233 (1995) ("The basis for a contract action is the parties' agreement; to succeed under the consumer protection law, one must show not necessarily an agreement, but in all cases, an unfair or deceptive practice"); *State v. O'Neil,* 609 P.2d 520,535 (Alaska 1980). In *Western Star Trucks, Inc. v. Big Iron Equipment Service, Inc.,* 101 P.3d 1047 (Alaska 2004) the plaintiff alleged both an action for breach of contract, as well as unfair trade practices against a truck manufacturer, and a bench trial was held on both claims.

[211] Alaska Rent-A-Car incorporates its motion and memorandum on Count VI at Docket 182 in opposition to defendants Motion for Summary Judgment on Count VI.

[212] Docket 182 at pp. 46-48.

[213] *Id.*

[214] *Id.*

[215] *Id.* at pp. 45-48; AS 45.50.471.

[216] Defendants only sought summary judgment on the fraud claim and only on the representations by Avis that it was trying to make Avis "Number One" and was "trying harder" for Avis. Besides claims for fraud, Alaska Rent-A-Car has misrepresentation claims

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 39

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

Defendants cite *In re Century 21 RE/MAX Real Estate Advertising Claims*[217] for the proposition that Remax's advertising it had become "number one" was too ambiguous to be the basis for a false advertising claim. However, the statements about making Avis "number one" were not vague puffery made in an isolated advertisement. In this case, the "number one" car rental company for decades has been Hertz. In the early 1960s, Avis developed an advertising campaign from which its famous motto was derived, which stated "when you're number two you have to try harder, we're Avis we try harder."[218] At Avis Licensee Conventions for decades, Avis has reported on Hertz's status as being "number one" and Avis' attempts to overtake Hertz as the "number one" market share car rental company.[219] President of Avis, Joe Vittoria encouraged the Avis Licensees to invest in their businesses and take action to help make Avis "number one" in market share and displace Hertz.[220] Joe

for innocent and negligent misrepresentation. Exhibit 55, Position Paper: Topic 32 at 1. The Discovery Master required in lieu of certain 30(b) deposition testimony or interrogatory responses, position papers setting forth the parties positions and contentions. As set forth in Alaska Rent-A-Car's First Amended Complaint and position paper, Alaska Rent-A-Car has several other claims besides the two statements on which the defendants have moved for summary judgment. *See generally* Docket 41, First Amended Complaint Count XI at ¶¶ 129-138; Exhibit 55, Position Paper Topic 32 at 1-15 and Exhibits attached thereto.

[217] *In re Century 21—RE/MAX Real Estate Advertising Claims,* 882 F.Supp. 915 (C.D Cal. 1994).

[218] Exhibit 57, "Remember This Campaign"

[219] Exhibit 7, Affidavit of Andrew Halcro dated July 28, 2006.

[220] "We have here a system which is probably close to what it was when some of you first got involved, and that is, one of the greatest systems in this country, and with the things that Hertz has done, and gotten themselves involved in, probably, our prestige is higher than anybody's.

So, what I want to say to you today is…you have to get off your backs, get on the people that are running your business for you, and get into what it requires to make, and keep, a system great, and it requires participation.

And if we don't see some change coming out of this, and a more active Advertising and Policy Committee that meets and gets something done, then I can tell you that as soon as my obligation to the bank ends, I may look for greener pastures, to deal with people who are business people, and understand that they have something of value, and they are going to protect that something of value, because more for you—and I said this in a meeting in Houston to Bobby Hayes and several people five years ago—you're the ones who have children, and grandchildren, and whatnot that are going to go on with this thing. … So, this thing should mean more to all of you than it means to anybody on this side of the table.…

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 40

<div style="margin-left:auto; writing-mode: vertical">
BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358
</div>

Vittoria, made clear what it meant to be "number one" when he described Avis as "the number two company in the market by only two market share points."[221]

