John F. Dienelt, Esq.
Barry M. Heller, Esq.
Scott McIntosh, Esq.
DLA Piper US LLP
1200 Nineteenth Street, NW
Washington, D.C. 20036-2412
(202) 861-3880 (telephone)
(202) 223-2085 (fax)

Howard S. Trickey, Esq.
Diane F. Vallentine, Esq.
Jermain, Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844 (telephone)
(907) 563-7322 (fax)

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
AT ANCHORAGE

| | |
|---|---|
| ALASKA RENT-A-CAR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. A03-029 CV [TMB] |
| ) | |
| CENDANT CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF SCOTT McINTOSH**

Scott McIntosh, of full age, hereby declares as follows.

1. I am an associate with DLA Piper US LLP in its Washington, D.C. office, and one of the attorneys for Defendants in the above-referenced matter.

2. I make this declaration based upon my personal knowledge.

3. The Court, pursuant to the Minute Order From Chambers dated December 18, 2006, Docket 297, directed the parties to file a joint memorandum, not exceeding ten pages, by January 5, 2007, addressing two primary issues: (1) a clearer explanation of the corporate relationships, including which Defendant is the Licensor; and (2) whether portions of the motion at Docket 178 are moot.

4. On Wednesday, January 3, 2007, at 8:08 p.m. E.S.T. (4:08 p.m. A.S.T.), counsel for Plaintiff Alaska Rent-A-Car, Inc. sent to counsel for Defendants via e-mail a draft joint memorandum for consideration and comment. *See* Exhibit A.

5. On Thursday, January 4, 2007, at 6:37 p.m. E.S.T. (2:37 p.m. A.S.T.), I sent an e-mail to Mr. Givens that: (a) supplied a correct organizational chart for submission with the Joint Memorandum; (b) indicated that we would be forwarding Defendants' section regarding the identity of the Licensor the following day; and (c) indicated that Mr. Givens' draft Joint Memorandum was "slanted in favor of [his] client," that Defendants would propose revisions to ensure the joint portions of the memorandum were presented neutrally, and that Defendants needed clarification regarding a phrase in Mr. Givens' draft in order to complete their comments. *See* Exhibit B.

6. On Friday, January 5, 2007, at 3:57 p.m. E.S.T. (11:57 a.m. A.S.T.), having received no response from Mr. Givens, I sent Mr. Givens another e-mail that contained a proposed markup of the "joint" portions of the memorandum. *See* Exhibit C.

7. On January 5, 2007, at 5:11 p.m. E.S.T. (1:11 p.m. A.S.T.), Mr. Givens sent me an e-mail that, among other things: (a) inquired whether Defendants had an insert to include regarding the identity of the Licensor; (b) indicated that Mr. Givens would add a

signature block for Defendants' counsel; and (c) indicated that Mr. Givens would re-send a revised draft. *See* Exhibit D.

8. On January 5, 2007, at 5:20 p.m. E.S.T. (1:20 p.m. A.S.T.), I replied by indicating that I would be sending Defendants' insert regarding the identity of the Licensor soon. *See* Exhibit E.

9. On January 5, 2007, at 5:51 p.m. E.S.T. (1:51 p.m. A.S.T.), I sent Mr. Givens a copy of Defendants' insert regarding the identity of the Licensor and requested that Mr. Givens "Please send the revised Joint Memorandum so we can determine whether we are agreeable to the complete memorandum." *See* Exhibit F.

10. On January 5, 2007, at 7:37 p.m. E.S.T. (3:37 p.m. A.S.T.), having received no response or revised draft from Mr. Givens, I sent Mr. Givens an e-mail inquiring whether "the revised draft [was] ready for our review." *See* Exhibit G.

11. Having received no response from Mr. Givens, including no indication regarding the time that the revised draft would be sent, I left the office at approximately 8:00 p.m. E.S.T. (4:00 p.m. A.S.T.), intending to review a revised draft of the Joint Memorandum, and to discuss the revised draft with other counsel for Defendants, from home, when the revised draft was received from Mr. Givens.

12. On January 5, 2007, at 8:07 p.m. E.S.T. (4:07 p.m. A.S.T.), Mr. Givens' legal secretary sent a revised draft to me and other counsel for Defendants, but did not attach any of the exhibits referenced therein, including a new exhibit, Exhibit 3. *See* Exhibit H.

