Jeffrey M. Feldman
ALASKA BAR NO. 7605029
William D. Falsey
ALASKA BAR NO. 0511099
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
907.272.3538
907.274.0819 (Fax)

IN THE DISTRICT COURT FOR THE DISTRICT OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ALASKA RENT-A-CAR, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CENDANT CORPORATION, AVIS RENT A ) | |
| CAR SYSTEM, INC., AVIS GROUP ) | |
| HOLDINGS, INC., CENDANT CAR ) | |
| RENTAL GROUP, INC., AVIS CAR ) | |
| RENTAL GROUP, INC., and BUDGET ) | |
| RENT A CAR SYSTEM, INC. ) | Case No. 3:03-cv-00029-TMB |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
REGARDING THE SCOPE OF ALASKA RENT-A-CAR'S DAMAGES**

In advance of the trial now set to begin in March 2009, plaintiff Alaska Rent-A-Car moves to confirm the scope of damages it is permitted to seek under the court's summary judgment ruling.[1]

---

[1] *See* Pre-Trial Order dated March 17, 2008 (setting trial to begin March 16, 2009) [Docket 362].

# DISCUSSION

Alaska Rent-A-Car appreciates that the court has defined and limited the issues remaining for trial in this case. In its current posture, Alaska Rent-A-Car is entitled to pursue damages only in response to defendants' breach of ¶ IV.C.2 of the parties' Agency Settlement Agreement. As discussed below, pursuant to the court's summary judgment ruling, Alaska Rent-A-Car is entitled to recover compensatory damages or, if an award of compensatory damages fails to render defendants' breach unprofitable, a share of the cost savings that defendants unjustly accrued as a consequence of their opportunistic breach of ¶ IV.C.2. Alaska Rent-A-Car will therefore present evidence to establish both the harm that it suffered, and the gains that defendants reaped as result of their breach.

**I.    THE COURT'S RULING PERMITS ALASKA RENT-A-CAR TO RECOVERY ONLY FOR DEFENDANTS' BREACH OF THE AGENCY SETTLEMENT AGREEMENT.**

In its First Amended Complaint, Alaska Rent-A-Car advanced nine separate liability claims:

- Breach of its License Agreements and Amendatory Agreement       [Count I]

- Breach of the Parties' Agency Settlement Agreement       [Count II]

- Breach of the Implied Covenant of Good Faith and Fair Dealing       [Counts III-IV]

- Violation of Alaska's Unfair Trade Practices Act       [Count VI]

- Violation of Alaska's Unfair Trade Secrets Act       [Count VII]

- Breach of the Master License and Master Motor Operating License       [Count IX]

- Violation of the Sherman Antitrust Act       [Count X]

- Fraud and Misrepresentation       [Count XI]

- Intentional Interference with Prospective Economic Advantage   [Count XII][2]

In its Memorandum Decision and Order, the court awarded partial summary judgment to Alaska Rent-A-Car on its cause of action for breach of the parties' Agency Settlement Agreement [Count II], and dismissed the remaining claims.[3]

As to Count II, Alaska Rent-A-Car had offered evidence to the court that, prior to the acquisition of Budget, Cendant and the Avis defendants transferred most of the assets, functions, and employees of the Avis defendants into a newly created "Cendant Car Rental Group" in order to avoid restrictions in the parties' Agency Settlement Agreement.[4]  Alaska Rent-A-Car argued that the court should disregard the legal

---

[2]   *See* First Amended Complaint, filed April 5, 2004.

[3]   Memorandum Decision and Order, dated July 27, 2007 at 50 [Docket 335].

[4]   *See* Memorandum in Support of Motion to Disregard Defendants' Corporate Form and Pierce the Corporate Veil at 38; *id.* at 41 (quoting Depositions of F. Robert Salerno dated March 11, 2004 and August 4, 2005; and David Blaskey dated October 8, 2003):

