John F. Dienelt, Esq.
Barry M. Heller, Esq.
Scott McIntosh, Esq.
DLA Piper US LLP
1200 Nineteenth Street, N.W.
Washington, DC 20036-2412
(202) 861-3880 (telephone)
(202) 223-2085 (fax)

Diane F. Vallentine, Esq.
Howard S. Trickey, Esq.
Jermain Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844 (telephone)
(907) 563-7322 (fax)

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
AT ANCHORAGE

| | |
|---|---|
| ALASKA RENT-A-CAR, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CENDANT CORPORATION, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 3:03-cv-00029 [TMB] |

**OPPOSITION TO ALASKA RENT-A-CAR, INC.'S
<u>MOTION REGARDING THE SCOPE OF DAMAGES</u>**

This memorandum is submitted on behalf of Cendant Corporation and Cendant Car Rental Group, Inc. (collectively, "CCRG"), the only remaining defendants in this matter. In its summary judgment decision, the Court made it crystal clear that the only damages that Plaintiff Alaska Rent-A-Car, Inc. ("RAC") is entitled to recover are the "damages it actually incurred as a

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA  99503
(907) 563-8844
FAX (907) 563-7322

{00201541 }

result of the breach of [Section IV.C.2] of the Agency Settlement– <u>no more, no less</u>." (Memorandum Decision and Order at 31-32 (July 27, 2007) ("Decision") (emphasis added).)[1] RAC's proposed damages approaches directly contradict this damages standard prescribed by the Court.

RAC's effort to recover a portion of CCRG's cost savings is a blatant attempt to recover "more" – as opposed to "no more" – than the damages it actually suffered, if any. Moreover, RAC's approach is inconsistent with basic principles of contract damage law, as established by the Alaska Supreme Court. In fact, RAC's theory is based not on any established legal authority but, rather, on law review articles and a "tentative draft" provision in a restatement that has not been adopted and is inconsistent with both Alaska and New York law. Recognizing that its actual damages are minimal or non-existent, and faced with potential liability for a portion of defendants' attorneys' fees,[2] RAC is seeking to create new law and effectively recover the equivalent of tort damages for what the Court found to be a simple breach of contract. For these reasons, as well as others discussed below, the Court should reject RAC's effort through its overreaching damage theories to now obtain more than the damages it actually incurred.

In addition, RAC's request to submit a new expert report on damages should be denied. Having conducted extensive discovery for four years, produced three damage experts and presented at least six different contract damage theories, RAC has already had more than enough opportunity to prepare its case. At most, discovery should be restricted to updated financial

---

[1] The Decision also implicitly recognized that RAC may not have been damaged by the breach it found. *See* Decision, at 31 n.53 ("There is no evidence of the amount of damages, <u>if any</u>, that RAC incurred as [a] result of this breach.") (emphasis added).

[2] CCRG understands this motion phase of the case to address issues related to proving damages, and not to recovery of attorneys' fees. Therefore, CCRG and the other defendants do not address their right to attorneys' fees in this brief but will seek an award of their fees at the appropriate time.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES    PAGE 2 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

information and any revised reports (and depositions of experts) should be limited strictly to that new financial information and to the issue of damages actually incurred, if any, from the breach of contract the Court determined.

## ARGUMENT

### I. THIS COURT ALREADY CORRECTLY DEFINED THE SCOPE OF DAMAGES TO BE DETERMINED AT TRIAL IN ITS ORDER ON SUMMARY JUDGMENT.