Next, in the ultimate of ironies, Avis' attorneys contend that they do not know what it means to "try harder". That's the problem, when Avis stopped being Avis and became CCRG/Avis Budget Car Rental, Avis stopped trying harder for Avis. As the defendants' postulate the "we try harder" promise of Avis does incorporate many different concepts. However, this simply means there are genuine issues of material fact for a jury to determine what is meant in each given setting by the "we try harder" promise. First, "we try harder" as a representation came from the advertising campaign which was linked to the concept of making Avis "number one" rather than being number two in market share.[222] At Avis licensee conventions over the years, Avis personnel have given presentations and stated that Avis is "trying harder" for Avis with its marketing, sales, and other programs.[223] Bob Salerno, president of Avis and CCRG, testified that he no longer tries harder solely for Avis.[224] Literature sent to licensees also describes how Avis personnel try harder to satisfy customers.[225] When defendants acquire a second brand and utilize the Avis System and personnel to operate that brand, they violate everything they have represented since the early 1960s about trying harder solely for Avis.[226]

## 2. The statements at issue were false and statements of fact.

The statements as set forth in the prior section when put into the context in which they are made, *i.e.,* statements about becoming "number one" in market share, are statements of fact. Additionally, the statements were false when made. Bob Salerno testified that he did not have a goal of making Avis "number one" in market share but rather focused on profitability

---

[G]et out and get back into the Avis system, the way these people over here have done, and made us the number two company in the market by only two market share points." Exhibit 58, Letter from Joe Vittoria to Avis Licensees with transcript of Joseph Vittoria statements to Avis System Advertising and Policy Committee Meeting, November 9, 1988 at pp. 22-24.
[221] *Id.*
[222] *See* arguments above; Exhibit 57, "Remember This Campaign"
[223] Exhibit 7, Affidavit of Andrew Halcro dated July 28, 2006
[224] Exhibit 1, Salerno deposition at p. 263.
[225] Exhibit 27, Affidavit of Barbara Halcro.
[226] *Id.*

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]     Page 41

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

of corporate locations.[227] Additionally, Salerno testified he never intended to honor the terms of the ASA as he always intended to acquire another brand and operate it precisely as it has been operated in this case.[228] Salerno also testified he wanted to have another car rental brand since the early 1990s.[229] The 1969 Kramer memorandum indicates Avis in the 1960s was looking at the prospect of acquiring another car rental company through its parent corporation to be managed by Avis or alternatively acquired directly by Avis. Avis for decades had its sights set on acquiring another car rental company, but all the while was making representations to its licensees that Avis was trying harder for Avis and was promoting Avis to the exclusion of all other car rental brands and was trying to make Avis the "number one" market share car rental company. Planning to acquire another car rental company and at the same time promising to make Avis "number one" and promote Avis to the exclusion of any other car rental company is evidence from which the jury can infer the statements were false when made and were fraudulent. Genuine issues of fact exist precluding summary judgment.

Further, as is indicated by the strategic business plan for 2002 Avis decided it would be cheaper to acquire another car rental company to promote with leisure business rather than develop such a brand within Avis or to promote Avis to the leisure market.[230] Avis gave up on the promise of making Avis "number one" and instead elected to abandon its licensees and make CCRG/Avis Budget Car Rental "number one" by acquiring Budget and promoting Budget rather than Avis to the leisure market place. This is fraud. CCRG now brags that it is the number one on airport market share car rental company.

Next, defendants misquote excerpts of Barbara Halcro's deposition testimony and note she is a 30(b)(6) witness; however, she was not a 30(b)(6) witness on the subject of misrepresentation and defendants are citing her testimony out of context.[231] Indeed, several

---

[227] Exhibit 1, Salerno deposition at pp. 154-155.
[228] *Id.* at pp. 11-14.
[229] *Id.* at pp. 94-95.
[230] Exhibit 59, Avis 2002 Car Rental Budget/Avis Rent-A-Car 2002 Strategic Plan at p. 5. Additionally, the fact the defendants considered harvesting the brand, *i.e.,* destroying the Avis brand demonstrates their bad faith and bad intent which again is inconsistent with the concept of "trying harder for Avis." Exhibit 60, 2005-2009 Strategic Plan CCRG regarding harvesting the brand at p. 9.
[231] The statements quoted from Barbara Halcro indicate clearly that at the time of entering into the 1965 licensee agreements she understood that neither party (Avis or Alaska Rent-A-