13. On January 5, 2007, at 8:07 p.m. E.S.T. (4:07 p.m. A.S.T.), after the draft had been forwarded by Mr. Givens' legal secretary, Mr. Givens sent an e-mail indicating that the revised draft had been sent, stating that obtaining a signature from Diane Vallentine

would be difficult, and inquiring whether he could indicate that the Joint Memorandum was signed for Defendants by consent. *See* Exhibit I.

14. On January 5, 2007, at 8:44 p.m. E.S.T. (4:44 p.m. A.S.T.), Mr. Givens sent me an e-mail stating "I assume we can simply file the joint reply under my signature." *See* Exhibit J.

15. On January 5, 2007, at 8:58 p.m. E.S.T. (4:58 p.m. A.S.T.), I sent Mr. Givens an e-mail from home, responding to his e-mail, stating that I had left the office by the time Mr. Givens sent the revised draft and that I was in the process of reviewing the revised draft. I did not give him permission to file the "Joint Memorandum." *See* Exhibit K.

16. I reviewed the revised Joint Memorandum, as did Ms. Vallentine, Mr. Dienelt, and Mr. Singer, and we planned a conference call to discuss the revised Joint Memorandum.

17. On January 5, 2007, at 9:04 p.m. E.S.T. (5:04 p.m. A.S.T.), without having received approval from Defendants' counsel regarding the revised Joint Memorandum, Mr. Givens replied to my e-mail indicating that he thought it was already filed, that he thought he had made all of the changes from our comments on the first draft, and that he was "head[ing] out to the beach." *See* Exhibit L.

18. At about the same time that I received the e-mail referenced in paragraph 17, I, and other counsel for Defendants, including Mr. Dienelt, Ms. Vallentine and Mr. Singer, commenced a conference call regarding the proposed revised Joint Memorandum to discuss a number of problems with the proposed Joint Memorandum.

19. As the conference call referenced in paragraph 18 was commencing, Mr. Dienelt indicated he had just received the electronic notice of filing indicating that the "Joint Memorandum" had been filed.

20. On January 5, 2007, at 9:13 p.m. E.S.T. (5:13 p.m. A.S.T.), Mr. Givens sent me an e-mail asking whether "everything [was] ok." *See* Exhibit M.

21. On January 5, 2007, at 9:16 p.m. E.S.T. (5:16 p.m. A.S.T.), because Mr. Givens had filed the "Joint Memorandum" without approval from counsel for Defendants and because the revised draft presented a number of problems, ranging from the addition of a new exhibit that Defendants had not seen to several typographical errors, I replied by indicating that everything was not okay. *See* Exhibit N.

22. On January 5, 2007, at 9:35 p.m. E.S.T. (5:35 p.m. A.S.T.), Mr. Givens sent an e-mail inquiring: "What are you referring to?" *See* Exhibit O.

23. Because the filing had already been made—without consent from Defendants' counsel—and because it appeared that there were additional changes made by Mr. Givens in the actual filing that had not been included in *any* drafts shared with counsel for Defendants, which would need to be fully assessed, I did not respond.

24. Upon reviewing the "Joint Memorandum" that was actually filed, in addition to the concerns counsel for Defendants had about the revised draft, I determined that Mr. Givens added an additional exhibit, Exhibit 4, that had not been referenced in *any* draft joint memorandum provided to counsel for Defendants. In addition, notwithstanding Mr. Givens' representation that he thought all of Defendants' comments on the first draft had been incorporated (*see* Paragraph 17, *supra*), Mr. Givens merely moved some slanted language, which counsel for Defendants had specifically indicated should be deleted, into a footnote of a revised Exhibit 1 that had not been provided to counsel for Defendants prior to Mr. Givens' filing of the "Joint Memorandum." In any event, Defendants do not believe that Plaintiff's Exhibit 1 is accurate.

25. Counsel for Defendants would not have consented to the filing of the "Joint Memorandum" in the form proposed by Plaintiff, and would have requested copies of all of the final exhibits before consenting to a joint filing.

26. Now, having seen the final exhibits to the "Joint Memorandum," to which counsel for Defendants had not agreed (and which caused the filing to drastically exceed the limit of ten pages set by the Court's Order at Docket 297), counsel for Defendants would have demanded additional changes to the submission, including deletion of exhibits that caused the filing to exceed ten pages, or else would have suggested that each side prepare its own portion of the memorandum, which could be filed jointly.

Further declarant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 8, 2006.

_____
Scott McIntosh