> To circumvent the license agreements and the prohibitions of the ASA, the Defendants caused the wholesale transfer of Avis management and operations from the Avis Parties to CCRG/Avis Budget Car Rental. According to F. Robert Salerno, formerly president of ARACS and now president of CCRG/Avis Budget Car Rental, this was done in anticipation of Cendant's acquisition of Budget because of "a settlement we had with the Avis licensees." According to Salerno, the Agency Settlement "basically said that – Avis couldn't operate another car rental company, but that . . . Cendant could" so "we moved forward to move the management at the Cendant level. . . " According to David Blaskey, Cendant executive vice president of mergers and acquisitions, there was one purpose for creating CCRG/Avis Budget Car Rental:
>
> Q.   What was the reason why Cendant Car Rental Group was formed?

distinction between Cendant Car Rental Group and the Avis defendants because Cendant Car Rental Group served merely as a sham corporate parent in a scheme to allow Avis's services to be provided to Budget in violation of the Agency Settlement Agreement.[5]

The court rejected this view. It found that defendants' pre-acquisition transfer of large portions of the Avis entities into a Cendant corporate form had not been done "with the intent or the purpose of . . . justifying or committing a wrong"[6] and ruled that it would respect the corporate forms.[7] Nevertheless, the court found that ¶ IV.C.2 of the Agency Settlement Agreement had been violated.[8]

Paragraph IV.C.2 of the Agency Settlement Agreement memorialized Cendant and the Avis parties' promise that the "sales, marketing and reservation activities, operations and personnel of and for the Avis System" would not be used to "market, provide, and/or

---

      A.    To accommodate the acquisition of Budget Rent-A-Car.

*See also id.* at 27 (quoting Depositions of F. Robert Salerno dated March 11, 2004) ("big chunks – chunks of the corporate structure at Avis were removed, and basically we became Cendant employees right down to the payroll checks.")

[5] *Id.* at 38 ("Defendants are using the corporate form to justify wrong and commit fraud. In particular, Defendants are using a 'new' corporate entity, CCRG/Avis Budget Car Rental, to do what they agreed not to do and are prohibited from doing in their capacity as licensor of Avis and the Avis System, and as ACRG, Avis Group and ARACS, the 'Avis Parties' under the Agency Settlement Agreement ('ASA')").

[6] Order at 17 ("There is simply no evidence that the various subsidiary corporations were formed with the intent or the purpose of . . . justifying or committing a wrong, including fraud, against anyone, let alone [Alaska] RAC.").

[7] *Id.* at 29 ("the Court agrees that if the same services provided by CCRG were provided by an 'Avis party' it would violate the Agency Settlement, [but] it does not necessarily follow, *a fortiori*, that in providing those services CCRG also violates the Agency Settlement.").

[8] *Id.* at 31.

make available car rental services" to any Budget-like "Additional Company," and that "best efforts" would be exercised "to promote the Avis System":

> Should the Parent Acquire an Additional Company, the Parent and the Avis Parties agree that:
> . . .
> 2. the sales, marketing and reservation activities, operations and personnel of and for the Avis System will not be utilized to market, provide and/or make available car rental services other than those provided within the Avis System and such sales, marketing and reservation activities, operations and personnel will exercise their best efforts to promote the Avis System[.][9]

The court found that Cendant had "clearly and unequivocally" breached this provision by employing the same personnel to sell and market the services of both Avis and Budget:

> The evidence in the record clearly and unequivocally establishes that the same [Cendant Car Rental Group] personnel sell and market both Avis and Budget brands. Based on that evidence a rational trier of fact could only find that in so doing CCRG has breached the provisions of ¶ IV.C.2 [of the Agency Settlement Agreement]. [Alaska Rent-A-Car] is entitled to summary judgment in its favor on Count II of the First Amended Complaint as against CCRG as to liability.[10]

Though a breach, the court ruled that defendants' actions did not trigger the liquidated damages provisions of the Agency Settlement Agreement.[11] Instead, the court held that Alaska Rent-A-Car is "entitled to whatever damages it actually incurred as a result of the

---

[9] Agency Settlement Agreement ¶ IV.C.2.

[10] Order at 31.

[11] *Id.* (referring to § IV.D of the Agency Settlement Agreement).

breach," and that the scope of Alaska Rent-A-Car's recoverable damages remains a "triable issue of fact."[12]

## II. ALASKA RENT-A-CAR IS ENTITLED TO RECOVER DAMAGES OR, IF AN AWARD OF DAMAGES FAILS TO RENDER DEFENDANTS' BREACH UNPROFITABLE, TO DISGORGE A SHARE OF THE COST SAVINGS DEFENDANTS OBTAINED BY OPPORTUNISTICALLY BREACHING THE PARTIES' AGREEMENT.