In its detailed opinion dated July 27, 2007, the Court held that, of all the claims asserted by RAC – including breach of contract, fraud, antitrust, interference with prospective economic advantage, the Alaska Unfair Trade Practices Act and the Alaska Uniform Trade Secrets Act – CCRG's only violation was a single breach of the Agency Settlement Agreement based on the fact that "the same personnel" for selling and marketing were being used for both Avis and Budget. (Decision at 31.) As the Court explained:

> Paragraph IV.C.2 prohibits the use of the same personnel for selling, marketing or making reservations for both Avis and Budget. Section V.D., on the other hand, also applies and, to some extent, relaxes the restrictions of ¶IV.C.2 on making reservations. However, §V.D. only permits the use of common facilities in making reservations; it does not permit the use of the same personnel in making reservations and specifically requires separate telephone numbers.
>
> The evidence in the record clearly and unequivocally establishes that the same CCRG personnel sell and market both Avis and Budget brands. Based on that evidence a rational trier of fact could only find that <u>in so doing</u> CCRG has breached the provisions of ¶IV.C.2.[53]
>
> _____
>
> [53]There is no evidence of the amount of damages, <u>if any</u>, that RAC incurred as [a] result of <u>this breach</u>. Accordingly, damages remain a triable issue of fact. Fed. R. Civ. P. 56(c).

Law Offices of
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

(Id. at 31 (footnote 52 omitted; emphasis added)).  Thus, the only damages to which RAC is entitled are "damages [RAC] actually incurred as a result of the breach of [Section IV.C.2] of the Agency Settlement– <u>no more, no less</u>."  (Decision at 31-32.) (emphasis added).  Such damages are determined by quantifying actual damage to RAC, if any, resulting from the "same personnel" being used for selling and marketing on behalf of Avis and Budget.

The Court's holding regarding the scope of damages to be determined at trial is consistent with established contract damages law and Alaska's jury instructions.  In <u>Murray E. Gildersleeve Logging Company v. Northern Timber Corporation</u>, 670 P.2d 372 (Alaska 1983), a case relied upon by RAC, the Alaska Supreme Court set forth at least two basic principles of contract damages that are controlling here:

- "While the wronged party in a breach of contract suit is entitled to the benefit of his bargain, he is not entitled to any more than his actual loss.  <u>Illinois Central Railroad Co. v. Crail</u>, 281 U.S. 57, 63-64, 74 L. Ed. 699, 702-03, 50 S. Ct. 180 (1930); <u>Hoosier Insurance Co., Inc. v. Mangino</u>, 419 N.E.2d 978, 980-81 (Ill. App. 1981); Restatement (Second) of Contracts § 347 comment e (1979)."

(670 P.2d at 378.)

- "Where there are alternative methods of determining the amount of damages, <u>the method which is least expensive to the wrongdoer</u> should be adopted."

(670 P.2d at 381 (emphasis added).)

Both these basic principles confirm the scope of damages determined in this Court's opinion.[3]  Similarly, the Alaska Civil Pattern Jury Instructions for "Damages for Breach of Contract" (24.09A) provide, in relevant part:

---

[3] New York law is to a similar effect.  <u>See</u> <u>United States Naval Institute v. Charter Communications, Inc.</u>, 936 F.2d 692, 696-97 (2d Cir. 1991).

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES      PAGE 4 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

> If you find in favor of the plaintiff, you must then decide how much money, if any, would fairly compensate the plaintiff for the defendant's failure to keep (his) (her) (its) promise. In order to fairly compensate the plaintiff, your award should put the plaintiff in the same position that the plaintiff would have been in if the defendant had kept (his) (her) (its) promise.

Therefore, as this Court already determined, and as required by the law on contract damages and the Alaska Civil Pattern Jury Instructions, RAC's damages at trial are limited to the actual damages, if any, that it incurred as a result of the breach found by the Court – "no more, no less."

## II. BOTH OF THE DAMAGE METHODS PROPOSED BY RAC SHOULD BE REJECTED BECAUSE THEY SEEK TO CALCULATE DAMAGES IN EXCESS OF ANY ACTUAL DAMAGES CAUSED BY THE BREACH FOUND BY THE COURT.