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 42

times throughout the history of these parties, Avis promulgated business codes of conduct which they sent out to the licensees and made part of the Operations Manual. The business codes of conduct expressly represented and prohibited Avis personnel from having any financial interest in another car rental corporation or working for any other car rental company.[232]

### 3. Alaska Rent-A-Car justifiably relied on the statements.

Alaska Rent-A-car in 1965 entered into the ELAs and in 1976 entered into the Amendment to its ELAs. In 2001 Alaska Rent-A-Car entered into the ASA. Alaska Rent-A-Car on an annual basis for decades has borrowed millions of dollars to buy fleet and operate its business based on the understanding that the licensor was one hundred percent devoted to promoting Avis to the exclusion of all other car rental brands and would not compete against its licensee.[233] Alaska Rent-A-Car routinely borrows funds every year based on the understanding of the continuing historical nature of the franchise relationship.[234] Alaska Rent-A-Car justifiably relied on the promises.

### E. Genuine Issues of Fact Preclude Summary Judgment on the Intentional Interference With Prospective Economic Advantage Claim.[235]

Defendants assert that because they are parties to the contracts, they cannot tortiously interfere with the contract. In the context of a customer renting from Alaska Rent-A-Car pursuant to a corporate contract, the corporate contract is between Avis Rent-A-Car System, Inc. and the corporate customer (and Alaska Rent-A-Car) but the party who is interfering with the economic relationship is CCRG/Avis Budget Car Rental.[236] If defendants contend that

---

Car) would be allowed to acquire another brand or to compete against each other. This supports, not defeats the misrepresentation claim. Barbara Halcro could only testify as to her own subjective beliefs in entering into the license agreements. Exhibit 27, Affidavit of Barbara Halcro.

[232] Exhibit 61, Rent A Car Administration Manual-Code of Business Conduct at pp. 2.

[233] Exhibit 7, Affidavit of Andrew Halcro at p. 2.

[234] Exhibit 27, Affidavit of Barbara or Mary Halcro.

[235] Defendants contend they are entitled to summary judgment on the intentional interference with prospective economic advantage claim because it is duplicative of the breach of contract claims. Conduct which is a breach of contract but also rises to the level of being an independent tort may be pursued under either tort or contract law. *ARCO Alaska, Inc. v. Akers,* 753 P.2d 1150, 1153-1154 (Alaska 1988).

[236] *See for example* Exhibit 63, sample corporate contract with Avis and Evergreen Aviation.

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

each defendant is *de facto* a party to the contract, then they concede the piercing of the corporate veil argument advanced by Alaska Rent-A-Car. Alternatively, if the defendants contend that the corporate veils should not be pierced and that they are indeed separate companies, then the defense of being a contracting party to an intentional tortious interference claim, does not lie as to any defendant except ARACS.

Further, Alaska Rent-A-Car has a prospective economic advantage with each of its potential customers.[237] The defendants, including ARACS, are not parties to the contract between the actual car rental customer and Alaska Rent-A-Car.[238] Thus, the contracts about which Alaska Rent-A-Car are complaining, *i.e.,* loss of rental contracts between Alaska Rent-A-Car and the individual customer, are not contracts to which any of the defendants are a signatory or a party.

Take for example, the situation where due to the defendants' market segmentation, they market Budget to leisure customers and not Avis and generate leisure business in Alaska for Budget and not Avis.[239] In this setting, there is no contract between the rental customer and Avis corporate. In this setting, Avis and Avis Budget Car Rental are interfering with Alaska Rent-A-Car's prospective economic advantage with leisure rental customers.[240]

The issue of justification is an affirmative defense.[241] The defendants contend their conduct is privileged where they have a direct financial interest and interfere with the contract for economic reasons.[242] The instant case demonstrates circumstances when the privilege is lost. CCRG/Avis Budget Car Rental discussed with IBM the prospect of gaining 50% or 100% of their car rental business for Avis for $35 on an intermediate car rental daily rate.[243] IBM decided they would not shift that volume of their business to Avis but offered to let Avis

---

[237] *Texaco Inc. v. Pennzoil*, 729 S.W.2d 768 (Tex.App. 1st Cir. 1987) w*rit refusal n.r.e* (Nov. 2, 1987); *Odom v. Fairbanks Memorial Hosp.,* 999 P2d 123, 132 (Alaska 2000).