Alaska Rent-A-Car is now entitled, as a matter of law, to recover either compensatory damages or a disgorged share of the cost-savings reaped by defendants as a result of their opportunistic breach.

### A. Alaska Rent-A-Car Is Entitled To An Award of Damages To Place It In As Good A Position As it Would Have Occupied Had Defendants Upheld Their End of the Bargain.

A standard and universal remedy for a breach of a contract is an award designed to place the non-breaching party in "as good as a position" as the party would have occupied, had the contract been performed:

> Judicial remedies . . . serve to protect one or more of the following interests of a promisee:
> (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed;
> (b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or
> (c) his "restitution interest," which is his interest in having restored to him any benefit that he has conferred on the other party.[13]

---

[12]  *Id.* at 32, 31 n.53.

[13]  RESTATEMENT (SECOND) OF CONTRACTS § 344 *Purposes Of Remedies* (1981).

Courts in New York[14] and Alaska[15] routinely approve of awards designed to protect non-breaching parties' "expectation interests," and a similar remedy should be afforded to Alaska Rent-A-Car in this case. Defendants' breach of the Agency Settlement Agreement deprived Alaska Rent-A-Car of the benefit of its bargain and frustrated its expectations.

> **B.     If an Award of Damages Fails to Render Defendants' Breach Unprofitable, Alaska Rent-A-Car Is Entitled To Disgorge A Share Of The Cost Savings Defendants Opportunistically Secured and Unjustly Retain.**

Because no award of damages will entitle Alaska Rent-A-Car to purchase a "full equivalent" to defendants' defaulted performance, Alaska Rent-A-Car is entitled to require that the defendants disgorge a share of the gains they realized as a result of their opportunistic breach of the Agency Settlement Agreement, if an award of compensatory damages fails to render defendants' breach unprofitable.[16]

---

[14]    *See, e.g., Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 2008 WL 423451, __ N.E.2d __ (N.Y. Feb 19, 2008) (quoting *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs.*, 91 N.Y.2d 256, 262 (1998) ("Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed") and *Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 373 (1992) (citing RESTATEMENT § 347 cmt. a. *Measure of Damages In General*).

[15]    *See, e.g.*, *Murray E. Gildersleeve Logging Co. v. Northern Timber Corp.*, 670 P.2d 372, 377 (Alaska 1983) (quoting *Guard v. P & R Enterprises, Inc.*, 631 P.2d 1068, 1071 (Alaska 1981)) ([O]ne "purpose of awarding damages for a breach of contract is to put the injured party in as good a position as that party would have been had the contract been fully performed.")

[16]    *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 39 *Profit Derived from Opportunistic Breach* (T.D. No. 4, 2005).

### 1. Disgorgement Protects Fundamental Interests and Is Awarded to Deter Defendants from Opportunistically Securing a Profit From a Party Who Occupies a Vulnerable Contractual Position.

Disgorgement of a breaching defendant's wrongful gains is an alternative contract remedy that is available in a narrow set of cases.[17] When applicable, it gives effect to two bedrock principles: first, that "a person who has been unjustly enriched at the expense of another is required to make restitution to the other"[18]; and, second, that "a person who interferes with the legally protected rights of another, acting without justification and in conscious disregard of the other's rights, is liable to the other for any profit realized by such interference."[19]

---

[17]   *See, e.g.*, *Peter v. Progressive Corp.*, 2006 WL 438658 (Alaska 2006) (quoting *Knaebel v. Heiner*, 663 P.2d 551, 553 (Alaska 1983)):

> [D]isgorgement is not a cause of action but an equitable remedy which requires a defendant to give up an amount of money equal to the defendant's unjust enrichment. We have held that equitable relief is available only when there is no adequate remedy at law. This court has indicated four types of cases in which damages may be inadequate, justifying equitable relief: "(1) <u>when the thing that plaintiff has been deprived of is unique and irreplaceable</u>, (2) when a legal remedy would require that the plaintiff bring more than one lawsuit, (3) when the defendant is insolvent, and (4) when the amount of damages is highly speculative."