RAC's Motion states that it intends to present (1) a "two-part compensatory-damages case" and (2) a "disgorgement case." (Memorandum of Law in Support of Motion Regarding the Scope of Alaska Rent-A-Car's Damages ("Motion") at 16, 18.) Each of RAC's proposed damage methodologies is contrary to the Court's previous ruling, basic established principles of contract damage law, and the Alaska Jury Instructions, as discussed above. Moreover, RAC previously filed a motion for summary judgment on methodologies for calculating damages. (Docket No. 179). Despite proposing four separate theories, RAC did not seek the value of any cost savings by CCRG in its damages motion. Id. RAC should not be permitted to advance such new theories now.[4]

---

[4] Indeed, RAC's proposed damage theories appear to effectively seek another reconsideration of this Court's Decision. While such a request would, of course, be untimely, this Court's ruling on RAC's Motion for Reconsideration, dated August 23, 2007, would be equally applicable here to RAC's effort to introduce a request for a form of damages it neither sought in its complaint nor pursued: "The Court notes that despite the fact that RAC filed a 50-page memorandum in support of its motion for summary judgment on Counts I and II (Docket No. 165) and a 50-page opposition to CCRG's motion for summary judgment (Docket No. 199), it never at any time raised this argument or discussed this point." Memorandum Decision (Docket No. 342), at 2.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES   PAGE 5 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

RAC devotes a significant portion of its brief to its argument that this Court should apply the concept of "opportunistic breach," as described in a tentative draft Restatement of Restitution and Unjust Enrichment and in certain law review articles. RAC does not cite any judicial decision applying this proposed doctrine. In other words, RAC asks this Court to abandon its well-reasoned and well-supported standard of "damages actually incurred ... no more, no less" for a flight of academic fancy by which RAC seeks to obtain a remedy of a punitive nature, contrary to the objective of a contract remedy, on the theory that it should receive more than an amount that will compensate RAC "if an award of compensatory damages fails to render defendants' breach unprofitable." (Motion at 7, 14, 18.)

Essentially, RAC's theories seek to recover a measure of damages more akin to tort damages. Such a measure of damages is not proper when this Court found only a single breach of contract, not the breach of an independent legal duty. Wien Air Alaska v. Bubbel, 723 P.2d 627, 631 (Alaska 1986) ("The purposes of awarding contract damages is to compensate the injured party. . . . For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.") (quoting Restatement (Second) of Contracts § 355, cmt a (1981)); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").[5]

---

[5] RAC in essence is attempting to obtain damages more appropriate for a tort claim, where an independent legal duty was breached. However, as RAC has recognized, this Court granted summary judgment against RAC on each of its claims, other than the single breach of contract claim. RAC effectively seeks to go beyond this Court's holding by seeking to present evidence "to establish the defendants' breach was 'deliberate.'" (Motion at 18-19) Such evidence and the related proffered jury question are irrelevant to determining RAC's actual damages.

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES   PAGE 6 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

RAC's effort – by invoking the concept of "opportunistic breach" to obtain more than its actual damages caused by a contract breach – seeks to turn established law on its head by using a damage method that will be "more" (if not most) expensive, not "least expensive" as mandated by the Alaska Supreme Court in Gildersleeve.

### A.     RAC's Proposed "Two-Part Compensatory Damages Case"

As to the first part of its compensatory damages case, RAC states that it will seek to calculate "the value of profits and market share lost by Alaska Rent-A-Car as a direct consequence of defendants' breach of ¶IV.C.2 of the Agency Settlement Agreement." (Motion at 16.) It is not clear whether RAC seeks to recover both the lost "value of profits" plus the lost "market share," or whether it was referring to these as comparable to each other. Although RAC would be entitled to the net "value of profits," if any, lost as a direct consequence of the breach the Court found, RAC would not in addition be entitled to the value of market share lost, if any, as a result. That would be a duplicative recovery, as the value of profits lost and the value of market share lost measure the same alleged damage.

Moreover, RAC's description of this part of its theory as measuring the damage that is a direct consequence of "defendants' breach of ¶IV.C.2" goes beyond the breach that the Court found. The Court did not find that CCRG violated ¶IV.C.2 in any way other than its employment of the "same personnel" to sell and market for both brands. (Decision at 31.)[6] RAC's effort to present evidence of, and recover damages for, any other alleged violation is an improper attempt to expand the scope of its damage claim beyond the parameters set forth in the Court's summary judgment decision. In addition, it appears that RAC seeks to take trial time to

---

[6] Indeed, RAC in its Motion recognized this when it stated: "The court found that Cendant had 'clearly and unequivocally' breached this provision by employing the same personnel to sell and market the services of both Avis and Budget." (Motion at 5 (emphasis added).)