[238] *See for example,* sample rental contract attached as Exhibit 70 at p. 1; None of the defendants in this case are signatories to this contract. In fact, the form contract supplied by the franchisor requires a statement in the contract that Alaska Rent-A-Car is an independent licensee and not an agent of the franchisor.

[239] *See generally* Docket 178 at pp. 25-32.

[240] Docket 178 at 25-32.

[241] *Alyeska Pipeline Serv. Co. v. Aurora Air Serv., Inc.,* 604 P.2d 1090, 1095 (Alaska 1979).

[242] *Bendix Corp. v. Adams*, 610 P.2d 24, 30 (Alaska 1980).

[243] Exhibit 46, Sofianopoulos deposition at pp. 255-260.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 44

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

have 10% of IBM's business.[244] Rather than approaching IBM as requested with an offer for 10% of their business, *i.e.*, $10,000,000 of car rental business, CCRG/Avis Budget Car Rental offered IBM Budget at $37.25 a day and IBM agreed. The customer was denied the opportunity to have superior Avis service and the market was segmented to prevent Avis from receiving $10,000,000 worth of business with IBM. This anticompetitive conduct has caused actual financial loss as Alaska Rent-A-Car does not receive the benefit of its prospective economic advantage with employees of IBM who would be traveling to Alaska on either business or leisure travel. This conduct is an antitrust law violation and clearly an unfair business practice as against Avis. [245] Therefore, as a matter of law, the conduct cannot be privileged. As demonstrated at Docket 178, the defendants' conduct in violating the antitrust laws rises to the level of criminal behavior.[246] The defendants' interference is not privileged because it is anticompetitive, violates statutes, and is criminal.

## VIII. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADE SECRETS CLAIM (COUNT VII).

### A. Defendants' Conduct Violates the Alaska Uniform Trade Secrets Act.[247]

The UTSA bars the misappropriation of trade secrets.[248]

### 1. Many components of the Avis System are trade secrets.

The Avis System encompasses the entire way defendants operate the Avis car rental business.[249] Contrary to defendants' assertions in their motion, Defendants have consistently

---

[244] *Id.* at p. 258.

[245] Docket 178 at p. 16; *see generally* Docket 171.

[246] Docket 178, at pp. 44-46.

[247] The primary components of the Avis System that are trade secrets include the Wizard reservations system, Avis' computer systems, Avis' business methods, Avis' customer service standards, the Operating Manual, and Avis' pricing. It is these and other confidential, proprietary elements of the System, as well as Alaska Rent-A-Car's confidential pricing information that Defendants misappropriated in violation of the Uniform Trade Secrets Act.

[248] "A court may enjoin actual or threatened misappropriation of trade secrets." AS 45.50.910(a). The AUTSA defines trade secrets as information (1) that derives independent economic value from not being generally known or readily ascertainable by proper means, and (2) that is the subject of reasonable efforts to maintain its secrecy. AS 45.50.940(3); *State of Alaska v. Arctic Slope Reg'l Corp.*, 834 P.2d 134, 138 (Alaska 1991).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]  Page 45

BANKSTON GRONNING O'HARA, P.C.
601 W. 5ᵗʰ Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

maintained that the Avis System and its component parts,[250] including certain "Exclusive Systems", are confidential and proprietary trade secrets which derive commercial value by virtue of not being in the public domain.[251] In the Avis Rent A Car Administration Manual, Code of Business Conduct, Section 15.34 (eff. March 22, 1994), Defendants prohibit the disclosure of "Confidential Information" about the company and its operations with the following directive:

> Our employees are expected to not release to any other party any information whatsoever about Avis which is of a confidential nature or which could be deemed to constitute a "trade secret". Employees are further prohibited from using, in any manner whatsoever, Avis-related information which is

<div style="text-align:left; writing-mode: vertical">

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

</div>

[249] "The distinguishing characteristics of the System include our standards and specifications for the goods and services offered under the System; advertising and promotional programs and services; specialized methods and techniques for accounting, record keeping, reporting, and data transfers through written and electronic means; customer charge card services; third party credit card and Avis charge card services; a reservation referral system; an on-line, real time rental and reservations computer system (the "Wizard System") and other computer processing systems (the "Avis Computer System") for use in the conduct and operation of an Avis Rent A Car vehicle rental business; distinctive exterior and interior design, décor, color schemes, and furnishings; training programs; standards, specifications, and procedures for operations; our confidential operating manual currently referred to as the "Operator's Manual" (the "Manual"); and other programs and procedures designed to promote to the public, and further the goal of fast, easy and dependable vehicle rental services;…" Exhibit 64, Uniform Franchise Offering Circular Issued June 15, 2000 (" UFOC") at p. 3 ¶ 3. The Avis System is also defined in the 1965 Exclusive License Agreement Exhibit 4, p. 1.

[250] Defendants argue that Plaintiff's trade secrets claim must fail because the Avis System, characterized as *all* aspects of the business, including Avis' trademarks, website, and former personnel, cannot be a trade secret. Docket 181, Defendants' Motion for Summary Judgment, pp. 47-49. Defendants' argument also undermines its contention that the misappropriation of trade secrets claim displaces other claims, <u>since not all aspects of the Avis System are trade secrets</u>, the misuse of the entire Avis System is not a displaced claim under other legal theories. Defendants claim that because Plaintiff "has not alleged any facts that demonstrate that Avis went to any significant measures to maintain the security of its *entire* business operation," no element of the Avis system can be a trade secret. *Id.* This argument is clearly baseless. Obviously, the red Avis logo prominently displayed is not a trade secret. Similarly, the customer accessible portion of the Avis website is not a trade secret. This does not negate the fact that many of the components of the Avis system are legitimate trade secrets.

[251] Exhibit 71, Excerpt of Computer Services Agreement By and Between ARACS and Wizcom International, Ltd., filed with the U.S. Securities and Exchange Commission, at pp. 26-29 (including provisions for "Safeguarding Avis Data," "Confidentiality," and "Indemnities") and pp. 108-109 (listing "Exclusive Systems").

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 46

confidential, proprietary or privileged, whether for their personal benefit or for that of any other reason. <u>Any information that has not been disclosed publicly in writing should be treated as confidential.</u>[252]

In the Avis Uniform Franchise Offering Circular, potential franchisees are advised they will receive a copy of the Operating Manual, which is "proprietary and confidential" and which "consists of information pertaining to the System including Wizard, the Used Car Business and standards of operation for the Franchised Business."[253] They are instructed to keep the Manual in a secure place" and "only give access to the Manual to employees who need to know in order to operate the Franchised Business."[254]

Charles Fallon, Jr., Executive Vice President Sales, testified access to Defendants' information technology (including "computers, hardware, software, programs, sales force dot.com", "reporting systems, revenue and transaction reporting systems; data warehouse information; sales libraries with content" and "training materials") is restricted and not made available to the public.[255] Defendants' employees are required to maintain confidentiality of the Avis System and its components even after their employment ends.[256]

Defendants refused to produce discovery in this case until a protective order was entered. The Protective Order dated December 8, 2003, and executed by both Plaintiff and Defendants,

---

[252] Exhibit 61, Avis Rent A Car Administration Manual at p. 2 ¶ 8 [Emphasis added].

[253] Exhibit 64, UFOC at p. 34.

[254] *Id.* at p. 34.