*Cf.* Andrew Kull, *Disgorgement For Breach, The "Restitution Interest," And The Restatement Of Contracts* 79 TEX. L. REV. 2021, 2045 (2001) ("There is a limited class of cases in which enrichment-based restitution offers an attractive explanation of the appropriate remedy for the defendant's breach: it comprises instances of <u>profitable and opportunistic breach</u>[.]") (emphasis added).

[18]   RESTATEMENT (FIRST) OF RESTITUTION § 1 *Unjust Enrichment* (1937).

[19]   RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 3 *No Profit From Conscious Wrongdoing* (D.D. 2000).

Most typically, disgorgement is ordered in contract cases involving "skimped performance," or the breach of a promise to forebear or refrain from engaging in some activity:

> [T]here are "at least two situations in which justice requires the award of restitutionary damages where compensatory damages would be inadequate":
> The first may be described as the case of skimped performance. This is where the defendant fails to provide the full extent of the services which he has contracted to provide and for which he has charged the plaintiff. . . . The second case is where the defendant has obtained his profit by doing the very thing which he contracted not to do.[20]

Cases in the first category are now "well-known in restitution circles,"[21] and cases in the second are most commonly identified as those in which an award of specific performance would be appropriate.[22]

---

[20] Kull, *Disgorgement For Breach,* 79 TEX. L. REV. at 2046 (quoting Lord Woolf).

[21] *Id.* at 2047:

> The defendants in [the skimped-performance] group, all of them well-known in restitution circles, are the mining company that, prior to extraction, undertakes to restore the owner's land after the coal (or phosphates) have been extracted, then refuses to do so, with no appreciable diminution in the value of the land; the firefighting company that promises to keep a hundred men in readiness, then manages to do the job with seventy, without additional loss from fire; the Coca-Cola bottler that agrees to make its product using cane sugar, then substitutes a cheaper sweetening agent, with no detectible difference in the end result; the builder who agrees to construct a house according to specifications, then omits some structural elements, without diminishing the resale value of the completed house; even the tenant who covenants to make specified repairs but refuses to do so, before the landlord sells the building to a purchaser who intends to tear it down.

The latest tentative draft of the Restatement (Third) of Restitution and Unjust Enrichment offers a general rule for determining when a disgorgement award is appropriate in a breach-of-contract case. It begins with the general principle:

> If a breach of contract is both material and opportunistic, the injured promisee has a claim in restitution to the profit realized by the defaulting promisor as a result of the breach. Liability in restitution with disgorgement of profit is an alternative to liability for contract damages measured by injury to the promisee.[23]

A breach is "opportunistic" for purposes of the rule if it is (a) deliberate, (b) profitable, and (c) inadequately deterred by possibility of a money-damages award:

> A breach is "opportunistic" if
> (a) the breach is deliberate;
> (b) the breach is profitable by the test of subsection (3); and
> (c) the promisee's right to recover damages for the breach affords inadequate protection to the promisee's contractual entitlement. In determining the adequacy of damages for this purpose,
>     (i) damages are ordinarily an adequate remedy if they can be used to acquire a full equivalent to the promised performance in a substitute transaction; and

---

[22] *See, e.g.*, Melvin A. Eisenberg, *The Disgorgement Interest In Contract Law*, 105 MICH. L. REV. 559, 584 (2006); RESTATEMENT (THIRD) § 39 cmt. c. ("Not by coincidence, contracts within this description are also those in which the promisee would most often be entitled to protection by injunction, or to a remedy by specific performance; or in which well-advised parties would most often provide by contract (where permitted to do so) for liquidated damages or specific enforceability. Disgorgement by the rule of this Section serves the same contract-reinforcing objectives as the devices just mentioned, at a different stage of contractual performance.").