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

re-prove the breach this Court has already decided that CCRG committed and, in so doing, expand the scope of damages the jury might consider. Similarly, RAC seeks this Court's permission to present evidence of broader alleged breaches, such as "provid[ing] the Avis System's reservation system, and other back office operational systems to Budget." (Motion at 19.) RAC should be restricted, instead, to showing damages "actually incurred. . . no more, no less" as a result of the only breach this Court decided CCRG committed.

In the second part of its compensatory damages case, RAC reveals that it intends to present evidence of the "cost-savings that defendants reaped as a result of their breach" as "probative" of "what defendants would have had to pay to obtain Alaska Rent-A-Car's permission to [be] release[d] from the prohibition" against the merging of "sales, marketing and reservation activities, operations and personnel." (Motion at 18.)  This approach – which RAC calls "compensatory" in an effort to try to distinguish it from RAC's "disgorgement" theory, though it appears to be essentially the same – suffers from several flaws.

First, and foremost, it is not the type of remedy that this Court set forth in its Order: "the damages [RAC] actually incurred as a result of the breach." Awarding RAC any portion of the dollar value of the cost-savings to CCRG or what RAC would have insisted CCRG pay to be released from the prohibition – even if one were "probative" of the other, and there is absolutely no basis to believe that they are – is not the "damages [RAC] actually incurred." The "damages actually incurred" would be the net loss, if any, in profits that RAC in fact had as a result of the same personnel being involved in selling and marketing both brands – not any cost-savings CCRG realized from using the same personnel nor any imaginary, highly speculative amount that RAC would demand to release CCRG from the prohibition.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Furthermore, this "cost-savings" theory attempts to equate the lost value to RAC of the contract prohibition <u>with</u> the cost-savings realized by CCRG. But, in reality, these do not equate. The lost economic value of the contract prohibition is, as the Court correctly ruled, the actual damage incurred by RAC as a result of the breach. This Court already expressly rejected RAC's prior attempt to essentially value damages based upon benefits realized by others when the Court held that RAC was not entitled to damages equal to the value of the Budget franchise/license in Alaska. (Decision at 31.) RAC now – in the guise of calling it "compensatory" damages – seeks as damages the cost-savings realized by <u>CCRG</u> as a result of the breach. However, such cost-savings, even if limited to cost-savings related solely to activity directed at the State of Alaska, is not a measure of damages to RAC, if any, caused by the breach. Such damages would be the net dollars in profit, if any, RAC lost due to the fact of "the same employees" – not what CCRG saved.

In addition, RAC has proposed two alternative damages methods – compensatory <u>or</u> a share of the cost-savings – and claims it is entitled to whichever is the greater amount. Apart from the fact that it never suggests how the Court or jury would assess the appropriate "share" of cost-savings to be awarded, RAC's damage approach is directly inconsistent with the basic principle, established, as noted above, by the Alaska Supreme Court, that "where there are alternative methods of determining the amount of damages, the method which is <u>least expensive to the wrongdoer</u> should be adopted." 670 P.2d at 381 (emphasis added). RAC's theory incorrectly asks this Court to adopt the "most expensive" damage method. Thus, the second-part of RAC's compensatory damage argument should be rejected.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

### B.     RAC's Proposed "Disgorgement Case"

RAC's disgorgement theory should also be rejected for the same reasons as RAC's so-called compensatory damage case.  Nothing in the Court's prior decision authorized any disgorgement remedy or, for that matter, any equitable remedy at all.  The Court's ruling could not have been clearer – "[A]RAC is entitled to whatever <u>damages it actually incurred</u> as a result of the breach of the Agency Settlement – no more, no less."  (Decision at 31-32 (emphasis added).)  There is nothing that even suggests that the Court intended to allow RAC to prove the "damages it actually incurred" by proving, <u>not</u> the <u>damages</u>, if any, it actually incurred, but the <u>savings</u> that CCRG realized.