[255] Exhibit 2, Fallon deposition, at pp. 270-271. Exhibit 65, Deposition of Theodore Botimer at pp. 256-276. According to Botimer, Yield Management and other systems are trade secrets; Joseph Kirrane, Defendants' 30(b)(6) deponent on Avis System technology, testified that before the Budget acquisition Avis took steps to try to protect its proprietary information and car rental systems. Exhibit 66, Deposition of Joseph Kirrane at p. 214. According to Kirrane, Defendants continue to employ, among other security measures, computer passwords and access codes designed to limit or prevent access to Defendants' information technology and data. *Id.*, at pp. 214-220.

[256] *See, e.g.,* Exhibit 65, Botimer deposition at pp. 273-276 (discussing "broad-brush" confidentiality agreement encompassing all systems); Exhibit 67, Confidential Proposed Draft Separation Agreement and General Release between Cendant Corporation and Kevin M. Sheehan, dated April 4, 2005, at p. 6, ¶ 9 (defining "Confidential and Proprietary Information" to include "all Company…business and strategic plans, financial details, computer programs, manuals, contracts, current and prospective client and supplier lists, and all other documentation, proprietary business knowledge, data, material, property and supplier lists, and developments owned, possessed or controlled by the Company…").

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

acknowledges that "discovery in this action may involve disclosure of certain sensitive or proprietary business, financial and personal information about the parties."[257] The Defendants have utilized the power of this protective order and labeled every document in the case "confidential". Defendants designated as "confidential" business documents such as Corporate Pricing Approval Forms (CPAFs), internal memoranda, and internal e-mails as confidential, as well as some deposition testimony. Recently, Defendants opposed modification of the protective order so that information could be shared with other Avis and Budget licensees and government regulatory agencies.[258]

> ## 2. Through the ELAs Alaska Rent-A-Car acquired an interest in keeping the Avis System proprietary.

The Avis System was developed through a purpose-driven cooperation between Avis and Avis licensees. Early on, Avis Corporate did not have the financial and managerial resources to build a nationwide car rental system, so they developed and expanded the system by granting ELA's to various licensees, including Alaska Rent-A-Car.[259] The purpose of a network of owners and locations was to use the Avis System only to promote Avis for the mutual benefit of licensees and licensor.[260] Inherent within this "exclusive" right is the corresponding duty on the part of defendants not to disclose the Avis System for the benefit of one of Alaska Rent-A-Car's competitors (either in Alaska or nationally).

Defendants focus on the portion of the definition of "misappropriation", which requires the trade secret to be that "of another", and contend Avis is not "another" so it cannot misappropriate its own secrets. However, the "another" is Alaska Rent-A-Car as it holds an exclusive license use of the trade secrets in its territory and to prevent use of the trade secrets by "another" outside the System, *i.e.,* to promote a brand other than Avis. Additionally, Budget Rent A Car System, Inc. and Avis/Budget Car Rental are using the trade secrets of "another" to promote Budget. Budget is using Avis' trade secrets, and this is misappropriation.

---

[257] Exhibit 68, Joint Stipulation for Entry of Protective Order Re Confidentiality and [Proposed] Order, dated December 8, 2003, p. 2.
[258] Exhibit 69, E-mail from John Dienelt of DLA Piper to Jon Givens, dated July 6, 2006, responding to June 30, 2006 letter.
[259] "Licensor...grants to Licensee...an exclusive license to use the System..." Exhibit 1 at p. 1.
[260] *Id.*

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 48

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

3.    **Defendants have misappropriated, and have allowed Budget to misappropriate, the Avis System.**

Although defendants have consistently treated the Avis System and many of its component parts as "trade secrets" as that term is defined by the UTSA, Defendants have nevertheless provided the entire Avis System to Budget for its operation.[261] Defendants, including Budget Rent A Car System, Inc., have misappropriated the Avis System by using it to improve and operate the Budget car rental business in Alaska and elsewhere. Budget now uses Avis' information technology system, Avis' financial system, Avis' reservations system (Wizard), Avis' yield management system, Avis' quality assurance system, and Avis' customer service standards.[262] These myriad systems, once kept confidential as trade secrets, have now been handed to Alaska Rent-A-Car's competitors, Budget Rent a Car System, Inc. and used to aid the Budget Licensees in Alaska.