[23] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT [Tentative Draft No. 4] § 39(1) *Profit Derived From Opportunistic Breach* (2005). Cf. Disgorge at 2044-45

> (ii) damages are ordinarily an inadequate remedy if they cannot be used to acquire a full equivalent to the promised performance in a substitute transaction.[24]

A breach is "profitable" under the rule when it gives the breaching party more, after paying damages, than the party would have realized under the contract:

> A breach is "profitable" when it results in gains to the defaulting promisor (net of potential liability in damages) greater than the promisor would have realized from performance of the contract. Profits from breach include saved expenditure and consequential gains that the defaulting promisor would not have realized but for the breach. The amount of such profits must be proved with reasonable certainty.[25]

By its own terms, the proposed rule would not allow disgorgement in contract cases that involve an enforceable liquidated damages clause, or if disgorgement would otherwise be "inequitable":

> Disgorgement by the rule of this Section will be denied
>  (a) if the parties' agreement authorizes the promisor to choose between performance of the contract and a remedial alternative such as payment of liquidated damages; or
>  (b) to the extent that disgorgement would result in an inappropriate windfall to the promisee, or would otherwise be inequitable in a particular case.[26]

---

[24] *Id.* at § 39(2). *Cf.* E. Allan Farnsworth, *Your Loss Or My Gain? The Dilemma Of The Disgorgement Principle In Breach Of Contract*, 94 YALE L.J. 1339, 1384 (1985) ("Can the wrong in these situations be defined with sufficient precision to yield a workable rule? We shall call that wrong 'abuse of contract.' <u>If I realize a gain as a result of my breach of contract, there has been an abuse of that contract if you, the injured party, are left with a defective performance and no opportunity to use your return performance to attempt to obtain a substitute</u>.").

[25] RESTATEMENT at § 39(3).

[26] *Id.* at § 39.

In operation, the rule protects parties whose "contractual position is vulnerable to abuse":

> The common rationale of every instance in which restitution allows a recovery of profits from wrongdoing, in the contractual context or any other, is the reinforcement of an entitlement that would be <u>inadequately protected</u> if liability for interference were limited to provable damages. <u>Cases in which restitution reaches the profits from a breach of contract are those in which the promisee's contractual position is vulnerable to abuse</u>. Vulnerability in this context stems from the difficulty that the promisee may face in recovering, as damages, a full equivalent of the performance for which the promisee has bargained. A promisor who was permitted to exploit the shortcomings of the promisee's damage remedy could accept the price of the promised performance, then deliver something less than what was promised. Such an outcome results in unjust enrichment as between the parties. The mere possibility of such an outcome undermines the stability of any contractual exchange in which one party's performance may be neither easily compelled nor easily valued.[27]

The rule condemns "[breaching] without asking"[28] and creates a strong incentive, as is commonly acknowledged to exist in the law of trespass and infringement,[29] for a party to negotiate a "modification or release of his own contractual obligations":

---

[27]   *Id. at* § 39 cmt. b.

[28]   *Id. at* § 39 cmt. i. ("this part of <u>the law of restitution favors voluntary over involuntary transactions</u> in the adjustment of conflicts over any form of legal entitlement. <u>To take without asking, having calculated that one's anticipated liability in damages is less than the price one would have to pay to purchase the rights in question, is precisely the conduct that the law of restitution condemns</u>.") (emphasis added).

[29]   *See, e.g.*, *Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983) (Posner, J.) ("By preventing infringers from obtaining any net profit [disgorgement] makes any would-be i infringer negotiate directly with the owner of a copyright that he wants to use, rather than bypass the market by stealing the copyright and forcing the owner to seek compensation from the courts for his loss. Since the infringer's gain might exceed the owner's loss,

> By condemning . . . opportunism, <u>the rule of § 39 reinforces the contractual position of the vulnerable party and condemns a form of conscious advantage-taking</u> that is the equivalent, in the contractual context, of an intentional and profitable tort. A restitution claim in response to a profitable tort typically operates to protect property from deliberate interference: standard examples include the claim to profits from trespass or infringement. <u>The rule of § 39 extends an analogous protection to contract rights, where what the wrongdoer seeks to acquire is</u> not "property" but the <u>modification or release of his own contractual obligation.</u> The two situations have much in common. Assuming a case—in either context—in which the appropriate course of action would be to negotiate regarding legal entitlements, <u>the wrongdoer takes without asking</u>. The opportunistic calculation in either setting is that the wrongdoer's anticipated liability in damages is less than the anticipated cost of the entitlement, were it to be purchased from the claimant in a voluntary transaction. <u>Restitution (through the disgorgement remedy) seeks to defeat this calculation, reducing the likelihood that the conscious disregard of another's entitlement can be more advantageous than its negotiated acquisition.</u>[30]

---

especially as loss is measured by a court, limiting damages to that loss would not effectively deter this kind of forced exchange.").