Moreover, RAC's proposed disgorgement remedy, according to its own argument, would come into consideration only "should an award of compensatory damages to Alaska Rent-A-Car prove inadequate to render defendants' breach unprofitable."  (Motion at 18.)  By this, RAC admits that its disgorgement remedy would only be considered if the cost-savings realized by CCRG (presumably, only the cost-savings relating to the State of Alaska) were <u>more</u> than RAC's actual damages.[7]  RACs' disgorgement approach, therefore, is in direct violation of this Court's strict admonition to RAC that it is entitled to "no more" than the damages it actually incurred and should be rejected by this Court.

### C.     RAC's Opportunistic Breach Argument

RAC's opportunistic breach argument likewise seeks to distort this Court's ruling--and rewrite Alaska damages law--by providing a theory by which RAC can get more than the

---

[7] It is clear from RAC's list of questions for the jury that RAC seeks "more" than the amount of compensatory damages to which it is entitled.  The first question RAC suggests is: "What is the amount of damages that Alaska Rent-A-Car is entitled to as compensation for the defendants' breach of contract?"  (Motion at 19.)  And its last question for the jury is:  "Did the defendants' profit exceed the amount of compensatory damages to which Alaska Rent-A-Car is entitled and, if so, by what amount?"  (<u>Id.</u>)

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA  99503
(907) 563-8844
FAX (907) 563-7322

damages, if any, it actually incurred.[8]  RAC's contention is not only inconsistent with this Court's clear articulation of the appropriate damage standard, but it is also inconsistent with the doctrine of "efficient breach," which has long received judicial approval.  See Allapattah v. Exxon Corp., 61 F. Supp. 2d 1326, 1329 (S.D. Fla. 1999) (noting, and collecting cases recognizing, that "acceptance of intentional, efficient breaches has been uniformly adopted among the jurisdictions").  An "efficient" breach occurs when the breaching party will be better off by breaching the contract and compensating the other party in damages.  "The whole notion of 'efficient breach' is that a party should abrogate its contractual responsibilities if a more profitable opportunity comes along."  U.S. v. Blankenship, 382 F.3d 1110, 1133-34 (11th Cir. 2004) (emphasis in original) (citing Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57, 63 (2d Cir. 1985)).  See also Rest. 2d of Contracts, Chapter 16, Introductory note ("The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach.  'Willful' breaches have not been distinguished from other breaches [and] punitive damages have not been awarded for breach of contract . . ."); XCO Int'l, Inc. v Pacific Scientific Co., 369 F.3d 998, 1001 (7th Cir. 2004) (noting that "'efficient breaches', that is, breaches that confer a greater benefit on the contract breaker than on the victim of the breach, in which event breach plus compensation for the victim produces a net gain with no losers" should be encouraged).

The doctrine of "efficient breach" is consistent with the Alaska Supreme Court's rule in Gildersleeve that the calculation of damages must be the "least expensive" to the wrongdoer. Application of the doctrine is particularly appropriate in this case, involving a franchise network,

---

[8] RAC's opportunistic breach argument is primarily derived from an unadopted draft Restatement (Third) of Restitution and Unjust Enrichment.  RAC's Amended Complaint included neither a claim for unjust enrichment nor a request for restitution on its contract claim.

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES   PAGE 11 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

where a breach by the franchisor may create substantial efficiencies on behalf of the franchisor and many franchisees, while one franchisee may claim harm, which—if any—may be compensated by damages.[9] There is no reason, however, to debate concepts of opportunistic and efficient breach here. This Court's ruling, that RAC is entitled to "damages actually incurred . . . no more, no less" is all that need be said, and RAC should be confined to this simple, straightforward, and legally unassailable approach.