4.    **Defendants disclosed Avis' and Alaska Rent-A-Car's confidential pricing information to Budget.**

As with most companies that bid competitively for business accounts, a car rental company's pricing strategy is confidential and proprietary.[263] Before CCRG acquired Budget, only the Avis corporate account managers knew the details of Avis and Alaska Rent-A-Car's pricing strategy. Now, those very same individuals who were loyal only to Avis and Avis licensees sell both Avis and Budget.

The consolidation of Avis and Budget pricing and marketing at CCRG means that Budget is now privy to Avis' and Alaska Rent-A-Car's pricing information.[264] For example, when Arctic Slope Regional Corporation's car rental business was up for bid, Alaska Rent-A-Car and Corporate Sales each separately made their request for lower pricing to their respective franchisor's sales representatives, which, because of the integration of the sales

---

[261] *See generally* Docket 172 at pp. 21-35.
[262] Docket 164.
[263] *See, e.g.,* Exhibit 58, Stanley deposition at pp. 164-165. *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410-1411 (11th Cir. 1998), acknowledging that in the hotel industry, pricing, occupancy levels, average daily rates, discounting policies, marketing plans, are trade secrets.
[264] Exhibit 1, Salerno deposition at pp. 38-39, 129-130; Excerpt of James Krapf Deposition dated November 11, 2004 at pp. 148-149; Exhibit 2, Fallon deposition at p. 49; Exhibit 54, Kelly deposition at pp. 80-82.

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 49

force, now just happens to be the same people.[265] Thus, Alaska Rent-A-Car's pricing was provided by CCRG to Budget's sales agents and Budget's pricing was provided by CCRG to Alaska Rent-A-Car's sales agents.[266] This type of improper disclosure of pricing now occurs every time CCRG bids for a corporate account, regardless of whether special pricing is requested, since CCRG sets prices on behalf of both Avis and Budget.[267]

DATED this 31st day of July, 2006.

BANKSTON GRONNING O'HARA, PC
Attorneys for Plaintiff Alaska Rent-A-Car, Inc.

By:    s/Jon T. Givens
       601 W. 5th Avenue, Suite 900
       Anchorage, Alaska 99501
       Phone: (907) 276-1711
       Fax: (907) 279-5358
       E-mail: jgivens@bankston.to
       AK Bar #9011072

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

---

[265] Exhibit 5, ASRC, Inc. CPAF dated October 18, 2004; Exhibit 54, Kelly deposition at pp. 103-104. *See, e.g.,* Exhibit 46, Sofianopoulos deposition at pp. 193-195, 198; Exhibit 53 Kelly deposition dated March 13, 2006 at pp. 103-104.
[266] Tony Stanley of Corporate Sales does not want the same sales agent representing him either. Exhibit 58, Stanley deposition at p. 162.
[267] *See, e.g.,* Exhibit 46 Sofianopoulos deposition at p. 80 (stating that CCRG controls the pricing at licensee locations for corporate accounts).

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]          Page 50

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2006 a copy of foregoing
Opposition to Defendants' Motion for Summary Judgment
or Alternatively for an Order Limiting the Issues for Trial
on Count I was served on:

Diane F. Vallentine
Jermain Dunnagan and Owens P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

John F. Dienelt
DLA Piper Rudnick Gary Cary US LLP
1200 Nineteenth Street NW
Washington, DC 20036-2430

Barry M. Heller
DLA Piper Rudnick Gary Cary US LLP
1200 Nineteen Street NW
Washington, DC 20036-2430

by regular U.S. Mail

s/Jon T. Givens

BANKSTON GRONNING O'HARA, P.C.
601 W. 5th Avenue, Suite 900
Anchorage, Alaska 99501
Tel. (907) 276-1711 - Fax (907) 279-5358

*Alaska Rent-A-Car, Inc. v. Cendant Corp., et al.,* Case No. 3:03-cv-29 [TMB]     Page 51