[30]    RESTATEMENT § 39 cmt. i. *Cf.* E. Allan Farnsworth, *Your Loss Or My Gain? The Dilemma Of The Disgorgement Principle In Breach Of Contract*, 94 YALE L.J. 1339, 1384 (1985) ("Had I, before any breach, recognized your right to performance and negotiated a settlement with you, relieving me of the duty of performance and avoiding a breach on my part, that settlement would have left you [with less than the profits of my breach, but more than nothing]. It is both practical and fair to resolve this uncertainty [about what a party would have received in the negotiation] in favor of the aggrieved party by requiring the party in breach to disgorge the gain in terms of *saving of the cost of modification*.").

*See also* Kull, *Disgorgement For Breach,* 79 TEX. L. REV. at 2050 ("The common feature of the disgorgement paradigm is the defendant's self-serving election to violate the plaintiff's legal entitlement, rather than to bargain for the plaintiff's consent to a proposed transaction. The defendant's election in all such cases is based on a calculation that the anticipated cost of his potential liability to the plaintiff is less than the anticipated cost of obtaining the plaintiff's consent. The law of unjust enrichment condemns this calculation and seeks to frustrate it by imposing a remedy—disgorgement of profits—that

### 2. If Payment of Compensatory Damages Does Not Render Defendants' Breach Unprofitable, Alaska Rent-A-Car is Entitled to Disgorge Defendant's Opportunistically Secured Cost-Savings.

Alaska Rent-A-Car is entitled to disgorge a share of the cost-savings of defendants' breach if the amount of compensatory damages it is awarded at trial does not render the breach unprofitable.[31]

Defendants' internal memoranda and deposition testimony establish that the decision to co-mingle Avis and Budget's sales and marketing departments was both "deliberate"[32] and "profitable" to defendants (before payment of damages).[33]  And it should be clear that Alaska Rent-A-Car's "right to recover damages" afforded "inadequate protection" for its "contractual entitlement" from the start,[34] because no

---

forecloses any possibility that the defendant could respond in damages to the plaintiff and still come out ahead.").

　　　*See also* Eisenberg, *The Disgorgement Interest In Contract Law*, 105 MICH. L. REV. at 559 ("[T]here are strong efficiency reasons, as well as moral reasons, for protecting the disgorgement interest, because in certain categories of cases, protection of that interest in contract law is necessary to provide efficient incentives to the promisor, to effectuate contracts, or to prevent unjust enrichment.").

[31]　　*Cf.* Agency Settlement Agreement at § IV.D.2. (liquidated damages provision providing for a similar remedy).

[32]　　*See*, e.g., Memorandum in Support of Motion to Disregard Defendants' Corporate Form and Pierce the Corporate Veil at 38.

[33]　　*Cf.* Opinion at 12 ("Cendant expected to realize annual savings of $12.9 million by integrating the IT systems of Avis and Budget.").

[34]　　*Cf.* RESTATEMENT § 39(1).

amount of money damages will permit Alaska Rent-A-Car to purchase in a substitute transaction a "full equivalent" to Cendant's "promised performance."[35]

Alaska Rent-A-Car contracted for the right to work with a franchisor whose sales, marketing, and reservation personnel operate independently of all other car-rental operations and who will dedicate their "best efforts" to Avis and its franchisees.[36]  No "equivalent" to that promise can be obtained in a "substitute transaction" because Alaska Rent-A-Car clearly cannot "acquire" an Avis sales-marketing-and-reservation department that is independent of Budget's—and no market exists in which Alaska Rent-A-Car can buy back the lost loyalty of its franchisor.[37]

Alaska Rent-A-Car is therefore entitled to obtain a disgorgement of a share of the cost-savings of defendants' breach if the amount of damages it receives at trial does not render defendants' breach unprofitable.

### III. ALASKA RENT-A-CAR WILL PRESENT EVIDENCE TO ESTABLISH THE HARM THAT IT SUFFERED AND THE GAINS THAT DEFENDANTS REAPED AS RESULT OF DEFENDANTS' BREACH.