### III. THE COURT SHOULD NOT ALLOW OR SHOULD VIGILANTLY LIMIT FURTHER DISCOVERY AND EXPERT REPORTS

RAC seeks what it characterizes as "limited additional discovery" (Motion at 17) to provide information for one of its damages experts, Patrick Anderson, to prepare a "revised expert report." (Id. at 16.) RAC should not be permitted to have a "do-over" of expert discovery. RAC conducted an almost unlimited range of discovery over more than four years.[10] It submitted damage reports on behalf of three experts, setting forth at least six different contract damage theories. RAC has had its opportunity to prepare its case and should not now be allowed to re-open discovery and file yet another expert report.[11] Just as this Court said "no more, no less" before, it should now say "enough is enough." At most, the Court should restrict any additional discovery to updated "paper" discovery relating to financial performance since the

---

[9] CCRG does not suggest, by the discussion of the doctrine of "efficient breach," that its breach, as found by the Court, was deliberate in the sense that it intended to efficiently breach the contract. However, if the Court were to apply a concept that assumed deliberate breach, the judicially established doctrine of "efficient breach," rather than the academically suggested concept of "opportunistic breach," would be more appropriate.

[10] RAC took more than 60 depositions of CCRG's employees, experts and third parties, and received several hundred thousand pages of documents in discovery.

[11] As stated in ¶¶ 3 and 5 of the Joint Submission of Proposed Pretrial Schedule (February 26, 2008), CCRG never "waived any argument as to the need for or the appropriate scope of additional expert witness reports or discovery," nor "the need for or the appropriate scope of additional (fact) discovery."

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

previous close of fact discovery and limit any revised expert reports (and expert depositions related to those reports) to updating reports to reflect that new financial information and to address only the issue of "damages actually incurred. . .no more, no less," as a result of the breach of contract the Court found.

## CONCLUSION

For the foregoing reasons, the Court should reject RAC's effort to go beyond the damage standard this Court established in its summary judgment decision and, in particular, should preclude any effort by RAC to seek damages based on any cost-savings or disgorgement theory. In addition, the Court should deny RAC's request to re-open discovery and to file a new expert report. Rather than the series of questions or issues RAC seeks to present (Motion at 19), this Court should direct the jury to answer only the following: (a) Did RAC incur any damages (beyond any benefits it received) as a result of CCRG's breach of the Agency Settlement Agreement by using the same personnel to sell and market both the Avis and Budget brands?; and (b) If so, what amount of money would fairly compensate RAC for the damages it actually incurred—no more, no less—as a result of CCRG's breach of the Agency Settlement Agreement by using the same personnel to sell and market both the Avis and Budget brands?

Respectfully submitted this 16th day of June, 2008.

JERMAIN DUNNAGAN & OWENS P.C.
Attorneys for Defendants


By: *s/Diane F. Vallentine*
    Diane F. Vallentine
    3000 A Street, Suite 300
    Anchorage, Alaska 99503
    (907) 563-8844 (telephone)
    (907) 563-7322 (fax)
    Email: dfvallentine@jdolaw.com
    Alaska Bar No. 7710177

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

OPPOSITION TO ALASKA RENT-A-CAR, INC.'S MOTION REGARDING THE SCOPE OF DAMAGES   PAGE 13 OF 14
Alaska Rent-A-Car, Inc. v. Cendant Corporation, et al.
Case No. 3:03-cv-29 [(TMB]

John F. Dienelt, Esq.
Barry M. Heller, Esq.
Scott McIntosh, Esq.
DLA Piper US LLP
500 Eighth Street, NW
Washington, D.C.  20004
(202) 799-4270 (telephone)
(202) 799-5000 (fax)

**CERTIFICATE OF SERVICE**

This is to certify that on this 16th day of June, 2008, a true and correct copy of the foregoing document was served electronically on J. Dienelt, J. Givens, C. Gronning, C. Heaphey, B. Heller, B. Zan Nault, J. Feldman, S. Orlansky, D. Ruskin, and H. Trickey

  s/Diane F. Vallentine

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322