Alaska Rent-A-Car intends to present evidence and testimony at trial to establish

---

[35] *Cf. id.* at § 39(2).

[36] *See* Agency Settlement Agreement at ¶IV.C.2.

[37] *Cf.* RESTATEMENT § 39 cmt. c. ("As a general rule, <u>damages are an adequate remedy only if they can be used to replace the promised performance in a substitute transaction</u>. Where such a replacement transaction is available, the promisee's remedy in contract damages makes disgorgement unnecessary; and the promisor's breach will not be opportunistic by the present definition.  <u>Where by contrast the defaulted performance cannot be replaced—either because a market substitute does not exist, or because provable damages would not suffice to buy it—protection of the promisee's contractual entitlement will normally justify specific relief</u>.") (emphasis added).

the full extent of the damages that it suffered as a consequence of defendants' breach. To accomplish that end, Alaska Rent-A-Car will present evidence and testimony to establish the extent to which the "sales, marketing and reservation activities, operations and personnel of and for the Avis System" have been and currently are being used to support Budget's car-rental services, in contravention of ¶ IV.C.2 of the Agency Settlement Agreement, and to Alaska Rent-A-Car's detriment and/or defendants' advantage.

      **A.**    **Alaska Rent-A-Car Will Present A Two-Part Compensatory-Damages Case.**

To establish its compensatory damages case, Alaska Rent-A-Car will present evidence that defendants' breach both (1) caused Alaska Rent-A-to Car lose profits and market share, and (2) deprived Alaska Rent-A-Car of the value of the contractual prohibition on co-mingling Avis's "sales, marketing and reservation activities, operations and personnel," with those of an additional company.

      **1.**    **Alaska Rent-A-Car's Expert Will Prepare a Supplemental Report and Testify to the Impact that Defendants' Breach Had On Alaska Rent-A-Car's Profits and Market Share.**

In support of the first portion of Alaska Rent-A-Car's compensatory damages case, Patrick Anderson, an expert retained by Alaska Rent-A-Car, will prepare a revised expert witness report, in which he calculates the value of profits and market share lost by Alaska Rent-A-Car as a direct consequence of defendants' breach of ¶ IV.C.2 of the Agency Settlement Agreement.[38]

---

[38]    The original reports submitted by the expert witnesses addressed the full range of damages available under all of the claims asserted in the plaintiff's complaint. With the court having dismissed various claims, a revised report is required to identify the

Prior to the court's ruling on summary judgment, Anderson calculated three categories of damages suffered by Alaska Rent-A-Car:

| Damages Category | Method of Calculation |
|---|---|
| • Cannibalization | the measure of immediate profits that Alaska Rent-A-Car would derive if Budget ceased to exist[39] |
| • Subsidization | the measure of value lost to Alaska Rent-A-Car as a result of defendants' subsidization of Budget and its partial consolidation with Avis[40] |
| • Reduction in Growth Options | the measure of profits that Alaska Rent-A-Car would ultimately derive from expanding into new locations made more attractive if Budget ceased to exist.[41] |

Anderson's report built from the assumption that, but-for defendants' actions, Budget would have "ceased activity as of January 1, 2003."[42] In his supplemental report, Anderson will eliminate that assumption and, in response to the court's summary judgment ruling, focus largely on "subsidization" damages.

To allow Anderson to complete the revisions necessitated by the court's order, and to permit him to update his calculations with data that was not available at the time of his original report's publication, limited additional discovery will be needed.

---

damages resulting solely from the claim on which the court granted summary judgment in favor of the plaintiff.

[39]    Patrick L. Anderson, Anderson Economic Group, Valuation and Damages Analysis of Alaska Rent-A-Car, Inc., p.25 (October 20, 2006).

[40]    *Id.* at 18, 25.

[41]    *Id.*

[42]    *Id.* at 18.

> **2.     Alaska Rent-A-Car Will Establish the Lost Value of the Contractual Prohibition on Merging Avis's "Sales, Marketing and Reservation Activities, Operations and Personnel" with Those of Another Company Through Evidence of Defendants' Cost-Savings.**

In support of the second portion of Alaska Rent-A-Car's compensatory damages case, Alaska Rent-A-Car will offer evidence of the cost-savings that defendants' reaped as a result of their breach. The contractual prohibition contained in the Agency Settlement Agreement that precluded defendants' from merging Avis's "sales, marketing and reservation activities, operations and personnel" with Budget's, had value to Alaska Rent-A-Car (much as a prohibition in a noncompete agreement has value to an employer who seeks to prohibit a former employee from using the employer's information to compete against it). The value of the prohibition, which defendants through their actions eliminated, can be measured by determining what defendants would have had to pay to obtain Alaska Rent-A-Car's permission to release from the prohibition.

Evidence of the cost savings incurred by defendants as a consequence of their unilateral breach is probative of that amount, and will be presented at trial.

> **B.     Alaska Rent-A-Car's Disgorgement Case Will Establish That, If Compensatory Damages Fail To Render It Unprofitable, Defendants' Breach Was Opportunistic.**

Alaska Rent-A-Car will also establish at trial that defendants must disgorge a share of the gains that they realized as a result of their breach, should an award of compensatory damages to Alaska Rent-A-Car prove inadequate to render defendants' breach unprofitable. In support of this claim, Alaska Rent-A-Car will present evidence, including deposition testimony and defendants' internal memoranda, to establish that

defendants' breach was "deliberate," in addition to being potentially "profitable," thus rendering the breach "opportunistic" as a matter of law.

### C. Alaska Rent-A-Car's Damages Case Involves a Limited Number of Factual Issues and Raises Few Jury Questions.

To establish its legal entitlement to recovery, Alaska Rent-A-Car will raise a limited number of factual issues, requiring the jury to resolve only a small number of questions. Specifically, Alaska Rent-A-Car intends to present evidence to establish that defendants improperly:

- consolidated and coordinated the sales, marketing and reservation activities of and for the Avis System with Budget's sales and marketing reservation activities, reducing product differentiation and resulting in less aggressive promotion of Avis, as well as improved and lower-priced Budget products,

- provided the Avis System's reservation system, and other back-office operational systems, to Budget, rapidly improving the quality of Budget and its licensees while simultaneously eliminating the need for Budget to independently develop or acquire comparable systems, and

- continue to dedicate the same sales, marketing, reservation, and management personnel to promote and provide services to both the Avis and Budget Systems, resulting in a loss of focus and ensuring that "best efforts" are not exercised to promote the Avis System.

At the close of trial, the questions that the jury will have to resolve will include:

- What is the amount of damages that Alaska Rent-A-Car is entitled to as compensation for the defendants' breach of contract?

- Was the defendants' breach of contract the deliberate?

- Did the defendants profit by their breach of contract?

- Did the defendants' profit exceed the amount of compensatory damages to which Alaska Rent-A-Car is entitled and, if so, by what amount?

## CONCLUSION

Alaska Rent-A-Car appreciates that the court has limited the issues set for trial in this case and will pursue damages only in response to defendants' breach of ¶ IV.C.2 of the parties' Agency Settlement Agreement. Alaska Rent-A-Car is entitled to recover compensatory damages or, if an award of damages fails to render defendants' breach unprofitable, to disgorge a share of the cost savings defendants unjustly accrued as a consequence of their breach. Alaska Rent-A-Car will therefore present evidence at trial to establish both the harm that it suffered, and the gains that defendants reaped as a result of their breach.

Dated: May 2, 2008

/s/ JEFFREY M. FELDMAN
Jeffrey M. Feldman
Email: feldman@frozenlaw.com
AK Bar No. 7605029
**FELDMAN ORLANSKY & SANDERS**
500 L Street, Suite 400
Anchorage, Alaska 99501
Tel.: (907) 272-3538
Fax: (907) 274-0819

**BANKSTON GRONNING O'HARA, PC**
601 West 5th Avenue, Suite 900
Anchorage, Alaska 99501
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of May, 2008, a copy of the foregoing Memorandum in Support of Motion Regarding the Scope of Alaska Rent-A-Car's Damages was served electronically on J. Dienelt, J. Givens, C. Gronning, C. Heaphey, B. Heller, B. Zan Nault, D. Ruskin, H. Trickey, and D. Vallentine.

s/ Jeffrey M. Feldman